**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CR-20271-DSL**

**UNITED STATES OF AMERICA**

**v.**

**BRETT BLACKMAN and
GARY COX,**

**Defendants**.

_____/

**<u>GOVERNMENT'S MOTION TO EXCLUDE VIDEO EVIDENCE</u>**

The United States, through undersigned counsel, respectfully submits this motion to exclude Defendant Blackman's exhibits A1 through A14 (the "DMERx Videos").[1]   The Defendants have indicated multiple bases by which they may seek admission of these exhibits; however, at its core, the Defendants' effort to admit the DMERx videos is an attempt to end-run the hearsay rules to allow the Defendants to offer their alleged factual case without witness testimony.

The Defendants may seek admission of three types of DMERx Videos:

First, the Defendants offer videos that Toni De Lanoy narrates.  These are generally videos explaining the use of the DMERx platform generally.  Ms. De Lanoy's videos are largely false explanations of how to register with the platform and how it is used.  For example, Ms. De Lanoy narrated the three types users of DMErx.  <u>See</u> DX A7.  Notably, she omits any reference to telemedicine during her narrations.

---

[1] The Government has conferred with the Defendants, and they oppose this motion.

Second, the Defendants offer videos narrated by Defendant Gary Cox. These are detailed videos that explain Medicare rules and regulations and discuss how physicians may perform examinations over a telephone call. For instance, in one video, Defendant Cox discusses in detail what a doctor is required and permitted to do in orthotic examinations. Mr. Cox explains that Medicare requires certain tests including a pivot shift test, and that a doctor may conduct a pivot shift test on a knee may be conducted over a telephone call. Mr. Cox describes the conduct of the "test" over a telephone call and explains to the viewer that "typically we can determine if there is a ligament injury." DX A2, at 11:30. Defendant Cox goes on to explain a number of tests that he asserts can be done over a telephone call.

The third type of video is narrated by an unidentified individual who purports to be "Kennedy." DX A11. This unidentified speaker tells viewers purported facts about the use of telemedicine versus face-to-face consultations while instructing them. For instance, the speaker says "although telephone consults may be fairly simple for determining need of an orthotic device, never rush the consult." DX A11 at 3:10.

Each of these video types are inadmissible hearsay, and the Court should exclude them from evidence if offered by the Defendants. The Government does not dispute that the videos and existed and that questioning about them of certain witnesses would be appropriate. However, for the reasons set forth below, the Government submits that they are inadmissible.

1. <u>The DMERx Videos are not Business Records</u>

The Government submits that the evidence will not meet the requirements of the business records. There is inherently insufficient indica of reliability and trustworthiness in videos made by a defendant and a cooperator who pled guilty; both had an incentive to make false statements in the video and in fact Ms. De Lanoy will testify that she did not accurately record the video as

2

she deliberately made no reference to telemedicine, even though she understood that Brett Blackaman and Gary Cox intended them to be used in connection with the telemedicine module used by telemedicine companies, telemarketers, and brace suppliers by the DMERx platform.

The DMERx videos are inadmissible hearsay without an applicable exception. Defendant Blackman has stated that they may seek to admit them as "business records" under Federal Rule of Evidence 803(6), but this exception to the general rule against hearsay permits a document containing hearsay to be admitted for the truth of the matters asserted only if it constitutes a record of a regularly conducted activity that is true and reliable. "The touchstone of admissibility under the business records exception to the hearsay rule is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence." *United States v. Bueno-Sierra*, 99 F.3d 375, 378 (11th Cir. 1996).  A proponent must "establish that it was the business practice of the recording entity to obtain such information from persons with personal knowledge and the business practice of the proponent to maintain the records produced by the recording entity." *Bueno-Sierra*, 99 F.3d at 379.

