UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23- CR-20271-DSL

UNITED STATES OF AMERICA

v.

BRETT BLACKMAN,

     **Defendant.**

                                             /

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT BRETT BLACKMAN'S MOTION EXCLUDE TESTIMONY**

The United States of America, through the undersigned counsel, respectfully files this response in opposition to Defendant's motion seeking the extraordinary remedy of excluding the testimony of ten potential witnesses because approximately 225 pages of materials were produced to him two weeks before trial. The Government has timely produced the potential *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Giglio*, 405 U.S. 150 (1972), Jencks Act*, and Rule 16 discovery that is in its possession. In his motion, Defendant does not identify a single item produced that violates a discovery obligation. Far from violations, Defendant points to a modest production two weeks before trial that is no more than the disclosure of information that came into the Government's possession recently, information that is publicly available, or information that is produced as a courtesy in excess of the Government's discovery obligations. The Government has produced voluminous discovery in this matter and gone beyond its discovery obligations working with prior and current defense counsel to identify potentially relevant materials from separate investigations to provide to the defense. For each of the 10 witnesses, the Government

provided substantial disclosures[1] over a year and a half ago and again in March 2026 as part the Government's 3500 Materials. The April 7 disclosures are either duplicative of prior productions or pertain to other matters or investigations. The production at issue contains the type of good faith disclosures that prosecution teams routinely make in the weeks prior to trial. Defendant does not cite to any authority to warrant excluding the testimony of ten of the Government's potential witnesses. His motion should be denied.

## LEGAL STANDARD

The Jencks Act requires that the Government—*after* a witness testified—produce all statements "of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(a). Under the Act, a statement is defined as: "(1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C.

---

[1] *See, e.g.*, (1) Chintan Anjara (approximately six reports of interview produced dating back to November 2024); (2) Mindy Breitman (approximately 40 reports of interview produced dating back to November 2024, sentencing transcripts, and prior testimony produced in January 2025); (3) Michelle Cuttino (approximately nine reports of interview produced dating back to November 2024 and prior testimony produced in April 2025); (4) Joseph DeCorso (nearly 100 reports of interview, recordings, and accompanying transcripts produced dating back to November 2024 and April 2025; (5) Pamela Edwin (approximately 21 reports of interview, transcript, and prior testimony dated back to August 2023, February, June, and October 2024, and April and May 2025; (6) Robert Hoover (transcripts of testimony from six trials produced in July 2024; five reports of interview produced in June 2024); (7) Keaton Langston (approximately three interview reports produced dating back to November 2024); (8) Michael Petron (transcripts of testimony from approximately 20 other cases produced in July 2024, two more in January 2025, and two more in April 2026 ); (9) Jean Wilson (approximately six reports of interview produced dating back to in November 2024; one report of interview produced in April 2025); and (10) Jodi Sullivan's expert disclosure dated December 20, 2024. Moreover, roughly have of these witnesses already testified in Defendant's original trial.

§ 3500(e). "[N]o statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a).

The Government also has a duty to disclose evidence in its possession that is favorable to the accused, where the evidence is material either to guilt or punishment. *See Brady*, 373 U.S. 83, 87 (1963); *United States v. Bagley*, 473 U.S. 667, 674 (1985). Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. 373 U.S. at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). In *Giglio*, the U.S. Supreme Court further expanded this rule to require the Government to produce evidence affecting the credibility of the Government's witnesses. *Id.* at 154 (quoting *Napue v. People of State of Ill.,* 360 U.S. 264, 269 (1959) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule.").

Even if there is a discovery violation, "the district court should impose the least severe sanction necessary to ensure prompt and complete compliance with its discovery orders." *United States v. Turner*, 871 F.2d 1574, 1580 (11th Cir. 1989). In determining a sanction, the district court should consider the "reasons for the delay in complying with the discovery order, whether there was any bad faith on the part of the prosecution, prejudice to the defendant, and the availability of

a means to cure the prejudice, including continuances and recesses." *Id*. Additionally, a conviction against a defendant after a delayed disclosure will not be vacated unless the defendant "can demonstrate that the violation prejudiced his substantial rights." *United States v. Rivera*, 944 F.2d 1563, 1566 (11th Cir. 1991). Substantial prejudice exists if the defendant "was unduly surprised and did not have an adequate opportunity to prepare a defense or [ ] the mistake had a substantial influence on the jury." *Id*.

## ARGUMENT

### *The Defendant Fails to Identify Any Jencks Act, Brady, or Giglio Violation*

The Government has complied with its obligations and undergone extensive efforts to produce all discoverable materials in advance of trial. The Government has undertaken extensive efforts to produce materials following the June 2023 indictment. As part of those efforts, the Government produced a large number of materials, including subpoena returns, search warrant returns, interview reports drafted by law enforcement agents, Medicare records, and business records. The Government has made continuing disclosures as information becomes available to the prosecution team. Many of these disclosures exceed the obligations of the Government under the Jencks Act, *Brady*, and *Giglio*, and were made in an effort to aid defense preparation and in an abundance of caution to assure that all *potentially* discoverable information was properly disclosed.