Accordingly, the Eleventh Circuit has approved foundation based on examination of the contents of the record at issue, *i.e.*, what the records purport to be. *United States v. Hawkins*, 905 F.2d 1489, 1494-95 (11th Cir. 1990). Fed. R. Evid. 803(6). Rule 803(6) "requires the testimony of a custodian or other qualified witness who can explain the record-keeping procedure utilized. While it is not necessary for the person who actually prepared the documents to testify, the proponent must at minimum demonstrate other circumstantial evidence and testimony to suggest the trustworthiness of the documents." *Garnett,* 122 F.3d at 1018–19. *See Allen v. Safeco Ins. Co. of Am.,* 782 F.2d 1517, 1519 (11th Cir.1986) (holding that there was sufficient foundation to admit a business record when the witness did not prepare the report, but the witness's testimony

3

established that "[t]he report and the test results in the report were issued by a state agency in the regular course of its business, and there was no indication that they lacked trustworthiness").

That a record is routine or repetitively prepared is insufficient for admissibility under the business records exception.  Essential to admissibility under this exception is that the record be the product of a "regular practice" of the business, *see United States v. Freidin,* 849 F.2d 716, 719–22 (2d Cir.1988), in the "usual course" of that business. *See Hawkins,* 905 F.2d at 1494 ("Admission of hearsay under this exception requires evidence 'sufficient to support the trustworthiness of the document, and to prove that it was prepared in the usual course of business.'") (quoting *United States v. Parker,* 749 F.2d 628, 633 (11th Cir.1984)).

For the business records exception to apply, "all persons involved in the process must be acting in the regular course of business—otherwise, an essential link in the trustworthiness chain is missing." *T. Harris Young & Assoc.'s, Inc. v. Marquette Elec., Inc.*, 931 F.2d 816, 828 (11th Cir. 1991). In order to meet the business records hearsay requirement, the documents must be "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted  business activity, and if it was the regular practice of that business activity to make the document all as shown by the testimony of the custodian or other qualified witness. *Candy Craft Creations, LLC v. Gartner*, 2015 WL 6680883, at *2 (S.D. Ga. Nov. 2, 2015).

Here the Defendants will not be able to demonstrate that the videos were made in the regular course of business activity or that they are otherwise reliable and they should be excluded as inadmissible hearsay.

### 2.   The Videos Made by Toni De Lanoy are Inadmissible Hearsay

The recordings made by Ms. De Lanoy cannot be admitted through Ms. De Lanoy (Def EX A3-10, 12 (the "De Lanoy Videos") because they were not made in the regular course based

on regularly conducted activity of the business and are not reliable.  The Government anticipates Ms. De Lanoy will testify that she made these videos while employed at DMERx.  The videos were available on the DMERx website as well as through Vimeo. Ms. De Lanoy will not be able to testify to how the De Lanoy Videos were maintained by DMERx, whether they were distributed to or relied on by users of the portal.  The Government further expects that Ms. De Lanoy will testify that the videos are not reliable because while making them she omitted important aspects of the business knowing them to be false and fraudulent.  For instance, Ms. De Lanoy would testify that although she understood the videos would be used in connection with the telemedicine module, she omitted any reference to telemedicine while recording the videos.  This omission rendered the videos inaccurate and false, and therefore not accurate business records.

Moreover, the recordings were not made in the regular course of business, and do not record regular business activities. Instead, they were made as carefully curated content to conceal the true activities of DMERx.

Should the Defendants seek to offer them as extrinsic evidence of impeachment, assuming Ms. De Lanoy does not deny the statements in the videos, then the videos cannot be introduced as there is no impeachment purpose.

However, when offered for their truth, the De Lanoy videos are hearsay.

### 3.   Recordings of Unidentified Speaker are Inadmissible Hearsay

Defendants also offer DX A11, which is a recording made by an unidentified speaker.  The Defendants have offered no explanation of who made this video or why, and thus it cannot be a business record.  The video contains certain factual statements that are inaccurate and, if offered for their truth, are deceptive.  This is inadmissible hearsay, and it must be excluded.