No Jencks Act violation can occur prior to the testimony of a witness. *See* 18 U.S.C. § 3500(a); *see, e.g.*, *United States v. Huawei Technologies Co., Ltd.*, --- F.Supp.3d --- 2026 WL 784732, * 9 (S.D.N.Y. Mar. 19, 2026) (holding the Court cannot compel disclosure prior to the timelines set out in the Jencks Act).  In making his incorrect Jencks Act violation claims, Defendant ignores the extensive discovery litigation of this case, during which the Government and defense counsel negotiated the scope of its Jencks searches. These searches were made through extensive

databases of numerous tangentially related investigations and actual statements of potential witnesses. The government provided the search terms for limiting Jencks Act collection with every discovery log produced to the Defendant for all 82 production logs to date. Defendant never questioned the search terms or sought to broaden the scope of Jencks Statements. Yet, without explanation, he claims that every disclosure of a report—regardless of content—is a Jencks Act violation.

The Government's production on April 7 complied with and went beyond its discovery obligation. The Government in this case has embraced its obligation to produce Jencks Act, *Brady*, and *Giglio* information.[2] The materials in the April 7, 2026 production that Defendant takes issue with fall into four categories: 1) information that was publicly available, 2) reports of recent interviews that were produced as they were created; 3) materials that recently came into the Government's possession; and 4) information that falls outside the Government's discovery obligations but was produced for Defendant's convenience.

As to the first category, Defendant complains of certain disclosures that were publicly available or already produced. Defendant points to a separate government case team's motion for reduction of sentence for Willie McNeal. This motion was already available to Defendant–It was docketed publicly on October 1, 2025, in Mr. McNeal's case. *United States v. McNeal*, No. 8:19-cr-146-MSS-AEP, DE 219 (M.D. Fla). This three-page motion is not a Jencks Act statement, and disclosure was made in advance of his testimony. No discovery violation occurred with regard to it.

---

[2] Defendant also complains about a delayed notice of the Government's March 27 production. However, the system by which the Government produces materials automatically notifies Defendant when materials are made available. Further, Defendant has suffered no prejudice as it admits to becoming aware of the materials shortly after they were produced.

Defendant appears to complain that the Government produced transcripts of expert testimony from unrelated cases. All the transcripts are publicly available to the Defendant on Pacer. The transcripts also do not fall within the Jencks Act because they do not regard the subject matter of this case. Although not required by Rule 16 or another discovery obligation, these transcripts were provided as a courtesy to defense.

As to the second category, Defendant complains of a number of interview reports created during trial preparation for this trial in 2026. The interview reports were produced shortly after they were made. The Government cannot disclose something before it exists. Further, the interview reports largely contain only a record of meeting with no substantive information. For instance, a March 25, 2026 reports of interview of Toni De Lanoy notes that "The purpose of this meeting was for trial preparation. No New information was provided and therefore no notes were taken." [HEALTHSPLASH-00000085495].

These are clearly not Jencks Act statements. Reports of interview are the Jencks Act statements of the agent, not the individual whose interview is being summarized, unless the report is signed by or adopted by the witness. *See United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003) (citing *United States v. Delgado*, 56 F.3d 1357, 1364 (11th Cir. 1995)).[3] None of these reports were signed or adopted by the witness. Defendant has identified no *Brady* or *Giglio* in these reports. No discovery violation has occurred. Indeed, this is evidence instead of the Government's efforts to timely and consistently provide information to assist the defense.

As to the third category, Defendant complains about the production of four screenshots of text messages from 2017-2018, but the Government only received those messages from the witness

---

[3]  Defendant relies on *Jordan* to incorrectly claim he was prejudiced, but the case instead supports the Government's position. *Jordan* makes clear that interview reports are almost never Jencks Act statements of the witness interviewed. *See id*. at 1255.

during a witness preparation meeting on April 14, 2026. The Government produced these text messages the very day it received them. *See* April 14, 2026, Interview Report attached as Ex. A. There can be no question that this was a timely disclosure.

Defendant also appears to complain of business records certifications that the Government just received from records custodians for documents the Government intends to introduce at trial. The Government sought these certifications after the Defendant withdrew his stipulation as the authenticity of records upon which the Government had relied at Defendant's previous trial. Defendant now uses his very withdrawal from the stipulation as a reason to complain about discovery. This is not a discovery violation. Once again, the Government cannot produce something before it exists, and the Government produced these business records certifications as soon as the Government received them.

As to the fourth and final category, although beyond its discovery obligations, the Government ran searches on multiple occasions—both before the first trial and before this trial—through law enforcement databases to identify reports written by law enforcement that summarize interviews of a potential witness. While running such a search again recently out of an abundance of caution to make sure nothing was recently uploaded, additional reports were identified. The Government produced these newly identified reports out of an abundance of caution as soon as they were identified.

Defendant has not identified a single document within this set that contains a Jencks Act statement that the Government was obligated to produce. This is unsurprising as the reports produced do not fall within the Jencks Act unless the report is signed by or adopted by a testifying witness. *See Jordan*, 316 F.3d at 1255 (citing *Delgado*, 56 F.3d at 1364). None of these reports were signed or adopted by a testifying witness.