4.   Recordings of Defendant Cox are Inadmissible Hearsay

The recordings made by Defendant Cox are inadmissible hearsay.  It is well-settled that a defendant's self-serving, out-of-court statements are inadmissible hearsay.  *See United States v. Willis*, 795 F.2d 1486, 1501 (11th Cir. 1985) (upholding the exclusion of defendant's allegedly exculpatory statements at the time of his arrest" because it is "precisely what is forbidden by the hearsay rule").  Fed. R. Evid. 801(d)(2) (permitting admissions of party-opponent); Fed. R. Evid. 802 (hearsay is inadmissible).  Here, the Government has offered and will continue to offer evidence of Defendants' out-of-court statements, including Defendants' oral statements to witnesses who will testify and Defendants' statements in emails.  Such statements are admissible when introduced by the Government as statements of party-opponent.  Fed. R. Evid. 801(d)(2).  The Government's introduction of Defendants' statements does not give Defendants license to admit additional statements they may have made in violation of the Federal Rules of Evidence governing hearsay.  *See United States v. Manduley*, 585 F. App'x 1001, 1004 (11th Cir. 2014) (district court did not abuse discretion by excluding co-conspirator's exculpatory statement because "Rule 801(d)(2)(E) was not an applicable exception to the hearsay rule because Manduley offered the statement as an exculpatory statement made by a co-conspirator"); *United States v. Baptiste*, 596 F. App'x 880, 883 (11th Cir. 2015) (district court did not abuse discretion by excluding, as hearsay, potentially exculpatory statements made by drug conspiracy defendant supportive of his defense); *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999) (district court did not abuse discretion by excluding defendant's exculpatory statement as hearsay).  If Defendant Cox wants to testify, he can do so under oath and subject to cross-examination.  But he cannot introduce his own self-serving statements in the form of witness testimony, emails, or text messages.  *Willis*, 795 F.2d at 1486 ("defense sought to place [the

6

defendant's] remarks before the jury without subjecting [him] to cross examination. This is precisely what is forbidden by the hearsay rule.")

The Cox recordings are precisely the type of self-serving hearsay that the rule is designed to prohibit. Although Defendant Blackman asserts he may use the videos not for their truth, that is an obvious attempt to circumvent the hearsay rule's clear prohibition of introduction of these types of statements. Introduction of these hearsay statements is designed solely to place into dispute the significant evidence that the Government has and will sponsor that it was telemarketers who conducted any purported examination of beneficiaries and filled out the DMERx templated orders and that the telemedicine orders were by their nature fraudulent due to false testing.

For instance, the Government has offered the testimony of Dr. Robert Hoover, to show among other things that the DMERx exams were incomplete, not fulsome, and that knee testing for orthotic bracing cannot be done over a telephone call. Defendant Cox's videos state the opposite. In an effort to place the facts in dispute, the Defendants will rely on the videos to demonstrate that the medical professionals using DMERx were conducting fulsome examinations of Medicare beneficiaries, inserting that information into the DMERx platform, and determining medical necessity. That is an inadmissible hearsay use of the statements.

It is worth noting that while Defendant Cox might offer testimony regarding the accuracy and reliability of the recordings he made, the Government is unaware of any other witness who could testify regarding how they were maintained or whether they are an accurate reflection of the DMERx platform.

### 5. Impeachment of a Non-Testifying Co-Conspirator

Based on the hypothetical posited by Blackman's counsel that he may seek to use the DMERX Videos to impeach another potential Government witness pursuant to Rule 806, the Government reserves the right to address the scenario if it arises. The issue is not ripe based on the testimony available at this time. Nonetheless the Government notes that Dr. Audisho was a recipient of the videos; he did not create them, was not an employee of DMERX and thus cannot address the requirements for authenticity.

## **CONCLUSION**

For the reasons stated above, the Government respectfully requests that the Court grant its motion to exclude the DMERx Videos.

Dated: May 14, 2025

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

LORINDA LARYEA, ACTING CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

By:  */s/ Darren C. Halverson*
DARREN C. HALVERSON
Trial Attorney
Florida Special Bar No. A5503082
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 880-2233
Email: darren.halverson@usdoj.gov

JENNIFER E. BURNS
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
Email: jennifer.burns@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on May 14, 2025, I electronically filed the foregoing document via the Court's CM/ECF system.

*/s/ Darren C. Halverson*
Trial Attorney
U.S. Department of Justice