Further, to fall within the Jencks Act, the statement must be regarding the subject matter of their testimony. These reports do not regard the subject matter of the potential witnesses' testimony. In contrast to the trial preparation reports that were produced, the interview reports were conducted by other teams of attorneys and agents about the subject of their separate investigations. For example, all seven reports of Dr. Robert Hoover about which Defendant complains relate to other investigations, and some are mundane discussions of scheduling or availability.  For example, an August 24, 2023, interview report noted simply that, "[d]uring the meeting, Dr Sunil Lalla, Medical Director for Michigan area within CGS Administrators, indicated he was not likely available during the first week of October 2023.  Dr. Robert Hoover was also not available in October.  Dr. Hoover indicated there were three other Medical Directors with Noridian who could potentially testify if they were available." [HEALTHSPLASH-0000085522]. The May 15, 2023, interview of Keaton Langston involved an unrelated civil matter. [*See* HEALTHSPLASH-0000085523-32]. The Pamela Edwin report of interview dated March 18, 2024, was about a separate investigation and was created by state law enforcement, the Texas Medicaid Fraud Control Unit. The single-page March 11, 2025, report of interview of Michael Petron is from an unrelated investigation that disclosed his company's compensation related to that other matter. [HEALTHSPLASH-0000085576]. The two reports of interview of Chintan Anjaria produced recently were regarding a telemedicine company not related to this case.

None of these documents are Jencks Act statements of testifying witnesses, and all were produced in discovery as a courtesy. In the 225 pages of reports[4] identified by Defendant produced on April 7, 2026, none include any mention of Defendant. Defendant has not, and cannot, identified

---

[4]     Most of the 225 pages stem from a single report, an August 21, 2023, interview with Mindy Breitman regarding a separate investigation led by a U.S. Attorney's Office. [See HEALTHSPLASH-0000085380-85484]. The report includes text messages between Breitman and another individual with nothing to do with this case and constitutes 108 pages of the 225 pages.

a single statement of a testifying witness about the anticipated subject matter of their testimony that was not timely produced.

Defendant also fails to identify any *Brady* or *Giglio* in the disclosures. This is unsurprising as the reports are from separate investigations and focus on those investigations. Because no violation of *Brady*, *Giglio*, or the Jencks Act has occurred, and Defendant has received timely and comprehensive discovery, Defendant's motion must be denied.

### The Defendant Fails to Identify Any Substantial Prejudice from the Information Disclosed and Is Entitled to No Remedy

Even if Defendant could identify a discovery violation (he cannot), Defendant fails to establish any prejudice aside from having to review additional pages of documents, many of which were not available to the Government until shortly before they were produced in the weeks before trial. Failing to allege substantial prejudice is fatal to an attempt to seek remedy. *See Rivera*, 944 F.2d at 1566. Defendant must allege that his defense is somehow surprised in a way that makes him unable to prepare for trial. *See id.* Defendant fails to make any such showing. The Eleventh Circuit has made clear that disclosure of even highly probative information right after a witness's direct testimony is not a violation if the defense at some point has the opportunity to cross-examine the witness on it. *See United States v. McAnalley*, 535 F. App'x 809, 814 (11th Cir. 2013). Here, the reports were disclosed two weeks before trial began.

Defendant relies on a single case, *Jordan*, 316 F.3d 1215, to argue that disclosure weeks before trial of interview reports makes cross-preparation impossible. *Jordan* does not support Defendant's position. The Eleventh Circuit in *Jordan* found no violation. There, grand jury transcripts of the witness—Jencks Act statements—were produced after the witnesses' direct testimony but before cross-examination ended. Defense counsel alleged there that the transcripts included exculpatory evidence and sought to dismiss the indictment. Defense counsel also alleged

9

that the witness had misled the grand jury and had hidden facts. The district court granted the motion to dismiss the indictment. The Eleventh Circuit reversed this decision as a misapplication of the Jencks Act, *Brady*, and *Giglio*, and found that the disclosures of the grand jury transcripts were timely made during trial even though the disclosures of grand jury transcripts were made *during* cross-examination. *Id.* at 1256. Here, these materials have been disclosed even earlier—weeks before trial will begin.

Defendant states no basis for prejudice and is entitled to no remedy, especially the extraordinary remedy of exclusion of ten witnesses.

## **CONCLUSION**

Based on the foregoing, the Government respectfully requests that Defendant's Motion be denied with prejudice.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

LORINDA LARYEA
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

By:     */s/ Darren C. Halverson*
DARREN C. HALVERSON
Florida Special Bar No. A5503082
REGINALD CUYLER JR.
Florida Bar No. 0114062
Trial Attorneys
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 880-2233
Tel: (202) 748-3024
Email: Darren.Halverson@usdoj.gov
Email: Reginald.Cuyler.Jr@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 19, 2026 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record.

*/s/ Darren C. Halverson*
Darren C. Halverson
Trial Attorney