UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:23-CR-20271

UNITED STATES OF AMERICA, Miami, Florida

Plaintiff, May 11, 2026

vs. 1:19 p.m. - 7:04 p.m.

BRETT BLACKMAN, Afternoon Session

Defendant. Pages 1 to 227

---

JURY TRIAL DAY 13
BEFORE THE HONORABLE DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF: DARREN C. HALVERSON, ESQ.
U.S. Department of Justice
Bond Building
8th Floor
1400 New York Avenue, N.W.
Washington, DC 20005
darren.halverson@usdoj.gov

REGINALD CUYLER, JR., ESQ.
DOJ-CRM
1400 New York Avenue, N.W.
Washington, DC 20005
reginald.cuyler.jr@usdoj.gov

APPEARANCES CONTINUED:

FOR THE DEFENDANT:

JENNY WILSON, ESQ.
Klugh Wilson
40 N.W. Third Street
Penthouse 1
Miami, Florida 33128
jw.klughlaw@gmail.com

JULIE ERIN HOLT, ESQ.
Julie Holt Law PLLC
40 N.W. Third Street
Penthouse 1
Miami, Florida 33128
julie@julieholtlaw.com

REPORTED BY:

GINA RODRIGUEZ, RPR, CRR, CRC
Federal Official Court Reporter
299 East Broward Boulevard
Fort Lauderdale, Florida 33301
gina_rodriguez@flsd.uscourts.gov

# INDEX


| Examination | | Page |
|---|---|---|
| MICHAEL PETRON | | |
| Direct (continued) | By Mr. Halverson | 4 |
| Cross | By Ms. Holt | 15 |
| Redirect | By Mr. Halverson | 93 |
| Recross | By Ms. Holt | 96 |
| Government rests | | 100 |
| Rule 29 | | 100 |
| Defense rests | | 126 |
| Charge conference | | 130 |


## GOVERNMENT EXHIBITS MARKED IN EVIDENCE


| | Page |
|---|---|
| Exhibit 123 | 5 |
| Exhibit 110 | 6 |
| Exhibit 111 | 8 |
| Exhibit 126 | 9 |
| Exhibit 127 | 10 |
| Exhibit 137A | 12 |
| Exhibit 138 | 13 |
| Exhibit 159 | 88 |

(Jury entered at 1:19 p.m.)

THE COURT: Welcome back, everybody. Please be seated. I hope lunch was good. We're going to continue with our direct examination.

Mr. Halverson.

MR. HALVERSON: Thank you, Your Honor.

CONTINUED DIRECT EXAMINATION
OF MICHAEL PETRON

BY MR. HALVERSON:

Q. Good afternoon, Mr. Petron. Just a few more exhibits I wanted to ask you about.

MR. HALVERSON: Let's show the witness what has been marked for identification as Government's Exhibit 123.

BY MR. HALVERSON:

Q. And can you just briefly explain what this chart is summarizing?

A. So this chart summarizes the top ten dates of service, and it shows the number of orthosis devices billed on those dates, the number of referring providers that wrote the scripts for those braces, and the average number of orthoses billed by referring provider.

Q. And what is the underlying source of information here?

A. This is the matched claims data.

MR. HALVERSON: I move to admit 123.

THE COURT: Yes.

Ms. Holt?

MS. HOLT: Prior objections, Judge.

THE COURT: Yep, overruled. It's admitted.

(Received in evidence as Government's Exhibit 123.)

MR. HALVERSON: Can we publish that for the jury, please.

BY MR. HALVERSON:

Q. And can you just walk the jury through this summary.

A. Sure. So I took the matched data, and I calculated the number orthosis devices on each day, so for each service date, and I'm merely providing you the top ten. So just by way of an example, the first service date, January 28, 2019, there were 6,134 devices. Those devices were referred by 284 providers. And so that's an average of about 21 and a half devices per provider on that day.

Q. And those referring providers, who are we talking about there?

A. The doctors writing the scripts.

Q. All right. Thank you.

MR. HALVERSON: We can take that down, Ms. Braga.

Can we show the witness what has been marked as Government's Exhibit 110.

BY MR. HALVERSON:

Q. Can you explain what this summarizes?

A. So this is a summary for an undercover beneficiary,

Vernon Wheeler, and I'm taking the doctor's orders on one hand and --

MS. HOLT: Objection, lack of personal knowledge.

THE COURT: It's overruled.

A. I am comparing the doctor's orders versus the underlying Medicare claim.

MR. HALVERSON: I move to admit 110.

MS. HOLT: The same objection.

THE COURT: Yep, overruled.

MR. HALVERSON: Can we publish that for the jury, please, Ms. Braga.

THE COURT: Sorry, 110 is received.

(Received in evidence as Government's Exhibit 110.)

BY MR. HALVERSON:

Q. Can you just walk the jury through this?

A. Sure. So here at the top we've seen a number of these related to certain beneficiaries. This one is a doctor by the name of DeCorso in New Jersey signed on March 8th, 2019. The patient in New Jersey, the telemedicine organization was Sunrise Medical in Florida. That is the doctor's order.

And then on the bottom, you have the Medicare claims. Here, the date of service was March 11th, three days later. The DME supplier was Myrtle DME NYC Inc. The same referring provider, and we have four different HCPCS codes for a total billed of 3700 and a total paid of 1800.

Q. Thank you.

MR. HALVERSON: Can we show --

THE COURT: Mr. Petron --

I'm sorry, Mr. Halverson.

You used the phrase "undercover beneficiary," how do you know that?

THE WITNESS: I have looked at some of the testimony in the case, Your Honor and there are --

MS. HOLT: Objection, Judge, to the prior --

THE COURT: No, that's overruled. He can state his underlying assumptions.

You can finish your answer.

THE WITNESS: And there's been prior proceedings about this case too.

THE COURT: Okay.

You can go on.

BY MR. HALVERSON:

Q. Showing the witness what has been marked for identification as Government's Exhibit 111.

Can you describe generally what's in this exhibit?

A. So this is the same setup for a second undercover beneficiary, Kevin Green.

Q. And what's this based on?

A. This is based upon the doctor's orders and the underlying Medicare data.

MR. HALVERSON: Move to admit 111.

THE COURT: The same objections?

MS. HOLT: Yes, Judge.

THE COURT: They're overruled.

111 is received.

(Received in evidence as Government's Exhibit 111.)

BY MR. HALVERSON:

Q. Can you walk the jury through this exhibit?

A. Sure. We're looking at the same --

Q. I'm sorry.

MR. HALVERSON: Could we publish that for the jury, please?

A. So here we're looking at the same information for the second undercover beneficiary, Dr. DeCorso in New Jersey on March 5th, 2019. Telemedicine organization is Sunrise Medical. That's on the doctor's order. And then on the bottom, the Medicare claims data, date of service March 8th, 2019, Myrtle DME, same doctor, Dr. DeCorso. And then we have three orthosis devices for a total bill of 2900 and a total paid of 1400.

BY MR. HALVERSON:

Q. Thank you.

MR. HALVERSON: Now we can take that down, please, Ms. Braga.

BY MR. HALVERSON:
Q. Mr. Petron, you also testified that you looked at locations of providers; is that right?
A. I did.
MR. HALVERSON: Let's show the witness what's been marked as Government's Exhibit 126, please.
BY MR. HALVERSON:
Q. Can you describe, just generally, what this is summarizing?
A. Generally, this is a comparison between the beneficiary, the state of the beneficiary, where they live, against the state of where the DME was provided.
Q. And what's the source of information for this?
A. This is all of the underlying Medicare data.
MR. HALVERSON: Move to admit 126.
THE COURT: The same objection?
MS. HOLT: The same objection.
THE COURT: Overruled.
126 is received.
(Received in evidence as Government's Exhibit 126.)
MR. HALVERSON: Can we publish that for the jury, please?
BY MR. HALVERSON:
Q. Can you describe what this is summarizing now?
A. So here I am looking at all 346,000 beneficiaries, and I am determining if the DME provider for that beneficiary was in a

different state than the beneficiary. And so in 94 percent of the time, it was.
Q. It was in a different state?
A. It was in a different state.
MR. HALVERSON: Let's show the witness what has been marked for ID as 127.
BY MR. HALVERSON:
Q. And just generally, what is this summarizing?
A. So this is a similar comparison but instead of the DME company, I am looking at the referring doctor. So is the referring doctor in the same state as the beneficiary or not.
Q. And what's the underlying source of information?
A. The underlying matched Medicare claims data.
MR. HALVERSON: Move to admit 127.
THE COURT: The same objections?
MS. HOLT: Yes, Judge.
THE COURT: They're overruled.
127 is received.
(Received in evidence as Government's Exhibit 127.)
MR. HALVERSON: Can we publish that for the jury, please?
A. So here we have 47 percent of the time the beneficiary and the referring provider are in different states.
BY MR. HALVERSON:
Q. And that was for a total of how many beneficiaries?

A. Nearly 347,000.
Q. Did you also review data related to a telemedicine company, Advantage Choice Care?
A. I did.
MR. HALVERSON: Let's show the witness what's been marked as Government's Exhibit 137A.
BY MR. HALVERSON:
Q. Do you recognize this exhibit?
A. I do.
Q. And what is it generally?
A. So generally speaking, this is Advantage Choice Care's encounters, patient encounters by month.
Q. And when you prepared this exhibit, was it slightly different than the version you're seeing now?
A. There appears to be a box on the bottom.
Q. A redaction there?
A. Okay. Yes.
Q. I just wanted to make you aware of that.
A. Okay, yeah. Sorry, it took me a while. I'm just looking at . . .
Q. Okay. And so, what is this underlying -- what is the underlying information for this exhibit?
A. This is a combination of the HealthSplash returns and the Advantage Choice data.
MR. HALVERSON: Move to admit Government's Exhibit

137A.

THE COURT: The same objections?

MS. HOLT: Yes. Yes, Judge.

THE COURT: 137A is received. The objections are overruled.

(Received in evidence as Government's Exhibit 137A.)

MR. HALVERSON: Can we publish that for the jury, please?

BY MR. HALVERSON:

Q. Can you summarize this exhibit?

A. So this a timeline by month of the Advantage Choice Care patient encounters, and so I'm just giving you the monthly volume of those 35,000 encounters from approximately March 2017 through November 2018.

Q. And what's the highest month on this chart?

A. March 2018.

Q. Approximately how many patient encounters happened in March of 2018?

A. Let's call it 3100.

Q. And this is based -- what is a patient encounter as far as you understand it?

A. So I believe I defined the patient encounter, and it is based upon the unique patient and date of service combinations.

Q. And that was in what set of data?

A. In the Medicare data.

Q. Well, if you look at source, it says, "HealthSplash subpoena encounter files"?
A. Oh, yes. Sorry. In what -- I guess I don't know what the blocked out white is. I don't recall what's in there.
Q. Well, what's remaining here, what's the source of the patient encounter data?
A. So the HealthSplash subpoena return encounter files are 411 through 436.
Q. Okay.
MR. HALVERSON: Let's show the witness what has been marked as Government's Exhibit 138.
BY MR. HALVERSON:
Q. And what is this slide summarizing?
A. So this looks at that same Advantage Choice data, and it looks a the ten busiest patient encounter days.
Q. And so the underlying source is what?
A. The HealthSplash return encounter files.
MR. HALVERSON: Move to admit Government Exhibit 138.
THE COURT: Same objections?
MS. HOLT: Yes, Judge.
THE COURT: They're overruled. 138 is received.
(Received in evidence as Government's Exhibit 138.)
MR. HALVERSON: Move to -- sorry.
Move to publish that for the jury.

BY MR. HALVERSON:
Q. And what does this show?
A. So this is showing an encounter date by provider, and the ten busiest days. So by way of example, you have the first row here, December 28th, 2017, for provider Rivera, and there were 89 separate patient encounters on that day, and that is the most voluminous day in this return of information.
Q. And this is limited to just the Advantage Choice Care data?
A. Correct.
Q. And do you see under Number 6 -- or alongside Number 6, who is the provider there?
A. The first one in the tie is Jean Wilson.
Q. And what is the date of that day?
A. December 27th, 2017.
Q. And how many did she do on that day?
A. 57.
Q. And do you see at the bottom there, who is that provider, the last row?
A. Yeah, the last one is, again, Jean Wilson, this time 47.
Q. And how many -- and what day is that?
A. January 25th, 2018.
MR. HALVERSON: No further question, Your Honor.
THE COURT: Okay.
Cross-examination, Ms. Holt.

CROSS-EXAMINATION

BY MS. HOLT:

Q. Mr. Petron, you said on direct that you had made, what was it, 270, approximately 270,000 on this case?

A. I think my firm has billed approximately 275,000.

Q. Okay. And in the last six to seven years, your firm has made about 40 million from the federal government, right?

A. I don't know the exact numbers. I know there are disclosures about that so I trust whatever is in that disclosure.

Q. Would looking at your recent testimony for March -- excuse me, from April refresh your memory as to --

A. I'm sure I could, yes.

MS. HOLT: May I approach, Judge?

THE COURT: Yes.

Okay. What was in front of him, Ms. Holt?

MS. HOLT: H152, Judge.

THE COURT: H152 was placed before the witness and then retrieved by counsel.

BY MS. HOLT:

Q. Does that refresh your memory?

A. It does.

Q. So would it be accurate to say in the last six or seven years your firm has made about 40 million from the federal government?

A. I am an accountant, so I guess I'll just small-quibble with the word "made." I'd say that is what we billed the Government.
Q. That is what you billed the Government.
A. Yes.
Q. Okay.
And you testified a few weeks ago in April for the federal government, right?
A. I did.
Q. And you testified in November for the federal government?
A. I don't recall specifically, but it's definitely possible.
Q. In United States versus He, does that ring a bell?
A. It does.
Q. And you testified for the federal government, right?
A. I did.
Q. And in September, you testified for the Government?
A. You will have to remind me the case. I testify for the Government a lot, so . . .
Q. Okay. United States versus Zaglin.
A. I did. Yes.
Q. Okay.
And in June, you testified for the Government, United States versus Valle Bosa?
A. Say the name again.
Q. Valle Bosa.

A. I did, yes.
Q. And in March, you testified for the Government, United States versus Anand.
A. Correct.
Q. Okay.
Now, as you say, you testify for the federal government a lot.
A. I do. They are my largest client.
Q. Okay. So let's look at -- I want to jump into some of the claims data that the Government walked you through.
MS. HOLT: Cynthia, if we could pull up Government Exhibit 117, please.
BY MS. HOLT:
Q. Do you recall the Government asking you about this?
A. I do.
Q. And this is the -- the ones at the top, those are the top ten ordered from the data that you reviewed, right?
A. That's correct.
Q. And you see there you have 68 other codes?
A. I see that, yes.
Q. So total there were 78 codes that you looked at?
A. That's correct.
Q. That you saw, right?
A. Correct.
Q. Okay. Thank you.

MS. HOLT: You can take that down.
BY MS. HOLT:
Q. Now, connected, I want to show you Government's Exhibit 101 -- or it was a demonstrative of 101.
MS. HOLT: If we could pull that up. And we can go to Page 3, I think.
Oh, that one. Okay.
BY MS. HOLT:
Q. Do you see this -- this is a HCPCS code, right, the L0472.
A. I believe so, yes.
Q. Okay. Now, that HCPCS code was not in the data that you looked at, at all, right?
A. I'm sorry. I don't recall.
Q. It wasn't in your top ten list, right?
A. I don't remember a spinal device being in my top ten. I just don't remember if it was in the other 68.
Q. Okay. Do you have anything with you today that could help you figure that out?
A. I have access to all the data, so, I mean, given time, yes, I could figure that out.
Q. Okay. And you don't recall if this was in any of the spreadsheets that you reviewed?
A. I reviewed hundreds of thousands of rows of data. I can't recall them all, no.
Q. Okay. All right.

MS. HOLT: You can take that down. Thank you.

BY MS. HOLT:

Q. So let's talk about what you reviewed, because it wasn't totally clear.

So you did two separate analyses in this case, right?

A. I did a lot of analyses in this case, so . . .

Q. Okay. Let's put aside the financial for a minute. So we're not talking about bank records; we're talking about patient records and Medicare claims data.

A. Okay.

Q. And with respect to those, the Government asked you to do two separate things with them, right?

A. Again, we've looked at innumerable charts, so I did a lot of analysis that made it onto our chart and some that did not. So if you just want to give me a description, I don't want to -- I just don't know when you mean two, I'm not sure what you are referring to.

Q. Okay. So let's back up and make it a little more simple.

So you looked at -- well, one of the data sets that you looked at was what you called HealthSplash subpoena data returns, right?

A. I did.

Q. Okay. And that consisted of patient records.

A. It had -- yes, it had files.

Q. Okay.

A. Correct.
Q. Patient record meaning a PDF file?
A. A PDF file.
Q. Right. And that was a medical record for a patient.
A. Correct.
Q. And that medical record could or could not include a doctor's order?
A. That's correct, it could and it could not.
Q. Meaning the patient record could include an order for a brace or it could not include an order for a brace.
A. I agree.
Q. All right. That is not -- so when we're talking about those patient records, that is not an Excel spreadsheet, right?
A. Those records were not Excel spreadsheets.
Q. Okay. That's, again, the medical record that has the patient information, the information, the doctor input, and potentially an order for a brace?
A. It contained those things, most of the time.
Q. Now, so that -- we will call that the patient records, okay?
A. Sure.
Q. And then you looked at a second set of data, and that's from, as you said, HHS, an HHS analyst, right?
A. Correct.
Q. And that was Robin Sheehan?

21

A. Correct.
Q. Okay. And so that data is the Medicare claims data, right?
A. Correct.
Q. And so when you testified on direct about matched Medicare claims data, you are referring to these spreadsheets from Robin Sheehan?
A. That's correct.
Q. All right. And you didn't make those spreadsheets, right?
A. No, no, she made these spreadsheets.
Q. And then you used them.
A. Correct.
Q. And those spreadsheets are Government Exhibits 437 through 441.
A. I will trust -- I don't remember what government exhibits they are.
Q. We're going to look at them when you put them as a source in your charts, okay?
So just to clarify before we get into the details, when we're talking about this first, the PDF patient records, that is not claims data, right?
A. It is not.
Q. Okay. That, from looking at that patient record, you do not know whether any claim for that patient was submitted to Medicare.
A. I did undertake an exercise where I did look for claims

that -- in the Medicare data that I could match to those.
Q. We're going to get to that.
The first question is, from these patient record PDF files alone, you could not tell whether a claim was made to Medicare.
A. There was definitely notation on the patient files that delineated Medicare from non-Medicare patients, but I -- I didn't have a -- in that file, I didn't have a claim form or anything.
Q. Correct. That's my question. So the patient file that may or may not contain an order for a brace, that does not include claim information.
A. Yeah, correct, I would agree with that. I mean, it serves as the basis for claim information, but the claim information is kept in a different source.
Q. Correct. So the patient record does not tell you whether or not there was a claim made to Medicare for that patient.
A. There were certain indications that claims were made from those patient files, but claim information itself is not contained within the patient file.
Q. But the record itself was just the medical record and an order for a brace or no order for a brace, right?
A. No, it would contain notations to Medicare in there. I definitely --
Q. Like what?

A. There were absolutely notations to this is a Medicare beneficiary or this is their Medicaid or HICN. It wasn't --
Q. Okay, so it included a Medicare ID number?
A. Yeah, it included some indication to me that it was a Medicare patient.
Q. Right. Okay, so it included some indication that it was a Medicare patient, right?
A. Correct.
Q. It did not include information about whether a claim was made to Medicare for a brace.
A. No, that would be kept in a different data set.
Q. Okay. So just by looking at these PDF patient records, you could not see whether there was an actual claim made to Medicare?
A. I could not. All I could see would be whether or not there was an indication on the file that it was a Medicare patient, and so I captured that.
Q. Okay. Whether it was a Medicare patient?
A. That's correct.
Q. Okay. So let's talk about the statistical analyses that you did. So let's talk about, first, the one that the Government asked you about, and that's where you got to that 1 billion number you were talking about, right?
A. Correct.
Q. So to get there, you used the patient records, right?

A. Correct.
Q. So that means these PDFs.
A. Correct, I used the patient files.
Q. And these are patient files that were subpoenaed from HealthSplash.
A. That's my understanding.
Q. And you got about 713,000 of them?
A. Roughly.
Q. Okay.
So as you said, you couldn't look through every single one of those?
A. I couldn't, no.
Q. All right. But you also had a team, right?
A. My team couldn't look through them all either.
Q. Okay. But you had a team?
A. Oh, absolutely.
Q. So you decided that you would pick a sample size of 420.
A. I did.
Q. Now, 420 is about .05 percent of that 713,000 files?
A. I'm sorry.
Q. Go ahead.
A. I've just learned, no disrespect intended, not to trust lawyer math. It's .005.
Q. .005.
A. Right. When you said .05, it sounded too big to me,

so . . .
Q. Okay. So .005 percent?
A. Correct.
Q. Okay. So that's less than 1 percent.
A. It is.
Q. Less than even half a percent?
A. Correct.
Q. All right. So once you take those 420 files, you and your team actually look through every single one of those files to see if there is an order?
A. Correct.
Q. All right. So these 420, you did review individually?
A. Correct.
Q. All right.
Now, if you found an order, going back to my prior question, there was not claim data connected to that order, right?
A. No, not in the patient file there was an order.
Q. Right. Because we're looking at just what came from HealthSplash.
A. Correct. We're just looking at the PDF returns, yes.
Q. So then what you did is you tacked on an average claim amount for that particular brace.
A. I guess I wouldn't say I tacked it on; I would say I took the year in which that order was written and then I took the

average billed and the average paid amount for that particular device in that particular year and multiplied that by the number of years.
Q. Well, you connect -- so you took an average for this particular code, right?
A. I took yearly averages for every code and used the yearly averages as the basis for my calculation.
Q. And you connected it to that particular order.
A. I'm not sure if the word "connect" means anything, but I took the average billed and paid and the year for each of the orthosis codes, and I multiplied it by the number of units on the order. That's what I did. I just did simple math.
Q. Okay. So if you have an L0650 brace, you took an average claim amount for that particular brace.
A. For the year in which it was written.
Q. For the year?
A. Yes.
Q. Okay. You're not using the actual amount for any potential claim for that specific entry -- or it's not an entry. For that particular order that you're looking at.
A. I took the average amount that I saw in the matched claims data set and I used that average billed and paid by year and multiplied it by the units, whatever the units were.
Q. So you're using an average, not an actual claim amount?
A. I am using the average of the actual claim amounts.

27

Q. Right, but there's not an actual claim connected to these orders because we're just talking right now about the patient records, right?
A. Well, I'm talking about using an average from the claims records.
Q. Right. The average is from the claim records, right?
A. Correct.
Q. Okay. Because you don't have -- when you're doing this analysis that the Government asked you about where you get to this 1 billion, you are just using the records, these patient records, right?
A. And the average billed and paid from the claims data --
Q. Okay.
A. -- to multiply by those units.
Q. An average. Not an actual claim data for this record. That's why you have to use an average, right? Because you don't have the claim data from this particular record.
A. I used an average. I did not attempt to go back and match to the actual claim data.
Q. Okay.
So in this analysis where you got to this number of 1 billion, let's put aside the average amount for a minute.
You were not looking at whether there were actual claims made for any of these patient records.
A. Outside of using, getting the average, I was merely looking

at the patient files.

Q. Okay. So, correct, yes, or no, when you get to this billion, you're looking -- you're not taking into account whether there was an actual claim made for these records.

A. Correct. Maybe I think I've said it three or four times. I will say it again. I'm sorry if I'm not getting it.

I just took the patient file on my right hand and the number of units for a particular device and multiplied it by the average billed and paid amount from the claims data on an overall basis by year. This one is a patient file, this is the claims data, and then I just multiplied them.

Q. You were not looking at whether -- okay. You have a claim, an order from the HealthSplash subpoena records, right?

A. Correct.

Q. Let's take a specific example.

A. Correct.

Q. For a specific brace.

A. Correct.

Q. When you do this calculation, you are not taking into account whether there was an actual claim made for that brace. You're using an average that you're multiplying, right?

A. I would agree with that.

Q. Okay.

Now, I want to ask you one thing.

The Government talked to you about this, dividing them

up into page numbers. Do you recall that?
A. I do.
Q. I'm sorry?
A. I do.
Q. Okay.
And they showed you a chart of how many -- of how many files had certain numbers of pages, right?
A. Correct.
Q. And then what you did was you took, in your 420 sample size, you took a certain number from each of those sort of buckets of page numbers, right?
A. Correct.
Q. And as you said, you've reviewed each of those 420 files to see how many, if any, orders were in those files themselves?
A. Correct.
Q. All right. And for that, the biggest category, right, that you called Stratum 6 that had the most pages, none of those files that you had in your 420 sample had any orders in it, right?
A. I don't recall.
Q. Well, you wrote a report in this case, right?
A. I did.
Q. And as part of that report, you attached exhibits.
A. I am sure I did.
Q. Do you not recall?

A. Oh, no, I recall. Yeah.
Q. Okay. And one of those exhibits was specifically that, how many orders were in each of those 420 files?
A. Okay.
Q. Do you -- is that correct?
A. That report I wrote a long time ago. I am sure that is information I would have put in the report, yes.
Q. But you don't recall your report, specifically?
A. My report is a little dense, so, no, I don't recall the exhibits of everything I have put into a report.
Q. You didn't review that prior to your testimony today?
A. I actually did not, no.
Q. Do you know you're testifying in a federal criminal trial, right?
A. I do.
Q. Okay.
Would you like to look at your Exhibit 9 to refresh your memory?
A. Sure.
MS. HOLT: This will be H153.
THE COURT: H153, okay, before the witness.
MS. HOLT: May I approach, Judge?
THE COURT: Yes, of course.
A. Okay. Okay. I see it.

BY MS. HOLT:
Q. No, take your time reviewing it and then I will grab it before I ask the question.
THE COURT: When you're done reviewing it to yourself, sir, sufficiently, you can give it back to Ms. Holt.
THE WITNESS: Okay. Let me just then take another -- I just want to make sure I see the rest of -- it's a lot of pages.
Okay.
BY MS. HOLT:
Q. Does that refresh your memory?
A. It does.
Q. Okay. So for that biggest bucket, the sixth stratum you called it, none of those big files contained any orders for braces, correct?
A. I would say it's a small stratum from an overall viewpoint and none of those contained any braces.
Q. Okay. So the question is just, none of those contained any orders for braces?
A. Yeah. I don't dispute that.
Q. Okay.
A. I was saying that the biggest stratum has a connotation to me, and I don't believe it's the biggest stratum.
Q. I can be more specific, but I think we're agreeing. By biggest, I meant with the most number of pages.

32

A. Okay. And biggest to me means number of sample units, so --
Q. Right. So now I'm qualifying my question which was, that group that had the most number of pages, none of those that you reviewed in your 420 sample size had any orders in them.
A. Correct, none of those.
Q. All right. So now I want to ask you about what you alluded to briefly and what the Government didn't ask you about, because you also did a second analysis with what we call the Medicare claims data, right?
A. I looked at the Medicare claims data.
Q. All right. Now, again, these are the spreadsheets from Robin Sheehan.
A. Correct.
Q. The spreadsheets you did not make.
A. I did not make them.
Q. You did not do any analysis in them.
A. I analyzed them.
Q. To create them?
A. No, I did not create them.
Q. Okay. So this set of data, those are actual claims made to Medicare, right?
A. That's correct.
Q. Now, one thing that you did with these is you actually took those claims and you tried to match them up with this -- these

patient records that you received from the HealthSplash subpoena, right?
A. I believe we did some type of analysis around that, yes.
Q. Do you not recall?
A. I frankly do not.
Q. Again, you wrote a report in this case, right?
A. I did.
Q. Would looking at your report refresh your memory as to whether you did that?
A. Sure.
MS. HOLT: This will be H154, Judge.
May I approach?
THE COURT: Yes.
BY MS. HOLT:
Q. I will refer you to Page 5, Paragraph 9, but feel free to review as needed.
A. Okay.
Q. All right.
Does that refresh your memory?
A. It does, yeah, I recall that I had done something like this, yes.
Q. Okay. So you had taken this Medicare claims data from Robin Sheehan's spreadsheets, and you had tried to match a sample size of that up with the actual patient records from HealthSplash, right?

A. That's right.
Q. Okay.
So for this sample size -- you can feel free to review or just let me know when you're done.
A. Yeah, let me just read about this one for a second.
Q. Of course.
A. Okay.
Q. Does that refresh your memory as to this, this specific analysis?
A. It does.
Q. All right. And the Government didn't ask you to review this part of it prior to your testimony?
A. Review -- I'm sorry, review?
Q. Review this specific analysis that we're talking about now.
A. We did not present on this specific analysis, no.
Q. Okay. So let's talk about it now.
For this you took sample size of 320 --
A. I did.
Q. -- right?
Feel free to take all the time you need to look at that.
THE COURT: And then you want him to put it aside for your questions, correct?
MS. HOLT: Yes, Judge.
THE WITNESS: Oh, I can't look at it while I'm

answering questions.

THE COURT: Correct. What you are going to do, sir, is if you need to refresh your recollection, you can read it, then you can let Ms. Holt know, and she'll ask you questions. And then if you run out of memory again, you tell her and then she will ask you the next question or she'll let you review it again as she sees fit. Okay?

THE WITNESS: Fair enough.

THE COURT: Ms. Holt.

BY MS. HOLT:

Q. If at any point you need to look at it, that's no problem, just say that, and you can do that.

A. Okay.

Q. No problem.

Okay. So you took a sample size of 320, right?

A. I did.

Q. And this sample size of 320, you're taking from the Medicare claims data itself?

A. I believe that's correct.

Q. And that's, again, the spreadsheets from Robin Sheehan?

A. That's right.

Q. Okay. So you know for these that there was an actual claim because it's the claims data from Medicare, right?

A. Correct, there was a claim.

Q. All right. And what you did was you took those 320

samples, and you tried to match them up with the patient records that you received through the HealthSplash subpoena.
A. That's correct, the 700,000 files.
Q. Exactly. And these 700,000, again, those were PDFs, right?
A. Correct.
Q. And they were then provided to you in a searchable format in a database.
A. I don't know if they were provided to me in searchable format. I did my best to create a searchable format because that was a problem with those files.
Q. One moment.
Okay. Well, in your report, you stated that you were provided access to a database which contained searchable document versions of it, right?
A. Again, I will have to look.
Q. Sure. And I will direct you to Footnote 23, if that's helpful, but, of course, feel free to review whatever you need.
A. Right, this is my memory. I was provided a database that I --
THE COURT: Don't read from it, sir.
THE WITNESS: Oh, I'm sorry.
THE COURT: Just let her know that you're done reviewing it, and she will ask you the next question.
THE WITNESS: Okay.
THE COURT: He's reviewed it, Ms. Holt.

THE WITNESS: Okay.

BY MS. HOLT:

Q. So you were provided access to a database that contained searchable document versions of the DMERx HIPAA subpoena returns, right?

A. I was, but not every file was searchable.

Q. You didn't put that in your report, did you?

A. Again, I don't -- I remember there being problems with the searching. That's what I remember.

Q. Did you put that in the report?

A. I'd have to read.

Q. Take your time. Let me know if you find where you put, "There was a problem with the searching."

A. Okay. I am refreshed now.

Q. Did you indicate in there that there was a problem with the searching?

A. There is indication that we had to come up with a search term in a particular way to try to capture the patient's name and identifying information, and that there was no foolproof way to do that.

Q. Okay. My question is, did you indicate anywhere in your report that there was a problem with your searching for this analysis?

MR. HALVERSON: Asked and answered.

THE COURT: Sustained.

BY MS. HOLT:
Q. Let's talk about what you just said. You had to create a search term, right?
A. Correct.
Q. Okay. If you're searching any document, you're going to need to create a search term, right?
A. Correct.
Q. And the search term you created consisted of the patient's first name, the last name, and the HCPCS code.
A. Can I look at the report?
Q. Of course.
A. It's -- oh, I can't read it.
It's a first name within five numerical places of a last name, and then HCPCS code I think appearing anywhere else.
Q. Okay. And you create -- you came up with the search term, right?
A. I did.
Q. Okay. Because you thought this was the best way to try and find whether there was a matching patient record for a Medicare claim.
A. I thought it was the most efficient way I could.
Q. Not the best way.
A. Absolutely not the best way.
Q. Why wouldn't you use the best way?
A. Because I don't have infinite resources and nor does

the Government.

Q. But you knew this was going to be for a federal criminal trial.

A. I can't get into government contracting with you, but there are budgets. And the best way is often not the most efficient way, and we are resources constrained.

Q. Okay. So then let's go with yours. So this was -- how far down the line of the best way?

A. I have no idea.

Q. But wouldn't you, as a professional, try and figure out the best possible way to identify whether someone in a Medicare claim had a record from HealthSplash?

A. I'd try to figure out the most efficient way I could do it, yes.

Q. All right. So we're just talking about efficiency, not accuracy, then.

A. In this particular situation, efficiency more than accuracy, because if it misses something, then it inures to the defendant's benefit. So I'm not trying to be overinclusive and find things that don't exist, but if I'm miss something, that's --

Q. You were tasked with trying to find whether there was a matching patient record in the HealthSplash data for a Medicare claim, right?

A. Correct.

Q. And the Government tasked you, the expert, to be as accurate as possible, right?
A. No. That was not the task.
Q. Okay. So does that apply to all of your analyses that you just talked about with the Government?
A. A lot of these analyses are mathematical calculations that are 100 percent accurate. We're talking about a sample with searching people's names and trying to match records where I tried to figure out the most efficient way to do it. That's what I attempted to do.
Q. Not the most accurate? Wouldn't you a say that's a problem in your line of work?
A. It is not. No.
Q. It's not a problem that a conclusion you come to is possibly not accurate?
A. Any accuracy, anything that's wrong with the analysis is because I'm not picking up something. I'm not identifying something that is incorrect. I am only identifying things that are correct.
Q. Okay --
A. So I'm --
Q. -- so the Government --
A. It's a difference between -- if I can finish.
It's a difference between type one and type two error. I'm trying to minimize one because to minimize the other would

be incredibly expensive and time-consuming and cost-prohibitive.
Q. How? To add maybe a middle name to the search, would that be too time-intensive and cost-effective -- not cost-effective enough?
A. A middle name to the search?
Q. So you searched by first name, last name, and HCPCS code, right?
A. Correct. In a particular sequence, yes.
Q. In a particular sequence.
A. Correct.
Q. So if the last name was within, would you say five --
A. I think it was five.
Q. -- locations of the first name?
A. Correct.
Q. All right. And then you added a specific HCPCS code?
A. Correct.
Q. So you were searching for, if it were me, Holt, comma, Julie with a specific HCPCS code.
A. You're highlighting part of my problem. I actually think I was searching for Julie first and Holt second.
Q. Okay. Let's get to what you found.
For these 320 claims, right, you have 320 Medicare claims, and you searched for every single one of those with the first name, last name, and HCPCS code within the HealthSplash

42

patient records, right?
A. Correct.
Q. And of those 320, you only found 112 that matched, right?
A. I could look. That's roughly what I remember. I don't remember the exact number.
Q. Take a look.
A. Yes. 112.
Q. Okay.
So that means for 208 of these claims that you got from Robin Sheehan's spreadsheet, there were no matching patient records in the HealthSplash subpoena records, right?
A. No.
Q. No -- sorry. That's correct or that's incorrect?
A. That's incorrect.
Q. Okay. Your report, right, says of those 320, you identified 112 to have a matching doctor's order within the subpoena returns, right?
MR. HALVERSON: Objection.
THE COURT: Ground?
MR. HALVERSON: Hearsay.
THE COURT: One moment.
MR. HALVERSON: He's reading his report through --
THE COURT: One moment.
Well, I am going to sustain it as to form.
You can reshape the question, Ms. Holt.

MS. HOLT: Okay.
BY MS. HOLT:
Q. My question to you is, let me back up, of those 320 claims that you took from the claim data, you could only -- you only matched 112 records from the HealthSplash data, right?
A. That's correct.
Q. Okay. That means for the rest, you could not identify a matching record.
A. I would say for the rest, the methodology I used did not match.
Q. Okay. So you couldn't find a first name, last name in the same HCPCS code?
A. So I couldn't find the patient's first name within five places of a patient's last name, search one.
Search two, the HCPCS code had to be in the file, and then a combination of those two things.
Q. Right. So when you're looking for first name, last name, and HCPCS code, well, those were your three search parameters, right?
A. I would -- I would say it's two parameters. It's a combination of first within five of the last and HCPCS code.
Q. Okay. So those are the terms that you're using to search, right?
A. Correct.
Q. And when you use those, first name, last name, HCPCS code,

you only found 112 records that matched those 320, right?
A. I agree.
Q. Okay. So for the rest, the 208, there was not an order that was for the same first name, last name, and brace code or HCPCS code that you saw in the claims data.
A. And I would not agree with that.
Q. Okay.
A. You're drawing a negative inference from the fact that I didn't match using the specific criteria I did.
Q. That's my question. You -- your -- you used those criteria. You chose those criteria, right?
A. I did, yes.
Q. Okay. And those are the criteria that you used to search.
A. Right. That is the criteria I used to search. Just because I don't find something, doesn't mean it doesn't exist because it doesn't match --
Q. I'm not asking -- I'm not asking if it existed or not. I'm asking, in your search -- so your task was to see if you could find HealthSplash patient records that matched Medicare claims records; right? That was your task?
A. That was my task.
Q. Okay. And you figured out how to accomplish that task by using these search terms, right?
A. I did.
Q. And when you did that search, you found 112 that matched

the 320?
A. That's correct.
Q. And that means that the other 208 claims data, in your search, did not find a matching patient record from HealthSplash?
A. Using my search, I did not find any in those others. That does not mean they don't exist.
Q. I'm not asking if you think they exist or not; I am asking if you found them in your analysis.
A. Using the search terms as I did, I did not find them.
Q. All right.
Now, you took this just like you did with the 420 other sample size that the Government asked you a lot about, and you did a similar extrapolation to what you think that means for claim data and paid data, right?
A. That's correct.
Q. All right.
And in this, so using this, 112 out of 320, your estimate of what was actually billed to Medicare was 202, approximately 202 million. Right?
A. That's correct.
Q. And you had the same thing that the Government asked you about, this 95 percent confidence interval, right?
A. Yes.
Q. And you did the same thing about what was actually paid by

Medicare, right?
A. I did.
Q. And that was approximately -- well, that was 18,653,888, right?
A. It was.
Q. Now, so with that background, let's now relook at some of the charts that you made for the Government.
MS. HOLT: If we could pull up Government Exhibit 107, please, Cynthia.
BY MS. HOLT:
Q. Okay, the Government asked you about this, right?
A. Yes.
Q. Now, I want to be clear about where you got this data, and you have these sources down in the corner, right?
A. I do.
Q. All right. And Government Exhibit 303, that's just the order itself?
A. I don't recall the GX numbers to what the underlying documents are.
MS. HOLT: Can we pull up Government's Exhibit 303, please.
Thank you.
Maybe scroll down to the actual record.
BY MS. HOLT:
Q. Do you recall this?

A. I do recall seeing documents like this, yes.
Q. Okay. So this is 303, this is the order, right? Or the medical record?
A. Correct.
Q. All right.
MS. HOLT: Thank you, Cynthia, if we can go back to 107.
BY MS. HOLT:
Q. And the GX 411 to 436, that's the HealthSplash Excel spreadsheets, right?
A. I believe that's right, yes.
Q. Okay. So this clinician's name that you got here, Deanna Grandstaff, you got that from the order, right?
A. Correct.
Q. Okay. Because the HealthSplash data actually had a different provider, right?
A. I don't recall.
MS. HOLT: If we could pull up Government's Exhibit 429.
We have highlighted here the Andrew Session data claim. If we could just scroll to the right, please, a little, Cynthia.
BY MS. HOLT:
Q. And do you see that there, the clinician first and last name?

A. I see what's highlighted, yes.
Q. It's Patricia Reinholdt, right?
A. That's what this says.
Q. Okay. But when you made your chart and sourced it to this as one of your sources, you just ignored that part, right, that there was -- the clinician of Patricia Reinholdt?
A. I don't recall this. I sourced it to the doctor's order.
Q. Okay. So, but you did put on your -- on 107, the one we looked about -- looked at about Andrew Session, you did say that you referred to this exhibit, right, as one of the many?
A. I did have this exhibit as a source, but that top part is from the doctor's order. It was pretty clearly identified.
Q. Okay. So it -- you just ignored then that the actual -- this source material for your slide had a different provider.
A. Again, I was providing information from one source, the doctor's orders, compared to the bottom source, the claims data. That's what I was doing.
Q. All right. This wasn't important to you?
A. I don't necessarily know if it was important or not. I did not look at this information for this purpose for my chart.
Q. All right.
MS. HOLT: We can take it down. Thank you, Cynthia.
BY MS. HOLT:
Q. Now, the Government asked you to make a chart about the DME supply company being in the same state as the patient, right?

A. Correct.
Q. Now there's no Medicare regulation that requires or law, let me ask you that, there's no law that requires the patient to be in the same state as the DME supplier?
A. I'm not aware of any law, no.
Q. Okay.
The Government asked you to make that slide.
A. Yes.
Q. All right. And same, you also made a slide about a patient being in the same state as the clinician, right?
A. As the referring provider, I think I referred to it as, yes.
Q. Okay. And again, there's no law or Medicare regulation that requires the doctor to be in the same state as the patient.
A. Not that I'm aware.
Q. Now, you talked about there's no prior relationship in many of your charts, right? The Government asked you about that?
A. Yes.
Q. Again, that's coming from Robin Sheehan's analysis on those spreadsheets, right?
A. That's correct.
Q. All right. You didn't do your own "no prior relationship" analysis?
A. I did not.

Q. You are using her spreadsheets about Medicare claims data?
A. That's correct.
MS. HOLT: So if we could pull up Government Exhibit 113.
That's in, right?
BY MS. HOLT:
Q. You recall this, the Government asked you about this?
A. I do.
Q. Okay. And I'm going to refer you down to the bottom left corner, the source 437 through 441.
Do you see that there?
A. I do.
Q. Those are Robin Sheehan's spreadsheets, right?
A. That's correct.
Q. Okay. So all of this is taken from data from Robin Sheehan's spreadsheets.
A. That's right.
Q. This is not after having taken those claims data and trying to match them up with the records from HealthSplash?
A. Yeah, that would not have been possible.
Q. Okay. So, again, this is just based on what is in her spreadsheets.
A. Correct.
Q. And for all of these charts --
MS. HOLT: We can pull up 114, if you can, Cynthia, is

another example.

BY MS. HOLT:

Q. Again, this has the same source data?

A. Correct.

Q. And these, again, are coming only from Robin Sheehan's spreadsheets.

A. That's right.

Q. This is not after you did, as you did with the 320 and tried to see if there were corresponding orders in the HealthSplash data, patient records, let me say it that way.

A. I agree.

Q. Okay.

MS. HOLT: All right. So if we can go to Government Exhibit 118, please.

BY MS. HOLT:

Q. All right. The Government asked you about this one, do you recall that?

A. I do.

Q. Now, of this 21 plus this 1236, what percentage is that of the 346,000?

A. Small. I mean, I can . . .

Q. You can calculate.

A. .3 percent.

Q. .3 percent. So less than 1 percent?

A. Correct.

Q. All right. Now, of these 1236 beneficiaries, again, you did not take those beneficiaries and try to match them up with the actual patient records from HealthSplash?
A. Outside of the sample that I pulled, I did not.
Q. Okay.
MS. HOLT: And if we could go to Government Exhibit 119.
BY MS. HOLT:
Q. The Government asked you about this. Do you recall that?
A. I do.
Q. Again, this is coming from Robin Sheehan's spreadsheets.
A. That's correct.
Q. Okay. You didn't try to take this and match it back up with the patient records from HealthSplash.
A. I don't recall doing that, no.
Q. All right.
MS. HOLT: Government Exhibit 120, please.
BY MS. HOLT:
Q. The same thing here, this is from Robin Sheehan's records.
A. Correct.
Q. And you didn't try and match this up with the patient records from HealthSplash?
A. I did not.
MS. HOLT: Government Exhibit 123, please.
123, I'm sorry. 123.

BY MS. HOLT:
Q. All right. The same for this, this comes from Robin Sheehan's records, her spreadsheet.
A. That's correct.
Q. And you didn't match this up with records from the HealthSplash patient data?
A. I did not.
MS. HOLT: Government Exhibit 129, please.
BY MS. HOLT:
Q. And again, this is from a spreadsheet from Robin Sheehan.
A. Part D, correct.
Q. Okay. And you didn't try and match this up with the HealthSplash patient records?
A. I did not.
Q. All right.
MS. HOLT: You can take it down. Thank you, Cynthia.
If you could pull up Government Exhibit 137.
Oh, not that one. If you can take that down. I'm sorry. It's the Government. Oh, Government, can you, can we pull up 137A.
Can we switch to Government? I'm sorry.
BY MS. HOLT:
Q. All right. Do you remember this one?
A. Yes.
Q. Okay.

Now, by November, you can see the patient encounters are what, approximately?
A. I'm sorry, by November --
Q. November 2018.
A. Oh, small. I'd say 150.
Q. Okay. And that's where the data ended, right?
A. Correct.
Q. All right. And this says "patient encounters," right?
A. It does.
Q. This is not whether or not any of these encounters resulted in an order that was thereafter -- that a DME supplier thereafter made a claim to Medicare for?
A. I did not attempt to verify a claim on the back end for these encounters.
Q. Okay. So this is just the encounter.
A. These are encounters.
Q. Okay. And you can't tell from this how many of these resulted in any order for a brace?
A. Not from this data, no.
Q. Okay. And whether any of those orders resulted in a claim to Medicare?
A. That's correct.
Q. All right.

MS. HOLT: If we can go to Government Exhibit 138, please. If we can go back to defense. Thank you.

138. 138. 138. Sorry.
It's all right. We can come back to it.
BY MS. HOLT:
Q. Okay. Now, you reviewed -- you reviewed the HealthSplash patient Excel files, right?
A. I did.
Q. And there were -- in that -- that record had the clinician, right?
A. I believe it did.
Q. Okay. That record did not have the supplier, meaning the DME supplier.
A. I don't recall if it did. I wouldn't expect it to, but I just don't recall.
MS. HOLT: Okay. If we could pull up Government Exhibit 429 again. We'll take a look.
If we can just scroll slowly through that.
Okay, that looks to be the end.
BY MS. HOLT:
Q. So in there, there's not a DME supplier, right?
A. So go back to just a few back. I think the orig name.
Okay, now these are more the telemedicine companies. Okay. I don't see the DME.
Q. Okay.
MS. HOLT: Thank you. You can take that down, Cynthia.

BY MS. HOLT:
Q. And in the records, there are thousands of clinicians, right?
A. In those records we just looked at?
Q. Well, not just for 29 but those --
A. The set of Excel files.
Q. The set of Excel files.
A. I agree.
Q. Okay.
All right. So let's move to the financial records.
MS. HOLT: If we could pull up Government Exhibit 139, please.
BY MS. HOLT:
Q. So you presented to the jury a number of charts about cash flow, right?
A. I did.
Q. All right. Now, as shown on 139, you start with the premise that Mr. Blackman controls all of these accounts you've listed here, right?
A. That was an underlying assumption for some of these accounts, yes.
Q. Okay. Specifically Amici Holdings, National Center for Pain, right, those are on here?
A. Correct.
Q. All right. And based on that assumption is how you've

grouped a lot of the cash flows in the rest of your exhibits -- or your charts that you made, right?
A. I definitely grouped things by the blue Blackman-controlled accounts.
Q. Okay. But if there's other --
MS. HOLT: We can take that down. Thank you, Cynthia.
BY MS. HOLT:
Q. If there was other information out there that Mr. Blackman did not control these accounts, that would change your grouping, right?
A. If I am asked to make a different assumption, I could. I did review testimony that was clear that he was controlling those accounts.
MS. HOLT: Objection, Your Honor.
THE COURT: Yep.
The jury will disregard the last answer. It's not responsive to Ms. Holt's question.
You can ask your next question, Ms. Holt.
MS. HOLT: We would reserve a motion at this time, Judge. But my question --
THE COURT: No, that's overruled. You can ask your next question.
BY MS. HOLT:
Q. My question to you is, if there were other information out there that showed Mr. Blackman did not control those accounts,

that would change your chart, right?
A. I guess if you're asking me to weigh evidence, right?
Q. I'm not asking you to weigh evidence; I'm asking you a hypothetical.
If there's other information that Mr. Blackman did not control those accounts, that would change your grouping, right?
A. No. I take it a different way. If you ask me to change my assumption, I could easily change my assumption.
Q. Okay.
A. But if you're asking me if there's different evidence --
Q. I'm not asking you about the evidence; I'm asking you, you made an assumption in grouping -- in the groupings that you did in your charts, right?
A. Yes, I was provided an assumption --
Q. Okay.
A. -- for those accounts.
Q. All right.
And if that assumption changes, the charts change?
A. If I was asked to change the assumption, then yes, the chart would change.
Q. So your charts are only as good as the assumption.
A. I think the assumptions play a very important part of the chart.
Q. I'm not -- okay. My question to you is, your charts are only as good as the assumption, right?

A. I think the assumptions are important.

THE COURT: You can ask it again, Ms. Holt.

BY MS. HOLT:

Q. Your charts are only as good as the assumption is.

A. I don't know, I think the charts accurately reflect the information. So the charts are accurate and there --

Q. Your charts are based on an assumption that the Government gave you, right?

A. Correct.

Q. Therefore, if the assumption is bad, the charts are bad, right?

A. Not -- no, the charts are accurate. If --

Q. To the assumption?

A. Correct, the chart is -- all the charts are accurate. If you're saying that certain blue things should be purple, sure, I can make them purple. It doesn't make the chart inaccurate.

Q. But if the assumption changes, the chart would change, right?

A. If the assumption were to change, i.e., Mr. Blackman doesn't control an account, then I would not want to say it's a blue thing because it's not.

Q. Great. Okay.

And when you say these are accurate, is that the same level of accuracy that you strove for in your analyses with respect to the claims data or is this a higher?

A. I'm sorry, I am not following what you are saying.
Q. You said these charts are accurate, the financial charts, right?
A. Correct.
Q. Okay. But you said that your analysis of whether the claims data matched up to the HealthSplash records, that you weren't striving for accuracy in the same way.
A. Yeah, they are very, two very different concepts, yes.
Q. Okay. So which level are we talking about now? Are we talking about efficiency accuracy or are we talking about accuracy accuracy?
A. So anything in the financial slides are accurate accurate. There's no sample going on.
Q. But your statistical analysis is not accurate?
A. So you're trying to put words in my mouth and we've gone through this. The statistical analysis is accurate with what it is attempting to do. You can't draw the negative inference from my statistical analysis that you are trying to draw. So --
Q. I wasn't trying to draw a negative inference. I was asking you about your statistical analysis and whether you strove for accuracy. And your answer was, correct, that you were striving for efficiency?
A. I was striving for accuracy and efficiency.
Q. Perfect.

A. You can't have, in a statistical analysis, you can't have perfection like you can in a bank statement analysis.
Q. I wasn't asking for perfection. You strove for a 95 percent confidence interval, right?
A. That's a totally different statistical concept from what we're talking about now.
Q. Well, that estimates a margin of error.
A. I can try to unpack the statistics for you. We will be here for a little bit, but --
Q. I'm not asking you to unpack the statistics.
A. Okay, well then please ask your question.
MS. HOLT: Can we pull up Government Exhibit 148, please?
THE COURT: One moment. Take that down, unless you want it for the witness.
MS. HOLT: Is that not in?
THE COURT: These are a lot of numbers. I just want to make sure.
MR. HALVERSON: Yeah, we didn't put that in.
MS. HOLT: All right. Thank you, Judge.
THE COURT: We are going to take our first afternoon break in about five minutes, ladies and gentlemen. Hang in there. I haven't forgotten about you.
MS. HOLT: All right. Let's go to Government Exhibit 149.

BY MS. HOLT:
Q. All right. You remember this one, right?
A. I do.
Q. You created this?
A. Yes.
Q. Okay. Now, in here, you have National Center for Pain passing --
MR. HALVERSON: Judge, I'm going to object to this because this is a different version of the document than what was put into evidence.
THE COURT: Put the 149 that was actually admitted into evidence before the witness.
MR. HALVERSON: Would you like us to put it up, Judge?
THE COURT: Yes, or you can give her one to put on the ELMO. Whatever Ms. Holt prefers.
MR. HALVERSON: Ms. Braga, can you put one in.
MS. HOLT: I have one for the ELMO, Judge.
THE COURT: Whatever you prefer, Ms. Holt.
Okay. 149 is before the witness, published to the jury.
BY MS. HOLT:
Q. All right. Now, in this chart, you show 8.4 million passing to Blackman or Blackman-controlled entities, right?
A. I see that, yes.
Q. And you identify in this chart as Blackman-controlled

entities Amici Holdings, Mr. Blackman's personal accounts, Global Composites, Healthmax 360, and JEM Holdings, right?
A. Correct.
Q. Okay. Now, from this 8.4 million, about 6.9 of that went from National Center for Pain to Amici, right?
A. I don't recall the exact number.
Q. Did you bring your underlying data with you today to be able to look that up?
A. I definitely have access to it. I don't have it with me.
Q. You knew you were testifying in this trial, right?
A. I did.
Q. Okay. And you knew you were testifying --
MR. HALVERSON: Your Honor.
THE COURT: Sustained.
His answer is, is that it's not with him on the stand right this second, Counsel.
BY MS. HOLT:
Q. Are you able to access it for your testimony?
A. I am sure I could, I mean, given time, yes. I mean, I have access to all of this information.
Q. Okay. Why don't -- can you get it so we can -- so I can ask you these specific questions about the --
THE COURT: That's sustained.
We will take our afternoon break. We will see you in about 15 minutes. Have a nice break, ladies and gentlemen.

THE COURTROOM SECURITY OFFICER: All rise for the jury.

(Jury exited at 2:40 p.m.)

THE COURT: All right. Mr. Petron, you can go to the hallway, sir. We will see you in about 15 minutes to resume your testimony.

Everyone else may be seated.

All right. The witness has left. The jury is on their break.

All I've done so far is sustained very clear objections that had a misleading basis, based on the witness's last answers. I'm not precluding Ms. Holt from getting into whatever she wants to get into, but the notion that a witness who does not bring with him to the stand access to a voluminous database should entertain the kinds of questions that Ms. Holt was starting to ask and rightfully objected to. That's all I was doing. Ms. Holt has the ability, as an officer of the court, to put before this witness whatever she wants to put before the witness, and that's where we'll leave it for the break.

I think Ms. Holt also preserved a motion a while back. That was in sparring with the witness where within the ambit of her assumption questions, the witness answered with responses, including what he reviewed, which included testimony. I sustained an objection to the extent and told the jury to

disregard the back portion of an answer, but there was nothing improper that -- in terms of warranting any kind of preserved motion for mistrial or anything like that. To the extent that's what she was preserving, that is denied. This is common sparring with a studied and experienced expert on sampling and on slides that are produced. And so that's why I overruled her to the extent that she was preserving anything like that at the lectern.

Having said that, I will hear from Ms. Holt so that she can perfect her record.

MS. HOLT: Your Honor, in overruling our general objections to Mr. Petron receiving testimony and then making assumptions on it, the Court, I feel, was very clear that there would not be testimony about him reviewing testimony. He said that in the Government's direct and clearly has not been instructed not to talk about that. My question --

THE COURT: He hasn't been instructed -- that is denied. First of all. I would never, ever fault the Government, and you would accuse the Government for coaching witnesses if he was to do that. That is not within the ambit of my ruling.

Secondly, the fact that, let's use your cross since you want to go all the way back to the Government's direct where you did object and I did sustain it and I did tell them to disregard, on your cross, your decision not to control the

witness and to let him go within the ambit of your question will not create in any way a motion for mistrial. You're an experienced cross-examiner, and when he started to say what he said, you could have spoke. You let him complete the sentence, and then you moved, and I granted it and told the jury to disregard. This is common sparring with a witness.

Now, finally, because we might as well get at it in terms of the basis. There is nothing wrong in stating an assumption that part of what you are stating is review of testimony. In fact, your own cross depends upon it because you are exploding or attempting to explode the witness by saying, well, if Sheehan is wrong, you're wrong. There's nothing wrong with you doing that, but there's nothing improper of the Government adducing from a witness his underlying assumptions. For all of those reasons, such a motion for mistrial is denied.

Ms. Holt, anything else?

MS. HOLT: Judge, there's a big difference between, quote, coaching a witness and instructing witnesses what the rulings of the Court are. That's, in all of my years of experience, a very common thing for witnesses to be instructed to, based on the rulings of the Court.

THE COURT: Yeah, and when an excellent, experienced defense attorney starts to go at a witness, witnesses are also human beings and under oath. And a witness that is under oath

can easily interpret a question from either attorney as: I think to answer this truthfully, I have to say what my assumptions are, which includes the review of testimony. That is not in any way, in any way close to a motion for mistrial. What it is, is a sustained objection in telling the jury to disregard, which is what I did.

Anything else, Ms. Holt?

MS. HOLT: We preserve our motion, our objection, Your Honor. The Court was clear that he was not supposed to talk about reviewing testimony, and he did that in the Government's direct. It was not required or specifically elicited.

THE COURT: It's true. That is literally true. And so the defense's position is that literally in a four-week trial if a single word comes out, it's a mistrial. That's not the law, not even close. In fact, and I stand by this, on the cross, it was within the ambit of your question and you didn't stop him. You could have stopped him, and if you would have, I would have absolutely told him to stop.

Now, here's the other thing, is that the sparring that you are alluding to actually showed up later. And in very careful questions when he was sparring with you because you felt that he was not answering the precise wording of your questions, I, without you asking me, directed the witness and you, "Ask it again, Ms. Holt," and then he agreed with your

wording. That's all this is. This is standard sparring. You have made your record, Ms. Holt, and it's overruled.

Mr. Halverson?

MR. HALVERSON: Your Honor, just briefly on this point. Mr. Petron is also just testifying about -- he has been involved in this case for a while. There's been multiple trials now that he participated in. So to expect him to try to navigate this, I did speak with him before he testified about this issue and our solution was that I would say you assumed things without getting into the testimony.

THE COURT: It's absolutely right for you to put that in the record and, in fact, it's important because defense has all of that prior testimony. They have that as part of their questions. It is to beggars belief to think that a witness under oath with the record of prior testimony asked what he's being asked would somehow in an antiseptic laboratory way answer it like lawyers do to judges under hypotheticals. That is a 100 percent right, Mr. Halverson, and it is why the context of this of course has to be considered as part of any motion for mistrial. And that's all we're doing.

Ms. Holt is right to make her record. She has made it. It's overruled.

MR. HALVERSON: Your Honor, on a different matter now, as you noted, she had tried to use Mr. Petron's analysis to impeach Ms. Sheehan's analysis. We had not been able to get in

Ms. Sheehan's analysis in full, which Mr. Petron actually corroborated. We didn't go there because we were essentially precluded. I think she's opened the door wide to that testimony on redirect because he actually confirmed her analysis in many ways. And this --

THE COURT: I think what she's opened the door wide to is what, I would call, assumption testimony. And she has certainly opened the door wide to if Sheehan is X, then you have to follow that. Or the converse, if Sheehan is Y, then it affects you too. So within the ambit of that, sure. The specific example that you are referencing, Mr. Halverson, I am going to stand by my prior ruling, and I'm not going to turn this into a mini trial where Sheehan things that were excluded are now going to be able to come in through him.

MR. HALVERSON: Well, Your Honor, all I would ask him is essentially, like, did you do anything to confirm Ms. Sheehan's analysis in terms of --

THE COURT: You can clearly within the ambit of cross state: You remember the questions where Ms. Holt was asking you about Ms. Sheehan's records and then your testimony and records? What did you do with respect to Sheehan? That's totally fine.

MR. HALVERSON: Thank you, Your Honor.

THE COURT: That's clearly within the ambit of Ms. Holt. I will see everybody --

MS. HOLT: We would obviously object to that. I don't think that I opened the door to that in any way by questioning him that he was relying on Ms. Sheehan's spreadsheets.

THE COURT: You literally stood before him and literally said: This depends on Ms. Sheehan.

MS. HOLT: That doesn't allow the witness to then say, I'm corroborating Ms. Sheehan's work.

THE COURT: No, I didn't say he would get to do that. And I also said I'm not going to allow them to introduce already excluded Sheehan things, but they're clearly allowed to say, you know, when you answered Ms. Holt about how this only flowed from Ms. Sheehan, what did you mean by that? What did you do with Ms. Sheehan's stuff in connection with your stuff? He's clearly allowed to do that.

MS. HOLT: I guess I'm not understanding the distinction between those things.

THE COURT: I see it, and I'm being protective of Mr. Blackman in telling the Government that there is a limit to within the ambit of Ms. Holt's cross. You're allowed to get into it, but we're not going to introduce Sheehan through this witness.

But I think the Government will take heed to the line that I am drawing. I will see everybody in about 10 minutes.

MR. HALVERSON: Thank you, Your Honor.

THE DEPUTY CLERK: All rise.

(Recess was held from 2:51 p.m. until 3:01 p.m.)

THE COURT: Everyone can be seated.

MS. HOLT: Judge, just before we bring out the jury, I want to clarify whether I can follow up on whether the underlying data is accessible for the remainder of the testimony today? I am not sure what was sustained and what --

THE COURT: You're allowed to get into whatever you want to get into.

MS. HOLT: All right.

THE COURT: My ruling was that certain objections were sustained because I felt that the way that they were asked was misleading at the time they were asked, but you're not precluded from getting into whatever you want to get into, Ms. Holt.

MR. HALVERSON: Judge, so what I understand she wants to get into, show him account by account numbers. The way I've seen this before is they will have a spreadsheet that's prepared to show the witness or something like that, but I've never seen an approach where they like go through an account line by line.

THE COURT: I've got to be honest with you, Mr. Halverson, there's lots I haven't seen before. Ms. Holt is going to be given latitude, understanding that ultimately there are a time limits in how she does things, but I'm going to give Ms. Holt the latitude to cross the witness as she sees fit

within the ambit of your direct.

At some level, time will, of course, intervene, but Ms. Holt hasn't been going at it for that long yet, and she's an experienced attorney. She knows what she's doing.

Let's bring out the jury. Thanks.

THE COURTROOM SECURITY OFFICER: All rise for the jury.

(Jury entered at 3:03 p.m.)

THE COURT: Welcome back, everybody. Please be seated. They are loaded up with coffee for the next session. We are going to continue with our cross-examination.

Ms. Holt.

MS. HOLT: Thank you, Judge.

BY MS. HOLT:

Q. All right. Mr. Petron, I just want to ask a couple of follow-up questions.

With respect to your -- well, I think you had said on direct that with respect to the bank records, you had pulled the transactions and made a digitized, I forget what you called it, but database basically of all of the transactions, right?

A. That's right.

Q. Okay. And I had asked you if you had it with you, and you said no currently, right?

A. Correct.

Q. Are you able to access it for the remainder of your

testimony here today?
A. I mean, not right this second, no. I mean, I have a computer with me.
Q. Would that allow you to access that data and how much time would that take?
A. I guess you would need to -- I don't know, I could get my staff to help and, I mean, I'm sure I could get at the data. It just depends on what you're wanting with the data, too.
Q. Well, my questions are going to be about breaking down some of these buckets that you've put together on these charts.
Would your underlying data allow you to do that?
A. It would.
Q. How much time would it take you to get access to that for the remainder of your testimony?
THE COURT: I'm going to sustain it as to form.
Counsel, you can put actual questions, specifics, including exhibits of your own before the witness before we get to whether him having access to his computer would further assist.
BY MS. HOLT:
Q. All right. My question, you have in Government Exhibit 149, you show 8.4 million going to Blackman-controlled entities, right?
A. Correct.
Q. And that bucket in this chart includes Amici Holdings,

Mr. Blackman's personal accounts, Global Composites, Healthmax 360, and JEM Holdings, right?
A. Correct.
Q. And isn't it true that of that 8.4 million, about 6.9 of that is going from National Center for Pain to Amici?
A. I don't recall that specifically.
Q. Would that be in the underlying data that we were discussing?
A. It definitely is in the underlying data.
Q. Okay.
And would you be able to access that in order to answer the question?
A. I would have to get access to it. I would probably want to talk to my staff about it and make sure I'm looking at the data the right way and filtering it and searching it the right way. But I have all of this data.
Q. And how much time would that take?
A. I spend a lot of time making sure these charts are right, so if I had your questions about what you wanted to know specifically, I would love to have a couple hours at the minimum. I mean . . . even then, I would -- yeah, at least a couple hours.
Q. Well, it's in a digitized spreadsheet, right?
A. It's in a database, yes.
Q. Okay. And you can filter by company, right? So you could

filter and say, okay, show me how much National Center for Pain goes to Amici?

A. That's -- yeah, that is likely what we would do. We would run a query, maybe not a filter, because it's not a spreadsheet, it is a database.

Q. Uh-huh.

A. So I would want to run the query, I would want to make sure the query is operating correctly and double-check it.

Q. And you didn't do that in preparation for your testimony today?

A. I did not know what you were going to cross-examine me on, so I did not do anything to prepare for that, no.

Q. All right. And you did not come prepared today to discuss more specifics than what was in your charts?

A. That is correct, I came to discuss what was in the charts.

Q. Now, all right, so let me show you then Government Exhibit 715.

MS. HOLT: May I approach, Judge?

THE COURT: Yes.

BY MS. HOLT:

Q. Now, this is the bank account for Amici Holdings, right?

MR. HALVERSON: Judge, I don't know that we know what's on this laptop.

THE COURT: That's right. That's right. I was waiting for you to stand up. And 715 is in evidence.

MR. HALVERSON: We can pull up 715 from our database of exhibits.

MS. HOLT: Your Honor --

THE COURT: There's no way you can ask this witness to corroborate whether the 715 is on your screen. Can you?

MS. HOLT: I can ask the Government to corroborate it, Judge.

THE COURT: No. The question is, is you're putting before the witness an exhibit that I can't see, that is already in evidence, so why can't we use the exhibit that's in evidence that can be put on everybody's screen?

MS. HOLT: For sure. We can absolutely do that. And then --

THE COURT: Let's do that. 715 is in evidence.

Ms. Gilbert can do it or if you need the Government's assistance to assist you, the Government can do it, and we'll put 715 before the witness and everybody else because it's in evidence.

BY MS. HOLT:

Q. All right. This is a bank account from Amici Holdings, right?

A. It is.

Q. All right. I'm going to ask you to do a sort of back-of-the-envelope calculation for payments to Amici from National Center for Pain in this time period, from

Government Exhibit 149, to get an estimate for how much is going from National Center for Pain to Amici.

Would you like some paper?

A. Yes, if I'm going to try to do all of that, I would love to --

MR. HALVERSON: Your Honor, I'm not sure I understand what the question is.

THE COURT: We don't have a question yet, but we're going to find out when we get a question.

BY MS. HOLT:

Q. The question is, in Government Exhibit 715, which is -- this is bank statements for Amici Holdings, right?

A. It appears to be at least one account, an operating account.

Q. Okay. And the question is, how much, as reflected in this Government Exhibit 715, went into Amici Holdings account from National Center for Pain between January 4th, 2016 and May 1st, 2019?

THE COURT: So you want him to go through this exhibit, now, manually, to answer that question?

MS. HOLT: Yes, Judge, that's why I was trying to use the computer so it's searchable and slightly easier.

THE COURT: Well --

MR. HALVERSON: Your Honor, its 376 pages long.

THE COURT: Correct. Correct. It's improper. Let's

do it this way.

Do you want to take him through any parts of the exhibit to adduce certain pieces of it, like wires that are in the ambit of your question or anything like that?

To ask a witness in front of this jury to do a manual calculation on a 376-page exhibit, Counsel, is highly unorthodox to say the least without further guidance from you. So I'm asking for that guidance.

MS. HOLT: Your Honor, he has testified to his calculation and is unable to break it down.

THE COURT: No, that is sustained. That's not what the testimony is at all. That's highly improper, Counsel. Why don't you ask questions about the document in evidence. I'm not going to have this witness perform a manual calculation on 376 pages in the open. He can take your direction, Counsel, as part of your cross.

MS. HOLT: If we could go to Page 3, please, Cynthia.

BY MS. HOLT:

Q. All right. The National Center for Pain account that you're referring to here ends in 0358, right?

A. You'd have to sort of refresh my recollection on that. If we could look --

Q. Okay.

MS. HOLT: If we could pull up Government's Exhibit 139. Thank you, Cynthia.

BY MS. HOLT:
Q. Okay. And you see Line 11 there?
A. Okay. Okay.
Q. All right. So the National Center for Pain ends in 0358, right?
A. Yes.
Q. Okay.
MS. HOLT: If we could go back to Government Exhibit 715 and go to Page 3.
BY MS. HOLT:
Q. Okay. And so we see here deposits from 0358 or transfers, let me say it that way, right?
A. Yes.
Q. Okay. And that totals about 46,000?
A. No. It totals about 22,000.
Q. I'm sorry. 22,000.
A. Correct.
Q. Okay.
MS. HOLT: If we go to Page 9.
BY MS. HOLT:
Q. And we see additional transfers from 0358.
A. Yes.
Q. Right.
Totaling about 123,000.
A. Correct.

Q. Okay.
MS. HOLT: And if we could go to Page 13.
BY MS. HOLT:
Q. And we see transfers from the National Center for Pain, 0358, totaling about 200,000.
A. Correct. 205,000.
Q. Okay.
MS. HOLT: Go to Page 21.
A. By the way, I'm not writing these down or anything.
BY MS. HOLT:
Q. I know. We're just going to go through them.
And two transfers from, again, the same account totaling up to about 30,000.
A. Correct.
MS. HOLT: Go to Page 27.
BY MS. HOLT:
Q. Then transfers from the National Center for Pain for about 107,000.
A. Correct.
MS. HOLT: If we go to Page 33.
BY MS. HOLT:
Q. Another transfer totaling 20,000.
A. Correct.
MS. HOLT: 39. Page 39, please.

BY MS. HOLT:
Q. Transfer of 25,000.
A. Correct.
MS. HOLT: Page 53.
BY MS. HOLT:
Q. Transfers from National Center for Pain for 115,000.
A. That's correct.
MS. HOLT: 59.
BY MS. HOLT:
Q. Transfers from National Center for Pain to Amici of 65,000, right?
A. Correct.
MS. HOLT: Page 71, please.
BY MS. HOLT:
Q. Transfer from National Center for Pain for 50,000.
A. Correct.
MS. HOLT: Page 89.
BY MS. HOLT:
Q. Transfer from National Center for Pain for 40,000.
A. Correct.
MS. HOLT: Page 95.
BY MS. HOLT:
Q. Transfers for 152,000.
A. Correct.
MS. HOLT: Page 101.

BY MS. HOLT:
Q. Transfer for 75,000.
A. Correct.
MS. HOLT: Page 119.
BY MS. HOLT:
Q. Transfer from National Center for Pain for 125,000.
A. Correct.
MS. HOLT: Page 125.
BY MS. HOLT:
Q. Transfer for 200,000?
A. Correct.
MS. HOLT: Page 131.
BY MS. HOLT:
Q. Transfer for 100,000.
A. Correct.
MS. HOLT: Page 149.
BY MS. HOLT:
Q. Transfer from National Center for Pain for 350,000?
A. Correct.
MS. HOLT: 155, please.
BY MS. HOLT:
Q. Transfers from National Center for Pain for 400,000.
A. Correct.
MS. HOLT: Page 161.

BY MS. HOLT:
Q. Transfer from National Center for Pain for 250,000.
A. Correct.
MS. HOLT: 173, please.
BY MS. HOLT:
Q. Transfer from National Center for Pain for 750,000.
A. Correct.
MS. HOLT: Go to Page 197.
BY MS. HOLT:
Q. Transfers from National Center for Pain for 2.8 million.
A. Correct.
MS. HOLT: Page 209, please.
MS. GILBERT: What number?
MS. HOLT: 209. Thanks.
BY MS. HOLT:
Q. Another transfer for 400,000?
A. Correct.
Q. All right. And I will just take you through one more, Page 223.
Transfers from National Center for Pain for 125,000, correct?
A. Correct.
MS. HOLT: Thank you, Cynthia. I won't take you through the rest of that.
So let's go back to 149. If I could have the ELMO,

please.

BY MS. HOLT:

Q. Taking out Amici Holdings that we just looked at some of those payments, of this 8.4 million over that four-year period, about 1.4 million went to Mr. Blackman's personal accounts, Global Composites and JEM Holdings, right?

A. Again, I don't know the specifics.

Q. Okay. And you're not able to do that without, as you previously stated --

THE COURT: Objection, sustained.

BY MS. HOLT:

Q. Now, you didn't do a chart to show the flow of funds for Amici Holdings, right?

A. I don't believe I have a chart on just Amici Holdings, no.

Q. All right.

MS. HOLT: If we could pull -- oh, I think I have it.

BY MS. HOLT:

Q. From Amici Holdings -- but you looked at their accounts, right?

A. Yes.

Q. Okay. Now, from Amici Holdings, over this same approximately four-year period, Amici paid Mr. Blackman in his personal accounts JEM Holdings and Global Composites, around 669,000, right?

A. I don't know.

MS. HOLT: Can we pull up Government -- wait one moment.
BY MS. HOLT:
Q. Okay. The Government asked you about this one, right?
A. Yes.
Q. And this shows HealthSplash taking in 8 and a half million, right?
A. Correct.
Q. And it's from this time period, March 2016 to December 2020.
A. Correct.
Q. All right.
MS. HOLT: We can take that down. Thank you, Cynthia.
Now, one moment.
All right. Can I get the ELMO again? Sorry to go back and forth.
BY MS. HOLT:
Q. All right. You made this chart, too, right?
A. Correct.
Q. And this shows $164,000 going from HealthSplash and Power Mobility to law firms, right?
A. Correct.
Q. All right. And you also have on this chart 832,000 going to Mr. Blackman and Blackman-controlled entities, right?
A. Correct.

Q. And again, that bucket includes National Center for Pain and Amici Holdings, right?
A. It does.
Q. All right.
Of that 832,000, 456,000 went to Amici, right?
A. I don't know that sitting here.
Q. Okay. And again, you're not able to answer that question without --
MR. HALVERSON: Objection.
THE COURT: Sustained. Sustained as to form. 403.
MS. HOLT: Let's look at Government Exhibit 152.
BY MS. HOLT:
Q. You recall this one, right?
A. I do.
Q. And you have 52.1 million going from these DMERx-affiliated companies to what you've called the Blackman-controlled entities?
A. Correct.
Q. And again, included in this blue bucket is National Center for Pain and Amici?
A. Correct.
Q. All right. Of that 52.1 million going from the red box to the Blackman or what you called Blackman-controlled entities, 52.1 million went to National Center for Pain, right?
A. I don't recall the exact amount.

Q. Well, you made more charts -- well, let me ask you this, you said you don't recall, would looking at a chart that you made showing the flow of funds into National Center for Pain refresh your memory?
A. Yeah, it may.
MS. HOLT: May I approach, Judge?
THE COURT: Yes.
MS. HOLT: This is Government Exhibit 159.
THE COURT: 159 for identification before the witness.
A. Okay.
BY MS. HOLT:
Q. Now this is another chart you made about the flow of funds in this case, right?
A. It is.
Q. And it shows the flow of funds into the National Center for Pain?
A. It does.
Q. Okay. And does that accurately reflect your analysis as to the flow of funds into National Center for Pain?
A. I believe it does.
MS. HOLT: Your Honor, at this time, I would move Government Exhibit 159 into evidence.
THE COURT: Mr. Halverson.
MR. HALVERSON: No objection, Your Honor.
THE COURT: 159 is received.

Just to be clear, Ms. Holt, that's under 1006, correct?

MS. HOLT: Yes.

THE COURT: Okay. It is received for all purposes. It is another summary exhibit based on voluminous testimony.

The same instruction, ladies and gentlemen.

159 is received.

(Received in evidence as Government's Exhibit 159.)

THE COURT: You can publish, Ms. Holt.

BY MS. HOLT:

Q. Okay. So this is a chart you made showing the flow of funds into National Center for Pain, right?

A. Correct.

Q. Okay. And it shows, it has a similar red bucket here, right?

A. Correct.

Q. And this is DMERx-affiliated marketers, suppliers, and pharmacies, right?

A. Correct.

Q. And from this, you show 52.1 million flowing to National Center for Pain, right?

A. Correct.

Q. Now, going back to 152, you have a similar red bucket, right?

A. Correct.

Q. And the red buckets are the same except for one company called United Med Health, right?

And I can provide you both of these if you would like, because I don't think that they're fitting on the ELMO.

A. I think I have a footnote of one in both that would describe them, but I would expect them to be similar, yes.

Q. Would you like to look at both of them in person?

THE COURT: You can approach, Ms. Holt.

A. Thank you.

Yes, they look very similar to me.

BY MS. HOLT:

Q. It's the same bucket except for United Med Health, right?

A. I do see United Med Health on Government 152. I don't see United Med Health on 159.

But I also see Universal Health Care on 159 but not on 152. But the vast majority of these companies are the same.

Q. Okay. Let me grab these from you.

So putting them up together, you have almost identical red buckets, right?

THE COURT: Just for me, Ms. Holt, before you get into your question. Can you just identify since I can't see the Government exhibit stickers, what number the top one is? Thank you.

152 is the top one and then 159 is the bottom one.

Thank you, Ms. Holt.

BY MS. HOLT:
Q. Both passing -- the red buckets both pass -- the first one, let's look at 152, shows this red bucket passing 52.1 million to what you grouped as Blackman-controlled accounts, right?
A. Correct.
Q. And 159 has this nearly identical red bucket showing the same amount, 52.1 million, passing to National Center for Pain, right?
A. Correct.
Q. Okay.
All right. Now, let's look at 153.
For this top, you have 187 going from Blackman or Blackman-controlled entities to the DMERx, that same red bucket, right?
A. Correct.
Q. Okay. And again, in the Blackman-controlled blue, you've included National Center for Pain --
MR. HALVERSON: Judge, this isn't in evidence.
MS. HOLT: No?
THE COURT: Do you want to put it before the witness?
MS. HOLT: Didn't we do 153? Oh, I apologize, Your Honor.
THE COURT: That's okay, Ms. Holt. There's a lot of numbers running around.
Do you want to put it just before the witness or you

want to move on?

MS. HOLT: No, Judge, that's okay.

THE COURT: Okay.

The jury will disregard 153.

Ms. Holt, your choice, your next question.

BY MS. HOLT:

Q. So I wanted to go from that 52.1 million that flowed into National Center for Pain, okay, in the chart, 152 and 159, all right?

From that, 39 million went to a variety of advertising-related entities, right?

A. I know a large amount of money went to advertising and marketing-related entities. I'm not positive of the exact number.

Q. Would looking at -- one moment.

All right.

I am going to show you what has been admitted as Government Exhibit 149. Do you recall this?

A. Yes.

Q. Okay. And here it shows from National Center for Pain, 39 million going to advertising-, advertising-related entities, right?

A. Correct.

Q. Okay. One moment.

MS. HOLT: So if we could pull up Government

92

Exhibit 155.

Well, actually, never mind. Let me -- I can put that on the ELMO. Give me one second.

BY MS. HOLT:

Q. All right. You recall this, right?

A. I do.

Q. Okay. And so, again, this shows, I know this is in black and white, but the same DMERx-affiliated marketers, suppliers, pharmacies and telemed, right?

A. Correct. It's the red box.

Q. Okay. And, again, this is the 52.1 million that we discussed previously, right?

A. Correct.

Q. And that 52.1 million is shown in Government Exhibit 159 is going to National Center for Pain, right?

A. I would agree.

Q. So over this period, this somewhere around four-year period, money flowed from National Center for Pain to Mr. Blackman's personal accounts, JEM Holdings, and Global Composites of about 1.4, 1.5 million, right?

A. Money definitely went there, I don't recall the exact amounts.

Q. All right. And from Amici, about 669,000 went from Amici to Mr. Blackman's personal accounts, JEM Holdings, or Global Composite?

93

A. Again, I don't recall the exact amounts.

MS. HOLT: One moment, Judge.

THE COURT: Yes.

MS. HOLT: No further questions, thank you.

THE COURT: Okay. Thank you, Counsel.

Redirect, Mr. Halverson?

MR. HALVERSON: Just briefly, Your Honor.

THE COURT: That's a good way to start.

REDIRECT EXAMINATION

BY MR. HALVERSON:

Q. So, Mr. Petron, you testified on cross about a couple statistical samplings you did, right?

A. I did.

Q. And I think you called them Sample 1 and Sample 2; is that right?

A. Correct.

Q. And you also testified about GX~112, which we could put on the screen for . . .

And remind us, what is GX~112 analyzing?

A. So GX~112, these are the Ms. Sheehan --

MR. HALVERSON: Oh, could we publish that for the jury, please?

THE COURT: Yeah, 112 is in.

MR. HALVERSON: That's in evidence.

A. So there were two types of analyses I understood it from

Ms. Sheehan. The first one being the no prior relationship. That's type number one. And then number two being a sort of more expansive review of the sort of link between the HealthSplash data and the Medicare data.

BY MR. HALVERSON:

Q. Now, Ms. Holt asked you about your Sampling 2. Do you recall that?

A. I do.

Q. And you testified that it estimated about $202 million was billed based on what you could find?

A. That's correct.

Q. What were the limits to what you could find? Just explain that process and how that was limited.

A. So, first, I took, I believe, only extract 2 here. So I only used Number 2, if I recall -- am I allowed to look at this?

Q. Well, if you don't recall. Are you saying you don't recall the exact numbers?

A. I don't.

Q. Is there something I could use to refresh your recollection?

A. This report, Exhibit 630.

MR. HALVERSON: That's Government Exhibit 630.

Could the witness look at 630, please?

THE COURT: Yes, 630 for identification before the

witness.

THE WITNESS: Thanks. Give me one second.

THE COURT: Review it to yourself, sir, and let him know when you're done.

MR. HALVERSON: It's just for the witness.

THE COURT: Okay.

MR. HALVERSON: The jury is not seeing that.

A. Could you actually put back up the other thing?

MR. HALVERSON: Oh, could we go back to 112. And that's for everyone, please.

So the witness is looking at Government's Exhibit 630 and 112 is on the screen, for the record.

THE COURT: For the record. Yeah, 630 is only before the witness.

THE WITNESS: Okay.

BY MR. HALVERSON:

Q. So could you explain what you were sampling there?

A. I was sampling from the second extract.

Q. Which is the smaller of the two extracts; is that right?

A. Correct.

Q. And so when Ms. Holt asked you the question about 202 million versus 1.45 -- 1.045 million, do you recall that question?

A. I do.

Q. Sort of comparing apples to oranges; is that right?

A. It is. The better comparison would be against this 235 million.
Q. Okay. Now you also did Sample 1, correct?
A. Correct, using the patient charts, yes.
Q. And that's the sample I asked you about on direct examination?
A. Correct.
Q. And what was your conclusion as to the total billed amount under Sample 1?
A. It was 1.045 billion.
Q. And is that consistent or inconsistent with the matched data analysis that you've done on 112?
A. It is consistent with this number on 112.
Q. And how so?
A. They are less than a half a percentage point apart.
MR. HALVERSON: No further questions. Thank you.
THE COURT: Any recross?
MS. HOLT: Yes. Thank you, Judge.

RECROSS-EXAMINATION

BY MS. HOLT:
Q. I just want to clarify something that the Government asked you about that analysis.
Okay. And I'm talking about the analysis where you got your -- your estimation was that the bill -- the claims billed was 202 million, approximately, okay? Just to frame

what I'm asking you about. That, you said, you took the claims data from Ms. Sheehan's spreadsheet, right?
A. That second extract.
Q. Okay. The 320 claims that you used as a sample size, that came from Ms. Sheehan's spreadsheet, right?
If you need to refresh your memory --
A. Can I?
Q. -- yes, with the report.
THE COURT: Review it to yourself and let Ms. Holt know when you are done.
BY MS. HOLT:
Q. Okay. So that 320 sample -- of sample claims you took from Ms. Sheehan's spreadsheet, right?
A. Correct.
Q. Okay. So you're not taking that 320 from the health care -- or excuse me, from the HealthSplash patient records and comparing that to the Medicare claims; it's the reverse.
A. I'm going from the second extract from Ms. Sheehan, that second one, to the patient files over here on my right.
Q. Correct, that was my question. Right.
So you're not comparing HealthSplash records to a small data set from Ms. Sheehan's spreadsheet. It's the opposite.
A. I'm comparing -- I'm sampling from Ms. Sheehan's

spreadsheet and finding if there is a chart, if I can find them in the chart.
Q. Okay. Exactly. So that 320 are 320 actual Medicare claims, right?
A. Correct. They're from the claims data.
Q. And then comparing that to see if you could find that in the HealthSplash patient records?
A. Correct.
Q. Okay. And this was because you were tasked with estimating how much of the total billed and paid amounts from the Medicare claims data could be matched to orders located within the DMERx HIPAA subpoena returns, right?
A. I believe that's correct.
Q. And then that was your task given -- requested of you by the Government, right?
A. I believe that's correct.
Q. And then you decided how best to execute that?
A. I did.
Q. Okay.
MS. HOLT: One moment, Judge.
THE COURT: Yes.
MS. HOLT: No further, thank you.
THE COURT: All right.
Mr. Petron, you may step down, sir. You can leave everything on the table. You're excused.

I will see counsel at sidebar.

Stretch break, ladies and gentlemen. See you in two minutes.

(Sidebar discussion held:)

THE COURT: Okay. I didn't want to blindside defense, maybe they needed a chance to set. But is the Government prepared to rest?

MR. HALVERSON: Yes, we're going to rest.

THE COURT: Okay. Do you guys want a full break before you go into your --

MS. HOLT: Can we have a full break?

THE COURT: Of course. I will give you a full break. Okay?

So I'm going let you rest now and then I will instruct the jury gently that the Government's rested its evidence, that of course the Government bears the burden at all times, and that the defense need not put on any case. However, the defense has informed the Court that they wish to put on a defense case. It doesn't change the Government's burden, but before we start the defense case, we're going to take a short break.

Any objection to anything like that?

MS. WILSON: Your Honor, this is Jenny Wilson. We would like to speak to our client before you put anything on the record about our case.

THE COURT: Okay. So I'm just going to have them rest and then we're going to take a break, okay?

MS. WILSON: Perfect. Thank you.

THE COURT: Thank you, Ms. Wilson.

MR. HALVERSON: Thank you, Judge.

(Sidebar concluded.)

THE COURT: All right. Everyone may be seated. Everyone's back. I hope the stretch break was helpful.

Mr. Halverson.

MR. HALVERSON: Your Honor, at this time, the Government rests its case in chief and reserves the right for rebuttal.

THE COURT: Okay.

THE COURT: So, ladies and gentlemen, we're going to take an unplanned break, even though we just had a break. The Government has rested its case in chief. That portion is now done.

We will see you in about 10 or 15 minutes. Okay? Have a nice break.

THE COURTROOM SECURITY OFFICER: All rise for the jury.

(Jury exited at 3:50 p.m.)

THE COURT: All right. Everyone may be seated.

Ms. Wilson, anything you want to take up now?

MS. WILSON: Yes, Your Honor, we have a motion. We

101

would move for a judgment of acquittal under Rule 29 on the theory that the Government has failed to prove each and every element of each and every offense charged in the indictment.

THE COURT: Okay. I'm going to have the Gov- --

MS. WILSON: And renew all prior motions and objections. I'm so sorry.

THE COURT: No, that's okay.

So I'm going to let the Government make a record on the Rule 29 motion by defense; and, obviously, the Government has done this plenty of times and there are three different conspiracy counts charged in the indictment.

So as you put on the record your response to the Rule 29 motion, to the extent that you can, I would like you to point out any specific highlights of evidence that differentiate the conspiracies and then even more -- perhaps even more importantly, the substantive counts of Counts 2 through 4. If the Government could make its record in response to the Rule 29 motion.

MR. HALVERSON: Certainly, Your Honor.

Now, with respect to Count 1, which is a conspiracy to commit wire fraud and health care fraud, the first element is that there's an agreement to commit the crime and that it involves a federal health care or -- I'm sorry, a health care benefits program, as defined in the statute.

Dr. Hoover, Dr. Sullivan, and Mr. Khristoforov

testified that Medicare and CHAMPVA claims are part of a federal health care program. Dr. Hoover and Mr. Khristoforov also testified that those claims are submitted through interstate wires, which satisfies the wire fraud prong of the conspiracy.

In terms of their membership in the agreement -- oh, and I will just point out that we have Medicare claims that Government's Exhibits 437 through 441, which Ms. Sheehan and Mr. Petron testified about regarding their connection to the HealthSplash server. Government's Exhibit 635 is the CHAMPVA claims that were submitted through wires.

The next element is that if any became a member of the agreement. A number of witnesses, including Chris Cirri, Toni De Lanoy, Willie McNeal, Chintan Anjaria, Jordan Karlick, and Gregory Schreck testified that they were in agreement with the defendant to commit the crimes to defraud Medicare.

We also introduced emails showing membership in the conspiracy that connected up these players, including Government's Exhibit 1061, Government's Exhibit 1048, 1070, 1120, 1123, 1127, 1130, and 1156.

I would also note that a formal agreement is not required, although the defendant memorialized the criminal partnership and sham contracts that hid the true ownership. He signed at least one of those contracts, 1221, which was a contract with Reinaldo Wilson, who is a co-conspirator, who is

the owner of ACC. That's at Government Exhibits 228.

1221. Government's Exhibit 1221 notes the memorialization of the sham contracts through which a number of the co-conspirators created the contracts and noted that they would be -- they would include this concept of a patient waiting room and a number of other concepts, which were simply not part of the platform.

McNeal's contract was at Government's Exhibit 233. Mr. Anjaria's contract was at 236 and 239. Mr. Cirri's contract was at 252. Mr. Cox, a co-conspirator, also explained the entire telemarketing scheme to a co-conspirator in Government's Exhibit 1076.

The next element is that they joined knowing of the agreement's unlawful goal. I believe Denise Leard provided some insight into the knowledge of the unlawful goal in that she testified that she provided the defendant with an opinion letter, which laid out the law in terms of Anti-Kickback Statute and the regulation of the payments between the players on the platform.

Toni De Lanoy also testified about this connection and about the defendant's knowledge.

Mr. Cirri and Mr. Schreck also testified about defendant's knowledge of the unlawful goal. Mr. Cirri specifically testified that he and Cox worked together to create the orders that would not alert Medicare that they were

104

done through kickbacks.

Government's Exhibit 1052 memorializes Mr. Blackman's participation in that conspiracy by agreeing to remove any reference to telephones or telemedicine from the orders. The Government has proven that Mr. Blackman knew that the doctors were not doing meaningful examinations and continued to push through the template that was done through, for instance, the exhibits having do with Advantage Choice Care. And Mr. McNeal's testimony that the doctors were not speaking to the patients. Also the voluminous data records we've provided that show that it was simply not possible for the doctors to have done the consultations. Those exhibits are 312, 333, and 314. Those are the orders of Cuttino, DeCorso, and Audisho, which show that no human being could have reviewed those pages and attested to them in a day, which was what they swore to do.

We also provided Government's Exhibit 1035, which was a do's and don'ts document that showed that the doctors were not actually doing the consultations properly.

Government's Exhibit 1111 shows the use of -- the ACC's fraudulent use of the platform and the defendant and his co-conspirator's knowledge of that fraudulent use.

Government's Exhibit 1158 also shows that knowledge of ACC's fraudulent use.

Moving on to Counts 2 through 4, those are substantive counts of health care fraud. With respect to the first

element, which is that the defendant knowingly devised a scheme, we provided the testimony of Chris Cirri -- or we provided the testimony of Chris Cirri, Toni De Lanoy, Anjaria, and Denise Leard. Cirri's testimony was essentially that they designed the orders to avoid detection from Medicare and to be able to be billed to Medicare.

Toni De Lanoy testified that Brett Blackman made the final decision with respect to all of the elements of those orders and the way they were written. Toni De Lanoy also testified that she warned Mr. Blackman of the various problems with the portal and how she believed that they were wrongfully creating doctor's orders that were fictitious.

Denise Leard also warned the defendant that the way the platform was set up, that would form a high risk of violating the Anti-Kickback Statute, which is also undergirds the health care fraud conspiracy here because that was not told to Medicare and there were sham contracts to conceal the fraudulent nature of the platform.

Again, Government's Exhibit 1059 demonstrates the -- his co-conspirator, Cox, telling the members of the conspiracy that the doctors were not signing the orders properly, the doctors were copying and pasting. 1035 also explains that.

Government's Exhibit 1080 demonstrates that doctors wouldn't use DMERx because of the telemedicine nature of it. Some doctors refused to use DMERx because of the telemedicine

nature, which was problematic for Medicare.

Government's Exhibit 111, again, shows the fraudulent use by ACC and the co-conspirator's knowledge of that use and continuing to allow them to use the platform. 1158 also demonstrates that.

Under intent to defraud, Dr. Hoover demonstrated the falsity of the prescriptions by showing how Medicare would only pay for medically necessary prescriptions and that it would not pay for prescriptions that were procured through kickbacks and bribes. Again, Mr. Cirri testified that he and Cox and others made the decisions to avoid Medicare audits and detections that were designed to detect the fraudulent orders that the defendants was creating.

Again, the exhibit in which Mr. Blackman signed off on the decision to conceal the telephonic nature of the orders, after Chris Cirri reportedly told Mr. Cox that Medicare was busting their chops over the telemedicine orders.

Cirri, Anjaria, and others testified that it was the marketers -- sorry about that. Cirri, Anjaria, and others testified that it was the marketers who chose the brace prescriptions, not the doctors, and Audisho confirmed this, which shows the falsity of the orders themselves, which claim that the doctors were choosing the brace prescriptions.

THE COURT: Before you move on to Count 5 and 6, I just want to make sure that I've tracked it right. The

substantives -- in the indictment track, the substantives by an approximate claim date, a claim number, and an amount billed. As an example, I can tell that for Count 3 -- oh, there's also a Medicare beneficiary that's tracked in the chart.

MR. HALVERSON: That's right, Your Honor.

THE COURT: I can tell that Government Exhibit 305 clearly tracked to Count 3.

MR. HALVERSON: Count 2 is Medicare. Yeah, I can go through them, Your Honor.

THE COURT: Yep.

MR. HALVERSON: Count 2 is based, in part, on Government Exhibit 303, which is for Medicare beneficiary AS, Andrew Session.

Count 3 is for V. Patel, which is Government's Exhibit 305, in part, obviously other exhibits bear on this as well.

And Count 4 was for Beth Tanos, which is the order in Government Exhibit 306.

THE COURT: Yeah, okay. Thank you for that.

You can sum up on 5 and 6. I didn't mean to interrupt you. I just wanted to make sure that I tracked the exhibits that tie to the substantives.

MR. HALVERSON: I would also point out the exhibits that Mr. Petron also just testified to, which tie together the data and the orders and provide venue in the Southern District

of Florida about those three specific Medicare beneficiaries that are the underlying counts for Counts 2 through 4.

THE COURT: Okay.

MR. HALVERSON: The last element is that this was a public plan affecting commerce. We provided the testimony of Hoover, Sullivan, Khristoforov, and Sheehan, which all testified that they were public plans financed by federal government and the claims are submitted electronically through interstate commerce. We also provided the actual claims data for each of those programs.

As to Count 5, which is a conspiracy to violate the Anti-Kickback Statute, the first element -- well, obviously, that's an agreement to violate the Anti-Kickback Statute, but in order to violate the Anti-Kickback Statute, someone has to have offered or paid any payment, such as a kickback, bribe, or rebate, and that the purpose of the payment was to induce recipient to purchase, lease, order or arrange or recommend purchasing, leasing, ordering any good, facility, service, or any item for which payment may be made in whole or in part by the federal health care program, such as Medicare or CHAMPVA, and that the defendant acted knowingly and willfully.

With respect to the first part, whether or not payment was offered or -- offered or paid, we provided multiple co-conspirators who testified about the payments being made between telemarketers, telemedicine companies, and the DME

providers, that does include Cirri, Karlick, De Lanoy, McNeal, Schreck, and Keaton Langston actually testified about direct payments between himself and Mr. Blackman regarding prescriptions for pharmaceutical creams.

I would also note that in Government's Exhibit 1003, Brett Blackman is specifically discussing a per doctor's order price for orders that he's going to sell to Jordan Karlick -- sorry, excuse me. The other way around. Karlick was going to sell to Mr. Blackman.

Mr. Langston testified that Brett Blackman sold him orders for prescriptions directly for $150 per pain prescription, and he only paid if they were reimbursed by Medicare. He and his -- he and the Davidson Pharmacy only paid if they were going to be reimbursed by Medicare. As to whether the purpose was to induce the payments, I think the evidence also shows that through those same co-conspirators that the purpose of this whole conspiracy was to induce orders and prescriptions to be sent from telemedicine doctors to the DME suppliers.

Chintan Anjaria testified about this extensively that purchasing orders through DMERx portals blew up his volume of orders he could sell to brace suppliers.

Chris Cirri also testified about this, that that was the one purpose of DMERx portal was for him to buy signed doctor's orders from telemedicine companies so that he could

sell them to his brace suppliers.

An example of this in the documentary exhibits is Government's Exhibit 1152 in which Anjaria explains which brace company, Mr. Cox, Mr. Blackman's co-conspirator should send his brace orders to. Because Mr. Anjaria, as he testified, had multiple access points into DMERx, one, as a marketer and then, two, as a DME supplier so that he could then sell those orders to his other DME suppliers.

That the defendant acted knowingly and willfully. We've provided the testimony of Ms. Leard, who testified about Mr. Blackman's knowledge of the Anti-Kickback Statute. We have also provided testimony regarding the contracts that were created to obscure the kickback arrangement from Medicare or from others who had reviewed those contracts and the sham nature of those. Multiple witnesses testified that those contracts were shams and that the purpose of it was to obscure the true relationship between the companies on DMERx.

THE COURT: I think you have covered it, Mr. Halverson.

MR. HALVERSON: Good.

THE COURT: Anything, you know, particularly glowing bright that you haven't covered?

MR. HALVERSON: So -- another part about the knowledge was the fake invoice for Amici that went to Langston. That was designed, as Mr. Langston testified, to obscure the connection

between Mr. Blackman and the pharmacy, so that the kickbacks could not be discovered.

Moving on to Count 6, which is a conspiracy to make false statements in connection with the delivery of health care benefits. Again, we have to show that this involved a health care benefit program. Hoover, Sullivan and Khristoforov, Sheehan testified about that, whether or not it was in connection with delivery or payment for health care services. I think a number of witnesses testified about the health care services between the braces and prescriptions that were delivered, that the statement was material. Numerous witnesses testified that Medicare, for instance, would not pay for telemedicine orders of orthotic braces.

Again, going back to Mr. Cirri telling Mr. Cox that Medicare was busting their chops and then Mr. Blackman signing off, and that's at Government's Exhibit, I believe it's 1052.

Also Hoover testified about Medicare -- about what Medicare required for braces. He actually showed the jury a physical exam that was required for certain knee braces that were provided through the defendant's platform. Other witnesses testified about the faking of those tests and the false language that was included in the orders that could not have been done over a telephone call. That same language was included in orders for several of the account beneficiaries.

That the statement was false, fictitious or

fraudulent. I believe the testimony shows that these orders are rife with false statements, including the material omission about telemedicine or telephone calls, the fact that the testing was faked, that there was no objective analysis or no objective evaluation of the patients.

And Mr. -- and then we go into the knowingly and willfully component of this. Obviously, Mr. Blackman's knowledge that or his email that an evaluation is an evaluation, demonstrates that he understood that Medicare or in response to Mr. Cox's statement that Chris Cirri said that Medicare was busting their chops over telemedicine consults. That shows that he was acting knowingly and willfully as to the violation.

We also presented numerous other exhibits that demonstrated his knowledge of the falsity of these statements. For instance, the stacks of orders from Cuttino, DeCorso, and Audisho, which could not have been completed in a day by any physician, which demonstrates knowledge that these were full of false statements.

De Lanoy also provided her PowerPoint warning that there were problems with the process, and that the orders were containing false information.

We also provided Ms. De Lanoy's testimony, Mr. Toman's testimony, Mr. Schreck's testimony about Advantage Choice Care being allowed to operate fraudulently on the platform and not

being removed from the platform.

THE COURT: I think that covers it, Mr. Halverson.

MR. HALVERSON: Thank you, Your Honor.

THE COURT: I thank the Government for the summary. I think the only thing I didn't hear, and I'm not faulting the Government, maybe I missed it, there was also testimony by a witness, Kris Rogers, who is not a cooperating witness that the Government is also entitled under Rule 29 to the light most favorable to the Government with respect to connections and control and orchestration between the accounts.

So under Rule 29, and the parties are well aware of this, the Court is required to construe the evidence in the light most favorable to the Government with every reasonable inference that can be taken from the evidence to be granted in favor of the Government.

So on a Rule 29, this is a relatively easy case and the motion will be denied.

As the Government summarized, there are a half a dozen cooperating witnesses, there are voluminous documents, including admissions of the defendant. The Government noted some of them. The Court highlights 1051, 1052, 1059, and 1035, but there are many others.

And then finally, there are summary exhibits that are properly admitted under 1006 that summarize voluminous records that create additional inferences that must be rendered in

favor of the Government for Rule 29.

So for all those reasons, on Rule 29 this is a relatively easy case on all six counts, and the motion will be denied. We of course have jury trials because the Rule 29 standard does not apply in closings to a jury, and that's why we're here. The core dispute, as is the case -- there are many disputes strategically raised by defense in this case. They may choose to highlight some more than others as they see fit, as we go forward, but the core dispute, as is the case with all of these, is has the Government proven beyond a reasonable doubt that Defendant Blackman knew of the wrongdoing, the irregularities, et cetera? That's the core dispute, whether the Government has proved that beyond a reasonable doubt.

But for purposes of Rule 29, there's no corroboration rule in federal law. A single uncorroborated cooperator can carry that burden under Rule 29. They have way more than that for purposes of Rule 29. So the motion will be denied.

Ms. Wilson, how long do you need to set up and get started with your witnesses?

MS. WILSON: We'd actually like 10 to 15 minutes to confer with our client first.

THE COURT: Of course.

MS. WILSON: And then we will be able to address the Court on that.

THE COURT: Of course.

MS. WILSON: Thank you.

THE COURT: Just one moment.

I will see everybody in 10 to 15 minutes.

Thank you, Ms. Wilson.

MR. HALVERSON: Thank you, Your Honor.

THE DEPUTY CLERK: All rise.

(Recess was held from 4:14 p.m. until 4:25 p.m.)

THE COURT: We're back. Everybody's here.

Ms. Wilson.

MS. WILSON: Yes, Your Honor. After conferring with our client, the defense will be resting.

THE COURT: Okay. Let me just have the microphone placed before Mr. Blackman. I'm going to engage in a short colloquy with him.

Mr. Blackman, you can remain seated, sir. You have been respectful of this Court throughout these proceedings. And I also want to note that Mr. Blackman has participated, as he should, respectfully, often and vigorously with the three who are helping him throughout the trial, including, you know, counsel, Ms. Gilbert. Notes, discussions.

Mr. Blackman, everything that I'm about to ask you, none of it is intended to have you divulge any substance of conversation with your attorneys, but there's certain things that your attorney just told me that it's important to our system that I understand from you that it's your wish, okay?

First, with respect to witnesses, not you. I will get into that in a second. But with respect to not calling witnesses, I was here, I know you were here when your counsel discussed calling witnesses in the case. Have you had discussions with your attorneys about calling witnesses in your defense case? It's just a yes or no.

THE DEFENDANT: Yes.

THE COURT: Okay. You understand, sir, that they are excellent attorneys but that ultimately it's a back and forth, and that you need to understand from them that you have the right to call witnesses in your defense. You don't have to. I will instruct the jury that you bear no burden. But I want to make sure that after consultation with counsel, you understand that they are not going to be calling any witnesses on your behalf. Do you understand that, sir?

THE DEFENDANT: That is correct.

THE COURT: Okay. And is part of that decision and in your consultations with defense counsel, are you satisfied with their representation of you in that regard?

MS. WILSON: Your Honor, we would object to questions about our effectiveness, given that we're in a trial setting, and he doesn't have independent counsel.

THE COURT: No, no, it's a very simple question. It's not about ineffectiveness at all. It's that with respect to the decision not to call witnesses, are you satisfied with the

advice and representation that they've given you in this case in that regard, it's a yes or a no.

THE DEFENDANT: I decline to answer.

THE COURT: No, no.

Ms. Wilson, I will give you all the time that you want with him. He cannot decline to answer that. He has a constitutional right to have witnesses called. You have said you're not going to call any. I need to know from him that he understands that he has the right to call those witnesses and after discussing with you that he is satisfied with that decision, himself.

THE DEFENDANT: The decision, I already said yes on the record that I did understand that myself, yes.

THE COURT: And so all I'm asking you, sir, is that after discussing with counsel that decision, are you satisfied that your decision is, in part, based upon the representation of your counsel, and are you satisfied with that representation? I have to know that from you, sir.

And I don't mind him conferring with you for this purpose, but I have to know.

MS. WILSON: I'd actually -- could I take a five-minute break to make a phone call, Your Honor?

THE COURT: Of course, Ms. Wilson.

MS. WILSON: Thank you.

THE COURT: I want to make sure Mr. Blackman is

completely comfortable in answering the Court. You can take five minutes.

You're excused with -- you want him to come with you?

MS. WILSON: Any of them can come.

THE COURT: Yeah, we will see you in five minutes.

(Recess was held from 4:29 p.m. until 4:46 p.m.)

THE COURT: Counsel happens returned, Mr. Blackman has returned.

Mr. Blackman.

MS. WILSON: Your Honor, can I just give a case, United States v. Watts, 896 F.3d 1245, 11th Circuit, 2018, pin cite 1252.

A criminal defendant has a fundamental right to choose whether to testify in his defense and that right is truly protected only when the defendant makes his decision, knowingly and intelligently. When a defendant is represented by counsel, that counsel is responsible for providing the advice needed to render the defendant's decision knowing and intelligent.

In those cases, the District Court does not normally engage in a colloquy with the defendant to ensure that the decision was made knowingly and intelligently because such a colloquy would improperly disturb the attorney-client relationship and would suggest that the District Court believed that a defendant's choice in providence. So we would --

THE COURT: You've read that exactly right from

United States versus Watts.

And so what?

MS. WILSON: So we would just, to clarify, our objection to questions about satisfaction with our representation, we think veers into that.

THE COURT: No. And to be clear, to be clear, Watts doesn't stand for that. Watts, that you just read, stands for reviewing of a claim that the District Court denied a defendant's right to testify.

These colloquies are done all the time. They are done by Judge Ruiz and Judge Damian in this courthouse. They are done in just very quickly Sharp versus McNeil in the Northern District of Florida.

All I want, Mr. Blackman, to understand and voice that he understands is that there are two things that you just said on his behalf, that he has a constitutional right for. One, to call witnesses on his behalf. And two, for him to testify or not testify.

You said, effectively, we're not calling witnesses, and he's not testifying. This Court has more than authority to know, and it is done all over the country, to understand that Mr. Blackman agrees and understands that he is not going to have any witnesses called for him, and he is not going to testify, and that that decision is, in part, in consultation with counsel. That is done all the time. That is -- you know,

if he is sitting there unsatisfied with counsel, I get to know that now on these two decisions. That is done in courts all over the land.

So what I am not going to do is take Watts to stand for the proposition that if he was a pro se defendant, it would be different. That's not this case. He is not pro se. He has two excellent attorneys. One of the reasons why I gave you this long delay is so that Mr. Blackman can hear all of this and understand what I'm going to ask him. And a failure to answer by Mr. Blackman to these simple questions, I'm going have to ask his attorneys the same questions. And if nobody will answer it, that I will have to deal with. I don't think that we're going to get there. I am entitled to know whether or not he understands what Ms. Wilson just said in open court on his behalf, and that it is in consultation with counsel. That's all the Court is doing.

MS. WILSON: Those two we don't object to at all. It's just the questions about satisfaction.

THE COURT: Well, that doesn't -- and that's denied. If someone is going to say to the first two but is saying, but I really think my counsel is completely unsatisfactory in me making those two decisions, he has to say that; otherwise, the second one doesn't mean anything. Now, I'm not going to get into substance of discussions, and I have told him that I won't do that.

But I am going to ask you, Mr. Blackman, let's take the first part. Do you understand, sir, that you have a right to have Ms. Wilson call witnesses for you and on your behalf? Do you understand you have that right?

THE DEFENDANT: I do, Your Honor.

THE COURT: Okay. And she's told me that she's not going to call any witnesses on your behalf, even though you have that right. Do you understand that?

THE DEFENDANT: I do, Your Honor.

THE COURT: Okay. In her making that decision, have you conferred with them about that decision?

THE DEFENDANT: I am satisfied with -- that they're on my side.

THE COURT: That's the next one I'm going to ask you.

THE DEFENDANT: Okay. Yes.

THE COURT: That's the next one.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Let me get to this one.

Have you conferred with them about the decision not to have any witnesses called?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Next, you also in addition to having witnesses called for you, you have the right to testify yourself in this case. And Ms. Wilson in standing up and saying what she said, you have the absolute right to testify.

122

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You have the absolute right to testify even if your counsel doesn't want you to testify. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And so while I have said over and over in this trial that your counsel is excellent in my view, do you understand that ultimately it is your decision as to whether to testify or not testify? Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Finally in this regard, do you understand, sir, I will let you testify even if counsel tells you not to?

Do you understand that's how strong the right is? Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is anyone threatening you, coercing you, or promising you anything to get you not to testify?

THE DEFENDANT: No, Your Honor.

THE COURT: All right.

I find on the waivers of his right to testify, I find that Mr. Blackman is alert, respectful, and intelligent, and understands that he has the absolute right to testify and the absolute right not to testify.

He is fully informed, and he has made this decision in

consultation with counsel, including in two consultations that I gave him within the last 20 to 25 minutes.

Finally, Mr. Blackman, is there anything that you want to tell me at all regarding your satisfaction or dissatisfaction with counsel to this point? Yes or no?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. So given that, you want me to call them in and have you rest and then we'll let them go home, and then we have a lot to do?

MS. WILSON: Yes, Your Honor.

THE COURT: Okay.

Any objection for that from the Government? I think what we should do is we should call them in, I should let them go home, and frankly, I should probably let them even sleep in a little bit because we have a large charge conference that is probably not going to all get done tonight.

Just one moment.

All right. So I'm going to call them in, I'll excuse them, and I will let them come in, let's say tomorrow, what do you all think, 10, 30 as a start for closings? That will give us a little time tonight and a couple of hours in the morning?

MR. HALVERSON: Well, Your Honor, I think -- from my part, I am happy to stay as late as it takes to get the jury instruction done tonight. But yeah, I think that's reasonable to have them come in at 10:30.

THE COURT: Does that make sense, Ms. Wilson, we'll finish the charge tonight and then you'll have the ability to have a little bit of a late start?

MS. WILSON: Yeah, if they come at 10, it could be close. I'm just thinking about timing of closings.

THE COURT: Well, let's talk about that. How long do each of you want timing of closings? And boy did I learn my lesson from openings. So I can't wait to see what you guys ask for.

Mr. Halverson, how long does the Government want?

MR. HALVERSON: So are you asking for close plus rebuttal?

THE COURT: Total.

MR. HALVERSON: Total time.

THE COURT: Total.

MR. HALVERSON: Just one second.

I think we can do it in an hour and a half, 90 minutes.

THE COURT: Defense?

MS. WILSON: We would request three and a half hours, Your Honor.

THE COURT: That's denied.

What I would do -- the request for three and a half hours is certainly denied. What I will do, in an abundance of caution, I will give each side two hours total. That means

that the Government, to be clear, out of their two hours, 20 minutes of it can be rebuttal. Okay? So it's 1:40 plus 20 for the Government. Maximum two hours for the defense.

All right. Having done that, I think frankly a 10:30 start makes sense.

MS. WILSON: Yeah, or it could be even later, I think, Judge.

THE COURT: Right. Maybe even 11.

Yeah, let's tell them that. Let's tell them 11 o'clock you'll start and that way everything will be teed up. We'll do the charge tonight and the Government will go first, we'll take a lunch break, the defense will go, and then we'll have rebuttal and then we'll have the charge from the Court. Okay? That's the plan. I'll call them in now and tell them the schedule.

And I'm going to let Ms. Wilson, first, rest in front of the jury. All right?

Any objection to any of that?

MR. HALVERSON: No, Your Honor.

MS. WILSON: Just to the length of time for closing, we renew that.

THE COURT: Yeah. Okay.

Let's go get the jury.

THE COURTROOM SECURITY OFFICER: All rise for the jury.

126

(Jurors entered the courtroom.)

THE COURT: Welcome back, everybody. Please be seated.

All right. Ms. Wilson.

MS. WILSON: At this time, the defense rests.

THE COURT: All right. So ladies and gentlemen, the Government has rested. The defense has rested. The evidentiary portion of the case is closed. There is no more evidence to be heard in the case, and you have heard all of the evidence. What I am going to do now so that it's efficient for you, I'm going to take some more time with the attorneys, and what we will do is we will move to closing arguments. Tomorrow morning, you can sleep in a little tomorrow morning because we're going to make sure that everything is ready. So we will start tomorrow. I'm going to ask you to be here at 10:30, and we will start somewhere between 10:45 and 11 o'clock? Okay. And then you will hear closing arguments and you will even get charged on the law from me all tomorrow. All right?

Here's the thing, you have heard evidence in the case, but you haven't heard arguments yet. Arguments are not evidence, but they're very important, especially in a case that's this lengthy. And then you haven't heard the law from me.

So same three things, don't talk about the case, don't let anyone talk about it with you, no outside research, don't

post about the case, nothing. Finally, don't deliberate with each other. Don't deliberate along the way. Keep an open mind. You are going to hear a lot more tomorrow from these fine attorneys. We will see you tomorrow. We are going to get started if you're here at 10:30, between 10:45 and 11 o'clock. I want to thank you. I know there's some delay and back and forth this afternoon. What I hope you're seeing is that these attorneys and this Court have worked very hard to make sure that things are efficient for you, and that's what these breaks are doing.

I will see you tomorrow at 10:45. Have a nice evening.

THE COURTROOM SECURITY OFFICER: All rise for the jury.

(Jury exited at 5:00 p.m.)

THE COURT: All right. Everyone else may be seated. I guess probably the best thing to do is to give you all 10, 15 minutes or so. I'm going to go get draft charges. I got an email from you guys saying that there was going to be kind of like a joint proposed that you're working on together?

MR. HALVERSON: We had been working on it, Your Honor. We don't have it prepared yet, but we do have, the defense provided this morning, their proposal with edits, so we can provide that to Your Honor. And I think -- or generally. Our position is that we should use the model as used in the Cox

trial. We provided that to Your Honor. I think it was 371. So we would object to anything that veers outside of the model, essentially, which is I think what they're proposing is --

THE COURT: Well, that's a little different than what the email said.

MS. HOLT: I can email it to -- oh, I'm sorry.

MS. WILSON: That's okay.

Yeah, Ms. Holt will send it to you now.

To be clear, the email is what Your Honor had requested, which is what they want, what's disputed in bold. What they want is underlined and what we want is italicized. So we finished that document this morning. We sent it to them. Ms. Holt is sending it to Tamisha now. We will file it on the record just so our record is clean. But that is their version with our objections marked and our additions marked and things that only they want underlined and things that are in dispute bolded.

THE COURT: Okay. So it's a Leibowitz order conforming version of the two sides.

MS. WILSON: Yes.

THE COURT: Mr. Cuyler.

MR. CUYLER: Well, yes, Your Honor. To my colleagues, the defense, their credit, they did provide us their disputed instructions, but they also have several nonpattern instructions and instructions that are not supported by

authority that of course we will be objecting to --

THE COURT: Of course.

MR. CUYLER: -- and we haven't had the opportunity to put our bolding.

THE COURT: That's fine.

MS. WILSON: No, we italicized those ones.

THE COURT: That's fine.

MS. WILSON: If you haven't signed off, we italicized them.

THE COURT: Mr. Cuyler, it's totally fine. We are still going to go page by page. What I want to make sure is, is that I think what you both agreed to is that if I print out what Ms. Holt gave you and what she is sending to Ms. Shotwell, that's good for the page by page. I know it's not agreed to, but it's good for the page by page in the sense that it shows where you agree and where you disagree.

And I promise you, Mr. Cuyler, if there's anything in there that you still disagree with, you still get to disagree.

So what I am going to do is in 10 or 15 minutes, I will have that document in front of me, you guys will have it in front of you, and we'll go page by page.

I thank counsel. I'll see you in about 10 or 15 minutes.

MR. HALVERSON: Thank you, Your Honor.

(Recess was held from 5:03 p.m. until 5:12 p.m.)

THE COURT: All right. Everybody is back.

I'm using a 58-page draft, which is the attachment that Ms. Holt sent over, and that's what we will use as kind of a base for this. And I'll of course hear anything else from counsel that comes up.

So first, just so that it's efficient for every page, I'm just going to simply maybe call the page number and the header and then ask for the position of the parties starting with the Government.

Now, I just want you to know the Court's practice so you don't have to say it, I'm not going to include things like B1 or B2.1 in any of the charge, on any page. The rest -- oh, and obviously I'm not including any of the underlying authority cited by counsel.

All right. Having done that, Page 1.

MR. CUYLER: No objection.

MS. WILSON: No objection.

THE COURT: Page 2, duty to follow instructions and the presumption of innocence.

MR. CUYLER: One minor change in the final paragraph, we need to notate that it is a superceding indictment.

THE COURT: The superceding indictment or formal charge there?

MR. CUYLER: Yes, Your Honor.

THE COURT: And then the defendant does not have to

prove his -- strike "her" -- innocence.

MS. WILSON: Your Honor, we would object to references to superseding indictment.

THE COURT: On what -- at all?

MS. WILSON: Yeah.

THE COURT: On what authority?

MS. WILSON: 403. I mean, just that there's no need to tell the jury it's a superceding indictment.

THE COURT: So you're fine with just the indictment?

MS. WILSON: Yes.

THE COURT: So it's to superceding. Okay. You want superceding out?

MS. WILSON: Sorry.

THE COURT: I am just trying to understand Counsel. That's all I'm trying to do.

MS. WILSON: Yes.

THE COURT: Okay. So I am going to strike superceding. That goes into a -- that goes into another kind of peccadillo that I have. With respect to the indictment itself, the indictment should be redacted so that the superceding indictment should not have on any of it from the part that says "a true bill" on the last page, all the way down, all of that should be redacted.

I think that kind of imprimatur is not required. It can lend an imprimatur of veracity that can harm the defendant.

So it is my regular practice that from the word a true bill all the way down, signatures of the US Attorney, of the Department of Justice, that should all be redacted because -- and then also the -- the indictment itself, a copy of it will go back.

So the headers that show the case number, the document number, the filing date, that should all be redacted as well. It should be showed to defense as part of what goes back. That I did in the Cox trial, that I do in all of my trials. It is to eradicate.

Now, Ms. Wilson, the word superceding is on Page 1 of the indictment. What's your view?

MS. WILSON: We would ask that that be redacted.

THE COURT: Okay. So the word superceding is to be redacted. I have no problem with any of that. It is going to say indictment.

MR. CUYLER: Your Honor, I understand.

THE COURT: Yep.

MR. CUYLER: But I've got to say that that's -- in Cox, you just referenced it, it says superceding indictment right here in the instruction. Right here in the instructions. And also there's going to be references in the agreed instructions that we have to a superceding indictment. Now, is it the end of the world, no, Your Honor, but I just think that it's --

THE COURT: Well, they're taking the position that

they just want it to say indictment throughout, not superceding indictment throughout. That's their position, right, Ms. Wilson?

MS. WILSON: Yes, that's the position, Your Honor.

MR. HALVERSON: But this does sort of rewrite history a little bit and, like, to the extent there's been references to when someone was indicted, this document might not match up to that timeline.

THE COURT: No, no. First of all, that doesn't matter at all for two reasons. One, an indictment is not evidence, it is merely an accusation. And secondly, it's inside of the indictment for the charged period of conduct, you get instructions like on or about or in or about. That's part of every jury charge. When someone is indicted, doesn't have to be on the face of the indictment. In fact, many courts don't even allow an indictment to go back.

I know in the Southern District of Florida it's regularly done, and I'm going to do it. There's nothing erroneous about it, but I do think that what we are pointing towards is we're getting rid of things that give additional imprimatur. And that's why I will grant Ms. Wilson her request that superceding doesn't have to be part of the case. An indictment is an accusation. I will tell them in the instructions what an in- -- you know, where the word indictment is used, that it is not evidence. Okay?

So that is a global change, and that's why we're sleeping late a little tomorrow because we're going make sure all of these documents are kind of prettied up. So the superceding is granted.

All right. Any other changes on Page 2, duty to follow instructions and the presumption of innocence?

MS. WILSON: Your Honor, I think it's B2.2 that applies, not B2.1. So I think Page 2 comes out and Page 3 is the operative instruction.

THE COURT: Okay. I actually think that's right. So we're striking all of Page 2. Because the next page is going to be the applicable page, so I am striking Page 2 entirely.

Page 3, duty to follow instructions and the presumption of innocence when a defendant does not testify. I will get rid of the footnote obviously.

Anything else from the parties on Page 3?

MR. CUYLER: None from the Government.

MS. WILSON: No, just the superceding.

THE COURT: Yeah. That's a global change that I am going to put on both parties to make sure you're crossing it out.

Superceding is coming out, but you can bring it up too so that I will mark it.

Page 4, definition of reasonable doubt.

MR. CUYLER: No objection.

MS. WILSON: No objection.

THE COURT: Page 5, consideration of direct and circumstantial argument of counsel, comments by the Court.

MR. CUYLER: And permission to stay seated, Your Honor?

THE COURT: Yeah, you can all stay seated. Speak in the microphones, that's fine.

MR. CUYLER: No objection.

MS. WILSON: Also no objection.

THE COURT: Page 6, credibility of witnesses.

MS. WILSON: No objection from defense.

MR. CUYLER: No objection from the Government.

THE COURT: Page 7.

One second. Page 7 or Page 8. You guys tell me which one we're using. I think we're using Page 7 but you --

MS. WILSON: Page 7, yes.

MR. CUYLER: Yeah.

THE COURT: Okay. So Page 8 will be struck entirely.

Back to Page 7. Strike the footnote, striking B6.2.

Anything from the parties?

MR. CUYLER: None from the Government.

MS. WILSON: Striking B6.5, keeping B6.2.

THE COURT: I'm sorry. I went too fast, Ms. Wilson. So I am striking Page 8 entirely.

MR. CUYLER: Okay.

THE COURT: Now on Page 7, I am striking the header B6.2 and the footnote. Okay?

MS. WILSON: Oh, got it. Yeah, no other objections.

THE COURT: Okay, thank you, Ms. Wilson.

So then moving past Page 8 because I'm striking it.

Page 9, expert witnesses.

MS. WILSON: We object to the first sentence. It's not in the pattern.

THE COURT: One second.

Oh, you don't want it to match up to specific witnesses. That's the defense position? It's to the defense --

MS. WILSON: Correct.

THE COURT: Okay.

MR. CUYLER: Yeah, no, correct, because they were instructed during trial.

THE COURT: One second.

What's the Government's position on the first sentence? You just want the standard pattern?

MR. CUYLER: Exactly. Which I believe is what Ms. Wilson is asking for, so I think we're in agreement.

THE COURT: That's right. That's right. Striking the first sentence, it will become just the pattern instruction, so I will strike the first sentence. Okay?

Page 10. Testimony of accomplice witness, or I'm

going to strike codefendant.

MR. HALVERSON: Well, Your Honor, Schreck was a codefendant in the indictment, so . . . I don't know that we want to strike that.

THE COURT: Yeah, that's a fair point. Hang on. That's a fair point. I will put it back in.

So striking the header S1.2. What's the view on the instruction, large or small?

MS. HOLT: Judge, for defense, we're objecting to that sentence underlined. I've already instructed you on this and consistent with that instruction, I don't believe that's in the pattern.

We are asking that instead of accomplices and/or co-conspirators, it read codefendant and other witnesses. And then include the rest of that sentence that provide for the possibility of a lesser sentence.

THE COURT: Just one second. Let me catch up to you, Ms. Holt.

One second.

Okay. So the pattern is on the title, testimony of accomplice or codefendant with plea agreement.

Is that what you want?

MS. HOLT: We are asking for codefendant or witness.

THE COURT: You want testimony of?

MS. HOLT: Excuse me. Instead of accomplice for it to

say witness.

THE COURT: You want testimony of witness or codefendant with plea agreement?

MS. HOLT: Correct.

THE COURT: That's what you want.

What's the Government's view? You want accomplice instead of witness?

MR. CUYLER: We want the pattern which reads accomplice.

THE COURT: Yeah, yeah. I'm going to give the pattern. I'm going to give testimony of accomplice or codefendant with plea agreement.

Anything else on -- oh, now -- the Government wants the pattern.

MR. CUYLER: Yes.

THE COURT: So on the rest of it, what does defense want?

MS. HOLT: The --

MS. WILSON: Yeah, we would note, it's just in the title of the pattern. It's not in the actual body of the pattern.

THE COURT: Right. So I have told you what I am going to do on the title.

MS. WILSON: Okay.

THE COURT: Now my question is on the body, because I

can't make heads or tails of your bolding and italicizing, bolding and --

MS. WILSON: I don't like the keys.

THE COURT: It's okay. You just tell me --

So tell me what you want.

MS. WILSON: We want the italicized and we want the underlined stuff out.

THE COURT: Okay. One second.

You want all underlines out. Okay, one second.

Yeah, well, the first underlined sentence, I will strike because that's not pattern and the Government has asked for pattern. And so the defense wants that underlined sentence that starts: I have already instructed you on this. I will strike that, which means the first sentence is the pattern sentence. You must consider some witnesses' testimony with more caution than others. And then we jump to: In this case.

Now, what's defense's position? The Government wants the pattern. So their position is very clear. What's the defense's position on the rest?

MS. HOLT: The pattern does not include co-conspirators. So if the Court is giving accomplice instead of witnesses, then it should read in this case to follow the pattern. The Government has made a plea agreement with the codefendant.

THE COURT: I see. Hang on one moment.

So you want -- you want the full sentence with the underlined and all italics. That sentence that starts: In this case. You want the whole thing? The underlined and the italics?

MS. HOLT: Without the underlined.

THE COURT: Oh, you do not want the underlined. I thought you wanted co-conspirators.

MS. HOLT: No, we don't want co-conspirator.

THE COURT: Okay. One second.

So I will give in this case the Government has made a plea agreement with a codefendant and other accomplices and/or witnesses, striking co-conspirators, that provide for the possibility of a lesser sentence. Striking one of the that's.

MS. HOLT: It think it should say then that.

MR. CUYLER: Actually, Your Honor, once you get to that portion, that's where the Government objects. None of that afterwards is pattern, and there's no authority here supporting it. So I think that where we land is accomplices and codefendant in exchange for their testimony. And that's what you gave in Cox.

THE COURT: Yeah, hang on one second.

Yeah, so what I'm going to do is I'm going to give the pattern, but I'm just going to insert the word accomplices and witnesses.

So here's what it's going to be. In this case, the

Government has made plea agreements, plural, with a codefendant and other accomplices and/or witnesses in exchange for their testimony. Such plea bargaining, as it's called, provides for the possibility of a lesser sentence than the codefendant, accomplice, or witness would normally face, period.

Plea bargaining is lawful and proper and the rules of this Court expressly provide for it. And the rest is pattern as well. There's very little that I changed there. I did take out co-conspirator, as requested by the defendant, and I inserted and normalized accomplices and witnesses in the pattern instruction.

MS. WILSON: Your Honor, the actual body of the pattern instruction does not include accomplice, it includes only codefendant, which is a very different term. Our position is accomplice is guilt assuming. So we would just ask for codefendant or witnesses in the body. We understand that the heading of the pattern says accomplice, but it -- accomplice does not appear in the body. So we --

MR. CUYLER: What's the authority, Counsel?

THE COURT: Yeah, I'm going to give it the way I stated it. I'm going to give it the way I stated it. I am taking out -- I am taking out co-conspirators. I am going to do codefendant and other accomplices and/or witnesses.

MS. WILSON: Can we say alleged accomplices, please?

MR. CUYLER: Your Honor, the Government has an issue

with that. These are people that have signed the agreements and pled guilty.

THE COURT: Yeah, I agree. I'm not going to give alleged. No, I'm going to -- I have stated it. You have preserved it on the specific word. Okay. And the rest is pattern.

Page 11, character evidence.

MR. CUYLER: I don't believe we had any character witnesses testify.

THE COURT: I agree. I think we're striking it, but I just wanted to make sure. The Government wants it struck.

Defense?

MS. WILSON: We think that both the video and Kris Rogers' testimony when Mr. Halverson was laying the foundation to lead and treat her as a hostile witness both provides sufficient character evidence to entitle us to this instruction.

THE COURT: If you point me, this one's easy because it's either in the record or it's not. If you point me to actual character evidence in the record, this is a pattern instruction that's very short. But I don't think -- I don't think Toman did it, and I'm struggling to think that Rogers did it. And you don't have to answer me, you know, right this second, but my ruling is very simple. If there's character evidence in the record, then an instruction is proper. If

there's not, then it's not.

MS. WILSON: There's a video of him taking a bunch of kids out on a boat. That's good character.

THE COURT: No, no, that's not character evidence under the rule. I like that Ms. Wilson is in a good mood to state that. So the defense has my ruling.

MS. WILSON: And Kris Rogers testified I think about him -- I'm trying to find it now -- about him being a family man.

THE COURT: No, that's not character evidence. Family man is something that probably shouldn't even come in the case, but if they didn't object, it is in the case.

MS. WILSON: No, it came in when they were trying to lead her and establish why --

THE COURT: Okay.

MS. WILSON: -- she likes Brett Blackman so much. That's where I think it is. I'm looking for it.

THE COURT: So they got caught by their own witness despite leading. But what I will say is, is that's not character evidence. I know that defense knows what character evidence is. If you can point me to it, you will get an instruction. If there's nothing in the record -- and I think it's 405 is the classic rule of evidence, reputation for honesty and trustworthiness in the community. If you can point me to it, I will give it.

But I'm going to tell you, as of now, I don't see any citation to that kind of evidence. So I'm going to circle that one. And I'm waiting for -- because defense wants it, but I need to see some basis for it. So I'm going to circle it and move on.

Page 12, on or about a particular date.

MR. CUYLER: I mean, so we've got two things going on here. In Cox, you said to prove that the crime occurred on the exact date. But then the pattern says to prove that the offense occurred on the exact date. So I tend to defer to what Your Honor decides on this.

THE COURT: Well, that's, you know --

MS. WILSON: Well, Your Honor, if it wasn't objected to in Cox, it's not --

THE COURT: No, no, I get it, you want the pattern? Is that what you're saying?

MS. WILSON: Defense, yes.

THE COURT: Okay. Defense wants the pattern. Hang on one second.

All right. So we're striking superceding. So pattern is a crime.

MR. CUYLER: No, the pattern is offense, but Cox says crime.

THE COURT: No, I am looking at the pattern. 9.2 says: You will see that the indictment charges that a crime

was committed on or about --

MR. CUYLER: Oh, it's the second sentenced, Your Honor.

MS. WILSON: Yeah, the second sentence.

THE COURT: Okay. So the Government doesn't have to prove that the offense occurred on an exact date. That's the pattern. And the Government wants offense or crime?

MR. CUYLER: I mean, Your Honor --

THE COURT: I'm going to do the pattern --

MR. CUYLER: You said crime and you said crime in both in Cox.

THE COURT: I hear you, I hear you. That might have been proposed and not objected to, but I'm going to give the pattern. I'm giving the exact pattern instruction minus the word superceding in this case, and there's really no disagreement on that.

Okay. 13. Notetaking.

MR. CUYLER: No objection.

MS. WILSON: No objection.

THE COURT: 14. Summary witness testimony. Charts, summaries, based on other evidence. I'm obviously striking the footnote, but other than that, I will hear from the parties.

MR. CUYLER: I believe that this is the same instruction that was given in Cox, so the Government will stand by that instruction.

I believe we will have to fill in that Michael Petron did summaries as we did with Cox, but I think that's our position.

THE COURT: So the Government wants all of these words?

MS. WILSON: The Government wants the underlined.

MR. CUYLER: It stops with themselves. The italicized portion at the bottom we object to.

THE COURT: Okay. So Government objects to the italics.

And what's the defense's position on this instruction?

MS. HOLT: The italics are just a different version --

THE COURT: It's a Third Circuit version.

MS. HOLT: -- of the summaries. Correct.

THE COURT: Yeah.

MS. HOLT: And that's what we would be asking for. I think it more accurately reflects what the Court has already said and that the underlying evidence -- it emphasizes that the underlying documents is the actual evidence, not the summaries.

THE COURT: So one second. Yeah, I mean, they're very similar except for -- the defense is saying, I want the Third Circuit version and also you want the first sentence to tie in to the specific records. That's essentially what the defense is asking for. The issue is, is that I don't think the description of just bank records and Medicare claims data is

all of the underlying evidence for the summaries. Right? There's more than just that, that are the underlying evidence for the summaries. More substantially, the top part is a Fifth Circuit pattern instruction, and I don't know for sure, but it is of -- it is of long age, I know that. I'm not pretending that it's pre-Bonner or anything like that, but it's of long age. So I am going to give the top instruction. I note, so that it is very clear, substantively they're very close and the bottom three sentences -- no. And also -- actually, the Third Circuit instruction, the one sentence is not accurate. It might be a -- the charts are not themselves evidence or proof of any facts. That's not actually right under 1006.

So I'm going to give the top part. The bottom part is not a clear statement of the law. And where it is, it is substantively the same, so I'm going to give the top underlined part, and it's going to largely track the Fifth Circuit pattern instruction, which, by the way, in pieces is what I was giving the jury during the trial without objection on the wording itself.

All right. Page 15. Conjunctively charged counts.

MS. WILSON: Yes, Your Honor. We object to this instruction on due process grounds. I understand that it's a pattern. It is a terribly problematic instruction. I understand how it can be clearly conveyed in a case where the

charges say felon in possession of firearm and ammunition. I have had cases, a case where the jury came back with a question about this instruction, and it made it clear that they had read the instruction as saying they only had to find one of the essential elements. Of course the juries that ask are the ones that -- where the error is not just happens without us knowing. But the troubling thing is the juries that don't ask. This is a case with tons of ands in the indictment, some which mean "and" and some which perhaps fairly mean "or." To the extent that some mean "or," it will be covered in our conspiracy instructions. The conspiracy instructions do, in this case, do all the work that this does.

To throw in a conjunctively charge counts instruction into this case renders the indictment impossibly to read because you start going through it and sometimes and does mean and, and sometimes it doesn't in the indictment. That is just a fact. And in an indictment as complex and as long as this one, we think that this instruction is violative of due process, so we would object.

THE COURT: Okay. You've made your record. It's overruled. The pattern and the underlying case law supporting the pattern instruction is of longstanding in this circuit, some of it even goes back to Fifth Circuit pre-Bonner.

I will also note, and I know that it's like never done in this district, not that I've ever seen. But, you know, in

other districts where this concern voiced by Ms. Wilson is that, well, conjunctively charged things can get confusing, the defense can always clean up in a stipulated indictment the pieces and explicitly have the jury see or the defense never does that for obvious reasons, because it would tighten up exactly what is "or" and what is "and." They don't have to stipulate to a modified indictment. They haven't here. But for all those reasons, the Government is absolutely entitled to -- especially in a case such as this, that conjunctively charged counts can be proved disjunctively. So I'm going to give the pattern instruction. Ms. Wilson has preserved it.

Okay. Page 16. Knowingly, willfully, generally intentional violation of a known legal duty.

MR. CUYLER: The Government objects to 9.1B being given. This isn't a tax or money laundering by structuring case. So 9.1A in its pattern format applies here, and I think that's the language that we have, and it was also given in Cox.

THE COURT: Yeah, so in essence, this is a 9.1A versus 9.1B case.

Why do you get 9.1B here, Ms. Wilson?

MS. WILSON: Your Honor, because it's involved complex reference to the Medicare regulations, which the evidence has shown are confusing, are contradictory, are voluminous. You know, it is certainly comparable to an IRS situation. And I think United States versus Whiteside as well supports it.

And it also says that for crimes where the Government must prove that the defendant had the specific intent to do something the law forbids, the committee recommends B9.1B. That is true of this case the way that it is charged.

MR. CUYLER: Your Honor, there's been no allegation that he violated a Medicare civil rule. This has all been about criminal statutes throughout this trial.

MS. WILSON: Wait, excuse me?

THE COURT: One moment. Let me just catch up.

Yeah, I don't -- so the core dispute, the core proposal by defense is that they want 9.1B because they think that like structuring cases and tax violation cases there is a level of intent here that is analogous to those cases. At its core, this is a wire fraud conspiracy and substantive wire fraud. I don't --

MR. CUYLER: This is health care fraud, Your Honor, I'm sorry.

THE COURT: That's right, which is patterned on the wire fraud statute, the health care fraud statute.

It's a scheme to defraud health care which is modeled on mail fraud and wire fraud. I don't see how the defense gets a structuring or tax fraud level of knowingly and willfully here. The intentional violation of a known legal duty. I don't see that in this case. There's an interesting argument on good faith here.

What's the parties' view on a good faith defense here?

MS. WILSON: Well, Your Honor, just we've proposed one later on. I don't have it in front of me. Our view on 9.1B is that it's a complex regulatory scheme. There has been constant and often conflicting testimony about what these regulations said and did. It is clear from how this case has come out that there is a complex regulatory scheme here. And fundamental to their theory of guilt is a violation of a complex regulatory scheme. That's why it is analogous.

MR. CUYLER: Well, I've got to disagree, Ms. Wilson. For starters, there's not a citation to one regulation in the superceding indictment. There's been no -- other than the Program Integrity manual, which is guidance, I'm not sure what regulation you're referring to. It's been spoken to in the abstract. So I think, at bottom, what we're looking at here is a scheme to defraud Medicare and obviously we've shown examples of what a scheme to defraud looks like, which is separate and apart than a lot of the regulatory frameworks that you've been referring to throughout trial, such as, you know, coverage for bracing under certain circumstance. The jury hasn't -- none of that has been put in front of them. What it comes down to is a scheme to defraud, so I'm not clear on how that would apply here.

MS. WILSON: What has been put in front of them is cooperating witness testimony about what they thought the

regulation said. What also has been put in front of them is what the regulations actually said. Those two things are different. It is clearly complex.

The idea that Medicare regulations are not complex in a case where there's, I think, 12 pages of the indictment describing the regulatory scheme, we think -- we are squarely in B9.1B territory.

MR. CUYLER: What regulation? Cite it.

THE COURT: No, she doesn't have to cite it. She doesn't have to cite it. The core difference between 9.1A and 9.1B comes down to -- with the specific intent to violate a known legal duty versus with the intent to do something the law forbids, that is with the bad purpose to disobey or disregard the law. That's the only difference between the two pattern instructions. In fact -- just one moment.

MS. WILSON: Your Honor, that's what a conspiracy and aiding and abetting counts require.

THE COURT: Just one moment.

No, I'm going to give 9.1A. I'm not giving with the specific intent to violate a known legal duty. I am going to give the 9.1A. I note that the language of the statutes that are charged are different than the structuring statutes and the tax fraud statutes. They're actually all very similar to each other. Probably the best example is Count 6. Count 6 is conspiracy to defraud the United States 371 and make false

statements in connection with health care matters. That would never get -- that would never get that kind of instruction.

I have made my record with respect to Counts 1 through 4. Those are health care fraud counts that are modeled all off of statutes that don't get that instruction. And then that leaves Count 5 -- let me just check Count 5.

Count 5 is their best argument in this Court's view. One second.

MS. WILSON: Your Honor, we would also note that as to all of the counts, their theory of liability as inchoate. And that's what creates the heightened mens rea standard.

THE COURT: Yeah, I don't agree with that, I actually I don't agree with that. But you've preserved it. Let me just think about Count 5.

So I think the question would be along the lines of what Ms. Wilson is asking. And I know it's not charged here, but on a substantive Title 42 count, I just don't know the answer as I sit here as to whether you would get a 9.1B type of instruction on a substantive kickback count. I'm going to check that. I am leaning towards giving 9.1A for all of it, but I just want to make sure on the kickback conspiracy count.

MR. CUYLER: I will say, Your Honor, in other trials in this district, even in the Miami Division where substantive kickback counts were charged, 91.A was given, in my experience.

THE COURT: Yeah, I don't doubt that. I don't doubt

that. But let me just check the law on it. You are going to see my final charge, and you can circle those things. She has certainly preserved it. She wants 9.1B for all of it, and I'm not going to give it except for maybe I've got to take a look at Count 5 and then it becomes an English language kind of thing, if I think it deserves it. But I don't know whether it does or not. Okay. You've given me something to think about overnight.

Just one moment. Okay.

Page 17, deliberate ignorance. Deliberate ignorance as proof of knowledge.

MS. WILSON: Your Honor, the case law is very clear that this instruction can only be given when there's actually evidence of purposeful contrivance. So we object to it.

MR. CUYLER: The Government agrees with giving this instruction as was in Cox, which is the same form, format as well.

THE COURT: What's the best evidence in this record to suggest that the defendant consciously avoided knowledge? In this record. Not Cox.

I mean, Ms. Wilson is correct as far as it goes that the cases say that you've got to have evidence in the record to suggest that a defendant consciously avoided.

MR. CUYLER: I think in the Government's own words, and I can't remember the exact exhibit number, but I was

thinking maybe 1052 where he says: An evaluation is an evaluation. That cuts both ways. One, in concealing what they were doing, but also at the same time, hey, if there's an evaluation in these examination notes, then let's continue on business as usual.

So I think that, you know, on that exhibit alone, of course there's probably others and testimony to pair with it, but I think on that exhibit alone, it warrants this instruction.

MS. WILSON: Your Honor, they just stood up in the Rule 29 and cited that exhibit to establish knowledge, and there was no arguments about deliberate ignorance. That email is not proof of purposeful contrivance in any way.

THE COURT: Well, so I will give you one. There's evidence in the record that the defendant did not put himself on certain companies. Why isn't that evidence of conscious avoidance of what those companies are doing?

MS. WILSON: Even under the Government's theory, their theory is that he had complete control over what it was doing. That the way that evidence has come out is not in any way that he tried to avoid learning. It's come out the opposite.

THE COURT: Yeah, there's no question that the Government has taken the view that he had actual knowledge of red flags. They said that -- they said that to me today. I agree with you there, Ms. Wilson.

I'm going to put it on the Government the same way that I put it on the defense, which is if they get -- on the other instruction.

MR. HALVERSON: Your Honor, I think the best example of this is with the ACC, what happened with ACC. And there's this lengthy history there where the defendant clearly throws this back on compliance and says, well, we don't know what they're doing.

There's emails where they're talking about all these different things that they're going to do to, you know, set forth an action plan, but there's never any, like, true investigation, and there's never any instance where they kick them off the network. That's active avoidance of the reality that fraud is taking place there. And I can almost guarantee that they're going to argue in their closing that he didn't know what was happening there. They tried their best to figure this out, and, you know, regulate the platform. But that is certainly evidence that they were avoiding the fraud that was happening, and that they certainly ignored the fraud that was happening on the network.

MS. WILSON: Again, they can't have it both ways. They stood up in the Rule 29 and said that ACC evidence proves actual knowledge.

THE COURT: So they actually can under the law have it both ways. They are allowed to prove actual knowledge or they

can prove conscious avoidance, which is a substitute for actual knowledge.

MS. WILSON: I understand the law on that point, Your Honor. My point is that their argument on the ACC evidence has never been conscious avoidance, nor does the evidence and the emails that have been introduced tend to show any conscious avoidance on the part of Mr. Blackman. We completely disagree with their summation there that there's some evidence in all of the ACC testimony and email exhibits that shows any, any conscious avoidance of learning anything on the part of Mr. Blackman.

THE COURT: Well, I'm going to, I'm going to -- I think this is very clear. It's the same thing as the character evidence. I'm going to look at it. I'm going to look at the record, and the Government can provide citations in the morning to what it views as conscious avoidance or deliberate ignorance evidence in the record. I think it's the kind of thing where Ms. Wilson is right, it's got to be in the record, clearly, to get the instruction. And if it is, it should be given. If it's not, then it should not be given.

MR. HALVERSON: I mean, Your Honor, I would also point to what Toni De Lanoy stated repeatedly.

THE COURT: I am going to look at her. She is the one that I thought of as well. I have to look at the transcripts. The Government has its homework assignments, as does the

defense. It is pretty simple, though. And to be very clear, if there is evidence in the record, I am going to give the pattern instruction and the defense has already preserved that nothing should be given. Okay.

One second.

Page 18. Both good faith and a good faith defense to willfulness under the Internal Revenue code. It goes on to 19 for a good faith anti-kickback.

Who wants to make sense of this for me?

MR. CUYLER: Well, of course the Government relies on the pattern here, and I'll turn the floor over to the defense.

THE COURT: So the Government has no problem in this case with a good faith instruction along the lines of the pattern. Is that the Government's position?

MR. CUYLER: Yes, Your Honor. Following the pattern in full.

THE COURT: Right. And what you mean by that is the top one, S17.

MR. CUYLER: That is correct, Your Honor.

THE COURT: One second.

Right. So the Government, the Government is conceding, as I think is right, that S17 can be given according to the pattern, and I'm looking at the pattern, and it looks to me that the proposed is the pattern, okay? One second.

Okay. Beyond that, Ms. Wilson, why would S9 or the

italicized anti-kickback version be given?

MS. WILSON: Because it relates to willfulness, specifically, which, again, given the way this is charged under conspiracy and aiding and abetting theories, S9 we're requesting based on the mens rea applicable here, and the kickback one specifically, which was incorporated from United States versus Mallory. So we just think they're more applicable to the charges, and we would ask that these be given.

THE COURT: Okay. One second.

So, first of all, on S9, I'm not going to give S9 because, first of all, it actually incorporates a lot of S17. And stuff that is not incorporated is not part of this case. I'm not getting into any instruction about the difference between intent and motive in this case.

So that takes care of S9. Much of S9 is given in the S17. Now let me just look at the anti-kickback version.

Yes, 17 negates the intent to defraud element. That's clear.

It also negates willfulness. Of course it does. Hang on one second. Maybe I can fashion it.

Yeah, and I note that the proffered anti-kickback version also incorporates large amounts of S17. Here's where I think in an abundance of caution I will tweak the pattern. The pattern starts with: Good faith is a complete defense to a

charge that requires intent to defraud. If the defense wants it, I will say: Good faith is a complete defense to a charge that requires willfulness or an intent to defraud. Because it can negate either. It clearly can. So if you want that requires willfulness or in the first sentence, first of all, I think that would go a long way towards even -- being even more similar in the three versions that you give me.

So what's your view on that?

MS. WILSON: We would like that addition, Your Honor.

THE COURT: So I am going to give S17. And in the first sentence I'm going to say that requires willfulness or intent to defraud. And then the next two sentences are pattern. And then I'm going to say in the third sentence, the Government must prove willfulness and intent to defraud beyond a reasonable doubt.

So I am giving it to you there too. And then the rest --

MS. WILSON: We would ask that the last sentence be taken out. I think it's --

THE COURT: The "but an honest belief," that sentence.

MS. WILSON: Yes.

THE COURT: One second.

MR. CUYLER: No, Your Honor.

THE COURT: No, that's pattern and no. And the Government --

MR. CUYLER: And I think, Your Honor, I will say this --

MS. WILSON: Can I give our argument?

MR. CUYLER: -- and please stop me if you want me to stop raising this, but Gary Cox was tried on very similar evidence for very similar charges, and the Government is hesitant to have, you know, significant changes to the instructions that were given.

THE COURT: I hear you. I think the pattern -- I think the pattern is pattern. I think that I do note that there is authority in Mallory for a good faith instruction in a case involving an anti-kickback offense. And importantly, it is simply a correct statement of the law that a good faith defense can negate either willfulness or intent to defraud. Now, on the last sentence, no. The Government is entitled to the last sentence. That is the balancing of the pattern instruction.

MS. WILSON: Your Honor, just on the last sentence, it's clearly written to apply to Ponzi scheme situations. We don't think that it factually is warranted here.

THE COURT: No, I -- this one is easier for me on this evidence because that sentence can fit evidence that I recognize is in the case.

So I am going to give, with the two tweaks on S17, I'm going to give the pattern of S17. I'm not going to give S9 as

requested for the reasons stated, and I'm not going to give the anti-kickback version of Mallory in full for the reasons stated. So that takes care of Pages 18 and 19.

Page 20, mere presence or association may not infer guilt.

MR. CUYLER: To the extent that Your Honor is inclined to give this instruction, that the Government believes that the same instruction given in Cox should be given here, which is the top portion before the all caps, mere present association, activity suggestion by the defense.

THE COURT: Yeah, one second, and I will hear from you Ms. Wilson. One second.

I'm trying to see what the real difference is between what you both are asking for. One second.

I guess there is so much of it that is so similar. I can't see, Ms. Wilson, what is special about yours.

MS. WILSON: Your Honor, we think it's just more applicable to the charged conduct. This, you know, know or associate or be friendly with a criminal without being a criminal himself. We think that's prejudicial. You know, he was present when -- merely from the fact that he was present when an alleged crime was being committed, again, we think that ours just describes -- it's more in line with the facts as charged here. And again, it's all inchoate and ours takes that into account.

MS. HOLT: And specifically, Your Honor, the Government has elicited from their witnesses that they could not have done what they did without the DMERx software. And this last sentence also a person who has no knowledge of a conspiracy but who happens to act in a way which advances some object or purpose of a conspiracy does not thereby become a conspirator is particularly relevant to that evidence elicited by the Government. That alone -- this is saying that alone is not sufficient, the fact that they -- that the witnesses and alleged co-conspirators were able to do what they did through the use of the platform does not make Mr. Blackman a co-conspirator. And I think this illustrates that and articulates that to the jury, which is a correct statement of the law. And the above one does not articulate it like that.

THE COURT: Yeah, one second.

So, if I understand you, if I strike as the defense has requested, the last sentence of the Government's instruction and insert Ms. Holt's last sentence of her preferred instruction, there would be no objection.

MS. HOLT: We would ask for our objection, Your Honor. I think the --

THE COURT: What would you be objecting to if I did the two things you asked for.

MS. HOLT: Well, we're also asking for our first paragraph, which I think is also applicable to the facts of

this case.

THE COURT: Yeah, but the first paragraph, I mean, you can preserve that, but that is substantively very similar to the first two sentences that I would be giving. I can't look at those and really see much. I mean, I would be giving: You can't infer he's guilty merely from the fact that he is present. You can't infer that he's guilty merely from the fact that he's associating with others who are guilty, and then I would be giving your last sentence. So what did I not give in yours?

MS. HOLT: That they may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of the conspiracy.

THE COURT: Yeah.

MS. HOLT: So that is particularly relevant in this case. There is evidence of conversations and discussion of common aims and interests. And so we think this is saying that that alone, right, these conversations between Gary Cox and Chris Cirri and all of those conversations in emails that the Government elicited does not necessarily establish proof of the existence of the conspiracy. And those are examples specific to this case and a correct statement of the law.

MR. CUYLER: Well, Your Honor, I have to note that the defense's position on this is kind of contrary to their

position on deliberate ignorance. But I also echo what Ms. Holt mentioned regarding Chris Cirri, which I think highlights why that second -- that last sentence that you're considering is not applicable here. Because, frankly, Chris Cirri says: Medicare is busting our chops and is going to generate red flags for us if he continues to say telemedicine. And then Gary Cox echoes that and say: Yes, this is going to be a problem for us, including our own DME, PME Home Health. And then Blackman on that same thread acquiesces to that conduct by omitting telemedicine.

So I think that the last sentence there, you know, grafting that onto what's already there and what's already been given is not applicable or tailored to the evidence.

THE COURT: Yeah, so I'm going disagree with Ms. Holt on the last point. I'm going to give -- I'm going to do what I suggested. I'm going to give the first two sentences of what I gave in Cox.

The fact that I don't add "may have assembled together and discussed common aims and interests," the thrust of the first two sentences does what the defense requests.

Now, the defense requested that the last sentence be struck: A person may know, associate, or be friendly with a criminal without being a criminal himself. They have asked for that to be struck.

With that struck, I will put in the third sentence

of -- sorry, the also a person who has no knowledge of a conspiracy. So I will substitute that sentence in its place because that is doing something different than the first sentences in either version.

So to be clear, I'm going to give: You may not infer that the defendant is guilty of participating in criminal conduct merely from the fact that he was present when an alleged crime was being committed. Similarly, you may not infer that the defendant is guilty of participating in criminal conduct merely from the fact that he associated with other people who were guilty of wrongdoing. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy does not thereby become a co-conspirator.

With those three sentences, I've actually attacked in substance, in this Court's view, every way that the defense has requested. I have struck what the defense has requested. And I think what I have left out does not substantively change three sentences. So that's what I intend to give. I think it's a very, I think it's -- just to be clear, this is a defense instruction. I think that they are entitled to a strong defense instruction, which is why I'm going to give it with kind of belt and suspenders.

Page 21, subpoena power.

MR. CUYLER: We object to this one, and it's also

in -- it aligns with our motion in limine on commenting on who the Government calls. And also there's no authority cited.

THE COURT: I completely agree. 21, subpoena power instruction will be struck for multiple reasons, and there's no authority for it.

Rules of evidence, Page 22.

MR. CUYLER: The Government also objects with this one. No authority.

THE COURT: Anything from defense?

MS. WILSON: Yeah, Your Honor. This case has involved an extremely broad stretching of the co-conspirator exception often over our objection. We have been hamstrung on our ability to respond. So on due process grounds, we think it is fair game, fair trial grounds.

It's true, it's a correct statement of the law. They have gone very, very far, we think, beyond the bounds. We understand the Court has overruled. But even if they haven't exceeded the limits of the exception, we think that they have stretched it far enough that this instruction is warranted in this case.

THE COURT: Yeah, so it's preserved. It's overruled and denied. I'm not giving it for multiple reasons. And I do think it would be very strange if any court were ever to sanction by citing the rules of evidence what a defendant is not allowed to do.

I mean, statements of a party opponent can't come in under the rules of evidence, and I have never seen anything that would ever allow that kind of instruction.

On co-conspirator, I've made my ruling. And I think the last part after the "whereas" is actually not accurate. There are situations where a defendant is allowed to introduce, under the rules of evidence, his own emails and the emails of others. It actually happened in this case under the rules of completeness. But I'm not giving it for multiple reasons. It's preserved and denied.

All right. Absent witness instruction. Page 23.

MR. CUYLER: The Government objects to this one as well, similar grounds to the subpoena power instruction.

THE COURT: Ms. Wilson, do you want to make any more of a record?

MS. WILSON: The case law allows this instruction.

THE COURT: One second. First of all, let's just put aside the authority for a second. When did that happen in this case that the Government failed to call such a witness in this case?

MS. WILSON: I think there have been several cooperators that have been referenced in this case that have not been called.

THE COURT: No, I mean, the fact that there are additional cooperators, and I'm glad I asked the question. The

instruction will not be given. It's formed no part of this case that there is someone out there in the control of the Government that we haven't heard from. There's been nothing I can even remotely think of. In fact, there were objections to things like Herb Kimble, who are clearly not in the control of the Government from even coming into the case. But no, I'm not going to give this instruction. I also don't think it fits the actual -- the evidence and the defenses. But the core problem with this is, is that there's no witness within the control of the Government that isn't being procured. This is the classic where there is a confidential source that then goes in the wind, but the Government has to build their case around that CS. So I'm not going to give it. It's preserved and overruled.

All right. We are down to the offense instructions.

Page 24 and 25 is the introduction. What is the party's position on Page 24 and Page 25?

MR. CUYLER: The Government's position is that of course Your Honor has ruled that you will strike superceding. The only other change that the Government would suggest, aside from following Cox, is that it says willfully conspiring with Brett Blackman. We changed those references to Gary Cox of course. And we would otherwise object to the defense's inclusions in italics.

MS. HOLT: Judge.

THE COURT: Go ahead, Ms. Holt.

MS. HOLT: We're objecting to the underlined portions and the Government is adding things that aren't actually correct and are making more of an argument than what should be appropriate in the jury instructions. So, for example, they said Counts 2 through 4, charge the defendant committed or aided and abetted what are called substantive offenses. It should just be -- the pattern is the counts, count numbers charged that defendants committed what are called substantive offenses, specifically in the description of the offenses.

THE COURT: And then what, you give a separate aiding or abetting instruction, separately?

MS. HOLT: Correct.

THE COURT: Okay. So I think what the defense is saying, and Ms. Holt will correct me, is that she wants pattern on the introduction to offense instructions, striking superseding, and she wants pattern, aiding and abetting. That's the defense's position?

MS. HOLT: As to the later aiding and abetting, I don't know that we had an objection to that, but --

THE COURT: Well, I'm saying because if I give you those two things, I think what you're saying is, if you do that, Judge, then this proposed introduction to offense instruction changes. It just becomes pattern and then we deal with aiding and abetting later.

MS. HOLT: Right.

THE COURT: Okay. One second.

MR. CUYLER: Your Honor.

THE COURT: One second. I'm going to get there.

Okay. I will hear you, Mr. Cuyler.

MR. CUYLER: Yeah, I mean, of course, you know, without having the record directly in front of me right now, I surmise there's a reason why Your Honor drafted the instruction this way as given in Cox, and that's essentially what we have here, except for flipping out Brett Blackman for Gary Cox to make the instruction reflect exactly what happened in Gary Cox. So that is all that the Government wants --

THE COURT: So here's what I am going to do, the defense has specifically objected to the underlying portions of this proposed charge. What I'm going to do is what Ms. Holt just suggested. And by the way, they are totally right that they are not held to the Cox instructions for a host of reasons. They feel that things need to be objected to. And that's totally fair game. So what I'm going to do is, is I'm going to note, and you'll see it, I'm going to follow the B8 pattern instruction. I will insert the count numbers.

I will insert, as the pattern says, the description of the alleged objects of the conspiracy. And the description of the alleged substantive offenses. And I'm going to track the pattern. That's what I'm going to do in this case. That takes

care of most, if not all, of -- much, I should say, of what the defense is objecting to in the underlying portions. I am also striking superceding, and I'm also going to, of course, strike the name Brett Blackman and insert Gary Cox.

MS. HOLT: Additionally with respect to Count 5, the Government, as proposed, included that it was a conspiracy to defraud the United States. It is not. It is just a conspiracy to pay and receive health care kickbacks.

THE COURT: So I will note that. That's totally fair. And when I'm doing pattern revision on Count 5, it will track what is charged, and I believe Ms. Holt stated it correctly. It is conspiracy -- it is conspiracy. I always get this wrong, so let me read it.

Conspiracy to pay and receive health care kickbacks. Right, Ms. Holt?

MS. HOLT: Right, Judge, yes.

THE COURT: Okay. Thank you for that. So I will make all those changes.

That takes us to Page 26.

The actual substantive instruction on Page 26 and 27. Now, just so you know, I will literally say in the header for each one, Count 1 and then conspiracy to commit health care fraud and wire fraud. I will always do the count number in the header.

But seeing no italics, no bold, any objections to

Page 26 and 27?

MR. CUYLER: No objection, Your Honor.

MS. WILSON: Not from defense.

THE COURT: Okay. Thank you.

Page 28. Object of the conspiracy.

I guess this is 28 through 30, and there's a lot here.

MS. HOLT: Your Honor, to start with, the Government was not the pattern. So the italicized should follow the pattern, and that's what we would be asking for.

THE COURT: So, so far Ms. Holt is basically saying, please give us pattern and nothing more.

Anything else, Ms. Holt?

This is on object of the conspiracy charged in Count 1.

MS. HOLT: I don't think so once you take out the Government's nonpattern.

THE COURT: So let me just do 05 -- one second.

To be very clear, I am looking at 051, which is the substantive wire fraud pattern instruction. I am just going to say it plainly. The Government have any objection to giving the pattern instruction here, which is the object of the conspiracy charged?

MR. CUYLER: Well, yes and no --

You want to handle it?

MR. HALVERSON: Go ahead.

174

MR. CUYLER: Well, yes and no, Your Honor. So there's no objection to giving a pattern of what the substantive offense is, but there is no pattern on describing it as an object. So I think Your Honor captured it correctly in Cox by having one of the objects explanation up front, which is how it's been done routinely in other cases in this jurisdiction.

THE COURT: Yeah, I agree. So you are totally right that once I make sure that everything after -- so the sentence needs to be given: One of the objects charged in Count 1 is the federal crime of wire fraud.

Okay. Once I say that in the first sentence, the rest can be pattern.

MR. CUYLER: Yes, Your Honor.

MR. HALVERSON: Well, except, Your Honor, we cannot say a defendant can only be found guilty of this crime if they commit the underlying offense, because that's not what a conspiracy requires.

THE COURT: No, I agree, but here's the thing -- so we're going to cure that problem because on the next Page 31, when we get into substantive health care fraud, health care fraud is also the second object of Count 1. So I can cure this problem through the use of English saying when we get to the substantive for 1347, tracking Counts 2, 3, and 4, I also say and object of Count 1. And I will put it in English how for Count 1 he is charged with two objects. So --

MR. HALVERSON: But, Your Honor, I guess my point is a little different than that. If he does not -- to be found guilty of conspiracy to commit wire fraud, he does not actually have to commit the substantive offense of wire fraud, but that's what this suggests by putting in the pattern language for the substantive offense of wire fraud.

THE COURT: Yes, that I agree with. One second.

MS. HOLT: It's standard, Your Honor, in conspiracy counts to read the conspiracy charge and then read the pattern instruction for the object of the conspiracy.

THE COURT: Yes. Hang on one second.

I see what you're both saying. Hang on.

MS. HOLT: I think to describe it as elements, it takes away the fact that what the instruction says lightens it, lightens the Government's burden.

THE COURT: Yeah, hang on one second.

Yeah, and it's also -- so I'm going to do it not belaboring the point as Mr. Halverson would because in the introduction to offense instruction, at the bottom, it says: Note that the defendant is not charged in Counts 1, 5, and 6 with committing substantive offenses. He is charged with conspiring to commit that offense. I will also give you specific instructions on conspiracy in a moment.

So Ms. Holt is right. The introduction sets out the distinction between conspiracy and substantives and then

Count 1 is a conspiracy, and it will say that, and then it's going to just talk about two objects, the second object of which is also the underlying instruction for the substantive offenses. So it is my job to try to say all that in English.

MR. HALVERSON: Well, Your Honor, then I would just suggest instead of -- so where it says a defendant can be found guilty of this crime, we say a defendant can be found guilty of wire fraud because otherwise it is unclear what crime it is referring to.

THE COURT: Now you're saying on -- on what page?

MR. HALVERSON: Page 28 the second paragraph where it says a defendant can be found guilty of this crime only if the following facts are proved beyond. I would change that to a defendant can be found guilty of wire fraud only if all the following.

MS. HOLT: We would ask for the pattern, Your Honor. Again, this is standard. It's very clearly referring to wire fraud.

THE COURT: I will give you the pattern. I think what a lot of this actually goes to is headers and making sure that the introduction to the offenses reads in English. You will see it.

Let me be very clear, Ms. Holt has asked for the pattern, and I intend to give her the pattern for the substantive offenses. And it is also one of the objects of

Count 1. I am definitely going to do that and then that takes us to Page 31, which is the second object. Let me get this right.

Yeah. So Mr. Halverson, have no fear, what your point is, is that there's only three substantives in the case, and they are all 1347 health care fraud. So that, when we get to Page 31, as per what Ms. Holt asked for, I'm going to give the pattern, and I'm going to make very clear that it is for the substantive offenses of Counts 2, 3, and 4, and it is the same instruction for the second object of Count 1.

And then everything that precedes it is purely an object of the conspiracy charge. It is hard for you guys to see this without actually seeing it in paper, but what I just said basically is, is it is going to be a lot of pattern instruction, because the defense is not objecting to the pattern instruction for Counts 1, 2, 3, and 4, objects and substantive. Okay?

Tell me if that's wrong, Ms. Holt and Ms. Wilson, because if it's not wrong, that takes us all the way through Page 33.

MS. HOLT: Correct. We're asking for the pattern for both the wire fraud and the health care fraud.

THE COURT: Okay. Okay. That takes us to 34.

MR. CUYLER: One second, Your Honor, before we continue on. And you may have already captured it in your

ruling, but in 31 where it says: For each count you're considering that a defendant can be found guilty of this offense, it is proved, essentially substantive counts of health care fraud. Just to make sure that it is cleaned up in regards to the conspiracy that I just want to make sure that sentence didn't slip through.

THE COURT: Right. Or I could do, and you will see it all in English, it could be for the second object of the conspiracy charged in Count 1 and for each substantive count you are considering. I can do that too, but I appreciate you alerting me to it. I need to make it consistent. One second.

Okay. That takes us to Page 34. The defense's favorite instruction of the entire case.

What's the Government's view?

MR. CUYLER: Well, so the Government is of the view that the defense is entitled to some form of this. But what I will say is that the citations here are to cases that I am personally very familiar with. Two of these cases are cases that I was on, so I know the instruction that was given, and it wasn't what was here.

What I can say is that what we proposed to Your Honor I think a while back when you were giving the cautionary is what should be given here. In each of these cases it is the same, right? Whatever civil regulations point that the defense sees fit and then it is always following that. However, the

same evidence may be relevant in determining defendant's state of mind and whether defendants act with criminal intent, and doing so knowingly and willfully. That's what is given in --

THE COURT: So let me give you I think half of what you're asking for. I'm not giving the last proposed sentence, which ends with Footnote 15. First of all, are not categorically precluded, that is confusing and actually it is not a correct statement of the law, that sentence.

Now, on the rest, I am looking at what they proposed. And the Government wants I think on the back of this paragraph because this is what I have been giving, at least in large part, if not entirely in some cases, you want a however sentence on the back of that.

MR. CUYLER: Well, that in conjunction with conforming the rest of it to what has been given. Frankly, Your Honor, I have three, four of these instructions in front me, and it just doesn't look like this.

THE COURT: So I need the Government's -- especially the Government's proposal on the however piece. Because this is all obviously the pro defense piece, which I don't blame them, but -- and they are going to get some version of this, but I need to know the exact language that the Government wants for the however piece.

MR. CUYLER: Okay. So for the however piece, what we would like is: However, Medicare's rules and regulations and

ethical standards and standards of care may be relevant in determining whether the defendant acted with criminal intent that is knowingly and willfully with intent to defraud.

THE COURT: One second. I'm going to read it from Gina. One second.

All right. So let me restate what the Government is requesting after the Number 14, which will not be there. So at the end of that paragraph, they want an additional sentence which would read: However, Medicare's rules and regulations, comma, standards, comma -- sorry. I said that wrong. Rules and regulations, comma, ethical standards, comma, and standards of care may be relevant in determining whether the defendant acted knowingly and willfully and with intent to defraud.

That's what the Government is requesting, right, Mr. Cuyler?

MR. CUYLER: That in addition of deleting the even if you find. That has not been given in this jurisdiction. And I think also it needs to be cleaned up as to what we're identifying here because we have civil rules and regulations and then websites and policymake- -- what exactly is it that the defense wants here? I mean, Your Honor, we have several examples of plain instructions of how this is given and right now this is a hodgepodge of several different --

THE COURT: Well, I see the thrust of what they want. I think you're right --

MR. CUYLER: I do too.

THE COURT: -- that some of this can be cut.

Ms. Wilson, here's what I am proposing for now, and then we will talk about the parts that I think I know you're going to disagree with. But from the word you to start, all the way down to medical malpractice, period. Okay? I'm going to give all of it except policies posted on websites and manuals are not evidence of a crime and cannot be used as such.

MS. WILSON: Oh, no, we would object to that because they introduced policy manuals. They introduced testimony about videos Dr. Hoover posts on the website, which, by the way, are not the Medicare regulations. And so we would strongly object.

They introduced an exhibit that said: Fraud may take the form of, with a series of lists that was a page from the Medicare policy manual that they didn't lay any foundation that Toni De Lanoy had specifically ever read that page. They certainly didn't lay any foundation that Mr. Blackman had read that page. So if they want their proof to include something written by who knows who at Medicare that who knows who, who's actually charged as a co-conspirator in this case ever saw, the evidence in the case shows nobody, then we are entitled to this instruction.

THE COURT: No, I don't agree with that. I know you're entitled to this -- to the thrust of this instruction,

but the sentence: Policies posted on websites are not evidence of a crime and cannot be used as such. No, actually -- I mean, first of all, it misstates the evidence. If someone testifies, "I know that because rules are posted." And then they say, "And we didn't follow the rules," that is evidence of the case, and it is not a correct statement of the law to say if they're posted, that's not evidence of a crime. That's, frankly, a mischaracterization of the evidence, and it's not an accurate statement of the instruction that you want, which is clearly the rest of it. The rest of it I'm going to give, which is from "you have heard testimony" all the way down until "standards of care is not a crime." Then I am striking that next sentence. And then I am going to give the next two sentences. This is not a civil case. Mr. Blackman is not on trial for civil or regulatory violations or for medical malpractice.

Now, I strike the next sentence and then I give the following sentence: A defendant cannot be convicted of a crime merely for breaching policy guidance, rules, regulations, civil statutes, ethical standards, or standards of care applicable to his conduct. That is well within the thrust of what you're asking for.

So I know you disagree with my struck sentence about policies posted on websites and manuals. You preserved that, but I'm not convinced at all that that's accurate, fits with

the case or a correct statement of the law. Because you are saying you can't use it as evidence, and I don't think that's right.

Now, having said that, any other objection to what I said I will give?

MS. WILSON: Sorry. So you're proposing to end it at medical malpractice and then take out the next two -- the two sentences ending in Footnote 14 and Footnote 15.

THE COURT: No, I will give you -- so it goes: Or for medical malpractice. And then the next sentence that I will give is: A defendant cannot be convicted of a crime merely for breaching policy, guidance, rules, regulation, civil statutes, ethical standards, or standard of care applicable to his conduct. I will give you that.

And then I'm going to strike your last sentence that however -- excuse me, that where regulations and administrative authority do not clearly prohibit. That I'm striking. And then the only thing that's left to talk about is Mr. Cuyler's sentence, which we haven't talked about yet. But before we do, any objection?

MS. WILSON: I mean, we would just renew our prior to the language proposed.

THE COURT: Okay. That's fine. You've done that.

MS. WILSON: And to Mr. Cuyler's suggestion, we don't think this is the case where specifically telling them to use

it for intent is appropriate. It did not come in specifically for that purpose.

THE COURT: You want me to tell them that they can use it as evidence to determine whether the Government has met their burden to prove the elements of the crime beyond a reasonable doubt? You want it more applying to everything?

MS. WILSON: It may be relevant.

THE COURT: I mean, they get, they get to have it in the case as evidence. And, quite frankly, that sentence that Mr. Cuyler said is more focused because it's saying you can use it only for knowingly and willfully and with intent to defraud.

MS. WILSON: Just brief moment to confer, Your Honor.

THE COURT: Of course.

MS. WILSON: If you're not ending tonight, could we maybe tomorrow take --

THE COURT: I want to know your view on this instruction. I have to make the instruction.

MS. WILSON: I understand. I just didn't realize we were getting through everything tonight.

We object to intent being included in the however.

THE COURT: So if I say: May be relevant in determining whether the Government has proved the elements of the charged crimes beyond a reasonable doubt, you want it across the board instead of?

MS. WILSON: I mean, what is it relevant for I

185

think is --

THE COURT: It's relevant for all of it. Mr. Cuyler's proposal is actually saying it may be relevant in this focused way.

MS. HOLT: Can you read the Government's proposal?

THE COURT: Sure. So it would be: However, Medicare's rules and regulations, ethical standards, and standards of care may be relevant in determining whether the defendant acted knowingly and willfully and with intent to defraud. That's the proposed sentence.

MS. WILSON: So we would propose: You may consider it, but with more caution than you would other evidence given what I have just said, or something to that effect.

THE COURT: Well, I'm not going to give them more caution, but you're not objecting to the focused versus the broader.

MS. WILSON: No, we are objecting to the focused.

THE COURT: Okay. You would accept it broader, but not focused.

MS. WILSON: We would maintain our objection to the broader based on our position of relevance at all, but I think that we don't want to draw attention to his intent based on lack of foundation. So we would object to both, but . . .

THE COURT: Okay. I will, I will work on it.

MR. CUYLER: Were you turning back to the Government?

THE COURT: Go ahead.

MR. CUYLER: So, Your Honor, two things. I think you originally said that the instruction was going to read as the defense have it from the: You have heard to the standard of care is not a crime. You are striking the policy posted and then you've got Mr. Blackman is not on trial for civil or regulatory violations of medical malpractice. We specifically asked for this even if and where regulation to be stricken.

THE COURT: Even if you find any conduct was not allowable under Medicare's policies, that is struck.

MR. CUYLER: Right, right, right, but that entire, down to Footnote 14 and 15 struck, and then we put in the however language. That is what the Government was proposing.

THE COURT: Yeah, I don't agree with that. I agree that I am being redundant in the defendant's favor, but I think in a case such as this, I think it is entitled to be clear beyond peradventure. I'm striking the front half, the even if clause. But the rest of it, I think it is important that a jury understand that if they think that he violated every rule, regulation, civil statute or standard of care in the book, he cannot be found guilty of a crime. And that's what that does. It does the flip of what the previous two sentences do, and I think he is entitled to that.

Okay.

MR. CUYLER: Now in terms of the however, Your Honor,

what I really want to make clear, because what I'm concerned of, what is happening here is that what has been showed in the Program Integrity manual is being misconstrued.

THE COURT: I'm not buying that.

MR. CUYLER: Because what I want to make clear, Your Honor, what was shown is not something just --

THE COURT: I agree. What the Government is entitled to after the defense gets the thrust of this instruction, which I am giving, is you are entitled to what I have been doing throughout the case, which is that everything that I just said is true; however, it is also true that this evidence can be used by the jury to determine whether the -- and this is the point, that the defense right now doesn't even want it focused on intent, so I'm now going to work overnight and spread it more broadly.

But you are entitled to that as evidence in the case. And I will work on the language, but I thought that your proposal, Mr. Cuyler, was what, to your credit, is what kind of a limiting instruction does, which is you actually pointed it towards intent. But the defense doesn't want that.

All right. Page 35. The role of private contractors. The Government doesn't want this, right?

MR. CUYLER: No.

THE COURT: I see no authority for it in law, Ms. Wilson.

MS. WILSON: It's true.

THE COURT: It's not exactly true the way you state it. I'm not giving it. There's no authority for it. The use of an international call center -- and just to be clear, the role of private contractors and the use of an international call center, these are arguments that are properly put before a jury, but they're not statements of law.

The Government doesn't want use of an international call center, correct?

MR. CUYLER: Right. We object.

MS. HOLT: Your Honor, with respect to that, the Government at one point elicited testimony the use of an international call center violated Medicare regulations. This is indeed a correct statement of the law. There is not a Medicare regulation that says that. The Government elicited evidence about that. This is not covered by another instruction, and we're asking for it. We think it's relevant based on -- it is not argumentative. It is a statement that there is not a regulation despite the Government eliciting evidence that there was.

THE COURT: I don't think that the Government anywhere in the record did what you just said they did, which is literally you said they elicited testimony that the use of an international call center violated the regs. If they did that, and if they would dare do it in a closing statement that way

and you stood up, I would sustain that. That's not -- that doesn't mean you get an instruction from a Court as to everything that is allowed by a reg or is not allowed by a reg, and that's what you're asking for here. I'm not going to give it.

I do take Ms. Holt seriously in that if the Government would suggest something that blanket, and I don't think they did in this case, but if they did, that would be objectionable. And they're not allowed to do that. The point is just because they're not allowed to do that, doesn't mean you get a legal instruction from a judge. There's all kinds of things that people are allowed to do and are not allowed to do.

MS. WILSON: Your Honor, Dr. Sullivan said -- Mr. Cuyler asked: Medicare does not --

She testified: Medicare does not allow the use of overseas call center. They have to be US-based.

THE COURT: That's right. And then what did she say?

MS. WILSON: The question was: In your experience, does Medicare conduct its beneficiaries for foreign centers to call beneficiaries.

The answer: No, it is not allowed to use foreign call centers with Medicare patients.

I objected.

And then: So, in your experience, Dr. Sullivan, how, if at all, would it be misleading for someone from an overseas

call center to represent that they're calling on behalf of Medicare?

THE COURT: That is very different than what Ms. Holt started with.

MS. WILSON: The prior statement was they're not allowed. It's the prior statement.

THE COURT: Here's the point. The fact, even if this Court blows an objection, which is what you're suggesting, even if I did that, even if I'm -- even if you're correct, that still is not authority for why in every case as to what a Medicare regulation prohibits or allows that you get a statement from me about that. That's not, that's not accurate. I'm not giving the international call center instruction.

I think there -- let me do one other thing for you.

The Government, it's a yeoman's effort, but I'm not giving Pinkerton liability. The Government knows me well enough by now that they're not surprised that I'm not giving Pinkerton liability. That's Page 39.

On Page 37, the witness testimony regarding fraud instruction, which starts with: You should not give credit to a witness's claim that certain conduct constitutes fraud. I'm not giving this instruction. It is -- I would never give anything that says you should not give credit to what a witness says. That's for lawyers. So I'm not giving Page 37.

On aiding and abetting on Page --

MS. WILSON: Would Your Honor consider giving something -- there's been a lot, a lot of witnesses saying this violated the Anti-Kickback Statute, this was a kickback, this was fraud. That's what we were getting at with this one.

So if we could start with: You have heard testimony from witnesses who aren't lawyers. You know, that they -- their conduct or something. Something along the lines of: I give you the instructions.

THE COURT: Yeah, I have given that in this case contemporaneously, and what that really points to is the civil regulatory. And what the defense has done in this case, anytime uses the word "kickback" or any time uses the word "fraud" to raise an objection, I have made my record on that. It has been way -- it has been inaccurate and overdone in this Court's view by the defense.

But what I have done is say very clearly throughout the case, when someone says what they think the rules required, which is why they acted a certain way, I have told them: I will give you the law at the end of the case. And one of the things I'm going to give them is a very favorable civil regulatory instruction. So I'm not going to give Page 37. I am going to pattern Page 38 after -- this is aiding and abetting. The pattern instruction, we talked about that. I'm not giving Page 39.

MR. CUYLER: Your Honor, I understand you're trying to

get towards the end of the day, but that's something the Government feels very strongly about.

THE COURT: I know you feel strongly about it. Mr. Halverson and Ms. Burns felt equally strong about it in the Cox trial. I'm not giving a Pinkerton instruction.

MR. CUYLER: But it was given in Cox.

THE COURT: No, I don't believe it was. If it was, it was without objection. And it's been objected to in this case. I would not give a -- I would not give -- I don't know if it even was. I don't like Pinkerton instructions, unless they're really kind of special to the case. And I think it would be inappropriate to give it in this case. Given the way this is charged, I'm not going to give a Pinkerton instruction. I appreciate the Government's effort.

The rest I'm going to have to get to you guys in the morning because it's -- you know, Gina is a human being, and I want to make sure the CSO can get home too, and we're going to start at 8:30 so we can go through this and finish it and then I can give you fresh charges.

Let me say a couple of things and then I'm going let everyone go home, and we will finish the charge tomorrow. There was not a proposed verdict form provided in this case. All I have is the Government's. And so I'm going to be working off the Government's as part of my charge in the morning. That is at ECF 376. So as part of tomorrow, you can take a look at

that, but so far that's all I have.

MS. HOLT: I can email my proposed, Your Honor.

THE COURT: So do that, and that will be part of my homework assignment.

Next, so that the parties understand when they are giving closing arguments, so I don't have to interrupt them. Mr. Halverson has heard this and Ms. Wilson hasn't, so I want to make sure that it's fair. As long as you put a whole charge down on an ELMO or on a screen, you can then pick out the two sentences that are favorable to you. In other words, you are free to use my charge in your closing, but don't cherry-pick it in your closing. If you feel like, yeah, but, Judge, I can't say whole paragraphs every time I talk about the law, then at a minimum make sure that before the jury is an entire page, and they see that it goes on to a second page, if you just want to talk about the sentences that you feel strongly about, you should be holistic on my charge, in other words. As long as you are, I understand that I don't expect everybody to read entire pages, but I want the jury not to be misled by powerful closing arguments reading only a sentence or two, which is really part of a page and a half. All right. So I have said that.

So the Government knows, and it is implicit in what I said this afternoon, it is 2 hours with 20 minutes max being the rebuttal. But if the Government uses less than an hour and

40 minutes in its main summation, they may have the 20 minutes. They are not penalized in their rebuttal by being short in their main summation. I wanted to make sure to say that so they're not blindsided. Rebuttals should not be dominant, which is why I'm not going to let them rob from the main to pay and get paid in the rebuttal. I wanted to make sure to say that.

I give five-minute warnings, and I give one-minute warnings. And then I really say: It is time to go. I say that for your benefit as well so that you can adjust accordingly.

The rest is my homework assignment. I think the only other thing that I want to say that I said at the very start of the case is clean laptop or hard copies need to be blessed and ready to go, you know, altogether, that means defense and Government exhibits all going in at once. So you should confer with each other on that. They're going to get a copy of a redacted indictment. They're going to get a copy, at least one copy, probably. I will give them multiple copies of the charge itself. They're going to get the evidence and then they're going to get a separate standalone verdict form in addition to the charge. Now you know what goes back.

I hear no objection. I thank the attorneys and everyone for working so hard. I will see everyone at 8:30. Have a nice evening.

(Proceedings recessed at 7:04 p.m.)

C E R T I F I C A T E

I, Gina Rodriguez, Federal Official Realtime Court Reporter, in and for the United States District Court for the Southern District of Florida, do hereby certify, pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter, and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

May 11, 2026

/s/ Gina Rodriguez
Gina Rodriguez, RPR, CRR, CRC
Federal Official Court Reporter
299 East Broward Boulevard
Fort Lauderdale, Florida 33301
gina_rodriguez@flsd.uscourts.gov

**BY MR. HALVERSON: [20]** 4/9 4/14 5/7 5/23 6/14 7/17 8/7 8/21 8/25 9/7 9/22 10/7 10/24 11/7 12/9 13/12 13/25 93/10 94/5 95/16
**BY MS. HOLT: [79]** 15/2 15/20 17/13 18/2 18/8 19/2 30/25 31/10 33/14 35/10 37/2 38/1 43/2 46/10 46/24 47/8 47/23 48/23 50/6 51/2 51/15 52/8 52/18 53/1 53/9 53/22 55/3 55/18 56/1 56/13 57/7 57/23 59/3 62/1 62/21 63/17 72/14 73/20 75/20 76/19 77/10 78/18 79/1 79/10 79/20 80/3 80/10 80/16 80/21 80/25 81/5 81/9 81/14 81/18 81/22 82/1 82/5 82/9 82/13 82/17 82/21 82/25 83/5 83/9 83/15 84/2 84/11 84/17 85/3 85/17 86/12 87/11 88/10 89/11 90/1 91/6 92/4 96/20 97/11
**MR. CUYLER: [72]** 128/22 129/3 130/16 130/20 130/24 132/16 132/18 134/17 134/25 135/4 135/8 135/12 135/17 135/21 135/25 136/15 136/20 138/8 138/15 140/15 141/19 141/25 142/8 144/7 144/22 145/2 145/8 145/10 145/18 145/23 146/7 149/14 150/5 150/16 151/10 152/8 153/22 154/15 154/24 158/10 158/15 158/19 160/23 161/1 161/4 162/6 164/24 166/25 167/7 168/12 169/18 171/3 171/6 173/2 173/23 174/1 174/13 177/24 178/15 179/14 179/24 180/16 181/1 185/25 186/2 186/11 186/25 187/5 187/23 188/10 191/25 192/6
**MR. HALVERSON: [83]** 4/6 4/12 4/24 5/5 5/20 6/7 6/10 7/2 8/1 8/11 8/23 9/5 9/14 9/20 10/5 10/14 10/20 11/5 11/25 12/7 13/10 13/18 13/23 14/22 37/24 42/18 42/20 42/22 61/19 62/8 62/13 62/16 63/13 68/4 68/23 69/15 69/23 70/24 71/15 75/22 76/1 77/6 77/24 86/9 87/24 90/18 93/7 93/21 93/24 94/23 95/5 95/7 95/9 96/16 99/8 100/5 100/10 101/19 107/5 107/8 107/11 107/23 108/4 110/20 110/23 113/3 115/5 123/22 124/11 124/14 124/16 125/19 127/21 129/24 133/5 137/2 156/4 157/21 173/25 174/14 175/1 176/5 176/11
**MS. GILBERT: [1]** 83/13
**MS. HOLT: [138]** 5/2 6/3 6/8 7/9 8/3 9/16 10/16 12/3 13/20 15/14 15/17 17/11 18/1 18/5 19/1 30/20 30/22 33/11 34/24 43/1 46/8 46/20 47/6 47/18 48/22 50/3 50/25 51/13 52/6 52/17 52/24 53/8 53/16 54/24 55/14 55/24 56/11 57/6 57/14 57/19 61/12 61/16 61/20 61/24 62/17 65/11 66/18 67/8 70/1 70/6 70/15 71/3 71/9 72/13 75/18 76/3 76/6 76/12 77/21 78/9 78/17 78/24 79/8 79/19 80/2 80/8 80/15 80/20 80/24 81/4 81/8 81/13 81/17 81/21 81/25 82/4 82/8 82/12 82/16 82/20 82/24 83/4 83/8 83/12 83/14 83/23 84/16 85/1 85/13 86/11 87/6 87/8 87/21 88/3 90/19 90/21 91/2 91/25 93/2 93/4 96/18 98/20 98/22 99/11 128/6 137/9 137/23 137/25 138/4 138/18 139/20 140/5 140/8 140/14 146/12 146/14 146/16 163/1 163/20 163/24 164/11 164/16 169/25 170/2 170/13 170/19 171/1 172/5 172/16 173/7 173/15 175/8 175/13 176/16 177/21 185/5 188/11 193/2
**MS. WILSON: [100]** 99/23 100/3 100/25 101/5 114/20 114/23 115/1 115/10 116/20 117/21 117/24 118/4 118/10 119/3 120/17 123/10 124/4 124/20 125/6 125/20 126/5 128/7 128/20 129/6 129/8 130/17 131/2 131/5 131/7 131/10 131/13 131/16 132/12 133/4 134/7 134/18 135/1 135/9 135/11 135/16 135/22 136/3 136/7 136/13 138/19 138/24 139/3 139/6 141/12 141/24 142/13 143/2 143/7 143/13 143/16 144/13 144/17 145/4 145/19 146/6 147/22 149/21 150/8 151/2 151/24 152/16 153/9 154/12 155/10 155/18 156/21 157/3 159/2 160/9 160/18 160/21 161/3 161/18 162/17 167/10 168/16 168/21 173/3 181/9 183/6 183/21 183/24 184/7 184/12 184/14 184/18 184/25 185/11 185/17 185/20 188/1 189/13 189/18 190/5 191/1
**THE COURT: [320]**
**THE COURTROOM SECURITY OFFICER: [5]** 64/1 72/6 100/20 125/24 127/13
**THE DEFENDANT: [16]** 116/7 116/16 117/3 117/12 121/5 121/9 121/12 121/15 121/17 121/21 122/2 122/6 122/11 122/16 122/19 123/6
**THE DEPUTY CLERK: [2]** 70/25 115/6
**THE WITNESS: [10]** 7/7 7/13 31/6 34/25 35/8 36/21 36/24 37/1 95/2 95/15

**$**

**$150 [1]** 109/11
**$164,000 [1]** 85/20
**$202 [1]** 94/9
**$202 million [1]** 94/9

**.**

**.005 [3]** 24/23 24/24 25/2
**.005 percent [1]** 25/2
**.05 [2]** 24/19 24/25
**.05 percent [1]** 24/19
**.3 [2]** 51/23 51/24
**.3 percent [2]** 51/23 51/24

**/**

**/s [1]** 195/14

**0**

**0358 [5]** 78/20 79/4 79/11 79/21 80/5
**05 [1]** 173/17
**051 [1]** 173/18

**1**

**1 billion [2]** 27/10 27/22
**1 percent [2]** 25/4 51/24
**1.045 billion [1]** 96/10
**1.045 million [1]** 95/22
**1.4 [1]** 92/20
**1.4 million [1]** 84/5
**1.45 [1]** 95/22
**1.5 million [1]** 92/20
**10 [9]** 100/18 114/20 115/3 123/20 124/4 127/17 129/19 129/22 136/25
**10 minutes [1]** 70/23
**100 percent [2]** 40/7 68/18
**100,000 [1]** 82/14
**1003 [1]** 109/5
**1006 [3]** 88/1 113/24 147/13
**101 [3]** 18/4 18/4 81/25
**1035 [3]** 104/16 105/22 113/21
**1048 [1]** 102/19
**1051 [1]** 113/21
**1052 [4]** 104/2 111/16 113/21 155/1
**1059 [2]** 105/19 113/21
**1061 [1]** 102/19
**107 [3]** 46/8 47/7 48/8
**107,000 [1]** 80/18
**1070 [1]** 102/19
**1076 [1]** 103/12
**1080 [1]** 105/23
**10:30 [3]** 123/25 126/15 127/5
**10:30 start [1]** 125/5
**10:45 [2]** 126/16 127/11
**10:45 and [1]** 127/5
**11 [5]** 1/5 79/2 125/8 142/7 195/14
**11 o'clock [3]** 125/10 126/16 127/5
**110 [4]** 5/22 6/7 6/12 6/13
**111 [5]** 7/19 8/1 8/5 8/6 106/2
**1111 [1]** 104/19
**112 [15]** 42/3 42/7 42/16 43/5 44/1 44/25 45/18 93/17 93/19 93/20 93/23 95/9 95/12 96/12 96/13
**1120 [1]** 102/20
**1123 [1]** 102/20
**1127 [1]** 102/20
**113 [1]** 50/4
**1130 [1]** 102/20
**114 [1]** 50/25
**115,000 [1]** 81/6
**1152 [1]** 110/3
**1156 [1]** 102/20
**1158 [2]** 104/22 106/4
**117 [1]** 17/12
**118 [1]** 51/14
**119 [2]** 52/7 82/4
**11th [1]** 6/22
**11th Circuit [1]** 118/11
**12 [1]** 144/6
**12 pages [1]** 152/5
**120 [1]** 52/17
**1221 [3]** 102/24 103/2 103/2
**123 [6]** 4/13 4/24 5/4 52/24 52/25 52/25
**123,000 [1]** 79/24
**1236 [2]** 51/19 52/1
**1245 [1]** 118/11
**125 [1]** 82/8
**125,000 [2]** 82/6 83/20
**1252 [1]** 118/12
**126 [4]** 9/6 9/14 9/18 9/19
**127 [4]** 10/6 10/14 10/18 10/19
**129 [1]** 53/8
**13 [3]** 1/10 80/2 145/17
**131 [1]** 82/12
**1347 [2]** 174/23 177/6
**137 [1]** 53/17
**137A [5]** 11/6 12/1 12/4 12/6 53/20
**138 [8]** 13/11 13/18 13/21 13/22 54/24 55/1 55/1 55/1
**139 [3]** 56/11 56/17 78/25
**14 [4]** 145/20 180/7 183/8 186/12

**1**

**1400 [3]** 1/15 1/19 8/20
**148 [1]** 61/12
**149 [8]** 61/25 62/11 62/19 73/22 77/1 82/16 83/25 91/18
**15 [4]** 147/21 179/6 183/8 186/12
**15 minutes [8]** 63/25 64/5 100/18 114/20 115/3 127/18 129/19 129/23
**150 [1]** 54/5
**152 [7]** 86/11 88/23 89/13 89/16 89/24 90/3 91/8
**152,000 [1]** 81/23
**153 [3]** 90/11 90/21 91/4
**155 [2]** 82/20 92/1
**159 [12]** 87/8 87/9 87/22 87/25 88/7 88/8 89/14 89/15 89/24 90/6 91/8 92/14
**16 [1]** 149/12
**161 [1]** 82/24
**17 [2]** 154/10 159/18
**173 [1]** 83/4
**18 [2]** 158/6 162/3
**18,653,888 [1]** 46/3
**1800 [1]** 6/25
**187 [1]** 90/12
**19 [2]** 158/7 162/3
**197 [1]** 83/8
**1:19 [2]** 1/6 4/1
**1:23-CR-20271 [1]** 1/3
**1:40 plus [1]** 125/2
**1st [1]** 77/17

**2**

**2.8 million [1]** 83/10
**20 [3]** 123/2 125/2 162/4
**20 minutes [3]** 125/2 193/24 194/1
**20,000 [1]** 80/22
**200,000 [2]** 80/5 82/10
**20005 [2]** 1/15 1/19
**2016 [2]** 77/17 85/9
**2017 [3]** 12/13 14/5 14/14
**2018 [6]** 12/14 12/16 12/18 14/21 54/4 118/11
**2019 [5]** 5/12 6/18 8/15 8/17 77/18
**202 [1]** 45/19
**202 million [3]** 45/20 95/22 96/25
**2020 [1]** 85/10
**2026 [2]** 1/5 195/14
**20271 [1]** 1/3
**205,000 [1]** 80/6
**208 [3]** 42/9 44/3 45/3
**209 [2]** 83/12 83/14
**21 [5]** 5/14 51/19 80/8 166/24 167/3
**22 [1]** 167/6
**22,000 [2]** 79/15 79/16
**223 [1]** 83/19
**227 [1]** 1/8
**228 [1]** 103/1
**23 [2]** 36/16 168/11
**233 [1]** 103/8
**235 million [1]** 96/2
**236 [1]** 103/9
**239 [1]** 103/9
**24 [2]** 169/16 169/17
**25 [2]** 169/16 169/17
**25 minutes [1]** 123/2
**25,000 [1]** 81/2
**250,000 [1]** 83/2
**252 [1]** 103/10
**25th [1]** 14/21
**26 [3]** 172/19 172/20 173/1
**27 [3]** 80/15 172/20 173/1
**270 [1]** 15/4
**270,000 [1]** 15/4
**275,000 [1]** 15/5
**27th [1]** 14/14
**28 [5]** 5/12 173/5 173/6 176/11 195/7
**284 [1]** 5/13
**28th [1]** 14/5
**29 [16]** 56/5 101/1 101/9 101/13 101/18 113/8 113/11 113/16 114/1 114/2 114/4 114/14 114/16 114/17 155/11 156/22
**2900 [1]** 8/19
**299 [2]** 2/12 195/15
**2:40 [1]** 64/3
**2:51 [1]** 71/1

**3**

**30 [2]** 123/20 173/6
**30,000 [1]** 80/13
**303 [4]** 46/16 46/20 47/2 107/12
**305 [2]** 107/6 107/15
**306 [1]** 107/18
**31 [4]** 174/19 177/2 177/7 178/1
**3100 [1]** 12/19
**312 [1]** 104/12
**314 [1]** 104/13
**320 [17]** 34/17 35/15 35/17 35/25 41/23 41/23 42/3 42/15 43/3 44/1 45/1 45/18 51/8 97/4 97/15 98/3 98/3
**320 sample [1]** 97/12
**33 [2]** 80/20 177/20
**33128 [2]** 2/4 2/8
**333 [1]** 104/12
**33301 [2]** 2/13 195/16
**34 [2]** 177/23 178/12
**346,000 [2]** 9/24 51/20
**347,000 [1]** 11/1
**35 [1]** 187/21
**35,000 [1]** 12/13
**350,000 [1]** 82/18
**360 [2]** 63/2 74/2
**37 [3]** 190/19 190/24 191/21
**3700 [1]** 6/25
**371 [2]** 128/1 152/25
**376 [3]** 77/24 78/15 192/25
**376-page [1]** 78/6
**38 [1]** 191/22
**39 [4]** 80/24 80/24 190/18 191/24
**39 million [2]** 91/10 91/21
**3:01 [1]** 71/1
**3:03 [1]** 72/8
**3:50 [1]** 100/22

**4**

**40 [3]** 2/3 2/7 194/1
**40 million [2]** 15/7 15/24
**40,000 [1]** 81/19
**400,000 [2]** 82/22 83/16
**403 [2]** 86/10 131/7
**405 [1]** 143/23
**411 [2]** 13/7 47/9
**42 [1]** 153/17
**420 [10]** 24/17 24/19 25/8 25/12 29/9 29/13 29/18 30/3 32/5 45/12
**429 [2]** 47/19 55/15
**436 [2]** 13/8 47/9
**437 [3]** 21/12 50/10 102/8
**441 [3]** 21/13 50/10 102/8
**456,000 [1]** 86/5
**46,000 [1]** 79/14
**47 [1]** 14/19
**47 percent [1]** 10/22
**4:14 [1]** 115/7
**4:25 [1]** 115/7
**4:29 [1]** 118/6
**4:46 [1]** 118/6
**4th [1]** 77/17

**5**

**50,000 [1]** 81/15
**52.1 million [9]** 86/15 86/22 86/24 88/20 90/3 90/7 91/7 92/11 92/14
**53 [1]** 81/4
**57 [1]** 14/16
**58-page [1]** 130/2
**59 [1]** 81/8
**5:00 [1]** 127/15
**5:03 [1]** 129/25
**5:12 [1]** 129/25
**5th [1]** 8/15

**6**

**6,134 [1]** 5/13
**6.9 [2]** 63/4 74/4
**630 [6]** 94/22 94/23 94/24 94/25 95/11 95/13
**635 [1]** 102/10
**65,000 [1]** 81/10
**669,000 [2]** 84/24 92/23
**68 [2]** 17/19 18/16

**7**

**700,000 [2]** 36/3 36/4
**71 [1]** 81/13
**713,000 [2]** 24/7 24/19
**715 [9]** 75/17 75/25 76/1 76/5 76/14 76/17 77/11 77/16 79/9
**75,000 [1]** 82/2
**750,000 [1]** 83/6
**753 [1]** 195/7
**78 [1]** 17/21
**7:04 [2]** 1/6 195/1

**8**

**8.4 million [5]** 62/22 63/4 73/22 74/4 84/4
**832,000 [2]** 85/23 86/5
**89 [2]** 14/6 81/17
**896 [1]** 118/11
**8:30 [1]** 194/24
**8:30 so [1]** 192/18
**8th [3]** 1/14 6/18 8/17

**9**

**9.1A [6]** 149/16 149/18 152/10 152/19 152/21 153/20
**9.1B [8]** 149/14 149/19 149/20 150/11 151/3 152/11 153/18 154/3
**9.2 [1]** 144/24
**90 minutes [1]** 124/18
**91.A [1]** 153/24
**94 percent [1]** 10/1
**95 [1]** 81/21
**95 percent [2]** 45/23 61/4

## A


**abetting [8]** 152/17 159/4 170/12 170/17 170/19 170/25 190/25 191/23
**ability [3]** 64/17 124/2 167/13
**able [11]** 63/8 63/18 68/25 69/14 72/25 74/11 84/8 86/7 105/6 114/23 163/10
**about [162]** 4/11 5/14 5/16 7/13 15/7 15/9 15/24 17/14 19/3 19/8 19/8 20/12 21/4 21/19 23/9 23/20 23/21 23/22 23/23 24/7 24/19 27/2 27/4 27/9 28/25 32/7 32/8 34/5 34/14 34/16 38/2 39/15 40/5 40/7 45/13 45/23 45/25 46/11 46/13 48/9 48/9 48/24 49/9 49/17 49/18 50/1 50/7 51/16 52/9 56/14 58/11 60/9 60/10 60/10 60/21 61/6 61/22 61/23 63/4 63/22 63/25 64/5 65/14 65/16 67/10 68/5 68/8 69/20 70/11 70/23 73/9 74/4 74/14 74/19 78/13 79/14 79/15 79/24 80/5 80/13 80/17 84/5 85/4 87/12 92/20 92/23 93/11 93/17 94/6 94/9 95/21 96/5 96/22 96/23 97/1 99/25 100/18 102/9 103/20 103/21 103/22 106/19 108/1 108/24 109/2 109/20 109/23 110/10 110/23 111/7 111/9 111/17 111/17 111/21 112/3 112/24 115/21 116/5 116/21 116/24 119/4 120/18 121/11 121/19 124/5 124/6 126/24 126/25 127/1 129/22 133/13 133/13 133/19 143/7 143/8 144/6 145/1 148/3 150/7 151/5 151/25 153/14 154/7 155/12 156/9 159/14 162/16 176/2 181/4 181/11 182/23 183/18 183/19 188/16 190/12 191/23 192/2 192/3 192/4 193/13 193/16 193/16
**above [2]** 163/14 195/9
**above-entitled [1]** 195/9
**Absent [1]** 168/11
**absolute [4]** 121/25 122/3 122/23 122/24
**absolutely [7]** 23/1 24/16 38/23 67/19 68/11 76/12 149/8
**abstract [1]** 151/15
**abundance [2]** 124/24 159/24
**ACC [7]** 103/1 106/3 156/5 156/5 156/22 157/4 157/9
**ACC's [2]** 104/20 104/23
**accept [1]** 185/18
**access [14]** 18/19 36/13 37/3 63/9 63/18 63/20 64/14 72/25 73/4 73/13 73/18 74/11 74/13 110/6
**accessible [1]** 71/5
**accomplice [12]** 136/25 137/21 137/25 138/6 138/9 138/11 139/21 141/5 141/13 141/15 141/17 141/17
**accomplices [8]** 137/13 140/11 140/18 140/23 141/2 141/10 141/23 141/24
**accomplish [1]** 44/22
**according [1]** 158/22
**accordingly [1]** 194/11
**account [15]** 28/3 28/20 59/20 71/16 71/16 71/19 75/21 76/20 77/13 77/14 77/16 78/19 80/12 111/24 162/25
**accountant [1]** 16/1
**accounts [17]** 56/18 56/21 57/4 57/9 57/13 57/25 58/6 58/16 63/1 74/1 84/5 84/18 84/23 90/4 92/19 92/24 113/10
**accuracy [10]** 39/16 39/18 40/16 59/24 60/7 60/10 60/11 60/11 60/22 60/24
**accurate [19]** 15/23 40/2 40/7 40/11 40/15 59/6 59/12 59/14 59/23 60/2 60/12 60/12 60/14 60/16 147/11 168/5 182/8 182/25 190/12
**accurately [3]** 59/5 87/18 146/17
**accusation [2]** 133/11 133/23
**accuse [1]** 65/19
**acquiesces [1]** 165/10
**acquittal [1]** 101/1
**across [1]** 184/24
**act [3]** 163/5 166/12 179/2
**acted [6]** 108/21 110/9 180/2 180/13 185/9 191/18
**acting [1]** 112/12
**action [1]** 156/11
**active [1]** 156/13
**activity [1]** 162/10
**actual [29]** 23/13 26/18 26/24 26/25 27/1 27/15 27/19 27/23 28/4 28/20 32/21 33/24 35/22 46/23 48/13 52/3 73/16 98/3 108/9 138/20 141/12 142/20 146/19 155/23 156/23 156/25 157/1 169/8 172/20
**actually [40]** 25/9 30/12 32/24 41/20 45/19 45/25 47/15 62/11 67/21 69/1 69/4 92/2 95/8 104/18 109/2 111/18 114/20 117/21 134/10 140/15 147/10 147/12 152/2 152/23 153/12 154/13 156/24 159/12 166/15 168/5 168/8 170/3 175/3 176/20 177/13 179/7 181/21 182/2 185/3 187/19
**add [2]** 41/3 165/18
**added [1]** 41/16
**adding [1]** 170/3
**addition [4]** 121/22 160/9 180/16 194/21
**additional [5]** 79/21 113/25 133/20 168/25 180/8
**Additionally [1]** 172/5
**additions [1]** 128/15
**address [1]** 114/23
**adduce [1]** 78/3
**adducing [1]** 66/14
**adjust [1]** 194/10
**administrative [1]** 183/16
**admissions [1]** 113/20
**admit [7]** 4/24 6/7 8/1 9/14 10/14 11/25 13/18
**admitted [4]** 5/3 62/11 91/17 113/24
**advances [2]** 163/5 166/13
**Advantage [8]** 11/3 11/11 11/24 12/11 13/14 14/8 104/8 112/24
**Advantage Choice [2]** 11/24 13/14
**Advantage Choice Care [3]** 12/11 14/8 104/8
**Advantage Choice Care's [1]** 11/11
**advertising [4]** 91/11 91/12 91/21 91/21
**advertising-related [2]** 91/11 91/21
**advice [2]** 117/1 118/17
**affecting [1]** 108/5
**affects [1]** 69/10
**affiliated [3]** 86/15 88/17 92/8
**after [12]** 50/18 51/8 106/16 115/10 116/13 117/10 117/15 168/5 174/8 180/7 187/8 191/22
**afternoon [6]** 1/7 4/10 61/21 63/24 127/7 193/24
**afterwards [1]** 140/17
**again [46]** 14/19 16/24 19/13 20/15 28/6 32/12 33/6 35/5 35/7 35/20 36/4 36/15 37/8 48/15 49/13 49/20 50/21 51/3 51/5 52/1 52/11 53/10 55/15 59/2 67/25 80/12 84/7 85/15 86/1 86/7 86/19 90/16 92/7 92/11 93/1 105/19 106/2 106/10 106/14 111/5 111/14 156/21 159/3 162/22 162/24 176/17
**against [2]** 9/10 96/1
**age [2]** 147/5 147/7
**ago [2]** 16/7 30/6
**agree [22]** 20/11 22/13 28/22 44/2 44/6 51/11 56/8 92/16 129/16 142/3 142/10 153/12 153/13 155/25 167/3 174/7 174/18 175/7 181/24 186/14 186/14 187/7
**agreed [4]** 67/25 129/12 129/14 132/21
**agreeing [2]** 31/24 104/3
**agreement [12]** 101/22 102/6 102/13 102/15 102/21 108/13 136/21 137/21 138/3 138/12 139/23 140/11
**agreement's [1]** 103/14
**agreements [2]** 141/1 142/1
**agrees [2]** 119/22 154/15
**ahead [4]** 24/21 170/1 173/25 186/1
**aided [1]** 170/7
**aiding [8]** 152/17 159/4 170/11 170/17 170/19 170/25 190/25 191/22
**aims [3]** 164/12 164/18 165/19
**alert [2]** 103/25 122/22
**alerting [1]** 178/11
**aligns [1]** 167/1
**all [203]**
**allegation [1]** 150/5
**alleged [7]** 141/24 142/4 162/22 163/10 166/8 171/23 171/24
**allow [8]** 70/6 70/9 73/4 73/11 106/4 133/16 168/3 189/15
**allowable [1]** 186/10
**allowed [17]** 70/10 70/14 70/19 71/7 94/15 112/25 156/25 167/25 168/6 189/3 189/3 189/9 189/10 189/12 189/12 189/21 190/6
**allows [2]** 168/16 190/11
**alluded [1]** 32/7
**alluding [1]** 67/21
**almost [2]** 89/18 156/14
**alone [6]** 22/4 155/6 155/8 163/8 163/8 164/19
**along [4]** 127/2 153/15 158/13 191/7
**alongside [1]** 14/10
**already [10]** 70/10 76/9 117/12 137/10 139/13 146/17 158/3 165/12 165/12 177/25
**also [78]** 9/2 11/2 24/13 32/9 49/9 64/21 66/24 68/5 70/9 85/23 89/15 93/17 96/3 102/3 102/17 102/21 103/10 103/20 103/22 104/10 104/16 104/22 105/9 105/13 105/15 105/22 106/4 107/3 107/23 107/24 108/9 109/5 109/16 109/23 110/12 111/17 112/14 112/20 112/23 113/6 113/8 115/17 121/22 128/24 132/4 132/21 135/9 146/22 147/9 148/24 149/17 150/1 152/1 153/9 155/3 157/21 159/20 159/23 163/4 163/24 163/25 165/1 166/1 166/11 166/25 167/2 167/7 169/7 172/2 172/3 174/21 174/23 175/17 175/22 176/3

## A

**also... [3]** 176/25 180/18 187/11
**although [1]** 102/22
**altogether [1]** 194/15
**always [4]** 149/3 172/12 172/23 178/25
**am [59]** 6/5 9/24 9/24 10/10 16/1 26/25 29/24 30/6 37/14 40/18 42/24 45/8 57/11 60/1 63/19 69/11 70/23 71/6 91/17 94/15 120/4 120/13 121/1 121/12 123/23 126/10 129/19 131/14 131/17 134/12 134/19 135/24 136/1 138/22 141/21 141/22 141/22 144/24 147/7 152/20 153/20 157/23 158/2 160/10 160/16 161/24 171/13 172/2 173/18 173/19 177/1 178/17 179/9 181/3 182/12 182/13 186/15 187/9 191/22
**ambit [10]** 64/22 65/21 66/1 67/17 69/10 69/18 69/24 70/19 72/1 78/4
**AMERICA [1]** 1/4
**Amici [25]** 56/22 63/1 63/5 73/25 74/5 75/2 75/21 76/20 76/24 77/2 77/12 77/16 81/10 84/3 84/13 84/14 84/18 84/21 84/22 86/2 86/5 86/20 92/23 92/23 110/24
**Amici Holdings [13]** 56/22 63/1 73/25 75/21 76/20 77/12 77/16 84/3 84/13 84/14 84/18 84/21 86/2
**ammunition [1]** 148/1
**amount [13]** 25/23 26/1 26/14 26/18 26/21 26/24 27/22 28/9 86/25 90/7 91/12 96/8 107/2
**amounts [5]** 26/25 92/22 93/1 98/10 159/23
**analogous [2]** 150/13 151/9
**analyses [7]** 19/5 19/6 23/20 40/4 40/6 59/24 93/25
**analysis [31]** 19/14 27/9 27/21 32/9 32/17 33/3 34/9 34/14 34/15 37/23 40/16 45/9 49/20 49/24 60/5 60/14 60/16 60/18 60/21 61/1 61/2 68/24 68/25 69/1 69/5 69/17 87/18 96/12 96/22 96/23 112/4
**analyst [1]** 20/23
**analyzed [1]** 32/18
**analyzing [1]** 93/19
**Anand [1]** 17/3
**Andrew [3]** 47/20 48/9 107/13
**Andrew Session [3]** 47/20 48/9 107/13
**ands [1]** 148/8
**Anjaria [7]** 102/14 105/3 106/18 106/19 109/20 110/3 110/5
**Anjaria's [1]** 103/9
**another [9]** 31/6 51/1 80/22 83/16 87/12 88/5 110/23 131/18 188/16
**answer [17]** 7/12 57/16 60/22 63/15 65/1 67/2 68/17 74/12 77/20 86/7 117/3 117/6 120/10 120/12 142/23 153/18 189/21
**answered [3]** 37/24 64/23 70/11
**answering [3]** 35/1 67/23 118/1
**answers [1]** 64/12
**anti [13]** 103/18 105/15 108/12 108/13 108/14 110/11 158/8 159/1 159/17 159/22 161/12 162/2 191/3
**anti-kickback [6]** 158/8 159/1 159/17 159/22 161/12 162/2
**Anti-Kickback Statute [7]** 103/18 105/15 108/12 108/13 108/14 110/11 191/3
**antiseptic [1]** 68/16
**any [73]** 18/21 21/23 26/18 27/24 29/14 29/18 31/14 31/17 31/18 32/5 32/17 35/11 38/5 40/16 45/6 49/5 54/10 54/18 54/20 65/2 66/2 67/4 67/4 68/19 70/2 78/2 96/17 99/17 99/22 101/14 102/12 104/3 108/15 108/18 108/19 112/17 115/22 116/14 117/8 118/4 119/23 121/7 121/20 123/12 125/18 125/18 130/12 130/12 130/13 131/21 132/14 134/5 142/8 144/1 147/12 155/13 155/20 156/11 156/12 157/7 157/10 157/10 159/14 167/23 168/14 172/25 173/20 181/16 181/18 183/4 183/20 186/9 191/12
**anyone [2]** 122/17 126/25
**anything [32]** 18/17 22/9 26/9 40/16 60/12 65/3 65/7 66/7 67/7 69/16 75/12 78/4 80/9 99/22 99/24 100/24 110/21 120/23 122/18 123/3 128/2 129/17 130/4 134/16 135/20 138/13 147/6 157/10 167/9 168/2 173/12 190/23
**anytime [1]** 191/12
**anywhere [3]** 37/21 38/14 188/21
**apart [2]** 96/15 151/18
**apologize [1]** 90/21
**appear [1]** 141/18
**APPEARANCES [2]** 1/12 1/20
**appearing [1]** 38/14
**appears [2]** 11/15 77/13
**apples [1]** 95/25
**applicable [9]** 134/12 159/5 159/8 162/18 163/25 165/4 165/13 182/20 183/13
**applies [2]** 134/8 149/16
**apply [4]** 40/4 114/5 151/22 161/19
**applying [1]** 184/6
**appreciate [2]** 178/10 192/14
**approach [7]** 15/14 30/22 33/12 71/19 75/18 87/6 89/8
**appropriate [2]** 170/5 184/1
**approximate [1]** 107/2
**approximately [9]** 12/13 12/17 15/4 15/5 45/20 46/3 54/2 84/22 96/25
**April [2]** 15/12 16/7
**are [177]** 5/16 7/8 10/23 12/4 13/7 15/8 17/8 17/16 19/17 21/5 21/12 21/15 24/4 27/10 28/19 32/12 32/21 35/2 39/5 39/6 40/6 40/7 40/19 43/22 44/13 46/19 50/1 50/13 51/5 54/2 54/16 55/21 56/2 56/23 58/21 58/24 59/1 59/4 59/6 59/7 59/10 59/12 59/14 59/23 60/1 60/2 60/8 60/9 60/9 60/10 60/12 60/18 61/17 61/21 63/18 65/6 66/9 66/11 66/20 66/24 67/3 67/21 69/11 69/14 71/24 72/10 72/11 72/25 73/9 74/18 78/3 89/1 89/16 93/20 94/17 96/15 97/10 98/3 101/10 102/1 102/3 104/12 104/13 104/24 108/2 108/8 112/2 113/11 113/18 113/19 113/22 113/23 113/23 114/6 115/19 116/8 116/14 116/18 116/25 117/15 117/17 119/10 119/10 119/11 119/15 124/11 126/20 127/3 127/4 127/9 127/10 128/16 128/25 129/10 133/19 134/3 137/13 137/23 142/1 146/12 147/2 147/11 148/5 149/23 149/23 149/23 152/2 152/4 152/6 152/22 152/22 153/4 153/4 154/1 155/17 156/25 160/12 162/14 164/8 164/22 166/21 168/6 168/24 169/5 169/15 170/4 170/7 170/9 171/16 171/17 174/7 176/13 177/6 178/10 178/17 178/18 179/6 179/21 181/8 181/12 181/22 182/1 182/4 183/1 185/17 186/5 187/9 187/16 188/6 188/6 189/12 189/12 193/5 193/10 193/10 193/18 194/2
**aren't [2]** 170/3 191/6
**argue [1]** 156/15
**argument [6]** 135/3 150/24 153/7 157/4 161/3 170/4
**argumentative [1]** 188/18
**arguments [8]** 126/12 126/17 126/20 126/20 155/12 188/6 193/6 193/20
**around [6]** 33/3 84/23 90/24 92/17 109/8 169/12
**arrange [1]** 108/17
**arrangement [1]** 110/13
**articulate [1]** 163/14
**articulates [1]** 163/13
**as [158]** 4/13 5/4 5/21 6/13 7/19 8/6 9/6 9/19 10/6 10/11 10/19 11/6 12/6 12/20 12/20 13/11 13/22 15/12 17/6 20/23 21/16 22/14 24/10 26/7 29/13 29/23 33/8 33/16 34/8 35/7 39/10 40/1 40/2 42/24 45/10 48/5 48/10 48/11 48/25 49/4 49/10 49/11 49/11 49/14 51/8 56/17 58/21 58/21 58/25 58/25 59/4 59/4 62/25 64/17 66/7 67/1 68/13 68/19 68/24 71/25 73/15 77/15 78/15 84/8 86/10 87/18 88/8 90/4 91/17 96/8 97/4 101/12 101/24 107/3 107/12 107/15 108/11 108/15 108/20 109/14 110/5 110/6 110/7 110/25 112/12 113/18 114/6 114/8 114/9 114/9 115/17 122/9 123/20 123/23 123/23 127/25 130/3 132/6 132/7 141/3 141/8 141/9 142/15 144/1 146/2 148/4 148/17 148/17 148/17 149/9 149/25 151/19 153/9 153/10 153/18 153/18 154/11 154/16 154/16 154/21 154/21 155/5 157/13 157/16 157/24 157/25 158/22 161/25 162/23 163/16 168/12 170/19 171/9 171/22 172/6 174/3 175/13 175/18 177/7 180/18 181/8 181/21 182/2 183/2 184/4 184/9 186/3 186/16 187/16 189/2 190/10 192/24 192/25 193/8 193/8 193/17 193/17 194/10
**aside [5]** 19/7 27/22 34/22 168/18 169/20
**ask [42]** 4/11 28/24 31/3 32/7 32/8 34/11 35/4 35/6 36/23 49/3 57/18 57/21 58/7 59/2 61/11 63/22 64/16 67/25 69/15 72/15 76/4 76/6 76/23 78/5 78/13 87/1 115/21 120/9 120/11 121/1 121/14 124/8 126/15 130/8 132/12 141/15 148/5 148/7 159/8 160/18 163/20 176/16
**asked [33]** 19/11 23/22 27/9 37/24 45/13 45/22 46/11 48/24 49/7 49/18 50/7 51/16 52/9 57/11 58/19 68/15 68/16 71/11 71/12 72/22 85/4 94/6 95/21 96/5 96/21 139/11 163/23 165/23 168/25 176/23 177/7 186/8 189/14
**asking [35]** 17/14 44/17 44/17 44/18 45/8 45/8 58/2 58/3 58/10 58/11

## A


**asking... [24]** 58/11 60/20 61/3 61/10 67/24 69/19 78/8 97/1 117/14 124/11 136/21 137/13 137/23 146/16 146/24 153/16 162/14 163/24 173/9 177/21 179/5 182/22 188/17 189/4
**assembled [2]** 164/12 165/18
**assignment [2]** 193/4 194/12
**assignments [1]** 157/25
**assist [2]** 73/19 76/16
**assistance [1]** 76/16
**associate [2]** 162/19 165/22
**associated [2]** 164/11 166/10
**associating [1]** 164/8
**association [2]** 162/4 162/9
**assumed [1]** 68/9
**assuming [1]** 141/15
**assumption [20]** 56/20 56/25 57/11 58/8 58/8 58/12 58/14 58/18 58/19 58/21 58/25 59/4 59/7 59/10 59/13 59/17 59/19 64/23 66/9 69/7
**assumptions [6]** 7/11 58/22 59/1 65/13 66/15 67/3
**at [128]** 4/1 6/16 7/7 8/9 8/13 9/2 9/24 10/10 11/20 13/1 13/14 14/17 15/11 17/9 17/16 17/21 18/12 18/12 19/13 19/19 19/20 20/22 21/16 21/22 23/12 25/19 25/21 26/20 27/23 28/1 28/12 30/17 32/11 33/8 34/20 34/25 35/11 35/11 38/10 46/6 48/9 48/20 56/4 57/19 64/3 65/7 66/7 66/24 71/12 72/2 72/3 72/8 73/7 74/14 74/20 74/21 77/13 78/12 84/3 84/18 86/11 87/2 87/21 89/7 90/3 90/11 91/15 94/15 94/24 95/11 99/1 99/16 100/10 100/22 102/24 103/1 103/8 103/9 103/10 111/16 116/24 120/17 123/4 123/25 124/4 126/5 126/15 127/5 127/11 127/15 131/4 133/10 144/24 146/8 150/13 151/15 151/15 154/5 155/3 157/14 157/14 157/23 157/24 158/23 159/17 164/5 173/18 175/19 179/9 179/11 180/7 181/20 182/25 183/6 185/21 188/12 189/25 191/4 191/19 192/18 192/25 192/25 193/13 194/13 194/16 194/18 194/24 195/1
**attached [1]** 29/23
**attachment [1]** 130/2
**attacked [1]** 166/15
**attempt [2]** 27/18 54/13
**attempted [1]** 40/10
**attempting [2]** 60/17 66/11
**attention [1]** 185/22
**attested [1]** 104/15
**attorney [6]** 66/24 67/1 72/4 115/24 118/22 132/2
**attorney-client [1]** 118/22
**attorneys [9]** 115/23 116/5 116/9 120/7 120/11 126/11 127/4 127/8 194/23
**Audisho [3]** 104/13 106/21 112/17
**audits [1]** 106/11
**authority [15]** 119/20 129/1 130/13 131/6 140/17 141/19 161/11 167/2 167/5 167/8 168/18 183/17 187/24 188/3 190/10
**Avenue [2]** 1/15 1/19
**average [22]** 4/20 5/14 25/22 26/1 26/1 26/4 26/10 26/13 26/21 26/22 26/24 26/25 27/4 27/6 27/12 27/15 27/16 27/18 27/22 27/25 28/9 28/21
**averages [2]** 26/6 26/7
**avoid [3]** 105/5 106/11 155/21
**avoidance [7]** 155/17 156/13 157/1 157/5 157/7 157/10 157/16
**avoided [2]** 154/19 154/23
**avoiding [1]** 156/18
**aware [4]** 11/18 49/5 49/16 113/11
**away [1]** 175/14


## B


**B1 [1]** 130/12
**B2.1 [2]** 130/12 134/8
**B2.2 [1]** 134/7
**B6.2 [3]** 135/19 135/22 136/2
**B6.5 [1]** 135/22
**B8 [1]** 171/20
**B9.1B [2]** 150/3 152/7
**back [44]** 4/2 19/18 25/15 27/18 31/5 43/3 47/6 52/13 54/13 54/25 55/2 55/20 55/20 64/21 65/1 65/23 72/9 76/24 79/8 83/25 85/16 88/23 95/8 95/9 100/8 111/14 115/8 116/9 126/2 127/6 130/1 132/4 132/7 133/16 135/19 137/6 148/2 148/23 156/7 178/22 179/10 179/13 185/25 194/22
**background [1]** 46/6
**bad [3]** 59/10 59/10 152/13
**balancing [1]** 161/16
**bank [7]** 19/8 61/2 72/18 75/21 76/20 77/12 146/25
**bargaining [2]** 141/3 141/6
**base [1]** 130/4
**based [19]** 7/23 7/24 12/20 12/23 50/21 56/25 59/7 64/11 66/22 88/5 94/10 107/11 117/16 145/21 159/5 185/21 185/22 188/18 189/16
**basically [3]** 72/20 173/10 177/14
**basis [6]** 22/14 26/7 28/10 64/11 66/8 144/4
**be [165]** 4/2 11/15 15/23 23/11 23/15 30/20 31/24 33/11 39/2 39/19 40/1 41/1 41/4 43/15 46/13 49/4 49/14 55/17 59/15 61/8 63/7 64/7 65/14 66/21 68/19 69/14 71/2 71/21 71/23 72/9 73/9 74/7 74/11 76/11 77/13 88/1 89/6 96/1 98/11 100/7 100/23 103/5 105/5 105/6 108/19 109/14 109/18 111/2 113/14 113/14 113/17 113/25 114/3 114/17 114/23 115/11 116/14 119/6 119/6 120/6 124/4 125/1 125/2 125/6 125/10 126/2 126/9 126/15 127/16 127/19 128/9 129/1 131/20 131/23 132/3 132/6 132/7 132/12 132/13 132/21 133/15 133/22 134/12 135/18 140/25 146/16 147/11 147/25 148/10 149/10 153/15 154/13 157/18 157/19 157/20 158/1 158/4 158/22 159/1 159/8 160/18 162/8 162/19 163/19 163/22 164/4 164/5 164/9 165/8 165/21 165/22 165/24 166/5 166/20 167/4 167/23 169/1 170/4 170/8 171/18 173/9 173/18 174/9 174/12 174/15 175/2 176/6 176/7 176/12 176/14 176/23 177/14 178/2 178/8 178/23 179/1 180/1 180/7 180/12 180/18 181/2 181/8 182/2 182/18 183/11 184/7 184/21 185/3 185/6 185/8 186/8 186/16 186/21 187/11 188/4 189/8 189/16 189/25 192/11 192/23 193/3 193/17 193/19 194/4 194/14
**be given [1]** 158/4
**bear [2]** 107/15 116/12
**bears [1]** 99/16
**became [1]** 102/12
**because [74]** 19/3 25/19 27/2 27/8 27/16 32/9 35/23 36/9 38/18 38/25 39/18 40/17 40/25 44/15 44/16 47/15 59/21 62/9 66/7 66/10 67/22 68/12 69/2 69/4 71/11 75/4 76/17 89/4 98/9 105/16 105/24 105/25 110/5 114/4 118/21 123/15 126/13 132/3 134/2 134/11 136/5 136/15 138/25 139/11 142/18 144/3 148/15 149/5 149/21 150/11 159/2 159/12 160/3 161/22 165/4 166/3 170/21 174/16 174/19 175/18 176/8 177/15 177/19 179/11 179/19 180/19 181/9 182/4 183/1 184/10 187/1 187/5 189/9 192/16
**become [3]** 136/23 163/6 166/14
**becomes [2]** 154/5 170/24
**been [49]** 4/12 5/21 7/13 7/18 9/5 10/5 11/5 13/10 50/20 65/15 65/17 68/5 68/6 68/25 72/3 91/17 111/23 112/17 115/16 127/21 133/6 145/13 150/5 150/6 151/4 151/12 151/14 151/18 151/21 151/24 152/1 157/5 157/6 165/12 167/12 168/21 168/22 168/23 169/3 174/6 179/11 179/15 180/17 187/2 187/9 191/2 191/14 191/14 192/8
**before [34]** 1/10 15/18 21/18 30/21 31/3 62/12 62/19 64/18 64/19 68/8 70/4 71/3 71/17 71/22 73/17 73/17 76/9 76/17 87/9 89/20 90/20 90/25 94/25 95/13 99/10 99/20 99/24 106/24 115/13 162/9 177/24 183/19 188/6 193/14
**beggars [1]** 68/14
**behalf [7]** 116/15 119/16 119/17 120/15 121/3 121/7 190/1
**being [26]** 18/15 37/8 48/25 49/10 68/16 70/17 94/1 94/2 104/14 108/24 112/25 113/1 143/8 149/14 160/6 162/19 162/22 165/23 166/8 169/10 184/20 186/15 187/3 192/16 193/24 194/2
**beings [1]** 66/25
**belaboring [1]** 175/18
**belief [2]** 68/14 160/20
**believe [22]** 12/22 18/10 31/23 33/3 35/19 47/11 55/9 84/14 87/20 94/14 98/13 98/16 103/14 111/16 112/1 136/20 137/11 142/8 145/23 146/1 172/11 192/7
**believed [2]** 105/11 118/23
**believes [1]** 162/7
**bell [1]** 16/12
**belt [1]** 166/23
**beneficiaries [9]** 6/17 9/24 10/25 52/1 52/2 108/1 111/24 189/19 189/20
**beneficiary [13]** 5/25 7/5 7/22 8/14 9/9 9/10 9/25 10/1 10/11 10/22 23/2 107/4 107/12
**benefit [3]** 39/19 111/6 194/10
**benefits [2]** 101/24 111/5
**best [15]** 36/9 38/18 38/22 38/23 38/24 39/5 39/8 39/11 98/17 127/17 152/24

## B


**best... [4]** 153/7 154/18 156/4 156/16
**Beth [1]** 107/17
**Beth Tanos [1]** 107/17
**better [1]** 96/1
**between [22]** 9/9 40/23 40/24 66/18 70/16 77/17 94/3 103/19 108/25 109/3 110/17 111/1 111/10 113/10 126/16 127/5 152/10 152/14 159/15 162/13 164/19 175/25
**beyond [9]** 114/10 114/13 158/25 160/15 167/16 176/13 184/5 184/23 186/17
**big [3]** 24/25 31/14 66/18
**biggest [6]** 29/16 31/13 31/22 31/23 31/25 32/1
**bill [4]** 8/19 96/24 131/22 132/1
**billed [18]** 4/18 4/20 6/25 15/5 16/2 16/4 26/1 26/10 26/22 27/12 28/9 45/19 94/10 96/8 96/25 98/10 105/6 107/2
**billion [5]** 23/23 27/10 27/22 28/3 96/10
**bit [4]** 61/9 123/15 124/3 133/6
**black [1]** 92/8
**black and [1]** 92/8
**BLACKMAN [58]** 1/7 56/18 57/3 57/8 57/25 58/5 59/19 62/23 62/23 62/25 70/18 73/23 84/22 85/24 85/24 86/16 86/23 86/23 90/4 90/12 90/13 90/16 104/5 105/7 105/10 106/14 109/3 109/6 109/9 109/10 111/1 111/15 114/11 115/13 115/15 115/17 115/21 117/25 118/7 118/9 119/14 119/22 120/8 120/10 121/1 122/22 123/3 143/16 157/7 157/11 163/11 165/9 169/22 171/10 172/4 181/18 182/14 186/6
**Blackman's [9]** 63/1 74/1 84/5 92/19 92/24 104/2 110/4 110/11 112/7
**Blackman-controlled [10]** 57/3 62/23 62/25 73/23 85/24 86/16 86/23 90/4 90/13 90/16
**blame [1]** 179/20
**blanket [1]** 189/7
**blessed [1]** 194/14
**blew [1]** 109/21
**blindside [1]** 99/5
**blindsided [1]** 194/4
**blocked [1]** 13/4
**blows [1]** 190/8
**blue [5]** 57/3 59/15 59/21 86/19 90/16
**board [1]** 184/24
**boat [1]** 143/3
**body [5]** 138/20 138/25 141/12 141/16 141/18
**bold [2]** 128/10 172/25
**bolded [1]** 128/17
**bolding [3]** 129/4 139/1 139/2
**Bond [1]** 1/14
**Bonner [2]** 147/6 148/23
**book [1]** 186/20
**Bosa [2]** 16/23 16/25
**both [18]** 89/3 89/5 89/7 90/2 90/2 129/12 134/20 142/13 142/15 145/10 155/2 156/21 156/25 158/6 162/14 175/12 177/22 185/23
**bottom [12]** 6/21 8/16 11/15 14/17 48/16 50/9 89/24 146/8 147/9 147/14 151/15 175/19
**Boulevard [2]** 2/12 195/15
**bounds [1]** 167/16
**box [3]** 11/15 86/22 92/10
**boy [1]** 124/7
**brace [20]** 20/10 20/10 20/17 22/11 22/22 22/22 23/10 25/23 26/13 26/14 28/17 28/20 44/4 54/18 106/20 106/23 109/22 110/1 110/3 110/5
**braces [8]** 4/20 31/15 31/17 31/19 111/10 111/13 111/18 111/19
**bracing [1]** 151/20
**Braga [4]** 5/20 6/11 8/24 62/16
**breaching [2]** 182/19 183/12
**break [18]** 61/22 63/24 63/25 64/9 64/20 78/10 99/2 99/9 99/11 99/12 99/21 100/2 100/8 100/15 100/15 100/19 117/22 125/12
**breaking [1]** 73/9
**breaks [1]** 127/9
**BRETT [8]** 1/7 105/7 109/6 109/10 143/16 169/22 171/10 172/4
**Brett Blackman [6]** 109/6 109/10 143/16 169/22 171/10 172/4
**bribe [1]** 108/15
**bribes [1]** 106/10
**brief [1]** 184/12
**briefly [4]** 4/15 32/8 68/4 93/7
**bright [1]** 110/22
**bring [5]** 63/7 64/14 71/3 72/5 134/22
**broad [1]** 167/11
**broader [3]** 185/16 185/18 185/21
**broadly [1]** 187/15
**Broward [2]** 2/12 195/15
**bucket [10]** 31/13 73/25 86/1 86/19 88/14 88/23 89/12 90/3 90/6 90/14
**buckets [5]** 29/11 73/10 89/1 89/19 90/2
**budgets [1]** 39/5
**build [1]** 169/12
**Building [1]** 1/14
**bunch [1]** 143/2
**burden [6]** 99/16 99/19 114/16 116/12 175/15 184/5
**Burns [1]** 192/4
**busiest [2]** 13/15 14/4
**business [1]** 155/5
**busting [4]** 106/17 111/15 112/11 165/5
**but [156]** 10/9 16/11 22/7 22/14 22/19 22/21 24/13 24/15 26/9 27/1 30/8 31/24 33/15 36/17 37/6 39/2 39/4 39/10 39/20 48/4 48/8 48/11 55/12 56/5 57/5 57/20 58/10 59/17 60/5 60/14 61/9 64/13 65/1 66/13 70/10 70/20 70/22 71/12 71/18 71/24 72/2 72/20 74/16 77/8 84/18 89/6 89/15 89/15 89/16 92/8 99/6 99/19 108/13 113/22 114/9 114/14 115/23 116/2 116/9 116/12 117/20 120/20 120/20 121/1 123/24 126/20 126/21 127/22 128/14 128/24 129/15 132/18 132/23 133/5 133/19 134/22 135/15 140/23 141/17 142/10 142/21 142/24 143/12 143/19 144/1 144/3 144/9 144/22 145/13 145/22 146/2 147/5 147/6 148/7 148/25 149/7 153/13 153/17 153/21 154/1 154/6 154/25 155/3 155/8 156/11 156/17 160/20 161/5 163/5 164/2 164/3 165/1 166/12 167/17 168/9 169/6 169/8 169/12 170/20 172/25 174/3 174/18 175/1 175/4 177/13 178/1 178/10 178/16 179/21 179/22 181/5 182/1 182/25 183/19 185/12 185/15 185/18 185/21 185/23 186/11 186/15 186/18 187/16 187/17 187/20 188/7 189/8 190/15 191/16 192/1 192/6 193/1 193/11 193/12 193/19 193/25
**buy [1]** 109/24
**buying [1]** 187/4


## C


**calculate [1]** 51/22
**calculated [1]** 5/9
**calculation [6]** 26/7 28/19 76/24 78/6 78/10 78/14
**calculations [1]** 40/6
**call [29]** 12/19 20/19 32/9 69/7 111/23 116/11 116/25 117/8 117/9 117/22 119/17 121/3 121/7 123/7 123/13 123/18 125/14 130/7 168/19 188/4 188/6 188/9 188/13 188/24 189/16 189/20 189/21 190/1 190/13
**called [16]** 19/20 29/17 31/14 72/19 86/16 86/23 89/2 93/14 117/7 119/23 121/20 121/23 141/3 168/23 170/7 170/9
**calling [6]** 116/2 116/4 116/5 116/14 119/19 190/1
**calls [2]** 112/3 167/2
**came [6]** 25/19 38/15 75/15 97/5 143/13 148/2
**can [159]** 4/15 5/5 5/8 5/20 5/21 5/24 6/10 6/15 7/2 7/10 7/12 7/16 7/20 8/8 8/23 9/8 9/20 9/23 10/20 12/7 12/10 18/1 18/5 19/1 31/5 31/24 34/3 35/3 35/4 35/12 38/10 40/23 42/25 46/20 47/6 48/22 50/25 50/25 51/13 51/21 51/22 53/16 53/18 53/19 53/19 53/21 54/1 54/24 54/25 55/2 55/16 55/24 57/6 57/18 57/21 59/2 59/16 61/2 61/8 61/12 62/14 62/16 63/21 63/21 63/21 64/4 65/10 67/1 69/18 71/2 71/4 73/16 74/25 76/1 76/4 76/5 76/6 76/11 76/12 76/15 76/16 78/15 85/1 85/13 85/15 88/9 89/3 89/8 89/21 92/2 97/7 98/1 98/24 99/11 101/13 107/3 107/6 107/8 107/20 113/14 114/15 115/15 118/1 118/4 118/10 120/8 124/17 125/2 126/13 127/23 128/6 131/25 131/25 134/22 135/6 141/24 143/21 143/24 147/25 149/2 149/3 149/10 154/2 154/13 156/14 156/24 157/1 157/15 158/22 159/21 160/4 160/4 161/3 161/14 161/22 164/3 169/4 174/12 174/15 174/21 176/6 176/7 176/12 176/14 178/2 178/10 178/21 181/2 184/3 184/10 185/5 187/11 192/17 192/18 192/19 192/25 193/2 193/9 194/10
**can't [22]** 18/23 34/25 38/12 39/4 54/17 60/17 61/1 61/1 76/9 76/10 89/21 124/8 139/1 154/25 156/21 162/16 164/4 164/6 164/7 168/1 183/2 193/12
**cannot [7]** 117/6 174/14 181/8 182/2 182/18 183/11 186/21
**caps [1]** 162/9
**capture [1]** 37/18
**captured [3]** 23/17 174/4 177/25
**care [42]** 11/3 12/11 14/8 89/15 97/16

**C**
**care... [37]** 101/21 101/23 101/23 102/2 104/8 104/25 105/16 108/20 111/4 111/6 111/8 111/10 112/24 150/16 150/19 150/20 153/1 153/4 159/16 162/3 172/1 172/8 172/14 172/23 174/20 174/20 177/6 177/22 178/4 180/1 180/12 182/12 182/20 183/13 185/8 186/5 186/20
**Care's [1]** 11/11
**careful [1]** 67/22
**carry [1]** 114/16
**case [100]** 1/3 7/8 7/14 15/4 16/17 19/5 19/6 29/21 33/6 68/6 87/13 99/17 99/19 99/20 99/25 100/11 100/16 113/16 114/3 114/6 114/7 114/9 116/4 116/6 117/1 118/10 120/6 121/24 126/8 126/9 126/19 126/21 126/24 127/1 132/5 133/22 139/16 139/22 140/3 140/10 140/25 143/11 143/12 145/15 147/25 148/2 148/8 148/11 148/14 148/21 149/9 149/16 149/19 150/4 150/24 151/6 152/5 154/12 158/13 159/13 159/15 161/12 161/23 164/1 164/17 164/23 167/10 167/20 168/8 168/16 168/19 168/20 168/22 169/2 169/6 169/12 171/25 177/5 178/13 181/21 181/22 182/5 182/14 183/1 183/25 184/9 186/16 187/10 187/16 189/8 190/10 191/9 191/11 191/17 191/19 192/8 192/11 192/12 192/22 194/14
**cases [12]** 118/19 148/2 150/12 150/12 150/13 154/22 174/6 178/17 178/18 178/18 178/23 179/12
**cash [2]** 56/14 57/1
**catch [2]** 137/17 150/9
**categorically [1]** 179/7
**category [1]** 29/16
**caught [1]** 143/18
**caution [5]** 124/25 139/16 159/24 185/12 185/15
**cautionary [1]** 178/22
**center [45]** 56/23 62/6 63/5 74/5 75/1 76/25 77/2 77/17 78/19 79/4 80/4 80/17 81/6 81/10 81/15 81/19 82/6 82/18 82/22 83/2 83/6 83/10 83/20 86/1 86/20 86/24 87/3 87/16 87/19 88/12 88/21 90/7 90/17 91/8 91/20 92/15 92/18 188/4 188/6 188/9 188/13 188/24 189/16 190/1 190/13
**centers [2]** 189/19 189/22
**certain [13]** 6/17 22/18 29/7 29/10 59/15 71/10 78/3 111/19 115/23 151/20 155/16 190/21 191/18
**certainly [8]** 69/8 101/19 124/24 149/24 154/3 156/18 156/19 181/18
**certify [1]** 195/6
**cetera [1]** 114/12
**CHAMPVA [3]** 102/1 102/10 108/20
**chance [1]** 99/6
**change [17]** 57/9 58/1 58/6 58/7 58/8 58/18 58/19 58/20 59/17 59/19 99/19 130/20 134/1 134/19 166/18 169/20 176/13
**changed [2]** 141/8 169/22
**changes [6]** 58/18 59/17 134/5 161/7 170/24 172/18
**character [11]** 142/7 142/8 142/16 142/20 142/24 143/3 143/4 143/10 143/20 143/20 157/13
**charge [22]** 123/15 124/2 125/11 125/13 130/12 130/23 133/14 148/13 154/2 160/1 160/2 170/6 171/15 175/9 177/12 192/21 192/24 193/8 193/11 193/17 194/19 194/22
**charged [26]** 101/3 101/11 126/18 133/12 147/21 149/2 149/10 150/4 152/22 153/16 153/24 159/3 162/18 162/24 170/9 172/11 173/13 173/22 174/9 174/25 175/20 175/21 178/9 181/21 184/23 192/13
**charges [6]** 127/18 144/25 148/1 159/8 161/6 192/19
**chart [28]** 4/15 4/17 12/15 19/14 29/6 48/4 48/20 48/24 58/1 58/20 58/23 59/14 59/16 59/17 62/22 62/25 73/25 84/12 84/14 85/18 85/23 87/2 87/12 88/11 91/8 98/1 98/2 107/4
**charts [28]** 19/13 21/17 46/7 49/18 50/24 56/14 57/2 58/13 58/18 58/21 58/24 59/4 59/5 59/6 59/7 59/10 59/12 59/14 60/2 60/2 73/10 74/18 75/14 75/15 87/1 96/4 145/20 147/11
**check [4]** 75/8 153/6 153/20 154/1
**cherry [1]** 193/11
**cherry-pick [1]** 193/11
**chief [2]** 100/11 100/16
**Chintan [2]** 102/14 109/20
**Chintan Anjaria [2]** 102/14 109/20
**choice [10]** 11/3 11/11 11/24 12/11 13/14 14/8 91/5 104/8 112/24 118/24
**choose [2]** 114/8 118/13
**choosing [1]** 106/23
**chops [4]** 106/17 111/15 112/11 165/5
**chose [2]** 44/11 106/20
**Chris [9]** 102/13 105/2 105/3 106/16 109/23 112/10 164/20 165/2 165/5
**Chris Cirri [9]** 102/13 105/2 105/3 106/16 109/23 112/10 164/20 165/2 165/5
**circle [3]** 144/2 144/4 154/2
**circuit [8]** 118/11 146/13 146/22 147/4 147/10 147/17 148/22 148/23
**circumstance [1]** 151/20
**circumstantial [1]** 135/3
**Cirri [16]** 102/13 103/22 103/23 105/2 105/3 106/10 106/16 106/18 106/19 109/1 109/23 111/14 112/10 164/20 165/2 165/5
**Cirri's [2]** 103/9 105/4
**citation [2]** 144/2 151/11
**citations [2]** 157/15 178/17
**cite [4]** 118/12 152/8 152/9 152/10
**cited [3]** 130/14 155/11 167/2
**citing [1]** 167/24
**civil [11]** 150/6 178/24 180/19 182/14 182/15 182/19 183/12 186/6 186/20 191/10 191/20
**claim [41]** 6/6 21/23 22/4 22/8 22/12 22/14 22/14 22/17 22/19 23/9 23/13 25/16 25/22 26/14 26/19 26/24 26/25 27/1 27/6 27/15 27/17 27/19 28/4 28/12 28/20 35/22 35/24 38/20 39/12 39/24 43/4 45/15 47/21 54/12 54/13 54/20 106/22 107/2 107/2 119/8 190/21
**claims [51]** 4/23 6/21 8/17 10/13 17/10 19/9 21/2 21/5 21/20 21/25 22/18 26/21 27/4 27/12 27/24 28/9 28/11 32/10 32/11 32/21 32/25 33/22 35/18 35/23 41/23 41/24 42/9 43/3 44/5 44/19 45/3 48/16 50/1 50/18 59/25 60/6 96/24 97/1 97/4 97/12 97/17 98/4 98/5 98/11 102/1 102/3 102/7 102/11 108/8 108/9 146/25
**clarify [4]** 21/18 71/4 96/21 119/3
**classic [2]** 143/23 169/10
**clause [1]** 186/18
**clean [3]** 128/14 149/3 194/14
**cleaned [2]** 178/4 180/18
**clear [30]** 19/4 46/13 57/12 64/10 65/13 67/9 88/1 119/6 119/6 125/1 128/9 139/18 147/8 147/15 148/3 151/6 151/22 154/12 157/13 158/1 159/19 166/5 166/20 173/18 176/23 177/8 186/16 187/1 187/5 188/4
**clearly [18]** 48/12 65/15 69/18 69/24 70/10 70/14 107/7 147/25 152/3 156/6 157/18 160/4 161/19 169/5 176/17 182/9 183/17 191/16
**client [5]** 17/8 99/24 114/21 115/11 118/22
**clinician [4]** 47/24 48/6 49/10 55/7
**clinician's [1]** 47/12
**clinicians [1]** 56/2
**close [5]** 67/4 67/16 124/5 124/11 147/9
**closed [1]** 126/8
**closing [9]** 125/20 126/12 126/17 156/15 188/25 193/6 193/11 193/12 193/20
**closings [4]** 114/5 123/20 124/5 124/7
**co [23]** 102/25 103/4 103/10 103/11 104/21 105/20 106/3 108/24 109/16 110/4 137/14 139/21 140/7 140/8 140/12 141/9 141/22 163/10 163/12 166/14 167/11 168/4 181/21
**co-conspirator [12]** 102/25 103/10 103/11 105/20 110/4 140/8 141/9 163/12 166/14 167/11 168/4 181/21
**co-conspirator's [2]** 104/21 106/3
**co-conspirators [9]** 103/4 108/24 109/16 137/14 139/21 140/7 140/12 141/22 163/10
**coaching [2]** 65/20 66/19
**code [19]** 18/9 18/11 26/5 26/6 38/9 38/14 41/7 41/16 41/19 41/25 43/12 43/15 43/18 43/21 43/25 44/4 44/5 158/7 195/7
**codefendant [15]** 137/1 137/3 137/14 137/21 137/23 138/3 138/12 139/24 140/11 140/19 141/1 141/4 141/14 141/16 141/23
**codes [4]** 6/24 17/19 17/21 26/11
**coercing [1]** 122/17
**coffee [1]** 72/10
**colleagues [1]** 128/22
**colloquies [1]** 119/10
**colloquy [3]** 115/14 118/20 118/22
**combination [3]** 11/23 43/16 43/21
**combinations [1]** 12/23
**come [16]** 37/17 40/14 55/2 69/14 75/13 118/3 118/4 123/19 123/25 124/4 143/11 151/6 155/20 155/21 168/1 184/1
**comes [6]** 53/2 67/15 130/5 134/8 151/21 152/11

# C


**comfortable [1]** 118/1
**coming [5]** 49/20 51/5 52/11 134/22 169/6
**comma [5]** 41/18 180/10 180/10 180/11 180/11
**commenting [1]** 167/1
**comments [1]** 135/3
**commerce [2]** 108/5 108/9
**commit [8]** 101/21 101/22 102/16 172/22 174/16 175/3 175/4 175/22
**committed [5]** 145/1 162/22 166/8 170/6 170/9
**committee [1]** 150/3
**committing [1]** 175/21
**common [6]** 65/4 66/6 66/21 164/12 164/18 165/19
**community [1]** 143/24
**companies [8]** 55/21 86/16 89/16 108/25 109/25 110/17 155/16 155/17
**company [6]** 10/10 11/2 48/25 74/25 89/1 110/4
**comparable [1]** 149/24
**compared [1]** 48/16
**comparing [6]** 6/5 95/25 97/17 97/22 97/25 98/6
**comparison [3]** 9/9 10/9 96/1
**complete [4]** 66/4 155/19 159/25 160/2
**completed [1]** 112/17
**completely [4]** 118/1 120/21 157/8 167/3
**completeness [1]** 168/9
**complex [7]** 148/17 149/21 151/4 151/7 151/8 152/3 152/4
**compliance [1]** 156/7
**component [1]** 112/7
**Composite [1]** 92/25
**Composites [5]** 63/2 74/1 84/6 84/23 92/20
**computer [3]** 73/3 73/18 77/22
**conceal [2]** 105/17 106/15
**concealing [1]** 155/2
**conceding [1]** 158/22
**concept [2]** 61/5 103/5
**concepts [2]** 60/8 103/6
**concern [1]** 149/1
**concerned [1]** 187/1
**concluded [1]** 100/6
**conclusion [2]** 40/14 96/8
**conduct [11]** 133/12 162/18 165/10 166/7 166/10 182/21 183/14 186/9 189/19 190/21 191/7
**confer [3]** 114/21 184/12 194/16
**conference [2]** 123/15 195/11
**conferred [2]** 121/11 121/19
**conferring [2]** 115/10 117/19
**confidence [2]** 45/23 61/4
**confidential [1]** 169/11
**confirm [1]** 69/16
**confirmed [2]** 69/4 106/21
**conflicting [1]** 151/5
**conformance [1]** 195/10
**conforming [2]** 128/19 179/14
**confusing [3]** 149/2 149/23 179/7
**conjunction [1]** 179/14
**conjunctively [4]** 147/21 148/13 149/2 149/9
**connect [2]** 26/4 26/9
**connected [5]** 18/3 25/16 26/8 27/1 102/18
**connection [7]** 70/13 102/9 103/20 110/25 111/4 111/8 153/1
**connections [1]** 113/9
**connotation [1]** 31/22
**conscious [6]** 155/16 157/1 157/5 157/7 157/10 157/16
**consciously [2]** 154/19 154/23
**consider [3]** 139/15 185/11 191/1
**consideration [1]** 135/2
**considered [1]** 68/19
**considering [3]** 165/4 178/2 178/10
**consisted [2]** 19/23 38/8
**consistent [4]** 96/11 96/13 137/11 178/11
**conspiracies [1]** 101/15
**conspiracy [45]** 101/11 101/20 102/5 102/18 104/3 105/16 105/20 108/11 109/17 111/3 148/10 148/11 150/14 152/16 152/25 153/21 159/4 163/5 163/6 164/14 164/22 166/2 166/12 166/13 171/23 172/6 172/8 172/12 172/12 172/14 172/22 173/5 173/13 173/22 174/17 175/3 175/8 175/9 175/10 175/23 175/25 176/1 177/12 178/5 178/9
**conspirator [13]** 102/25 103/10 103/11 105/20 110/4 140/8 141/9 163/7 163/12 166/14 167/11 168/4 181/21
**conspirator's [2]** 104/21 106/3
**conspirators [9]** 103/4 108/24 109/16 137/14 139/21 140/7 140/12 141/22 163/10
**conspiring [2]** 169/21 175/22
**constant [1]** 151/4
**constitutes [1]** 190/21
**constitutional [2]** 117/7 119/16
**constrained [1]** 39/6
**construe [1]** 113/12
**consultation [4]** 116/13 119/24 120/15 123/1
**consultations [4]** 104/12 104/18 116/18 123/1
**consults [1]** 112/11
**consuming [1]** 41/1
**contain [2]** 22/11 22/23
**contained [7]** 20/18 22/20 31/14 31/17 31/18 36/13 37/3
**containing [1]** 112/22
**contemporaneously [1]** 191/10
**context [1]** 68/19
**continue [4]** 4/3 72/11 155/4 177/25
**continued [3]** 2/1 4/7 104/6
**continues [1]** 165/6
**continuing [1]** 106/4
**contract [4]** 102/25 103/8 103/9 103/10
**contracting [1]** 39/4
**contractors [2]** 187/21 188/5
**contracts [8]** 102/23 102/24 103/3 103/4 105/17 110/12 110/14 110/16
**contradictory [1]** 149/23
**contrary [1]** 164/25
**contrivance [2]** 154/14 155/13
**control [10]** 57/9 57/25 58/6 59/20 65/25 113/10 155/19 169/2 169/5 169/9
**controlled [10]** 57/3 62/23 62/25 73/23 85/24 86/16 86/23 90/4 90/13 90/16
**controlling [1]** 57/12
**controls [1]** 56/18
**conversation [1]** 115/23
**conversations [3]** 164/17 164/19 164/20
**converse [1]** 69/9
**conveyed [1]** 147/25
**convicted [2]** 182/18 183/11
**convinced [1]** 182/25
**cooperating [3]** 113/7 113/19 151/25
**cooperator [1]** 114/15
**cooperators [2]** 168/22 168/25
**copies [2]** 194/14 194/19
**copy [4]** 132/4 194/17 194/18 194/19
**copying [1]** 105/22
**core [8]** 114/6 114/9 114/12 150/10 150/10 150/14 152/10 169/8
**corner [2]** 46/14 50/10
**correct [165]** 14/9 17/4 17/18 17/22 17/24 20/1 20/5 20/8 20/24 21/1 21/3 21/7 21/11 22/10 22/13 22/16 23/8 23/19 23/24 24/1 24/3 25/3 25/7 25/11 25/13 25/21 27/7 28/2 28/5 28/14 28/16 28/18 29/8 29/12 29/15 30/5 31/15 32/6 32/14 32/23 34/23 35/2 35/19 35/24 36/3 36/5 38/4 38/7 39/25 40/19 41/9 41/11 41/15 41/17 42/2 42/13 43/6 43/24 45/2 45/16 45/21 47/4 47/14 49/1 49/22 50/2 50/14 50/23 51/4 51/25 52/12 52/20 53/4 53/11 54/7 54/22 56/24 59/9 59/14 60/4 60/22 63/3 72/24 73/24 74/3 75/15 77/25 77/25 79/17 79/25 80/6 80/14 80/19 80/23 81/3 81/7 81/12 81/16 81/20 81/24 82/3 82/7 82/11 82/15 82/19 82/23 83/3 83/7 83/11 83/17 83/21 83/22 85/8 85/11 85/19 85/22 85/25 86/18 86/21 88/2 88/13 88/16 88/19 88/22 88/25 90/5 90/9 90/15 91/23 92/10 92/13 93/16 94/11 95/20 96/3 96/4 96/7 97/14 97/21 98/5 98/8 98/13 98/16 116/16 136/13 136/15 138/4 146/14 154/21 158/19 161/13 163/13 164/23 167/15 170/4 170/13 170/15 177/21 179/8 182/6 183/1 188/9 188/14 190/9 195/8
**correctly [3]** 75/8 172/11 174/4
**corresponding [1]** 51/9
**corroborate [2]** 76/5 76/6
**corroborated [1]** 69/2
**corroborating [1]** 70/7
**corroboration [1]** 114/14
**cost [3]** 41/2 41/4 41/4
**cost-effective [2]** 41/4 41/4
**cost-prohibitive [1]** 41/2
**could [74]** 8/11 15/13 17/11 18/5 18/17 18/20 20/6 20/6 20/8 20/8 20/9 20/10 22/1 22/4 23/13 23/15 23/15 38/21 39/13 42/4 43/4 43/7 44/18 46/8 47/18 47/21 50/3 52/6 53/17 55/14 56/11 57/11 58/8 63/19 66/4 67/18 73/6 73/7 74/25 78/17 78/22 78/24 79/8 80/2 83/25 84/16 91/25 93/17 93/21 94/10 94/12 94/20 94/24 95/8 95/9 95/17 98/6 98/11 101/17 104/14 109/22 109/25 110/7 111/2 111/22 112/17 117/21 124/4 125/6 163/2 178/7 178/8 184/14 191/5
**couldn't [5]** 24/10 24/12 24/14 43/11

## C


couldn't... [1] 43/13
counsel [33] 15/19 63/16 73/16 78/6 78/12 78/15 93/5 99/1 115/20 116/3 116/13 116/18 116/22 117/15 117/17 118/7 118/16 118/17 119/25 120/1 120/15 120/21 122/4 122/8 122/13 123/1 123/5 129/22 130/5 130/14 131/14 135/3 141/19
count [37] 101/20 106/24 107/3 107/7 107/8 107/11 107/14 107/17 108/11 111/3 152/24 152/24 153/6 153/6 153/7 153/14 153/17 153/19 153/21 154/5 170/8 171/21 172/5 172/10 172/22 172/23 173/14 174/9 174/21 174/24 174/25 176/1 177/1 177/10 178/1 178/9 178/9
Count 1 [10] 101/20 172/22 173/14 174/9 174/21 174/25 176/1 177/1 177/10 178/9
Count 2 [2] 107/8 107/11
Count 3 [3] 107/3 107/7 107/14
Count 4 [1] 107/17
Count 5 [9] 106/24 108/11 153/6 153/6 153/7 153/14 154/5 172/5 172/10
Count 6 [3] 111/3 152/24 152/24
country [1] 119/21
counts [24] 101/11 101/16 101/16 104/24 104/25 108/2 108/2 114/3 147/21 148/13 149/10 152/17 153/3 153/4 153/10 153/24 170/6 170/8 174/23 175/9 175/20 177/9 177/16 178/3
Counts 1 [3] 153/3 175/20 177/16
Counts 2 [6] 101/16 104/24 108/2 170/6 174/23 177/9
counts can [1] 149/10
counts require [1] 152/17
counts were [1] 153/24
couple [6] 72/15 74/20 74/22 93/11 123/21 192/20
course [24] 30/23 34/6 36/17 38/11 68/19 72/2 99/12 99/16 114/4 114/22 114/25 117/23 129/1 129/2 130/4 148/5 155/7 158/10 159/20 169/19 169/23 171/6 172/3 184/13
court [33] 1/1 2/12 64/18 65/13 66/20 66/22 67/9 99/18 113/12 113/21 114/24 115/16 118/1 118/19 118/23 119/8 119/20 120/14 120/16 125/14 127/8 135/3 139/21 141/7 146/17 167/17 167/23 180/4 189/2 190/8 195/4 195/5 195/15
Court's [4] 130/10 153/7 166/16 191/15
courthouse [1] 119/11
courtroom [1] 126/1
courts [2] 120/2 133/15
coverage [1] 151/19
covered [4] 110/18 110/22 148/10 188/16
covers [1] 113/2
Cox [35] 103/10 103/24 105/20 106/10 106/16 110/4 111/14 127/25 132/8 132/19 140/20 144/8 144/14 144/22 145/11 145/24 146/2 149/17 154/16 154/20 161/5 162/8 164/19 165/7 165/17 169/21 169/22 171/9 171/10 171/11 171/17 172/4 174/4 192/5 192/6
Cox's [1] 112/10
CR [1] 1/3
CRC [2] 2/11 195/14
creams [1] 109/4
create [9] 32/19 32/20 36/9 38/2 38/6 38/15 66/2 103/25 113/25
created [4] 38/8 62/4 103/4 110/13
creates [1] 153/11
creating [2] 105/12 106/13
credibility [1] 135/10
credit [4] 128/23 187/18 190/20 190/23
crime [24] 101/22 144/8 144/21 144/23 144/25 145/7 145/10 145/10 162/22 166/8 174/10 174/15 176/7 176/8 176/12 181/8 182/2 182/7 182/12 182/18 183/11 184/5 186/5 186/21
crimes [3] 102/16 150/1 184/23
criminal [13] 30/13 39/2 102/22 118/13 150/7 162/19 162/20 165/23 165/23 166/6 166/9 179/2 180/2
criteria [5] 44/9 44/11 44/11 44/13 44/14
CRM [1] 1/18
cross [14] 14/24 14/25 65/22 65/25 66/3 66/10 67/17 69/18 70/19 71/25 72/11 75/11 78/16 93/11
cross-examination [3] 14/24 14/25 72/11
cross-examine [1] 75/11
cross-examiner [1] 66/3
crossing [1] 134/20
CRR [2] 2/11 195/14
CS [1] 169/13
CSO [1] 192/17
cure [2] 174/19 174/21
currently [1] 72/23
cut [1] 181/2
cuts [1] 155/2
Cuttino [2] 104/13 112/16
CUYLER [9] 1/18 128/21 129/10 129/17 171/5 180/15 184/10 187/18 189/14
Cuyler's [3] 183/18 183/24 185/2
Cynthia [13] 17/11 46/9 47/6 47/22 48/22 50/25 53/16 55/25 57/6 78/17 78/25 83/23 85/13


## D


Damian [1] 119/11
dare [1] 188/25
DARREN [1] 1/13
darren.halverson [1] 1/16
data [84] 4/23 5/9 7/25 8/17 9/13 10/13 11/2 11/24 12/24 12/25 13/6 13/14 14/8 17/10 17/17 18/11 18/19 18/23 19/9 19/19 19/20 20/22 21/2 21/2 21/5 21/20 22/1 23/11 25/16 26/22 27/12 27/15 27/17 27/19 28/9 28/11 32/10 32/11 32/21 33/22 35/18 35/23 39/23 43/4 43/5 44/5 45/3 45/15 45/15 46/13 47/15 47/20 48/17 50/1 50/15 50/18 51/3 51/10 53/6 54/6 54/19 59/25 60/6 63/7 71/5 73/4 73/7 73/8 73/11 74/7 74/9 74/14 74/16 94/4 94/4 96/12 97/2 97/23 98/5 98/11 104/10 107/25 108/9 146/25
database [9] 36/7 36/13 36/18 37/3 64/15 72/20 74/24 75/5 76/1
date [13] 5/10 5/12 6/22 8/17 12/23 14/3 14/13 107/2 132/6 144/6 144/9 144/10 145/6
dates [2] 4/17 4/18
DAVID [1] 1/10
Davidson [1] 109/13
Davidson Pharmacy [1] 109/13
day [11] 1/10 5/10 5/15 14/6 14/7 14/13 14/15 14/20 104/15 112/17 192/1
days [3] 6/22 13/15 14/4
DC [2] 1/15 1/19
De [10] 102/14 103/20 105/3 105/7 105/9 109/1 112/20 112/23 157/22 181/17
De Lanoy [3] 105/9 109/1 112/20
deal [2] 120/12 170/24
Deanna [1] 47/13
Deanna Grandstaff [1] 47/13
December [3] 14/5 14/14 85/10
December 2020 [1] 85/10
December 27th [1] 14/14
December 28th [1] 14/5
decided [2] 24/17 98/17
decides [1] 144/11
decision [18] 65/25 105/8 106/15 116/17 116/25 117/11 117/12 117/15 117/16 118/15 118/18 118/21 119/24 121/10 121/11 121/19 122/9 122/25
decisions [3] 106/11 120/2 120/22
decline [2] 117/3 117/6
DeCorso [5] 6/18 8/14 8/18 104/13 112/16
defendant [43] 1/8 2/2 102/16 102/22 103/16 104/20 105/1 105/13 108/21 110/9 113/20 114/11 118/13 118/15 118/16 118/20 120/5 130/25 131/25 134/14 141/9 150/2 154/19 154/23 155/15 156/6 166/6 166/9 167/24 168/6 170/6 174/15 175/20 176/6 176/7 176/12 176/14 178/2 180/2 180/12 182/18 183/11 185/9
Defendant Blackman [1] 114/11
defendant's [9] 39/19 103/21 103/23 111/20 118/18 118/24 119/9 179/1 186/15
defendants [3] 106/13 170/9 179/2
defense [76] 54/25 66/24 68/12 99/5 99/17 99/18 99/19 99/20 101/9 114/7 115/11 116/6 116/11 116/18 118/14 124/19 125/3 125/12 126/5 126/7 127/22 128/23 132/7 135/11 136/11 136/12 137/9 138/16 139/12 142/12 143/6 143/20 144/3 144/17 144/18 146/21 146/24 149/3 149/4 150/11 150/21 151/1 156/2 158/1 158/3 158/6 158/11 159/25 160/1 160/2 161/14 162/10 163/16 165/20 165/21 166/16 166/17 166/21 166/22 167/9 170/14 171/14 172/2 173/3 177/15 178/16 178/24 179/20 180/21 186/4 187/8 187/13 187/20 191/11 191/15 194/15
defense's [8] 67/14 139/17 139/19 146/11 164/25 169/23 170/18 178/12
defenses [1] 169/8
defer [1] 144/10
defined [2] 12/22 101/24
definitely [8] 16/11 22/6 22/24 57/3 63/9 74/9 92/21 177/1
definition [1] 134/24
defraud [18] 102/16 106/6 150/20

## D


**defraud... [15]** 151/16 151/17 151/22 152/25 159/18 160/1 160/3 160/12 160/14 161/14 172/7 180/3 180/13 184/11 185/10
**delay [2]** 120/8 127/6
**deleting [1]** 180/16
**deliberate [7]** 127/1 127/2 154/10 154/10 155/12 157/16 165/1
**delineated [1]** 22/7
**delivered [1]** 111/11
**delivery [2]** 111/4 111/8
**demonstrated [2]** 106/6 112/15
**demonstrates [5]** 105/19 105/23 106/5 112/9 112/18
**demonstrative [1]** 18/4
**denied [12]** 65/4 65/18 66/16 113/17 114/4 114/17 119/8 120/19 124/22 124/24 167/22 168/10
**Denise [3]** 103/14 105/4 105/13
**Denise Leard [3]** 103/14 105/4 105/13
**dense [1]** 30/9
**Department [2]** 1/13 132/2
**depends [3]** 66/10 70/5 73/8
**deposits [1]** 79/11
**describe [5]** 7/20 9/8 9/23 89/6 175/13
**describes [1]** 162/23
**describing [2]** 152/6 174/3
**description [5]** 19/15 146/25 170/10 171/22 171/23
**deserves [1]** 154/6
**designed [3]** 105/5 106/12 110/25
**despite [2]** 143/19 188/19
**details [1]** 21/18
**detect [1]** 106/12
**detection [1]** 105/5
**detections [1]** 106/11
**determine [2]** 184/4 187/12
**determining [6]** 9/25 179/1 180/2 180/12 184/22 185/8
**device [3]** 18/15 26/2 28/8
**devices [6]** 4/18 5/10 5/13 5/13 5/14 8/19
**devised [1]** 105/1
**did [125]** 9/4 11/2 11/4 14/15 16/9 16/15 16/20 17/1 19/5 19/6 19/13 19/14 19/22 21/25 21/25 23/9 23/21 24/18 25/12 25/22 26/12 26/12 27/18 29/9 29/22 29/24 30/12 32/9 32/15 32/16 32/17 32/20 32/24 33/3 33/7 33/9 34/15 34/18 35/16 35/25 36/9 37/7 37/10 37/15 37/21 38/17 43/9 44/9 44/12 44/24 44/25 45/4 45/6 45/10 45/10 45/12 45/14 45/25 46/2 48/8 48/9 48/11 48/19 49/25 51/8 51/8 52/2 52/4 52/23 53/7 53/14 54/13 55/6 55/9 55/10 55/12 56/16 57/9 57/12 57/25 58/5 58/12 63/7 63/11 65/24 65/24 65/24 67/6 67/10 68/8 69/16 69/21 70/12 70/12 75/11 75/12 75/13 93/12 93/13 96/3 98/18 117/13 124/7 128/23 132/8 141/8 142/22 142/22 146/2 146/2 151/6 155/15 163/3 163/10 163/22 164/9 168/18 184/1 188/22 188/22 188/24 189/8 189/8 189/17 190/9
**didn't [30]** 21/8 22/8 22/8 30/11 32/8 34/11 37/7 44/9 49/23 52/13 52/21 53/5 53/12 61/19 67/17 69/2 70/8 75/9 84/12 90/21 99/5 107/20 113/5 143/12 156/15 178/6 181/16 181/18 182/5 184/18
**difference [7]** 40/23 40/24 66/18 152/10 152/14 159/14 162/13
**different [29]** 6/24 10/1 10/3 10/4 10/23 11/14 22/15 23/11 47/16 48/14 57/11 58/7 58/10 60/8 61/5 62/9 68/23 101/10 120/6 128/4 141/14 146/12 152/3 152/22 156/10 166/3 175/2 180/23 190/3
**differentiate [1]** 101/15
**digitized [2]** 72/19 74/23
**direct [13]** 4/4 4/7 15/3 21/4 36/16 65/15 65/23 67/11 72/1 72/18 96/5 109/2 135/2
**directed [1]** 67/24
**direction [1]** 78/15
**directly [2]** 109/11 171/7
**disagree [8]** 129/16 129/18 129/18 151/10 157/8 165/14 181/5 182/23
**disagreement [1]** 145/16
**disclosure [1]** 15/10
**disclosures [1]** 15/9
**discovered [1]** 111/2
**discuss [2]** 75/13 75/15
**discussed [4]** 92/12 116/4 164/12 165/19
**discussing [4]** 74/8 109/6 117/10 117/15
**discussion [2]** 99/4 164/17
**discussions [3]** 115/20 116/5 120/24
**disjunctively [1]** 149/10
**disobey [1]** 152/13
**dispute [6]** 31/20 114/6 114/9 114/12 128/16 150/10
**disputed [2]** 128/10 128/23
**disputes [1]** 114/7
**disregard [7]** 57/16 65/1 65/25 66/6 67/6 91/4 152/13
**disrespect [1]** 24/22
**dissatisfaction [1]** 123/5
**distinction [2]** 70/16 175/25
**district [13]** 1/1 1/1 1/11 107/25 118/19 118/23 119/8 119/13 133/17 148/25 153/23 195/5 195/6
**districts [1]** 149/1
**disturb [1]** 118/22
**dividing [1]** 28/25
**DIVISION [2]** 1/2 153/23
**divulge [1]** 115/22
**DME [17]** 6/23 6/23 8/18 9/11 9/25 10/9 48/24 49/4 54/11 55/11 55/19 55/22 108/25 109/18 110/7 110/8 165/8
**DMERx [13]** 37/4 86/15 88/17 90/13 92/8 98/11 105/24 105/25 109/21 109/24 110/6 110/17 163/3
**DMERx-affiliated [3]** 86/15 88/17 92/8
**do [155]** 7/5 11/8 11/9 14/10 14/15 14/17 17/8 17/14 17/15 18/9 18/17 19/11 21/22 28/19 29/1 29/2 29/4 29/25 30/5 30/13 30/15 32/17 33/4 33/5 35/2 35/12 37/20 39/13 40/9 40/10 46/15 46/25 47/1 47/24 49/23 50/8 50/11 50/12 51/16 51/18 52/9 52/10 53/23 60/17 62/3 65/20 68/17 69/16 69/21 70/8 70/13 70/14 73/11 75/3 75/9 75/12 76/12 76/14 76/15 76/16 76/23 77/4 78/1 78/2 78/5 84/8 84/12 86/14 89/13 90/20 90/21 90/25 91/18 92/6 94/6 94/8 95/22 95/24 99/9 104/8 104/15 114/18 116/15 120/4 120/25 121/2 121/4 121/5 121/8 121/9 122/1 122/4 122/8 122/10 122/12 122/14 122/14 123/9 123/13 123/19 124/6 124/17 124/23 124/24 125/11 126/10 126/12 127/17 127/22 129/19 131/15 132/8 133/18 133/19 138/23 140/6 140/22 141/23 145/9 148/11 148/11 149/20 150/2 152/12 156/10 161/10 163/10 165/15 167/22 167/25 168/14 170/22 171/13 171/15 171/19 171/25 172/23 173/17 175/17 177/1 178/7 178/10 181/1 183/17 183/19 186/22 188/25 189/6 189/9 189/10 189/12 189/12 190/14 193/3 195/6
**do's [1]** 104/17
**doctor [6]** 6/17 8/18 10/10 10/11 20/16 49/14
**doctor's [13]** 6/1 6/5 6/20 7/24 8/16 20/7 42/16 48/7 48/12 48/16 105/12 109/6 109/25
**doctors [12]** 5/18 104/6 104/9 104/11 104/17 105/21 105/22 105/23 105/25 106/21 106/23 109/18
**document [10]** 36/14 37/4 38/5 62/9 78/13 104/17 128/12 129/20 132/5 133/7
**documentary [1]** 110/2
**documents [5]** 46/19 47/1 113/19 134/3 146/19
**does [58]** 14/2 15/21 15/22 16/12 16/13 22/11 22/16 31/11 31/12 33/19 33/20 34/8 34/10 38/25 40/4 45/7 54/9 64/14 71/24 86/3 87/17 87/18 87/20 109/1 114/5 118/19 124/1 124/10 130/25 133/5 134/14 138/16 139/20 141/13 141/18 148/12 148/15 149/5 154/7 157/5 157/25 159/20 163/6 163/11 163/14 164/13 164/21 165/20 166/13 166/18 175/2 175/3 186/21 186/22 187/19 189/14 189/15 189/19
**doesn't [26]** 44/15 44/15 44/16 59/16 59/20 70/6 99/19 116/22 119/7 120/19 120/23 122/4 133/9 133/14 133/22 145/5 148/16 152/9 152/10 179/17 187/13 187/20 187/22 188/8 189/2 189/10
**doing [19]** 27/8 48/17 52/15 64/17 66/13 68/20 72/4 104/6 104/18 120/16 127/10 155/3 155/17 155/19 156/8 166/3 172/10 179/3 187/9
**DOJ [1]** 1/18
**DOJ-CRM [1]** 1/18
**dominant [1]** 194/4
**don't [115]** 13/3 13/4 15/8 16/11 18/13 18/15 18/16 18/21 19/15 19/16 21/14 27/8 27/17 29/20 30/8 30/9 31/20 31/23 36/8 36/20 37/8 38/25 39/20 42/4 44/15 45/7 46/18 47/17 48/7 48/19 52/15 55/12 55/13 55/22 59/5 63/6 63/9 63/21 70/1 73/6 74/6 75/22 77/8 78/13 84/7 84/14 84/25 86/6 86/25 87/2 89/4 89/13 92/21 93/1 94/17 94/17 94/19 116/11 117/19 120/12 120/17 126/24 126/24 126/25 127/1 127/2 127/22 130/11 133/15 136/10 137/3 137/11 139/3

**D**

**don't... [42]** 140/8 142/8 142/21 142/21 142/23 144/1 146/24 147/4 148/7 149/6 150/10 150/15 150/21 150/24 151/3 153/5 153/12 153/13 153/17 153/25 153/25 154/6 156/7 161/20 165/18 169/7 170/20 173/15 179/20 181/24 183/2 183/24 185/22 186/14 188/21 189/7 192/7 192/9 192/10 193/6 193/11 193/18
**don'ts [1]** 104/17
**done [31]** 31/4 33/20 34/4 36/22 64/10 95/4 96/12 97/10 100/17 101/10 104/1 104/7 104/12 111/23 119/10 119/10 119/12 119/21 119/25 120/2 123/16 123/24 125/4 130/15 133/18 148/24 163/3 174/6 183/23 191/11 191/16
**door [4]** 69/3 69/6 69/8 70/2
**double [1]** 75/8
**double-check [1]** 75/8
**doubt [8]** 114/11 114/13 134/24 153/25 153/25 160/15 184/6 184/23
**down [28]** 5/20 8/23 18/1 19/1 39/8 46/14 46/23 48/22 50/9 53/16 53/18 55/24 57/6 61/14 73/9 78/10 80/9 85/13 98/24 131/23 132/2 151/21 152/11 169/15 181/6 182/11 186/12 193/9
**dozen [1]** 113/18
**Dr. [9]** 8/14 8/18 101/25 101/25 102/2 106/6 181/11 189/13 189/24
**Dr. DeCorso [2]** 8/14 8/18
**Dr. Hoover [4]** 101/25 102/2 106/6 181/11
**Dr. Sullivan [3]** 101/25 189/13 189/24
**draft [2]** 127/18 130/2
**drafted [1]** 171/8
**draw [4]** 60/17 60/18 60/20 185/22
**drawing [2]** 44/8 70/23
**due [3]** 147/23 148/18 167/13
**during [2]** 136/16 147/19
**duty [7]** 130/18 134/5 134/13 149/13 150/23 152/12 152/20

**E**

**each [19]** 5/10 5/10 26/10 29/10 29/13 30/3 101/2 101/3 108/10 124/7 124/25 127/2 152/23 164/11 172/22 178/1 178/9 178/23 194/17
**easier [2]** 77/22 161/21
**easily [2]** 58/8 67/1
**East [2]** 2/12 195/15
**easy [3]** 113/16 114/3 142/18
**ECF [1]** 192/25
**echo [1]** 165/1
**echoes [1]** 165/7
**edits [1]** 127/23
**effect [1]** 185/13
**effective [2]** 41/4 41/4
**effectively [1]** 119/19
**effectiveness [1]** 116/21
**efficiency [5]** 39/15 39/17 60/10 60/23 60/24
**efficient [7]** 38/21 39/5 39/13 40/9 126/10 127/9 130/6
**effort [2]** 190/15 192/14
**either [6]** 24/14 67/1 142/19 160/4 161/14 166/4
**electronically [1]** 108/8
**element [8]** 101/3 101/21 102/12 103/13 105/1 108/4 108/12 159/18
**elements [5]** 165/8 148/5 175/13 184/5 184/22
**elicited [7]** 67/12 163/2 163/7 164/21 188/12 188/15 188/23
**eliciting [1]** 188/19
**ELMO [7]** 62/15 62/17 83/25 85/15 89/4 92/3 193/9
**else [10]** 38/14 64/7 66/17 67/7 76/17 127/16 130/4 134/16 138/13 173/12
**email [8]** 112/8 127/19 128/5 128/6 128/9 155/12 157/9 193/2
**emails [6]** 102/17 156/9 157/6 164/20 168/7 168/7
**emphasizes [1]** 146/18
**encounter [9]** 12/20 12/22 13/2 13/6 13/7 13/15 13/17 14/3 54/15
**encounters [11]** 11/12 11/12 12/12 12/13 12/17 14/6 54/1 54/8 54/10 54/14 54/16
**end [7]** 54/13 55/17 132/23 180/8 183/6 191/19 192/1
**ended [1]** 54/6
**ending [2]** 183/8 184/14
**ends [3]** 78/20 79/4 179/6
**engage [2]** 115/13 118/20
**English [6]** 154/5 174/22 174/24 176/4 176/21 178/8
**enough [4]** 35/8 41/5 167/19 190/17
**ensure [1]** 118/20
**entered [3]** 4/1 72/8 126/1
**entertain [1]** 64/15
**entire [5]** 103/11 178/13 186/11 193/14 193/19
**entirely [4]** 134/12 135/18 135/24 179/12
**entities [10]** 62/23 63/1 73/23 85/24 86/17 86/23 90/13 91/11 91/13 91/21
**entitle [1]** 142/16
**entitled [14]** 113/8 120/13 149/8 161/15 166/21 178/16 181/22 181/25 186/16 186/23 187/7 187/9 187/16 195/9
**entry [2]** 26/19 26/19
**envelope [1]** 76/24
**equally [1]** 192/4
**eradicate [1]** 132/9
**ERIN [1]** 2/6
**erroneous [1]** 133/19
**error [3]** 40/24 61/7 148/6
**especially [3]** 126/21 149/9 179/18
**ESQ [4]** 1/13 1/18 2/2 2/6
**essence [1]** 149/18
**essential [1]** 148/5
**essentially [7]** 69/2 69/16 105/4 128/3 146/23 171/9 178/3
**establish [4]** 143/14 155/11 164/13 164/21
**estimate [2]** 45/19 77/1
**estimated [1]** 94/9
**estimates [1]** 61/7
**estimating [1]** 98/9
**estimation [1]** 96/24
**et [1]** 114/12
**et cetera [1]** 114/12
**ethical [5]** 180/1 180/11 182/20 183/13 185/7
**evaluation [6]** 112/5 112/8 112/9 155/1 155/2 155/4
**even [33]** 25/6 67/16 74/21 100/15 101/15 101/16 121/7 122/4 122/13 123/14 125/6 125/8 126/17 133/16 143/11 148/23 153/23 155/18 160/6 160/6 167/17 169/4 169/6 180/16 186/8 186/9 186/17 187/13 190/7 190/8 190/9 190/9 192/10
**evening [2]** 127/12 194/25
**ever [6]** 65/18 148/25 167/23 168/3 181/17 181/21
**every [14]** 24/10 25/9 26/6 37/6 41/24 101/2 101/3 113/13 130/6 133/14 166/16 186/19 190/10 193/13
**everybody [9]** 4/2 69/25 70/23 72/9 76/17 115/3 126/2 130/1 193/18
**everybody's [2]** 76/11 115/8
**everyone [9]** 64/7 71/2 95/10 100/7 100/23 127/16 192/21 194/24 194/24
**Everyone's [1]** 100/8
**everything [11]** 30/10 98/25 115/21 125/10 126/14 174/8 177/11 184/6 184/19 187/10 189/3
**evidence [94]** 3/11 5/4 6/13 8/6 9/19 10/19 12/6 13/22 58/2 58/3 58/10 58/11 62/10 62/12 75/25 76/10 76/10 76/14 76/18 78/13 87/22 88/8 90/18 93/24 99/15 101/14 109/15 113/12 113/14 126/9 126/10 126/19 126/21 133/10 133/25 142/7 142/16 142/20 142/25 143/4 143/10 143/20 143/21 143/23 144/2 145/21 146/18 146/19 147/1 147/2 147/12 149/22 154/14 154/18 154/22 155/15 155/16 155/20 156/18 156/22 157/5 157/6 157/9 157/14 157/17 158/2 161/6 161/22 161/22 163/7 164/17 165/13 167/6 167/24 168/2 168/7 169/8 179/1 181/8 181/22 182/1 182/3 182/5 182/7 182/8 183/2 184/4 184/9 185/12 187/11 187/16 188/16 188/20 194/20
**evidentiary [1]** 126/8
**exact [14]** 15/8 42/5 63/6 86/25 91/13 92/21 93/1 94/18 144/9 144/10 145/6 145/14 154/25 179/22
**exactly [8]** 36/4 98/3 118/25 136/20 149/6 171/11 180/20 188/2
**exam [1]** 111/19
**examination [10]** 3/3 4/4 4/7 14/24 14/25 72/11 93/9 96/6 96/19 155/4
**examinations [1]** 104/6
**examine [1]** 75/11
**examiner [1]** 66/3
**example [10]** 5/12 14/4 28/15 51/1 69/11 107/3 110/2 152/24 156/4 170/5
**examples [3]** 151/16 164/22 180/22
**exceeded [1]** 167/18
**Excel [6]** 20/13 20/14 47/9 55/5 56/6 56/7
**excellent [4]** 66/23 116/9 120/7 122/8
**except [7]** 89/1 89/12 146/21 154/4 171/10 174/14 181/7
**exception [2]** 167/11 167/18
**exchange [2]** 140/19 141/2
**excluded [2]** 69/13 70/10
**excuse [7]** 15/11 97/16 109/8 123/18 137/25 150/8 183/16
**excused [2]** 98/25 118/3

E

**execute [1]** 98/17
**exercise [1]** 21/25
**exhibit [92]** 4/13 5/4 5/22 6/13 7/19 7/20 8/6 8/8 9/6 9/19 10/19 11/6 11/8 11/13 11/22 11/25 12/6 12/10 13/11 13/18 13/22 17/12 18/3 30/17 46/8 46/16 46/20 47/19 48/10 48/11 50/4 51/14 52/7 52/17 52/24 53/8 53/17 54/24 55/15 56/11 61/12 61/25 73/22 75/17 76/9 76/10 77/1 77/11 77/16 77/20 78/3 78/6 78/25 79/9 86/11 87/8 87/22 88/5 88/8 89/22 91/18 92/1 92/14 94/22 94/23 95/11 102/10 102/19 102/19 103/2 103/8 103/12 104/2 104/16 104/19 104/22 105/19 105/23 106/2 106/14 107/6 107/12 107/15 107/18 109/5 110/3 111/16 154/25 155/6 155/8 155/11 181/14
**Exhibit 1003 [1]** 109/5
**Exhibit 1035 [1]** 104/16
**Exhibit 1048 [1]** 102/19
**Exhibit 1052 [1]** 104/2
**Exhibit 1059 [1]** 105/19
**Exhibit 1076 [1]** 103/12
**Exhibit 1080 [1]** 105/23
**Exhibit 110 [1]** 5/22
**Exhibit 111 [2]** 7/19 106/2
**Exhibit 1111 [1]** 104/19
**Exhibit 113 [1]** 50/4
**Exhibit 1152 [1]** 110/3
**Exhibit 1158 [1]** 104/22
**Exhibit 117 [1]** 17/12
**Exhibit 118 [1]** 51/14
**Exhibit 120 [1]** 52/17
**Exhibit 1221 [1]** 103/2
**Exhibit 123 [2]** 4/13 52/24
**Exhibit 126 [1]** 9/6
**Exhibit 129 [1]** 53/8
**Exhibit 137 [1]** 53/17
**Exhibit 138 [1]** 13/11
**Exhibit 139 [1]** 78/25
**Exhibit 152 [1]** 86/11
**Exhibit 155 [1]** 92/1
**Exhibit 159 [2]** 87/22 92/14
**Exhibit 233 [1]** 103/8
**Exhibit 303 [1]** 46/20
**Exhibit 305 [1]** 107/15
**Exhibit 429 [1]** 47/19
**Exhibit 630 [2]** 94/22 95/11
**Exhibit 635 [1]** 102/10
**Exhibit 9 [1]** 30/17
**exhibits [22]** 3/11 4/10 21/12 21/14 29/23 30/2 30/10 57/1 73/17 76/2 102/8 103/1 104/8 104/12 107/15 107/21 107/23 110/2 112/14 113/23 157/9 194/16
**Exhibits 228 [1]** 103/1
**Exhibits 437 [1]** 21/12
**exist [4]** 39/20 44/15 45/7 45/8
**existed [1]** 44/17
**existence [2]** 164/14 164/22
**exited [3]** 64/3 100/22 127/15
**expansive [1]** 94/3
**expect [4]** 55/12 68/7 89/6 193/18
**expensive [1]** 41/1
**experience [4]** 66/21 153/24 189/18 189/24
**experienced [4]** 65/5 66/3 66/23 72/4
**expert [3]** 40/1 65/5 136/6
**explain [4]** 4/15 5/24 94/12 95/17
**explained [1]** 103/10
**explains [2]** 105/22 110/3
**explanation [1]** 174/5
**explicitly [1]** 149/4
**explode [1]** 66/11
**exploding [1]** 66/11
**expressly [1]** 141/7
**extensively [1]** 109/20
**extent [7]** 64/25 65/3 65/7 101/13 133/6 148/9 162/6
**extract [4]** 94/14 95/18 97/3 97/19
**extracts [1]** 95/19
**extrapolation [1]** 45/14
**extremely [1]** 167/11

F

**F.3d [1]** 118/11
**face [2]** 133/15 141/5
**facility [1]** 108/18
**fact [20]** 44/8 65/22 66/10 67/16 68/12 112/3 133/15 148/17 152/15 162/21 163/9 164/6 164/7 165/18 166/7 166/10 168/24 169/4 175/14 190/7
**facts [4]** 147/12 162/23 163/25 176/13
**factually [1]** 161/20
**failed [2]** 101/2 168/19
**failure [1]** 120/9
**fair [8]** 35/8 137/5 137/6 167/14 167/14 171/19 172/9 193/8
**fairly [1]** 148/9
**faith [10]** 150/25 151/1 158/6 158/6 158/8 158/13 159/25 160/2 161/11 161/13
**fake [1]** 110/24
**faked [1]** 112/4
**faking [1]** 111/21
**false [7]** 111/4 111/22 111/25 112/2 112/19 112/22 152/25
**falsity [3]** 106/7 106/22 112/15
**familiar [1]** 178/18
**family [2]** 143/8 143/10
**far [8]** 12/20 39/7 64/10 154/21 167/16 167/19 173/10 193/1
**fashion [1]** 159/21
**fast [1]** 135/23
**fault [1]** 65/18
**faulting [1]** 113/5
**favor [3]** 113/15 114/1 186/15
**favorable [4]** 113/9 113/13 191/20 193/10
**favorite [1]** 178/13
**fear [1]** 177/4
**federal [17]** 2/12 15/7 15/25 16/8 16/10 16/14 17/6 30/13 39/2 101/23 102/2 108/7 108/20 114/15 174/10 195/4 195/15
**feel [9]** 33/15 34/3 34/20 36/17 65/13 171/18 192/3 193/12 193/16
**feels [1]** 192/2
**felon [1]** 148/1
**felt [3]** 67/23 71/11 192/4
**few [3]** 4/10 16/7 55/20
**fictitious [2]** 105/12 111/25
**Fifth [3]** 147/4 147/17 148/23
**Fifth Circuit [2]** 147/4 148/23
**figure [6]** 18/18 18/20 39/10 39/13 40/9 156/16
**figured [1]** 44/22
**file [12]** 20/2 20/3 22/8 22/10 22/20 23/16 25/18 28/7 28/10 37/6 43/15 128/13
**files [25]** 13/2 13/7 13/17 19/24 22/4 22/6 22/19 24/3 24/4 24/19 25/8 25/9 28/1 29/7 29/13 29/14 29/18 30/3 31/14 36/3 36/10 55/5 56/6 56/7 97/20
**filing [1]** 132/6
**fill [1]** 146/1
**filter [3]** 74/25 75/1 75/4
**filtering [1]** 74/15
**final [3]** 105/8 130/20 154/2
**finally [5]** 66/7 113/23 122/12 123/3 127/1
**financed [1]** 108/7
**financial [4]** 19/7 56/10 60/2 60/12
**find [22]** 37/12 38/19 39/20 39/22 43/11 43/13 44/15 44/19 45/4 45/6 45/10 77/9 94/10 94/12 98/1 98/6 122/21 122/21 143/8 148/4 180/17 186/9
**finding [1]** 98/1
**fine [8]** 69/22 127/4 129/5 129/7 129/10 131/9 135/7 183/23
**finish [5]** 7/12 40/23 124/2 192/18 192/21
**finished [1]** 128/12
**firearm [1]** 148/1
**firm [3]** 15/5 15/6 15/24
**firms [1]** 85/21
**first [58]** 5/12 14/4 14/12 21/19 22/3 23/21 38/9 38/13 41/7 41/14 41/21 41/25 43/11 43/13 43/17 43/21 43/25 44/4 47/24 61/21 65/18 90/2 94/1 94/14 101/21 104/25 108/12 108/22 114/21 116/1 120/20 121/2 125/12 125/16 130/6 133/9 136/7 136/18 136/23 136/24 139/10 139/14 146/22 159/11 159/12 160/5 160/5 160/11 163/24 164/2 164/4 165/16 165/20 166/3 168/17 174/11 179/6 182/3
**fit [5]** 35/7 71/25 114/8 161/22 178/25
**fits [2]** 169/7 182/25
**fitting [1]** 89/4
**five [10]** 38/13 41/12 41/13 43/13 43/21 61/22 117/22 118/2 118/5 194/8
**five minutes [3]** 61/22 118/2 118/5
**five-minute [2]** 117/22 194/8
**flags [2]** 155/24 165/6
**flip [1]** 186/22
**flipping [1]** 171/10
**floor [2]** 1/14 158/11
**FLORIDA [11]** 1/1 1/4 2/4 2/8 2/13 6/20 108/1 119/13 133/17 195/6 195/16
**flow [7]** 56/15 84/12 87/3 87/12 87/15 87/19 88/11
**flowed [3]** 70/12 91/7 92/18
**flowing [1]** 88/20
**flows [1]** 57/1
**flsd.uscourts.gov [2]** 2/13 195/16
**focused [6]** 184/10 185/3 185/15 185/17 185/19 187/13
**follow [10]** 69/9 71/4 72/16 130/18 134/6 134/13 139/22 171/20 173/8 182/5
**follow-up [1]** 72/16

## F

**following [7]** 60/1 158/15 169/21 176/13 176/15 178/25 182/18
**foolproof [1]** 37/19
**footnote [10]** 36/16 89/5 134/15 135/19 136/2 145/22 179/6 183/8 183/8 186/12
**Footnote 14 [2]** 183/8 186/12
**Footnote 15 [2]** 179/6 183/8
**Footnote 23 [1]** 36/16
**forbids [2]** 150/3 152/13
**foregoing [1]** 195/7
**foreign [2]** 189/19 189/21
**forget [1]** 72/19
**forgotten [1]** 61/23
**form [10]** 22/8 42/24 73/15 86/10 105/14 154/16 178/16 181/15 192/22 194/21
**formal [2]** 102/21 130/22
**format [6]** 36/6 36/9 36/9 149/16 154/16 195/10
**formed [1]** 169/1
**Fort [2]** 2/13 195/16
**forth [4]** 85/16 116/9 127/7 156/11
**forward [1]** 114/9
**found [14]** 25/15 41/22 42/3 44/1 44/25 45/9 174/15 175/2 176/6 176/7 176/12 176/14 178/2 186/21
**foundation [4]** 142/15 181/16 181/18 185/23
**four [7]** 6/24 28/5 67/14 84/4 84/22 92/17 179/16
**four-week [1]** 67/14
**four-year [3]** 84/4 84/22 92/17
**frame [1]** 96/25
**frameworks [1]** 151/18
**frankly [7]** 33/5 123/14 125/4 165/4 179/15 182/7 184/9
**fraud [39]** 101/21 101/21 102/4 104/25 105/16 150/14 150/15 150/16 150/19 150/19 150/21 150/21 150/22 152/23 153/4 156/14 156/18 156/19 172/23 172/23 173/19 174/10 174/20 174/21 175/3 175/4 175/6 176/8 176/14 176/18 177/6 177/22 177/22 178/4 181/14 190/19 190/21 191/4 191/13
**fraudulent [7]** 104/20 104/21 104/23 105/18 106/2 106/12 112/1
**fraudulently [1]** 112/25
**free [5]** 33/15 34/3 34/20 36/17 193/11
**fresh [1]** 192/19
**friendly [2]** 162/19 165/22
**front [13]** 15/16 78/5 125/16 129/20 129/21 151/3 151/21 151/24 152/1 171/7 174/5 179/16 186/17
**full [8]** 69/1 99/9 99/11 99/12 112/18 140/1 158/16 162/2
**fully [1]** 122/25
**fundamental [2]** 118/13 151/7
**funds [6]** 84/12 87/3 87/12 87/15 87/19 88/12
**further [6]** 14/22 73/18 78/7 93/4 96/16 98/22

## G

**game [2]** 167/14 171/19
**Gary [7]** 161/5 164/19 165/7 169/22 171/10 171/11 172/4
**Gary Cox [7]** 161/5 164/19 165/7 169/22 171/10 171/11 172/4
**gave [6]** 59/8 120/7 123/2 129/13 140/20 165/17
**general [1]** 65/11
**generally [8]** 7/20 9/8 9/9 10/8 11/10 11/11 127/24 149/12
**generate [1]** 165/6
**gentlemen [6]** 61/22 63/25 88/6 99/2 100/14 126/6
**gently [1]** 99/15
**get [73]** 21/18 22/2 23/25 27/9 28/2 39/4 41/22 63/21 64/13 66/7 68/25 70/8 70/19 71/7 71/8 71/13 71/16 73/6 73/7 73/13 73/17 74/13 77/1 77/9 85/15 89/20 114/18 116/1 120/1 120/13 120/23 121/18 122/18 123/16 123/23 125/23 126/17 127/4 127/18 129/18 133/12 134/15 140/15 143/21 144/15 149/2 149/20 153/2 153/2 153/5 153/18 156/2 157/19 171/4 172/12 174/20 174/22 177/2 177/6 179/21 184/8 184/8 189/2 189/10 190/11 192/1 192/15 192/17 194/6 194/17 194/18 194/20 194/21
**gets [2]** 150/21 187/8
**getting [9]** 27/25 28/6 64/12 68/10 71/13 133/20 159/14 184/19 191/4
**Gilbert [2]** 76/15 115/20
**gina [8]** 2/11 2/13 180/5 192/16 195/4 195/14 195/14 195/16
**give [81]** 19/15 31/5 62/14 71/24 92/3 95/2 99/12 117/5 118/10 123/20 124/25 127/17 133/20 138/10 138/11 140/10 140/22 141/20 141/21 142/3 143/25 145/13 147/7 147/14 147/16 149/11 152/19 152/21 154/4 155/14 158/2 159/11 160/7 160/10 161/3 161/24 161/25 161/25 162/1 162/7 164/9 165/15 165/16 166/5 166/19 166/22 169/7 169/13 170/11 170/21 173/11 175/22 176/19 176/24 177/7 179/4 181/7 182/10 182/13 182/17 183/5 183/9 183/11 183/14 185/14 189/4 190/20 190/22 190/23 191/8 191/19 191/20 191/21 192/9 192/9 192/12 192/13 192/19 194/8 194/8 194/19
**given [38]** 18/19 63/19 71/23 98/14 116/21 117/1 123/7 145/24 149/15 149/17 153/24 154/7 154/13 157/19 157/20 158/4 158/22 159/1 159/3 159/9 159/16 161/8 162/8 162/8 165/13 169/1 171/9 174/9 178/19 178/23 179/3 179/15 180/17 180/22 185/12 191/9 192/6 192/12
**giving [29]** 12/12 139/21 145/14 147/18 152/19 153/20 154/15 160/16 164/4 164/5 164/9 167/22 168/9 173/20 174/2 178/22 179/5 179/11 187/9 188/3 190/13 190/16 190/17 190/22 190/24 191/1 191/24 192/5 193/6
**glad [1]** 168/25
**global [8]** 63/2 74/1 84/6 84/23 92/20 92/25 134/1 134/19
**Global Composite [1]** 92/25
**Global Composites [5]** 63/2 74/1 84/6 84/23 92/20
**glowing [1]** 110/21
**gmail.com [1]** 2/4
**go [55]** 7/16 18/5 24/21 27/18 39/7 47/6 51/13 52/6 54/24 54/25 55/20 61/24 64/4 65/23 66/1 66/24 69/2 71/19 77/19 78/17 79/8 79/9 79/19 80/2 80/8 80/11 80/15 80/20 83/8 83/25 85/15 91/7 95/9 99/10 107/8 112/6 114/9 123/8 123/14 125/11 125/12 125/23 127/18 129/11 129/21 132/4 133/16 160/6 170/1 173/25 186/1 192/18 192/21 194/9 194/15
**goal [3]** 103/14 103/15 103/23
**goes [12]** 75/2 131/18 131/18 132/7 148/23 154/21 158/7 169/11 176/20 183/9 193/15 194/22
**going [189]** 4/3 21/16 22/2 25/15 35/2 38/5 39/2 42/24 50/9 60/13 61/21 62/8 69/12 69/12 69/14 70/9 70/20 71/23 71/24 72/3 72/11 73/9 73/15 73/22 74/5 75/11 76/23 77/2 77/4 77/9 78/14 80/11 85/20 85/23 86/15 86/22 88/23 90/12 91/17 91/21 92/15 97/19 99/8 99/14 99/20 100/1 100/2 100/14 101/4 101/8 109/7 109/8 109/14 111/14 115/13 116/14 117/8 119/22 119/23 120/4 120/9 120/10 120/13 120/20 120/23 121/1 121/7 121/14 123/16 123/18 125/16 126/10 126/11 126/14 126/15 127/3 127/4 127/18 127/19 129/11 129/19 130/7 130/11 131/17 132/14 132/21 133/18 134/2 134/11 134/20 137/1 138/10 138/11 138/22 140/22 140/22 140/23 140/25 141/20 141/21 141/22 142/3 142/4 144/1 144/2 144/4 144/7 145/9 145/13 147/7 147/14 147/16 147/17 148/15 149/10 152/19 152/20 153/19 154/1 154/4 156/1 156/10 156/15 157/12 157/12 157/14 157/14 157/23 158/2 159/11 160/10 160/11 160/13 161/24 161/25 161/25 162/1 165/5 165/8 165/14 165/15 165/15 165/16 166/5 166/22 169/7 169/13 171/4 171/13 171/15 171/19 171/20 171/20 171/24 171/25 172/3 173/19 174/19 175/17 176/2 177/1 177/7 177/8 177/14 179/21 180/4 181/5 181/6 182/10 182/13 183/15 185/14 186/3 187/14 189/4 191/20 191/21 191/22 192/13 192/15 192/17 192/20 192/23 194/5 194/16 194/17 194/18 194/20 194/21
**gone [2]** 60/15 167/16
**good [22]** 4/3 4/10 58/21 58/25 59/4 93/8 108/18 110/20 129/14 129/15 143/3 143/5 150/25 151/1 158/6 158/6 158/8 158/13 159/25 160/2 161/11 161/13
**good faith [1]** 150/25
**got [19]** 23/22 24/7 27/21 42/9 46/13 47/12 47/13 71/21 96/24 127/18 132/18 136/3 143/18 144/7 151/10 154/4 154/22 157/18 186/6
**Gov [1]** 101/4
**government [191]** 3/11 13/18 15/7 15/25 16/3 16/4 16/8 16/10 16/14 16/16 16/18 16/22 17/2 17/7 17/10 17/11 17/14 19/11 21/12 21/14 23/22 27/9 28/25 32/8 34/11 39/1 39/4 40/1 40/5 40/22 45/13 45/22 46/7 46/8 46/11

## G


**government... [156]** 46/16 48/24 49/7 49/18 50/3 50/7 51/13 51/16 52/7 52/9 52/17 52/24 53/8 53/17 53/19 53/19 53/21 54/24 55/15 56/11 59/7 61/12 61/25 65/19 65/19 66/14 70/18 70/22 73/22 75/17 76/6 76/16 77/1 77/11 77/16 79/9 85/1 85/4 86/11 87/8 87/22 89/13 89/22 91/18 91/25 92/14 94/23 96/21 98/15 99/6 99/16 100/11 100/16 101/2 101/8 101/9 101/17 103/1 104/5 107/6 107/12 107/18 108/8 113/4 113/6 113/8 113/9 113/13 113/15 113/18 113/20 114/1 114/10 114/13 123/12 124/10 125/1 125/3 125/11 126/7 130/9 134/17 135/12 135/21 138/13 139/11 139/17 139/23 140/10 140/16 141/1 141/25 142/11 145/5 145/7 145/24 146/4 146/6 146/9 149/8 149/14 150/1 154/15 155/23 156/1 157/15 157/25 158/10 158/12 158/21 158/21 160/14 160/25 161/6 161/15 162/7 163/2 163/8 164/21 167/2 167/7 168/12 168/19 169/3 169/6 169/10 169/12 169/20 170/3 171/12 172/6 173/7 173/20 178/15 179/10 179/22 180/6 180/14 184/4 184/22 185/25 186/13 187/7 187/22 188/8 188/12 188/15 188/19 188/21 189/6 190/15 190/16 192/2 193/23 193/25 194/16
**Government 152 [1]** 89/13
**Government Exhibit 107 [1]** 46/8
**Government Exhibit 119 [1]** 52/7
**Government Exhibit 138 [2]** 13/18 54/24
**Government Exhibit 139 [1]** 56/11
**Government Exhibit 148 [1]** 61/12
**Government Exhibit 149 [4]** 61/25 73/22 77/1 91/18
**Government Exhibit 159 [1]** 87/8
**Government Exhibit 303 [2]** 46/16 107/12
**Government Exhibit 305 [1]** 107/6
**Government Exhibit 306 [1]** 107/18
**Government Exhibit 429 [1]** 55/15
**Government Exhibit 630 [1]** 94/23
**Government Exhibit 715 [4]** 75/17 77/11 77/16 79/9
**Government's [60]** 4/13 5/4 5/22 6/13 7/19 8/6 9/6 9/19 10/19 11/6 11/25 12/6 13/11 13/22 18/3 46/20 47/18 65/15 65/23 67/11 76/15 78/24 88/8 95/11 99/15 99/19 102/8 102/10 102/19 102/19 103/2 103/8 103/12 104/2 104/16 104/19 104/22 105/19 105/23 106/2 107/14 109/5 110/3 111/16 136/18 138/6 154/24 155/18 158/14 163/17 169/18 173/16 175/15 178/14 179/18 179/19 185/5 192/14 192/23 192/24
**Government's Exhibit [1]** 18/3
**Government's Exhibit 1061 [1]** 102/19
**grab [2]** 31/2 89/17
**grafting [1]** 165/12
**Grandstaff [1]** 47/13
**grant [1]** 133/21
**granted [3]** 66/5 113/14 134/4
**Great [1]** 59/22
**Green [1]** 7/22
**Gregory [1]** 102/15
**Gregory Schreck [1]** 102/15
**Ground [1]** 42/19
**grounds [4]** 147/23 167/13 167/14 168/13
**group [1]** 32/4
**grouped [3]** 57/1 57/3 90/4
**grouping [3]** 57/10 58/6 58/12
**groupings [1]** 58/12
**guarantee [1]** 156/14
**guess [10]** 13/3 16/1 25/24 58/2 70/15 73/6 127/17 162/15 173/6 175/1
**guidance [5]** 78/7 78/8 151/13 182/19 183/12
**guilt [3]** 141/15 151/8 162/5
**guilty [15]** 142/2 164/6 164/7 164/8 166/6 166/9 166/11 174/15 175/3 176/7 176/7 176/12 176/14 178/2 186/21
**guys [7]** 99/9 124/8 127/19 129/20 135/14 177/12 192/15
**GX [5]** 46/18 47/9 93/17 93/19 93/20


## H


**H152 [2]** 15/17 15/18
**H153 [2]** 30/20 30/21
**H154 [1]** 33/11
**had [47]** 15/3 19/24 19/24 24/13 24/15 29/7 29/17 29/18 29/18 32/4 32/5 33/20 33/22 33/23 37/17 38/2 39/12 43/15 45/22 47/15 48/14 55/7 64/11 68/24 68/25 72/17 72/18 72/22 72/22 74/19 100/15 110/5 110/14 116/4 127/21 128/9 129/3 142/8 148/2 148/3 148/4 150/2 155/19 155/23 170/20 181/17 181/18
**half [11]** 5/14 25/6 85/6 96/15 113/18 124/17 124/20 124/23 179/4 186/17 193/21
**hallway [1]** 64/5
**HALVERSON [20]** 1/13 3/4 3/5 4/5 7/4 68/3 68/18 69/11 71/22 87/23 93/6 100/9 110/19 113/2 124/10 142/14 175/18 177/4 192/4 193/7
**hamstrung [1]** 167/12
**hand [2]** 6/1 28/7
**handle [1]** 173/24
**hang [9]** 61/22 137/5 139/25 140/21 144/18 159/20 175/11 175/12 175/16
**happen [1]** 168/18
**happened [4]** 12/17 156/5 168/8 171/11
**happening [4]** 156/16 156/19 156/20 187/2
**happens [4]** 118/7 148/6 163/5 166/12
**happy [1]** 123/23
**hard [4]** 127/8 177/12 194/14 194/24
**harm [1]** 131/25
**has [88]** 4/12 5/21 7/18 10/5 13/10 15/5 15/6 15/24 20/15 31/22 51/3 64/8 64/17 65/15 68/5 68/12 68/19 68/21 69/7 78/9 88/14 90/6 91/17 99/18 100/16 101/2 101/10 104/5 108/14 114/10 114/13 115/17 117/6 117/9 118/7 118/13 119/16 119/20 120/6 120/22 122/23 122/25 126/7 126/7 139/11 139/23 140/10 141/1 141/25 143/6 146/17 149/11 149/22 150/6 151/4 151/6 151/21 151/24 152/1 154/2 155/20 155/23 157/5 157/25 158/3 158/12 163/2 163/4 163/17 166/4 166/11 166/16 166/17 167/10 167/17 169/12 169/19 171/14 176/23 179/15 180/17 184/4 184/22 187/2 191/11 191/14 191/14 193/7
**hasn't [4]** 65/17 72/3 151/20 193/7
**have [198]**
**haven't [11]** 61/23 71/22 110/22 126/20 126/22 129/3 129/8 149/7 167/17 169/3 183/19
**having [10]** 50/18 65/9 73/18 104/8 121/23 125/4 130/15 171/7 174/5 183/4
**HCPCS [15]** 6/24 18/9 18/11 38/9 38/14 41/7 41/16 41/19 41/25 43/12 43/15 43/18 43/21 43/25 44/5
**he [74]** 7/10 16/12 57/12 64/24 65/14 65/17 65/20 66/3 66/3 67/9 67/10 67/22 67/23 67/25 68/5 68/7 68/8 69/4 70/3 70/8 78/9 78/15 102/23 103/24 106/10 109/12 109/13 109/13 109/22 109/25 110/5 110/7 111/18 112/9 112/12 115/18 116/22 117/6 117/6 117/8 117/9 117/10 119/15 119/16 119/22 119/23 120/1 120/5 120/6 120/6 120/14 120/22 122/23 122/25 122/25 150/6 155/1 155/19 155/21 155/23 156/15 162/20 162/21 164/6 165/6 166/7 166/10 174/25 175/2 175/3 175/21 186/19 186/20 186/23
**he's [9]** 36/25 42/22 68/15 70/14 109/7 119/20 164/6 164/7 164/8
**header [5]** 130/8 136/1 137/7 172/21 172/24
**headers [2]** 132/5 176/20
**heading [1]** 141/17
**heads [1]** 139/1
**health [31]** 89/2 89/12 89/13 89/14 89/15 97/16 101/21 101/23 101/23 102/2 104/25 105/16 108/20 111/4 111/6 111/8 111/10 150/16 150/19 150/20 153/1 153/4 165/9 172/8 172/14 172/23 174/20 174/20 177/6 177/22 178/3
**health care [14]** 89/15 97/16 101/23 101/23 102/2 108/20 111/4 111/6 111/8 111/10 150/20 153/1 172/8 172/14
**health care fraud [4]** 104/25 153/4 172/23 177/6
**Healthmax [2]** 63/2 74/2
**Healthmax 360 [2]** 63/2 74/2
**HealthSplash [36]** 11/23 13/1 13/7 13/17 19/20 24/5 25/20 28/13 33/1 33/25 36/2 39/12 39/23 41/25 42/11 43/5 44/19 45/5 47/9 47/15 50/19 51/10 52/3 52/14 52/22 53/6 53/13 55/4 60/6 85/6 85/20 94/4 97/16 97/22 98/7 102/10
**hear [13]** 65/9 113/5 120/8 126/17 127/3 130/4 145/12 145/12 145/22 161/9 162/11 171/5 194/23
**heard [10]** 126/9 126/9 126/19 126/20 126/22 169/3 182/11 186/4 191/5 193/7
**Hearsay [1]** 42/20
**heed [1]** 70/22
**heightened [1]** 153/11
**held [7]** 71/1 99/4 115/7 118/6 129/25 171/17 195/9

## H


**help [2]** 18/17 73/7
**helpful [2]** 36/17 100/8
**helping [1]** 115/19
**her [20]** 35/5 36/22 50/1 50/21 53/3 62/14 64/23 65/6 65/10 68/21 69/4 112/20 121/10 131/1 133/21 142/15 143/14 157/23 163/18 176/24
**Herb [1]** 169/5
**Herb Kimble [1]** 169/5
**here [62]** 4/22 6/16 6/22 8/13 9/24 10/22 13/5 14/5 47/12 47/20 52/19 56/19 56/23 61/9 62/6 73/1 78/20 79/11 86/6 88/14 91/20 94/14 97/20 105/16 114/6 115/8 116/3 116/3 126/15 127/5 132/20 132/20 140/17 144/8 149/7 149/16 149/20 150/13 150/23 150/25 151/1 151/7 151/15 151/23 153/16 153/18 158/11 159/5 161/20 162/8 162/24 165/4 171/10 173/6 173/21 178/17 178/20 178/23 180/19 180/21 187/2 189/4
**here's [8]** 67/20 126/19 140/25 159/23 171/13 174/18 181/3 190/7
**hereby [1]** 195/6
**hesitant [1]** 161/7
**hey [1]** 155/3
**HHS [2]** 20/23 20/23
**HICN [1]** 23/2
**hid [1]** 102/23
**high [1]** 105/14
**higher [1]** 59/25
**highest [1]** 12/15
**highlight [1]** 114/8
**highlighted [2]** 47/20 48/1
**highlighting [1]** 41/20
**highlights [3]** 101/14 113/21 165/3
**highly [2]** 78/6 78/12
**him [37]** 15/16 34/22 63/15 64/14 65/14 66/1 66/4 67/18 67/18 67/19 68/7 68/8 69/14 69/15 70/3 70/4 71/16 73/18 77/19 78/2 95/3 109/10 109/24 115/14 115/19 117/6 117/8 117/19 118/3 119/17 119/23 120/9 120/24 123/2 143/2 143/8 143/8
**himself [5]** 109/3 117/11 155/15 162/20 165/23
**HIPAA [2]** 37/4 98/12
**his [28]** 7/10 42/22 63/15 66/14 73/18 78/9 84/22 104/20 105/20 109/13 109/21 110/1 110/4 110/8 112/8 112/15 118/14 118/15 119/16 119/17 120/11 120/15 122/21 131/1 168/7 182/21 183/13 185/22
**history [2]** 133/5 156/6
**hodgepodge [1]** 180/23
**Holdings [19]** 56/22 63/1 63/2 73/25 74/2 75/21 76/20 77/12 77/16 84/3 84/6 84/13 84/14 84/18 84/21 84/23 86/2 92/19 92/24
**holistic [1]** 193/17
**HOLT [66]** 2/6 2/7 3/5 3/6 5/1 14/24 15/16 31/5 35/4 35/9 36/25 41/18 41/21 42/25 57/18 59/2 62/15 62/18 64/12 64/15 64/17 64/21 65/9 66/17 67/7 67/25 68/2 68/21 69/19 69/25 70/11 71/14 71/22 71/25 72/3 72/12 88/1 88/9 89/8 89/20 89/25 90/23 91/5 94/6 95/21 97/9 128/8 128/13 129/13 130/3 137/18 165/2 165/14 170/1 170/15 171/15 172/11 172/15 173/10 173/12 175/24 176/23 177/7 177/18 189/6 190/3
**Holt's [3]** 57/17 70/19 163/18
**home [5]** 123/8 123/14 165/9 192/17 192/21
**homework [3]** 157/25 193/4 194/12
**honest [2]** 71/21 160/20
**honesty [1]** 143/24
**Honor [118]** 4/6 7/8 14/22 57/14 63/13 65/11 67/9 68/4 68/23 69/15 69/23 70/24 76/3 77/6 77/24 78/9 87/21 87/24 90/22 93/7 99/23 100/10 100/25 101/19 107/5 107/9 113/3 115/5 115/10 116/20 117/22 118/10 121/5 121/9 121/17 121/21 122/2 122/6 122/11 122/16 122/19 123/6 123/10 123/22 124/21 125/19 127/21 127/24 128/1 128/9 128/22 129/24 130/24 131/2 132/16 132/23 133/4 134/7 135/5 137/2 140/15 141/12 141/25 144/11 144/13 145/3 145/8 147/22 149/21 150/5 150/16 151/2 152/16 153/9 153/22 154/12 155/10 156/4 157/4 157/21 158/15 158/19 160/9 160/23 161/1 161/18 162/6 162/17 163/1 163/20 164/24 167/10 169/19 171/3 171/8 173/2 173/7 174/1 174/4 174/13 174/14 175/1 175/8 176/5 176/16 177/24 178/21 179/15 180/21 184/12 186/2 186/25 187/6 188/11 189/13 191/1 191/25 193/2
**HONORABLE [1]** 1/10
**Hoover [7]** 101/25 102/2 106/6 108/6 111/6 111/17 181/11
**hope [3]** 4/3 100/8 127/7
**host [1]** 171/17
**hostile [1]** 142/15
**hour [2]** 124/17 193/25
**hours [9]** 74/20 74/22 123/21 124/20 124/24 124/25 125/1 125/3 193/24
**how [40]** 7/5 10/25 12/17 14/15 14/20 29/6 29/6 29/14 30/2 39/7 41/3 44/22 54/17 56/25 70/11 71/24 73/4 73/13 74/17 75/1 77/1 77/15 94/13 96/14 98/10 98/17 105/11 106/7 114/18 122/14 124/6 124/10 147/25 150/21 151/6 151/22 174/5 174/24 180/22 189/24
**however [14]** 99/17 178/25 179/12 179/19 179/23 179/24 179/25 180/9 183/16 184/20 185/6 186/13 186/25 187/11
**huh [1]** 75/6
**human [3]** 66/25 104/14 192/16
**hundreds [1]** 18/23
**hypothetical [1]** 58/4
**hypotheticals [1]** 68/17


## I


**I agree [1]** 155/25
**I have [1]** 153/3
**I think [1]** 113/5
**I'd [5]** 16/2 37/11 39/13 54/5 117/21
**I'll [6]** 16/1 123/18 125/14 129/22 130/4 158/11
**I'm [195]** 5/11 6/1 7/4 8/10 11/19 12/12 15/13 18/13 19/16 24/20 26/9 27/4 28/6 29/3 32/3 34/13 34/25 36/21 39/19 39/20 40/17 40/17 40/21 40/25 44/17 44/17 44/17 45/8 49/5 49/16 50/9 52/25 53/18 53/21 54/3 58/3 58/3 58/11 58/11 58/24 60/1 61/10 62/8 64/12 69/12 70/7 70/9 70/15 70/17 71/24 73/7 73/15 74/14 76/23 77/4 77/6 78/8 78/13 79/16 80/9 91/13 96/23 97/1 97/19 97/25 97/25 99/14 100/1 101/4 101/6 101/8 101/23 113/5 115/13 115/21 117/14 120/9 120/10 120/23 121/14 123/18 124/5 125/16 126/11 126/15 127/18 128/6 130/2 130/7 130/11 130/13 131/15 133/18 135/23 136/5 136/25 138/10 138/11 140/22 140/22 140/23 141/20 141/21 142/3 142/4 142/22 143/8 143/17 144/1 144/2 144/3 144/4 145/9 145/13 145/14 145/21 147/5 147/14 147/16 149/10 150/17 151/13 151/22 152/19 152/19 153/19 154/3 156/1 157/12 157/12 157/14 157/14 158/23 159/11 159/14 160/11 160/13 161/24 161/25 162/1 162/13 165/14 165/15 165/15 165/16 166/5 166/22 167/22 168/9 168/25 169/6 169/13 170/21 171/4 171/15 171/19 171/19 171/20 171/24 171/25 172/3 172/10 175/17 177/7 177/8 179/5 180/4 181/6 182/10 182/25 183/15 183/17 185/14 186/17 187/1 187/4 187/14 188/3 189/4 190/9 190/13 190/15 190/17 190/21 190/24 191/20 191/21 191/23 192/5 192/13 192/15 192/20 192/23 194/5
**I've [14]** 24/22 28/5 64/10 71/16 71/18 71/21 106/25 132/18 137/10 148/25 151/10 154/4 166/15 168/4
**i.e [1]** 59/19
**ID [2]** 10/6 23/3
**idea [2]** 39/9 152/4
**identical [2]** 89/18 90/6
**identification [4]** 4/13 7/18 87/9 94/25
**identified [2]** 42/16 48/12
**identify [4]** 39/11 43/7 62/25 89/21
**identifying [4]** 37/19 40/17 40/18 180/19
**if [165]** 9/25 13/1 17/11 18/5 18/16 18/21 19/15 25/10 25/15 26/9 26/13 28/6 29/14 35/3 35/5 35/11 36/8 36/16 37/12 38/5 39/18 39/20 40/23 41/12 41/18 44/17 44/18 45/8 45/9 46/8 47/6 47/18 47/21 48/19 50/3 50/25 51/9 51/13 52/6 53/17 53/18 54/24 54/25 55/12 55/14 55/16 56/11 57/5 57/8 57/11 57/24 58/2 58/5 58/7 58/10 58/10 58/18 58/19 59/10 59/12 59/14 59/17 59/19 65/20 66/12 67/15 67/18 69/8 69/9 72/22 74/19 76/15 77/4 78/17 78/21 78/24 79/8 79/19 80/2 80/20 83/25 84/16 89/3 91/25 94/15 94/17 97/6 98/1 98/1 98/6 101/17 102/12 109/12 109/14 120/1 120/5 120/11 120/20 122/4 122/13 124/4 127/5 129/8 129/12 129/17 139/21 142/18 142/19 142/24 142/25 143/12 143/21 143/22 143/24 144/13 154/6 155/3 156/2 157/19 157/19 158/2 160/1 160/4 161/4 163/16 163/16 163/22 165/6 167/17 167/23 170/21 170/22 172/1 174/15

**I**

**if... [31]** 175/2 176/12 176/14 177/18 177/19 179/12 180/16 181/19 182/3 182/6 184/14 184/21 186/8 186/9 186/17 186/19 188/24 188/25 189/6 189/8 189/25 190/7 190/9 190/9 190/9 191/5 192/7 192/9 193/12 193/15 193/25
**if any [3]** 29/14 102/12 167/23
**ignorance [5]** 154/10 154/10 155/12 157/16 165/1
**ignored [3]** 48/5 48/13 156/19
**illustrates [1]** 163/12
**impeach [1]** 68/25
**implicit [1]** 193/23
**important [8]** 48/18 48/19 58/22 59/1 68/12 115/24 126/21 186/18
**importantly [2]** 101/16 161/12
**impossibly [1]** 148/14
**imprimatur [3]** 131/24 131/25 133/21
**improper [4]** 65/2 66/13 77/25 78/12
**improperly [1]** 118/22
**in [532]**
**in conspiracy [1]** 175/8
**in fact [6]** 66/10 67/16 68/12 133/15 152/15 169/4
**inaccurate [2]** 59/16 191/14
**inappropriate [1]** 192/12
**Inc [1]** 6/23
**inchoate [2]** 153/10 162/24
**inclined [1]** 162/6
**include [12]** 20/6 20/9 20/10 22/11 23/9 103/5 109/1 130/11 137/15 139/20 141/13 181/19
**included [10]** 23/3 23/4 23/6 64/24 86/19 90/17 111/22 111/24 172/6 184/20
**includes [4]** 67/3 73/25 86/1 141/13
**including [10]** 64/24 73/17 102/13 102/18 112/2 113/20 115/19 123/1 130/13 165/8
**inclusions [1]** 169/24
**inconsistent [1]** 96/11
**incorporated [2]** 159/6 159/13
**incorporates [2]** 159/12 159/23
**incorrect [3]** 40/18 42/13 42/14
**incredibly [1]** 41/1
**indeed [1]** 188/14
**independent [1]** 116/22
**indicate [2]** 37/15 37/21
**indication [4]** 23/4 23/6 23/16 37/17
**indications [1]** 22/18
**indicted [2]** 133/7 133/14
**indictment [35]** 101/3 101/11 107/1 130/21 130/22 131/3 131/8 131/9 131/19 131/20 131/21 132/4 132/11 132/15 132/19 132/22 133/1 133/2 133/10 133/12 133/15 133/16 133/23 133/24 137/3 144/25 148/8 148/14 148/16 148/17 149/3 149/7 151/12 152/5 194/18
**individually [1]** 25/12
**induce [3]** 108/16 109/15 109/17
**ineffectiveness [1]** 116/24
**infer [5]** 162/4 164/6 164/7 166/5 166/9
**inference [4]** 44/8 60/17 60/20 113/14
**inferences [1]** 113/25
**infinite [1]** 38/25
**information [23]** 4/22 8/13 9/12 10/12 11/22 14/7 20/16 20/16 22/12 22/14 22/14 22/19 23/9 30/7 37/19 48/15 48/20 57/8 57/24 58/5 59/6 63/20 112/22
**informed [2]** 99/18 122/25
**innocence [4]** 130/19 131/1 134/6 134/14
**innumerable [1]** 19/13
**input [1]** 20/16
**insert [5]** 140/23 163/18 171/21 171/22 172/4
**inserted [1]** 141/10
**inside [1]** 133/11
**insight [1]** 103/15
**instance [4]** 104/7 111/12 112/16 156/12
**instead [7]** 10/9 137/13 137/25 138/7 139/21 176/6 184/24
**instruct [2]** 99/14 116/12
**instructed [6]** 65/16 65/17 66/21 136/16 137/10 139/13
**instructing [1]** 66/19
**instruction [91]** 88/6 123/24 132/20 134/9 136/23 137/8 137/11 141/11 141/13 142/17 142/21 142/25 143/22 145/14 145/24 145/25 146/11 147/4 147/7 147/10 147/18 147/23 147/24 148/3 148/4 148/13 148/18 148/22 149/11 153/2 153/5 153/19 154/13 154/16 155/9 156/3 157/19 158/3 158/13 159/14 161/11 161/17 162/7 162/8 163/18 163/19 166/21 166/22 167/4 167/19 168/3 168/11 168/13 168/16 169/1 169/7 170/12 170/24 171/8 171/11 171/21 172/20 173/19 173/21 175/10 175/14 175/19 176/3 177/10 177/15 177/16 178/13 178/19 181/23 181/25 182/9 184/17 184/17 186/3 187/8 187/19 188/17 189/2 189/11 190/13 190/20 190/22 191/21 191/23 192/5 192/13
**instructions [23]** 128/24 128/25 128/25 130/18 132/20 132/22 133/13 133/24 134/6 134/13 148/11 148/11 152/15 161/8 169/15 170/5 170/16 171/17 175/23 179/16 180/22 191/8 192/10
**Integrity [2]** 151/13 187/3
**intelligent [2]** 118/18 122/22
**intelligently [2]** 118/16 118/21
**intend [2]** 166/19 176/24
**intended [2]** 24/22 115/22
**intensive [1]** 41/4
**intent [24]** 106/6 150/2 150/13 152/11 152/12 152/20 159/15 159/18 160/1 160/3 160/12 160/14 161/14 179/2 180/2 180/3 180/13 184/1 184/11 184/20 185/9 185/22 187/14 187/20
**intentional [2]** 149/13 150/23
**interesting [1]** 150/24
**interests [3]** 164/13 164/18 165/19
**Internal [1]** 158/7
**international [6]** 188/4 188/5 188/8 188/13 188/24 190/13
**interpret [1]** 67/1
**interrupt [2]** 107/20 193/6
**interstate [2]** 102/4 108/9
**interval [2]** 45/23 61/4
**intervene [1]** 72/2
**into [41]** 17/9 21/18 28/3 28/19 29/1 30/10 39/4 62/10 62/12 64/12 64/13 68/10 69/13 70/20 71/7 71/8 71/13 71/13 71/16 77/16 87/3 87/15 87/19 87/22 88/12 89/20 91/7 99/10 103/15 110/6 112/6 116/2 119/5 120/24 131/18 131/18 148/14 159/14 162/25 169/6 174/20
**introduce [3]** 70/9 70/20 168/6
**introduced [5]** 102/17 157/6 181/10 181/10 181/14
**introduction [6]** 169/16 170/16 170/23 175/19 175/24 176/21
**inures [1]** 39/18
**investigation [1]** 156/12
**invoice [1]** 110/24
**involved [4]** 68/6 111/5 149/21 167/10
**involves [1]** 101/23
**involving [1]** 161/12
**irregularities [1]** 114/12
**IRS [1]** 149/24
**is [622]**
**isn't [5]** 74/4 90/18 149/15 155/16 169/10
**issue [3]** 68/9 141/25 146/24
**it [465]**
**it's [126]** 5/3 6/4 16/11 24/23 26/19 31/7 31/16 31/23 35/23 38/12 38/13 40/14 40/23 40/24 43/20 43/20 48/2 53/19 55/2 57/16 59/20 59/21 63/15 67/13 67/15 68/2 68/11 68/12 68/22 74/23 74/24 75/4 76/17 77/22 77/25 85/9 89/12 92/10 95/5 97/17 97/23 111/16 115/24 115/25 116/6 116/9 116/23 116/23 116/24 117/2 120/18 125/2 126/10 128/18 129/10 129/14 129/15 130/6 131/8 131/11 132/24 133/11 133/17 134/7 136/7 136/11 138/19 138/20 139/4 140/25 141/3 142/19 142/19 143/1 143/23 144/14 145/2 146/13 147/6 147/6 147/17 147/23 148/20 148/24 149/21 150/20 151/4 151/14 153/16 155/21 157/13 157/17 157/18 157/20 160/19 161/19 162/17 162/23 162/24 166/20 166/20 166/25 167/15 167/15 167/21 167/21 168/10 169/1 169/13 174/6 175/8 175/17 176/1 176/17 177/19 182/8 184/10 185/2 188/1 188/2 188/17 190/6 190/15 192/8 192/16 193/8
**italicized [7]** 128/11 129/6 129/8 139/6 146/7 159/1 173/8
**italicizing [1]** 139/1
**italics [6]** 140/2 140/4 146/10 146/12 169/24 172/25
**item [1]** 108/19
**its [11]** 77/24 99/15 100/11 100/16 101/17 149/16 150/13 157/25 166/2 189/19 194/1
**itself [8]** 22/19 22/21 35/18 46/17 131/20 132/4 147/20 194/20

**J**

**January [3]** 5/12 14/21 77/17
**January 25th [1]** 14/21
**January 28 [1]** 5/12
**January 4th [1]** 77/17

## J

**Jean [2]** 14/12 14/19
**Jean Wilson [2]** 14/12 14/19
**JEM [6]** 63/2 74/2 84/6 84/23 92/19 92/24
**JEM Holdings [6]** 63/2 74/2 84/6 84/23 92/19 92/24
**JENNY [2]** 2/2 99/23
**Jenny Wilson [1]** 99/23
**Jersey [3]** 6/18 6/19 8/14
**job [1]** 176/4
**joined [1]** 103/13
**joint [1]** 127/20
**Jordan [2]** 102/14 109/7
**Jordan Karlick [2]** 102/14 109/7
**JR [1]** 1/18
**judge [41]** 1/11 5/2 7/9 8/3 10/16 12/3 13/20 15/14 15/17 30/22 33/11 34/24 57/20 61/20 62/8 62/13 62/17 66/18 71/3 71/15 72/13 75/18 75/22 76/7 77/21 87/6 90/18 91/2 93/2 96/18 98/20 100/5 119/11 119/11 125/7 137/9 169/25 170/23 172/16 189/11 193/12
**Judge Damian [1]** 119/11
**Judge Ruiz [1]** 119/11
**judges [1]** 68/17
**judgment [1]** 101/1
**Judicial [1]** 195/11
**julie [5]** 2/6 2/7 2/9 41/19 41/21
**julieholtlaw.com [1]** 2/9
**jump [2]** 17/9 139/16
**June [1]** 16/22
**juries [2]** 148/5 148/7
**jurisdiction [2]** 174/6 180/17
**Jurors [1]** 126/1
**jury [55]** 1/10 4/1 5/5 5/8 6/10 6/15 8/8 8/11 9/20 10/20 12/7 13/24 56/14 57/16 62/20 64/2 64/3 64/8 64/25 66/5 67/5 71/3 72/5 72/7 72/8 78/5 91/4 93/22 95/7 99/15 100/21 100/22 111/18 114/4 114/5 116/12 123/23 125/17 125/23 125/25 127/14 127/15 131/8 133/14 147/19 148/2 149/4 151/20 163/13 170/5 186/19 187/12 188/7 193/14 193/19
**just [154]** 4/10 4/15 5/8 5/11 6/15 9/8 10/8 11/18 11/19 12/12 14/8 16/1 18/16 19/15 19/16 21/18 22/21 23/12 24/22 25/19 25/21 26/12 27/2 27/10 28/7 28/11 31/6 31/7 31/18 34/4 34/5 35/12 36/22 38/2 39/15 40/5 44/14 45/12 46/16 47/21 48/5 48/13 50/21 54/15 55/13 55/16 55/20 56/4 56/5 61/17 68/4 68/5 71/3 72/15 73/8 80/11 83/18 84/3 84/14 88/1 89/20 89/21 90/25 93/7 94/12 95/5 96/21 96/25 100/1 100/15 102/7 106/25 107/21 107/24 115/2 115/12 115/24 116/6 118/10 119/3 119/7 119/12 119/15 120/14 120/18 123/17 124/5 124/16 125/20 128/14 130/6 130/7 130/10 131/7 131/9 131/14 132/19 132/23 133/1 134/18 136/19 136/23 137/17 138/19 139/4 140/23 141/15 142/11 146/12 146/25 147/2 148/6 148/16 150/9 151/2 152/15 152/18 153/6 153/13 153/17 153/21 154/1 154/9 155/10 159/7 159/17 161/18 162/17 162/23 166/20 168/17 170/8 170/24 171/16 172/7 172/21 173/17 173/19 176/2 176/5 177/13 178/4 178/5 179/16 183/21 184/12 184/18 185/13 187/6 187/10 188/4 188/22 189/9 193/15
**Justice [2]** 1/13 132/3
**jw.klughlaw [1]** 2/4

## K

**Karlick [4]** 102/14 109/1 109/7 109/8
**Keaton [1]** 109/2
**Keaton Langston [1]** 109/2
**Keep [1]** 127/2
**keeping [1]** 135/22
**kept [2]** 22/15 23/11
**Kevin [1]** 7/22
**Kevin Green [1]** 7/22
**keys [1]** 139/3
**Khristoforov [4]** 101/25 102/2 108/6 111/7
**kick [1]** 156/12
**kickback [21]** 103/18 105/15 108/12 108/13 108/14 108/15 110/11 110/13 153/19 153/21 153/24 158/8 159/1 159/6 159/17 159/22 161/12 162/2 191/3 191/3 191/12
**kickbacks [5]** 104/1 106/9 111/1 172/8 172/14
**kids [1]** 143/3
**Kimble [1]** 169/5
**kind [15]** 65/2 127/19 130/3 131/18 131/24 134/3 144/2 153/2 154/5 157/17 164/25 166/23 168/3 187/18 192/11
**kinds [2]** 64/15 189/11
**Klugh [1]** 2/2
**knee [1]** 111/19
**knew [5]** 39/2 63/10 63/12 104/5 114/11
**know [84]** 7/6 13/3 15/8 15/8 19/16 21/23 30/13 34/4 35/4 35/22 36/8 36/22 37/12 48/19 59/5 70/11 73/6 74/19 75/11 75/22 75/22 80/11 84/7 84/25 86/6 91/12 92/7 95/4 97/10 110/21 115/19 116/3 117/8 117/18 117/20 119/21 119/25 120/1 120/13 127/6 129/14 130/10 133/17 133/24 137/3 142/23 143/20 144/12 147/4 147/5 148/24 148/25 149/24 151/19 153/16 153/17 154/6 155/6 156/7 156/10 156/16 156/17 161/7 162/18 162/18 162/20 165/11 165/22 170/20 171/6 172/21 178/19 179/22 181/4 181/24 182/4 182/23 184/16 191/6 192/3 192/9 192/16 194/15 194/22
**knowing [3]** 103/13 118/18 148/6
**knowingly [14]** 105/1 108/21 110/9 112/6 112/12 118/15 118/21 149/12 150/22 179/3 180/3 180/13 184/11 185/9
**knowledge [22]** 6/3 103/15 103/21 103/23 104/21 104/22 106/3 110/11 110/23 112/8 112/15 112/18 154/11 154/19 155/11 155/23 156/23 156/25 157/2 163/4 166/1 166/12
**known [4]** 149/13 150/23 152/12 152/20
**knows [6]** 72/4 143/20 181/20 181/20 190/16 193/23
**Kris [3]** 113/7 142/14 143/7
**Kris Rogers [2]** 113/7 143/7
**Kris Rogers' [1]** 142/14

## L

**L0472 [1]** 18/9
**L0650 [1]** 26/13
**laboratory [1]** 68/16
**lack [2]** 6/3 185/23
**ladies [6]** 61/22 63/25 88/6 99/2 100/14 126/6
**laid [1]** 103/17
**land [2]** 120/3 140/18
**Langston [4]** 109/2 109/10 110/24 110/25
**language [10]** 111/22 111/23 149/17 152/21 154/5 175/5 179/22 183/22 186/13 187/17
**Lanoy [9]** 102/14 103/20 105/3 105/7 105/9 109/1 112/20 157/22 181/17
**Lanoy's [1]** 112/23
**laptop [2]** 75/23 194/14
**large [5]** 91/12 123/15 137/8 159/23 179/11
**largely [1]** 147/17
**largest [1]** 17/8
**last [36]** 14/18 14/19 15/6 15/23 38/9 38/14 41/7 41/12 41/25 43/11 43/14 43/17 43/21 43/25 44/4 47/24 57/16 64/12 108/4 123/2 131/22 160/18 161/15 161/16 161/18 163/4 163/17 163/18 164/9 165/3 165/11 165/15 165/21 168/5 179/5 183/15
**late [3]** 123/23 124/3 134/2
**later [6]** 6/22 67/21 125/6 151/3 170/19 170/25
**latitude [2]** 71/23 71/25
**Lauderdale [2]** 2/13 195/16
**laundering [1]** 149/15
**law [33]** 2/7 49/2 49/3 49/5 49/13 67/16 85/21 103/17 114/15 126/18 126/22 147/15 148/21 150/3 152/12 152/14 154/1 154/12 156/24 157/3 161/13 163/14 164/23 167/15 168/16 179/8 182/6 183/1 187/24 188/7 188/14 191/19 193/13
**lawful [1]** 141/6
**lawyer [1]** 24/23
**lawyers [3]** 68/17 190/24 191/6
**lay [2]** 181/16 181/18
**laying [1]** 142/14
**lead [2]** 142/15 143/14
**leading [1]** 143/19
**leaning [1]** 153/20
**Leard [4]** 103/14 105/4 105/13 110/10
**learn [1]** 124/7
**learned [1]** 24/22
**learning [2]** 155/21 157/10
**lease [1]** 108/17
**leasing [1]** 108/18
**least [6]** 74/21 77/13 78/7 102/24 179/11 194/18
**leave [2]** 64/19 98/24
**leaves [1]** 153/6
**lectern [1]** 65/8
**left [4]** 50/9 64/8 166/18 183/18
**legal [5]** 149/13 150/23 152/12 152/20 189/10
**LEIBOWITZ [2]** 1/10 128/18

## L

**lend [1]** 131/25
**length [1]** 125/20
**lengthy [2]** 126/22 156/6
**less [5]** 25/4 25/6 51/24 96/15 193/25
**lesser [3]** 137/16 140/13 141/4
**lesson [1]** 124/8
**let [46]** 31/6 34/4 34/5 35/4 35/6 36/22 37/12 43/3 49/3 51/10 66/1 66/4 75/16 79/12 87/1 89/17 92/2 95/3 97/9 99/14 101/8 115/12 121/18 122/13 123/8 123/13 123/14 123/19 125/16 126/25 137/17 150/9 153/6 153/13 154/1 159/17 172/13 173/17 176/23 177/2 179/4 180/6 190/14 192/20 192/20 194/5
**let's [37]** 4/12 9/5 10/5 11/5 12/19 13/10 17/9 19/3 19/7 19/18 23/20 23/21 27/22 28/15 34/16 38/2 39/7 41/22 46/6 56/10 61/24 65/22 72/5 76/14 77/25 83/25 86/11 90/3 90/11 121/1 123/19 124/6 125/9 125/9 125/23 155/4 168/17
**letter [1]** 103/17
**level [5]** 59/24 60/9 72/2 150/13 150/22
**liability [3]** 153/10 190/16 190/18
**light [2]** 113/8 113/13
**lightens [2]** 175/14 175/15
**like [40]** 22/25 30/17 33/20 45/12 47/1 61/2 62/13 65/3 65/7 68/17 69/16 71/18 71/19 77/3 78/3 78/4 89/3 89/7 99/22 99/24 101/13 114/20 127/20 130/11 133/6 133/13 139/3 143/5 147/6 148/24 150/12 151/17 156/11 160/9 163/14 169/5 179/17 179/25 192/10 193/12
**likely [1]** 75/3
**likes [1]** 143/16
**limine [1]** 167/1
**limit [1]** 70/18
**limited [2]** 14/8 94/13
**limiting [1]** 187/19
**limits [3]** 71/24 94/12 167/18
**line [7]** 39/8 40/12 70/22 71/20 71/20 79/2 162/23
**Line 11 [1]** 79/2
**lines [3]** 153/15 158/13 191/7
**link [1]** 94/3
**list [1]** 18/14
**listed [1]** 56/19
**lists [1]** 181/15
**literally [6]** 67/13 67/14 70/4 70/5 172/21 188/23
**little [13]** 19/18 30/9 47/21 61/9 123/15 123/21 124/3 126/13 128/4 133/6 134/2 141/8 175/2
**live [1]** 9/10
**loaded [1]** 72/10
**located [1]** 98/11
**locations [2]** 9/2 41/14
**long [13]** 30/6 72/3 77/24 114/18 120/8 124/6 124/10 147/5 147/7 148/17 160/6 193/8 193/17
**longstanding [1]** 148/22
**look [35]** 13/1 17/9 21/16 21/25 24/10 24/14 25/9 30/17 34/20 34/25 35/11 36/15 38/10 42/4 42/6 48/20 55/15 63/8 78/22 86/11 89/7 89/10 90/3 90/11 94/15 94/24 154/4 157/14 157/14 157/23 157/24 159/17 164/4 179/17 192/25
**looked [14]** 7/7 9/2 17/21 18/12 19/13 19/19 19/20 20/22 32/11 48/9 48/9 56/4 84/3 84/18
**looking [27]** 8/9 8/13 9/24 10/10 11/19 15/11 21/22 23/12 25/19 25/21 26/20 27/23 27/25 28/3 28/12 33/8 43/17 74/14 87/2 91/15 95/11 143/17 144/24 151/15 158/23 173/18 179/9
**looks [5]** 13/14 13/15 55/17 151/17 158/23
**lot [20]** 16/18 17/7 19/6 19/13 31/7 40/6 45/13 57/1 61/17 74/18 90/23 123/9 127/3 151/18 159/12 173/6 176/20 177/14 191/2 191/2
**lots [1]** 71/22
**love [2]** 74/20 77/4
**lunch [2]** 4/3 125/12

## M

**made [43]** 15/3 15/7 15/24 16/2 19/14 21/9 22/4 22/17 22/18 23/10 23/13 27/24 28/4 28/20 32/21 46/7 48/4 49/9 54/12 57/2 58/12 68/2 68/21 72/19 85/18 87/1 87/3 87/12 88/11 105/7 106/11 108/19 108/24 118/21 122/25 139/23 140/10 141/1 148/3 148/20 153/3 168/4 191/13
**mail [1]** 150/21
**main [3]** 194/1 194/3 194/5
**maintain [1]** 185/20
**majority [1]** 89/16
**make [51]** 11/18 19/18 21/8 31/7 32/15 32/16 48/24 49/7 57/11 59/16 59/16 61/18 68/21 74/14 75/7 101/8 101/17 106/25 107/21 111/3 116/13 117/22 117/25 124/1 126/14 127/8 129/11 134/2 134/20 139/1 142/11 152/25 153/21 158/9 163/11 168/14 171/11 172/17 174/8 177/8 178/4 178/5 178/11 184/17 187/1 187/5 192/17 193/8 193/14 194/3 194/6
**makes [2]** 118/15 125/5
**making [6]** 65/12 74/18 120/22 121/10 170/4 176/20
**Mallory [3]** 159/7 161/11 162/2
**malpractice [5]** 181/6 182/16 183/7 183/10 186/7
**man [2]** 143/9 143/11
**manual [5]** 78/5 78/14 151/13 181/16 187/3
**manually [1]** 77/20
**manuals [3]** 181/8 181/10 182/24
**many [15]** 10/25 12/17 14/15 14/20 29/6 29/6 29/14 30/3 48/10 49/17 54/17 69/5 113/22 114/6 133/15
**March [10]** 6/18 6/22 8/15 8/17 12/13 12/16 12/17 15/11 17/2 85/9
**March 11th [1]** 6/22
**March 2016 [1]** 85/9
**March 2017 [1]** 12/13
**March 2018 [1]** 12/16
**March 5th [1]** 8/15
**March 8th [2]** 6/18 8/17
**margin [1]** 61/7
**mark [1]** 134/23
**marked [10]** 3/11 4/13 5/21 7/18 9/6 10/6 11/6 13/11 128/15 128/15
**marketer [1]** 110/6
**marketers [4]** 88/17 92/9 106/19 106/20
**marketing [1]** 91/13
**marketing-related [1]** 91/13
**match [17]** 22/1 27/18 32/25 33/23 36/1 40/8 43/10 44/9 44/16 50/19 52/2 52/13 52/21 53/5 53/12 133/7 136/10
**matched [13]** 4/23 5/9 10/13 21/4 26/21 42/3 43/5 44/1 44/19 44/25 60/6 96/11 98/11
**matching [6]** 38/19 39/23 42/10 42/16 43/8 45/4
**material [3]** 48/14 111/11 112/2
**math [2]** 24/23 26/12
**mathematical [1]** 40/6
**matter [3]** 68/23 133/9 195/9
**matters [1]** 153/1
**max [1]** 193/24
**Maximum [1]** 125/3
**may [36]** 1/5 15/14 22/10 22/11 30/22 33/12 64/7 75/18 77/17 87/5 87/6 98/24 100/7 100/23 108/19 114/8 127/16 162/4 164/11 164/12 165/18 165/22 166/5 166/8 177/25 179/1 180/1 180/12 181/14 184/7 184/21 185/3 185/8 185/11 194/1 195/14
**May 1st [1]** 77/17
**maybe [12]** 28/5 41/3 46/23 75/4 99/6 113/6 125/8 130/7 154/4 155/1 159/21 184/15
**McNeal [2]** 102/14 109/1
**McNeal's [2]** 103/8 104/9
**McNeil [1]** 119/12
**me [88]** 11/19 15/12 16/17 19/15 23/4 24/25 31/6 31/23 32/1 34/4 34/5 36/8 37/12 41/18 43/3 49/3 51/10 58/2 58/7 58/10 63/9 67/24 73/3 75/1 75/11 75/16 79/12 87/1 89/10 89/17 89/20 92/2 92/3 95/2 97/16 109/8 115/12 115/24 120/21 121/6 121/18 123/4 123/7 126/18 126/23 129/20 135/14 137/17 137/25 139/4 139/5 142/18 142/19 142/23 143/21 143/25 150/8 150/9 151/3 153/6 153/13 154/1 154/7 155/24 158/9 158/24 159/17 160/7 161/4 161/4 161/21 170/15 171/7 172/13 173/17 176/23 177/2 177/18 178/11 179/4 179/16 180/6 183/16 184/3 190/12 190/14 190/16 192/20
**mean [38]** 18/19 19/16 22/13 44/15 45/7 51/21 63/19 63/19 70/12 73/2 73/2 73/7 74/21 107/20 120/23 131/7 144/7 145/8 146/20 148/8 148/9 148/10 148/15 154/21 157/21 158/17 164/2 164/5 168/1 168/24 171/6 180/21 182/2 183/21 184/8 184/25 189/2 189/10
**meaning [3]** 20/2 20/9 55/10
**meaningful [1]** 104/6
**means [10]** 24/2 26/9 32/1 42/9 43/7 45/3 45/15 124/25 139/14 194/15
**meant [1]** 31/25
**Med [4]** 89/2 89/12 89/13 89/14
**Medicaid [1]** 23/2
**medical [12]** 6/20 8/15 20/4 20/6 20/15 22/21 47/3 181/6 182/15 183/7 183/10 186/7
**medically [1]** 106/8
**Medicare [89]** 6/6 6/21 7/25 8/17 9/13

## M

**Medicare... [84]** 10/13 12/25 19/9 21/2 21/4 21/24 22/1 22/5 22/7 22/7 22/17 22/23 23/1 23/3 23/5 23/7 23/10 23/14 23/16 23/18 32/10 32/11 32/22 33/22 35/18 35/23 38/19 39/11 39/23 41/23 44/19 45/19 46/1 49/2 49/13 50/1 54/12 54/21 94/4 97/17 98/3 98/10 102/1 102/7 102/16 103/25 105/5 105/6 105/17 106/1 106/7 106/11 106/16 107/4 107/8 107/12 108/1 108/20 109/13 109/14 110/13 111/12 111/15 111/17 111/18 112/9 112/11 146/25 149/22 150/6 151/16 152/4 165/5 181/12 181/16 181/20 188/13 188/15 189/14 189/15 189/19 189/22 190/2 190/11
**Medicare's [4]** 179/25 180/9 185/7 186/10
**member [1]** 102/12
**members [1]** 105/20
**membership [2]** 102/6 102/17
**memorialization [1]** 103/3
**memorialized [1]** 102/22
**memorializes [1]** 104/2
**memory [11]** 15/12 15/21 30/18 31/11 33/8 33/19 34/8 35/5 36/18 87/4 97/6
**mens [2]** 153/11 159/5
**mens rea [1]** 159/5
**mentioned [1]** 165/2
**mere [2]** 162/4 162/9
**merely [10]** 5/11 27/25 133/11 162/21 164/6 164/7 166/7 166/10 182/19 183/11
**met [1]** 184/4
**methodology [1]** 43/9
**MIAMI [5]** 1/2 1/4 2/4 2/8 153/23
**MICHAEL [2]** 4/8 146/1
**Michael Petron [1]** 146/1
**microphone [1]** 115/12
**microphones [1]** 135/7
**middle [2]** 41/3 41/6
**might [4]** 66/7 133/7 145/12 147/11
**million [28]** 15/7 15/24 45/20 62/22 63/4 73/22 74/4 83/10 84/4 84/5 85/6 86/15 86/22 86/24 88/20 90/3 90/7 91/7 91/10 91/21 92/11 92/14 92/20 94/9 95/22 95/22 96/2 96/25
**mind [4]** 92/2 117/19 127/3 179/2
**mini [1]** 69/13
**minimize [2]** 40/25 40/25
**minimum [2]** 74/21 193/14
**minor [1]** 130/20
**minus [1]** 145/14
**minute [5]** 19/7 27/22 117/22 194/8 194/8
**minutes [19]** 61/22 63/25 64/5 70/23 99/3 100/18 114/20 115/3 118/2 118/5 123/2 124/18 125/2 127/18 129/19 129/23 193/24 194/1 194/1
**mischaracterization [1]** 182/8
**misconstrued [1]** 187/3
**misleading [3]** 64/11 71/12 189/25
**misled [1]** 193/19
**miss [1]** 39/20
**missed [1]** 113/6
**misses [1]** 39/18
**misstates [1]** 182/3
**mistrial [6]** 65/3 66/2 66/16 67/4 67/15 68/20
**Mobility [1]** 85/21
**model [2]** 127/25 128/2
**modeled [2]** 150/20 153/4
**modified [1]** 149/7
**moment [19]** 36/11 42/21 42/23 61/14 85/2 85/14 91/15 91/24 93/2 98/20 115/2 123/17 139/25 150/9 152/15 152/18 154/9 175/23 184/12
**money [4]** 91/12 92/18 92/21 149/15
**month [3]** 11/12 12/11 12/15
**monthly [1]** 12/12
**mood [1]** 143/5
**more [33]** 4/10 19/18 31/24 39/17 55/21 75/14 83/18 87/1 94/3 101/15 101/16 114/8 114/16 119/20 126/8 126/11 127/3 139/16 146/17 147/2 147/3 159/7 160/6 162/17 162/23 168/14 170/4 173/11 184/6 184/10 185/12 185/14 187/15
**morning [8]** 123/21 126/13 126/13 127/23 128/12 157/15 192/16 192/24
**most [13]** 14/7 20/18 29/17 31/25 32/4 38/21 39/5 39/13 40/9 40/11 113/8 113/13 172/1
**motion [16]** 57/19 64/21 65/3 66/2 66/15 67/4 67/8 68/20 100/25 101/9 101/13 101/18 113/17 114/3 114/17 167/1
**motions [1]** 101/5
**motive [1]** 159/15
**mouth [1]** 60/15
**move [16]** 4/24 6/7 8/1 9/14 10/14 11/25 13/18 13/23 13/24 56/10 87/21 91/1 101/1 106/24 126/12 144/5
**moved [1]** 66/5
**moving [3]** 104/24 111/3 136/5
**Mr [3]** 3/4 3/5 112/6
**Mr. [106]** 4/5 4/10 7/3 7/4 9/2 15/3 56/18 57/8 57/25 58/5 59/19 63/1 64/4 65/12 68/3 68/5 68/18 68/24 69/1 69/11 70/18 71/22 72/15 74/1 84/5 84/22 85/24 87/23 92/19 92/24 93/6 93/11 98/24 100/9 101/25 102/2 102/9 103/9 103/9 103/10 103/22 103/22 103/23 104/2 104/5 104/9 105/10 106/10 106/14 106/16 107/24 109/3 109/9 109/10 110/4 110/4 110/5 110/11 110/19 110/25 111/1 111/14 111/14 111/15 112/7 112/10 112/23 112/24 113/2 115/13 115/15 115/17 115/21 117/25 118/7 118/9 119/14 119/22 120/8 120/10 121/1 122/22 123/3 124/10 128/21 129/10 129/17 142/14 157/7 157/11 163/11 171/5 175/18 177/4 180/15 181/18 182/14 183/18 183/24 184/10 185/2 186/6 187/18 189/14 192/4 193/7
**Mr. Anjaria [1]** 110/5
**Mr. Anjaria's [1]** 103/9
**Mr. Blackman [35]** 56/18 57/8 57/25 58/5 59/19 70/18 84/22 85/24 104/5 105/10 106/14 109/3 109/9 111/1 111/15 115/13 115/15 115/17 115/21 117/25 118/7 118/9 119/14 119/22 120/8 120/10 121/1 122/22 123/3 157/7 157/11 163/11 181/18 182/14 186/6
**Mr. Blackman's [9]** 63/1 74/1 84/5 92/19 92/24 104/2 110/4 110/11 112/7
**Mr. Cirri [4]** 103/22 103/23 106/10 111/14
**Mr. Cirri's [1]** 103/9
**Mr. Cox [4]** 103/10 106/16 110/4 111/14
**Mr. Cox's [1]** 112/10
**Mr. Cuyler [8]** 128/21 129/10 129/17 171/5 180/15 184/10 187/18 189/14
**Mr. Cuyler's [3]** 183/18 183/24 185/2
**Mr. Halverson [17]** 4/5 7/4 68/3 68/18 69/11 71/22 87/23 93/6 100/9 110/19 113/2 124/10 142/14 175/18 177/4 192/4 193/7
**Mr. Khristoforov [2]** 101/25 102/2
**Mr. Langston [2]** 109/10 110/25
**Mr. McNeal's [1]** 104/9
**Mr. Petron [13]** 4/10 7/3 9/2 15/3 64/4 65/12 68/5 69/1 72/15 93/11 98/24 102/9 107/24
**Mr. Petron's [1]** 68/24
**Mr. Schreck [1]** 103/22
**Mr. Schreck's [1]** 112/24
**Mr. Toman's [1]** 112/23
**Ms [2]** 3/5 3/6
**Ms. [127]** 5/1 5/20 6/11 8/24 14/24 15/16 31/5 35/4 35/9 36/25 42/25 57/17 57/18 59/2 62/15 62/16 62/18 64/12 64/15 64/17 64/21 65/9 66/17 67/7 67/25 68/2 68/21 68/25 69/1 69/17 69/19 69/20 69/25 70/3 70/5 70/7 70/11 70/12 70/13 70/19 71/14 71/22 71/25 72/3 72/12 76/15 88/1 88/9 89/8 89/20 89/25 90/23 91/5 93/20 94/1 94/6 95/21 97/2 97/5 97/9 97/13 97/19 97/23 97/25 100/4 100/24 102/8 110/10 112/23 114/18 115/4 115/9 115/20 117/5 117/23 120/14 121/3 121/24 124/1 125/16 126/4 128/8 128/13 129/13 129/13 130/3 132/10 133/3 133/21 135/23 136/4 136/21 137/18 143/5 149/1 149/11 149/20 151/10 153/16 154/21 155/25 157/18 158/25 162/12 162/16 163/18 165/2 165/14 168/14 170/1 170/15 171/15 172/11 172/15 173/10 173/12 175/24 176/23 177/7 177/18 177/18 181/3 187/25 189/6 190/3 192/4 193/7
**Ms. Braga [4]** 5/20 6/11 8/24 62/16
**Ms. Burns [1]** 192/4
**Ms. De Lanoy's [1]** 112/23
**Ms. Gilbert [2]** 76/15 115/20
**Ms. Holt [60]** 5/1 14/24 15/16 31/5 35/4 35/9 36/25 42/25 57/18 59/2 62/15 62/18 64/12 64/15 64/17 64/21 65/9 66/17 67/7 67/25 68/2 68/21 69/19 69/25 70/11 71/14 71/22 71/25 72/3 72/12 88/1 88/9 89/8 89/20 89/25 90/23 91/5 94/6 95/21 97/9 128/8 128/13 129/13 130/3 137/18 165/2 165/14 170/1 170/15 171/15 172/11 172/15 173/10 173/12 175/24 176/23 177/7 177/18 189/6 190/3
**Ms. Holt's [3]** 57/17 70/19 163/18
**Ms. Leard [1]** 110/10
**Ms. Sheehan [6]** 70/5 70/12 93/20 94/1 97/19 102/8
**Ms. Sheehan's [12]** 68/25 69/1 69/17

## M

**Ms. Sheehan's... [9]** 69/20 70/3 70/7 70/13 97/2 97/5 97/13 97/23 97/25
**Ms. Shotwell [1]** 129/13
**Ms. Wilson [36]** 100/4 100/24 114/18 115/4 115/9 117/5 117/23 120/14 121/3 121/24 124/1 125/16 126/4 132/10 133/3 133/21 135/23 136/4 136/21 143/5 149/1 149/11 149/20 151/10 153/16 154/21 155/25 157/18 158/25 162/12 162/16 168/14 177/18 181/3 187/25 193/7
**much [12]** 73/4 73/13 74/17 75/1 77/1 77/15 98/10 143/16 159/16 162/15 164/5 172/1
**multiple [8]** 68/6 108/23 110/6 110/15 167/4 167/22 168/9 194/19
**multiplied [5]** 26/2 26/11 26/23 28/8 28/11
**multiply [1]** 27/14
**multiplying [1]** 28/21
**must [4]** 113/25 139/15 150/2 160/14
**my [66]** 15/5 17/8 18/15 22/10 24/6 24/14 25/15 26/7 28/7 30/9 32/3 36/9 36/18 37/21 41/20 43/3 44/10 44/21 45/6 48/20 57/20 57/24 58/7 58/8 58/24 60/15 60/18 65/16 65/21 66/20 67/2 69/12 71/10 73/6 73/9 73/21 74/14 78/21 97/20 97/21 120/21 121/13 122/8 123/22 124/7 128/22 132/1 132/8 138/25 142/24 143/6 153/3 153/24 154/2 157/4 168/4 175/1 176/4 182/23 191/13 192/24 193/2 193/3 193/11 193/17 194/12
**Myrtle [2]** 6/23 8/18
**Myrtle DME [1]** 8/18
**myself [1]** 117/13

## N

**N.W [4]** 1/15 1/19 2/3 2/7
**name [29]** 6/18 16/24 37/18 38/9 38/9 38/13 38/14 41/3 41/6 41/7 41/7 41/12 41/14 41/25 41/25 43/11 43/11 43/13 43/14 43/17 43/17 43/25 43/25 44/4 44/4 47/12 47/25 55/20 172/4
**names [1]** 40/8
**National [37]** 56/23 62/6 63/5 74/5 75/1 76/25 77/2 77/17 78/19 79/4 80/4 80/17 81/6 81/10 81/15 81/19 82/6 82/18 82/22 83/2 83/6 83/10 83/20 86/1 86/20 86/24 87/3 87/16 87/19 88/12 88/21 90/7 90/17 91/8 91/20 92/15 92/18
**nature [5]** 105/18 105/24 106/1 106/15 110/15
**navigate [1]** 68/8
**nearly [2]** 11/1 90/6
**necessarily [3]** 48/19 164/13 164/21
**necessary [1]** 106/8
**need [20]** 34/20 35/3 35/11 36/17 38/6 73/6 76/15 97/6 99/17 114/18 116/10 117/8 130/21 131/7 144/4 171/18 178/11 179/18 179/22 194/14
**needed [3]** 33/16 99/6 118/17
**needs [2]** 174/9 180/18
**negate [2]** 160/4 161/14
**negates [2]** 159/18 159/20
**negative [3]** 44/8 60/17 60/20
**network [2]** 156/13 156/20
**never [12]** 65/18 71/19 92/2 148/24 149/4 153/2 153/2 156/11 156/12 157/5 168/2 190/22
**New [5]** 1/15 1/19 6/18 6/19 8/14
**New Jersey [3]** 6/18 6/19 8/14
**next [20]** 35/6 36/23 57/18 57/22 72/10 91/5 102/12 103/13 121/14 121/16 121/22 134/11 160/12 174/19 182/13 182/13 182/17 183/7 183/10 193/5
**nice [4]** 63/25 100/19 127/11 194/25
**no [150]** 1/3 7/10 14/22 18/24 21/9 21/9 22/22 22/23 23/11 24/12 24/22 25/18 28/2 30/1 30/9 30/12 31/2 32/20 34/15 35/11 35/14 37/19 39/9 40/3 40/13 42/10 42/12 42/13 49/2 49/3 49/5 49/13 49/17 49/23 52/15 54/19 57/21 58/7 59/12 60/13 70/8 72/23 73/2 75/12 76/4 76/8 78/11 79/15 84/14 87/24 90/19 91/2 93/4 94/1 96/16 98/22 101/7 104/14 112/4 112/4 114/14 116/6 116/12 116/23 116/23 117/2 117/4 117/4 119/6 122/19 123/5 123/6 125/19 126/8 126/25 129/6 130/16 130/17 131/7 132/14 132/23 133/9 133/9 134/18 134/25 135/1 135/8 135/9 135/11 135/12 136/3 136/15 140/8 140/17 142/4 143/4 143/4 143/10 143/13 144/15 144/15 144/22 144/24 145/15 145/18 145/19 147/9 150/5 151/12 152/9 152/19 155/12 155/22 158/12 160/23 160/24 160/24 161/15 161/21 163/4 163/19 166/1 166/12 167/2 167/4 167/8 168/24 169/1 169/6 169/9 172/25 172/25 173/2 173/23 174/1 174/2 174/3 174/18 177/4 181/9 181/24 182/2 183/9 185/17 187/23 187/24 188/3 189/21 192/7 194/23
**nobody [2]** 120/11 181/22
**non [1]** 22/7
**non-Medicare [1]** 22/7
**none [11]** 29/17 31/14 31/17 31/18 32/4 32/6 115/22 134/17 135/21 140/16 151/20
**nonpattern [2]** 128/24 173/16
**nor [2]** 38/25 157/5
**normalized [1]** 141/10
**normally [2]** 118/19 141/5
**Northern [1]** 119/12
**not [356]**
**notate [1]** 130/21
**notation [1]** 22/6
**notations [2]** 22/23 23/1
**note [14]** 102/21 109/5 115/17 138/19 147/8 148/24 152/21 153/9 159/22 161/10 164/24 171/20 172/9 175/20
**noted [3]** 68/24 103/4 113/20
**notes [3]** 103/2 115/20 155/4
**Notetaking [1]** 145/17
**nothing [10]** 65/1 66/8 66/12 66/13 127/1 133/18 143/22 158/4 169/3 173/11
**notion [1]** 64/13
**November [5]** 12/14 16/10 54/1 54/3 54/4
**November 2018 [1]** 12/14
**now [87]** 8/23 9/23 11/14 17/6 18/3 18/11 20/19 24/19 25/15 27/2 28/24 32/3 32/7 32/12 32/24 34/14 34/16 37/14 45/12 46/6 46/6 46/13 48/24 49/2 49/17 51/19 52/1 54/1 55/4 55/21 56/17 60/9 61/6 62/6 62/22 63/4 66/7 67/20 68/7 68/23 69/14 75/16 75/21 77/20 84/12 84/21 85/14 87/12 88/23 90/11 94/6 96/3 99/14 100/17 100/24 101/20 120/2 120/23 125/14 126/10 128/8 128/13 130/10 132/10 132/22 136/1 138/13 138/25 139/17 143/8 144/1 159/17 161/15 165/21 171/7 172/21 176/10 179/9 180/23 181/3 182/17 183/4 186/25 187/13 187/14 190/17 194/22
**number [38]** 4/18 4/19 4/20 5/10 6/16 14/10 14/10 23/3 23/23 26/3 26/11 27/21 28/8 29/10 31/25 32/1 32/4 42/5 56/14 63/6 83/13 89/22 91/14 94/2 94/2 94/15 96/13 102/13 103/3 103/6 107/2 111/9 130/7 132/5 132/6 154/25 172/24 180/7
**Number 14 [1]** 180/7
**Number 2 [1]** 94/15
**Number 6 [2]** 14/10 14/10
**numbers [11]** 15/8 29/1 29/7 29/11 46/18 61/17 71/16 90/24 94/18 170/8 171/21
**numerical [1]** 38/13
**numerous [2]** 111/11 112/14
**NYC [1]** 6/23

## O

**o'clock [3]** 125/10 126/16 127/5
**oath [3]** 66/25 66/25 68/15
**object [34]** 62/8 65/24 70/1 116/20 120/17 128/2 131/2 136/7 143/12 146/8 147/22 148/19 154/14 163/6 166/13 166/25 169/23 173/5 173/13 173/21 174/4 174/21 174/24 175/10 176/2 177/2 177/10 177/12 178/8 181/9 181/13 184/20 185/23 188/10
**objected [7]** 64/16 144/13 145/13 171/14 171/18 189/23 192/8
**objecting [8]** 129/1 137/9 163/22 170/2 172/2 177/15 185/15 185/17
**objection [42]** 6/3 6/8 7/9 9/15 9/16 42/18 57/14 64/25 67/5 67/8 84/10 86/9 87/24 99/22 119/4 123/12 125/18 130/16 130/17 134/25 135/1 135/8 135/9 135/11 135/12 145/18 145/19 147/19 163/19 163/20 167/12 170/20 173/2 173/20 174/2 183/4 183/20 185/20 190/8 191/13 192/8 194/23
**objectionable [1]** 189/8
**objections [14]** 5/2 8/2 10/15 12/2 12/4 13/19 64/11 65/12 71/10 101/6 128/15 136/3 169/4 172/25
**objective [2]** 112/4 112/5
**objects [12]** 140/16 146/9 149/14 167/7 168/12 171/23 174/5 174/9 174/25 176/2 176/25 177/16
**obscure [3]** 110/13 110/16 110/25
**obvious [1]** 149/5
**obviously [10]** 70/1 101/9 107/15 108/12 112/7 130/13 134/15 145/21 151/16 179/20
**occurred [3]** 144/8 144/10 145/6
**off [6]** 106/14 111/16 129/8 153/4 156/13 192/24

## O


**offense [16]** 101/3 144/10 144/22 145/6 145/7 161/12 169/15 170/16 170/23 174/3 174/16 175/4 175/6 175/19 175/22 178/3
**offenses [9]** 170/7 170/10 170/10 171/24 175/21 176/4 176/21 176/25 177/9
**offered [3]** 108/15 108/23 108/23
**officer [1]** 64/17
**Official [3]** 2/12 195/4 195/15
**often [4]** 39/5 115/18 151/5 167/12
**oh [24]** 13/3 18/7 24/16 30/1 34/25 36/21 38/12 53/18 53/19 54/5 84/16 90/21 93/21 95/9 102/6 107/3 128/6 130/12 136/3 136/10 138/13 140/6 145/2 181/9
**okay [255]**
**omission [1]** 112/2
**omitting [1]** 165/10
**on [242]**
**once [6]** 25/8 140/15 173/15 174/8 174/11 194/16
**one [134]** 6/1 6/17 14/12 14/19 18/7 19/19 23/21 24/11 25/9 28/10 28/24 30/2 32/24 34/5 36/11 40/24 40/25 41/24 42/21 42/23 43/14 48/5 48/8 48/10 48/15 51/16 53/18 53/23 61/14 62/2 62/14 62/16 62/17 77/13 83/18 85/1 85/4 85/14 86/13 89/1 89/5 89/22 89/24 89/24 90/2 91/15 91/24 92/3 93/2 94/1 94/2 95/2 97/20 98/20 102/24 109/24 110/6 115/2 119/16 120/7 120/23 121/14 121/16 121/18 123/17 124/16 130/20 133/10 135/14 135/15 136/9 136/17 137/17 137/19 139/8 139/9 139/25 140/9 140/13 140/21 144/3 144/19 146/20 147/10 148/4 148/18 150/9 151/2 151/11 152/15 152/18 153/8 154/9 155/2 155/14 157/23 158/5 158/18 158/20 158/24 159/6 159/10 159/21 160/22 161/21 162/11 162/12 162/14 163/14 163/15 166/25 167/8 168/12 168/17 171/2 171/4 172/22 173/17 174/5 174/9 175/7 175/11 175/16 176/25 177/24 178/11 180/4 180/5 188/12 190/14 191/4 191/19 194/8 194/18
**one's [1]** 142/18
**one-minute [1]** 194/8
**ones [3]** 17/16 129/6 148/5
**only [32]** 40/18 42/3 43/4 43/4 44/1 51/5 58/21 58/25 59/4 70/11 94/14 94/15 95/13 106/7 109/12 109/13 113/5 118/15 128/16 141/14 148/4 152/14 154/13 169/20 174/15 176/12 176/14 177/5 183/18 184/11 193/20 194/12
**onto [2]** 19/14 165/12
**open [3]** 78/15 120/14 127/2
**opened [4]** 69/3 69/6 69/8 70/2
**openings [1]** 124/8
**operate [1]** 112/25
**operating [2]** 75/8 77/13
**operative [1]** 134/9
**opinion [1]** 103/16
**opponent [1]** 168/1
**opportunity [1]** 129/3
**opposite [2]** 97/24 155/21
**or [148]** 10/11 14/10 15/23 18/4 20/6 20/10 22/8 22/11 22/17 22/22 23/2 23/2 23/15 26/19 28/2 28/5 34/4 35/6 42/13 44/4 44/17 45/8 47/2 48/19 49/2 49/13 54/10 57/2 59/25 60/10 62/14 62/23 65/3 66/11 67/11 69/9 71/18 76/15 78/4 79/11 80/9 86/23 90/12 90/25 92/24 96/11 97/16 100/18 101/23 104/4 105/2 108/15 108/15 108/17 108/17 108/18 108/19 108/20 108/22 108/23 108/23 110/13 111/7 111/8 111/25 112/3 112/4 112/8 112/9 116/6 117/2 119/17 120/14 122/10 122/18 123/4 123/5 125/6 127/18 127/24 129/19 129/22 130/12 130/22 133/13 133/13 133/13 135/14 136/25 137/8 137/13 137/21 137/23 138/2 138/11 139/1 140/11 141/2 141/5 141/16 141/23 142/19 144/6 145/1 145/7 147/6 147/12 148/9 148/10 149/4 149/6 149/15 150/22 152/13 154/7 156/25 157/16 158/25 160/3 160/5 160/11 161/14 162/4 162/18 162/19 163/6 165/13 165/22 166/13 170/6 170/12 178/7 182/15 182/15 182/20 183/1 183/9 183/13 185/13 186/6 186/20 189/3 190/11 191/7 191/12 193/9 193/20 194/14
**oranges [1]** 95/25
**orchestration [1]** 113/10
**order [33]** 6/20 8/16 20/7 20/9 20/10 20/17 22/11 22/22 22/22 25/10 25/15 25/16 25/18 25/25 26/8 26/12 26/20 28/13 42/16 44/3 46/17 47/2 47/13 48/7 48/12 54/11 54/18 74/11 107/17 108/14 108/17 109/6 128/18
**ordered [1]** 17/17
**ordering [1]** 108/18
**orders [40]** 6/1 6/5 7/24 27/2 29/14 29/18 30/3 31/14 31/19 32/5 48/16 51/9 54/20 98/11 103/25 104/4 104/13 105/5 105/9 105/12 105/21 106/12 106/15 106/17 106/22 107/25 109/7 109/11 109/17 109/21 109/22 109/25 110/5 110/7 111/13 111/22 111/24 112/1 112/16 112/21
**organization [2]** 6/19 8/15
**orig [1]** 55/20
**originally [1]** 186/3
**orthoses [1]** 4/20
**orthosis [4]** 4/18 5/10 8/19 26/11
**orthotic [1]** 111/13
**other [42]** 17/19 18/16 40/25 45/3 45/13 57/5 57/8 57/24 58/5 67/20 95/8 103/6 107/15 109/8 110/8 111/20 112/14 127/2 134/5 136/3 137/14 140/11 141/2 141/23 145/21 145/22 149/1 151/12 152/24 153/22 156/3 164/12 166/10 169/20 174/6 183/4 185/12 190/14 193/10 193/17 194/13 194/17
**others [11]** 45/6 106/10 106/18 106/19 110/14 113/22 114/8 139/16 155/7 164/8 168/8
**otherwise [3]** 120/22 169/23 176/8
**our [38]** 4/4 19/14 61/21 63/24 65/11 67/8 67/8 68/9 72/11 76/1 99/24 99/25 114/21 115/11 115/24 116/21 119/3 119/4 127/25 128/14 128/15 128/15 129/4 141/14 146/2 148/10 151/3 161/3 163/20 163/24 165/5 165/8 167/1 167/12 167/12 183/21 185/20 185/21
**Our position [1]** 127/25
**ours [2]** 162/23 162/24
**out [44]** 13/4 18/18 18/20 35/5 39/10 39/13 40/9 44/22 45/18 57/8 57/24 67/15 71/3 72/5 77/9 84/3 101/14 102/7 103/17 107/23 125/1 129/12 131/12 134/8 134/21 134/22 139/7 139/9 141/9 141/22 141/22 143/3 151/6 155/20 155/21 156/17 160/19 166/18 169/2 171/10 173/15 175/24 183/7 193/9
**outside [4]** 27/25 52/4 126/25 128/2
**over [15]** 84/4 84/21 92/17 97/20 106/17 111/23 112/11 119/21 120/3 122/7 122/7 130/3 155/19 158/11 167/12
**overall [2]** 28/10 31/16
**overdone [1]** 191/14
**overinclusive [1]** 39/19
**overnight [2]** 154/8 187/14
**overruled [17]** 5/3 6/4 6/9 7/10 8/4 9/17 10/17 12/5 13/21 57/21 65/6 68/2 68/22 148/21 167/17 167/21 169/14
**overruling [1]** 65/11
**overseas [2]** 189/16 189/25
**own [7]** 49/23 66/10 73/17 143/18 154/24 165/8 168/7
**owner [1]** 103/1
**ownership [1]** 102/23


## P


**p.m [16]** 1/6 1/6 4/1 64/3 71/1 71/1 72/8 100/22 115/7 115/7 118/6 118/6 127/15 129/25 129/25 195/1
**page [107]** 3/3 3/12 18/6 29/1 29/11 33/15 78/6 78/17 79/9 79/19 80/2 80/8 80/15 80/20 80/24 81/4 81/13 81/17 81/21 81/25 82/4 82/8 82/12 82/16 82/24 83/8 83/12 83/19 129/11 129/11 129/14 129/14 129/15 129/15 129/21 129/21 130/2 130/6 130/7 130/12 130/15 130/18 131/22 132/10 134/5 134/8 134/8 134/11 134/11 134/12 134/12 134/13 134/16 134/24 135/2 135/10 135/13 135/14 135/14 135/15 135/16 135/18 135/19 135/24 136/1 136/5 136/6 136/25 142/7 144/6 147/21 149/12 154/10 158/6 162/4 166/24 167/6 168/11 169/16 169/17 169/17 172/19 172/20 173/1 173/5 174/19 176/10 176/11 177/2 177/7 177/20 178/12 181/15 181/17 181/19 187/21 190/18 190/19 190/24 190/25 191/21 191/22 191/24 193/14 193/15 193/21 195/10
**Page 1 [2]** 130/15 132/10
**Page 10 [1]** 136/25
**Page 101 [1]** 81/25
**Page 11 [1]** 142/7
**Page 119 [1]** 82/4
**Page 12 [1]** 144/6
**Page 125 [1]** 82/8
**Page 13 [1]** 80/2
**Page 131 [1]** 82/12
**Page 149 [1]** 82/16
**Page 15 [1]** 147/21
**Page 16 [1]** 149/12

P

**Page 161 [1]** 82/24
**Page 17 [1]** 154/10
**Page 18 [1]** 158/6
**Page 197 [1]** 83/8
**Page 2 [5]** 130/18 134/5 134/8 134/11 134/12
**Page 20 [1]** 162/4
**Page 209 [1]** 83/12
**Page 21 [2]** 80/8 166/24
**Page 22 [1]** 167/6
**Page 223 [1]** 83/19
**Page 23 [1]** 168/11
**Page 24 [2]** 169/16 169/17
**Page 25 [1]** 169/17
**Page 26 [3]** 172/19 172/20 173/1
**Page 27 [1]** 80/15
**Page 28 [1]** 173/5
**Page 3 [6]** 18/6 78/17 79/9 134/8 134/13 134/16
**Page 31 [3]** 174/19 177/2 177/7
**Page 33 [2]** 80/20 177/20
**Page 34 [1]** 178/12
**Page 35 [1]** 187/21
**Page 37 [3]** 190/19 190/24 191/21
**Page 38 [1]** 191/22
**Page 39 [3]** 80/24 190/18 191/24
**Page 4 [1]** 134/24
**Page 5 [2]** 33/15 135/2
**Page 53 [1]** 81/4
**Page 6 [1]** 135/10
**Page 7 [6]** 135/13 135/14 135/15 135/16 135/19 136/1
**Page 71 [1]** 81/13
**Page 8 [4]** 135/14 135/18 135/24 136/5
**Page 89 [1]** 81/17
**Page 9 [2]** 79/19 136/6
**Page 95 [1]** 81/21
**pages [12]** 1/8 29/7 29/17 31/8 31/25 32/4 77/24 78/15 104/14 152/5 162/3 193/19
**Pages 18 [1]** 162/3
**paid [16]** 6/25 8/19 26/1 26/10 26/22 27/12 28/9 45/15 45/25 84/22 98/10 108/15 108/23 109/12 109/13 194/6
**pain [38]** 56/23 62/6 63/5 74/5 75/1 76/25 77/2 77/17 78/19 79/4 80/4 80/17 81/6 81/10 81/15 81/19 82/6 82/18 82/22 83/2 83/6 83/10 83/20 86/1 86/20 86/24 87/3 87/16 87/19 88/12 88/21 90/7 90/17 91/8 91/20 92/15 92/18 109/11
**pair [1]** 155/7
**paper [2]** 77/3 177/13
**paragraph [7]** 33/15 130/20 163/25 164/2 176/11 179/10 180/8
**Paragraph 9 [1]** 33/15
**paragraphs [1]** 193/13
**parameters [2]** 43/18 43/20
**part [41]** 29/23 34/12 41/20 48/5 48/11 53/11 58/22 66/9 68/13 68/19 78/16 102/1 103/7 107/11 107/15 108/19 108/22 110/23 116/17 117/16 119/24 121/2 123/23 131/22 132/7 133/13 133/22 147/3 147/14 147/14 147/17 157/7 157/11 159/13 168/5 169/1 179/12 192/24 192/25 193/3 193/21
**Part D [1]** 53/11
**participated [2]** 68/7 115/17
**participating [2]** 166/6 166/9
**participation [1]** 104/3
**particular [14]** 25/23 26/1 26/2 26/5 26/8 26/14 26/20 27/17 28/8 37/18 39/17 41/9 41/10 144/6
**particularly [3]** 110/21 163/7 164/16
**parties [7]** 113/11 130/8 134/16 134/20 135/20 145/22 193/5
**parties' [1]** 151/1
**partnership [1]** 102/23
**parts [2]** 78/2 181/4
**party [1]** 168/1
**party's [1]** 169/17
**pass [1]** 90/2
**passing [5]** 62/7 62/23 90/2 90/3 90/7
**past [1]** 136/5
**pasting [1]** 105/22
**Patel [1]** 107/14
**patient [70]** 6/19 11/12 12/12 12/17 12/20 12/22 12/23 13/6 13/15 14/6 19/9 19/23 20/2 20/4 20/9 20/13 20/16 20/19 21/19 21/22 21/23 22/3 22/6 22/10 22/16 22/17 22/19 22/20 23/5 23/7 23/12 23/16 23/18 23/25 24/3 24/4 25/18 27/2 27/10 27/24 28/1 28/7 28/10 33/1 33/24 36/1 38/19 39/23 42/1 42/11 44/19 45/4 48/25 49/3 49/9 49/15 51/10 52/3 52/14 52/21 53/6 53/13 54/1 54/8 55/5 96/4 97/16 97/20 98/7 103/5
**patient's [4]** 37/18 38/8 43/13 43/14
**patients [4]** 22/7 104/10 112/5 189/22
**Patricia [2]** 48/2 48/6
**Patricia Reinholdt [2]** 48/2 48/6
**pattern [86]** 136/8 136/19 136/23 137/12 137/20 138/8 138/11 138/14 138/20 138/21 139/11 139/12 139/14 139/18 139/20 139/23 140/17 140/23 141/7 141/11 141/13 141/17 142/6 142/20 144/9 144/15 144/18 144/20 144/22 144/24 145/7 145/9 145/14 145/14 147/4 147/17 147/24 148/21 148/22 149/11 149/16 152/14 158/3 158/11 158/14 158/15 158/23 158/23 158/24 159/24 159/25 160/13 160/24 161/9 161/10 161/10 161/16 161/25 170/8 170/15 170/17 170/24 171/21 171/22 171/25 172/10 173/8 173/9 173/11 173/19 173/21 174/2 174/3 174/12 175/5 175/9 176/16 176/19 176/24 176/24 177/8 177/14 177/16 177/21 191/22 191/23
**patterned [1]** 150/18
**pay [6]** 106/8 106/9 111/12 172/8 172/14 194/5
**payment [5]** 108/15 108/16 108/19 108/22 111/8
**payments [6]** 76/24 84/4 103/18 108/24 109/3 109/15
**PDF [6]** 20/2 20/3 21/19 22/3 23/12 25/21
**PDFs [2]** 24/2 36/4
**peccadillo [1]** 131/19
**penalized [1]** 194/2
**Penthouse [2]** 2/3 2/8
**people [3]** 142/1 166/11 189/12
**people's [1]** 40/8
**per [4]** 5/14 109/6 109/11 177/7
**peradventure [1]** 186/17
**percent [13]** 10/1 10/22 24/19 25/2 25/4 25/6 40/7 45/23 51/23 51/24 51/24 61/4 68/18
**percentage [2]** 51/19 96/15
**perfect [3]** 60/25 65/10 100/3
**perfection [2]** 61/2 61/3
**perform [1]** 78/14
**perhaps [2]** 101/15 148/9
**period [9]** 76/25 84/4 84/22 85/9 92/17 92/18 133/12 141/5 181/6
**permission [1]** 135/4
**person [5]** 89/7 163/4 165/22 166/1 166/11
**personal [7]** 6/3 63/1 74/1 84/5 84/23 92/19 92/24
**personally [1]** 178/18
**PETRON [15]** 4/8 4/10 7/3 9/2 15/3 64/4 65/12 68/5 69/1 72/15 93/11 98/24 102/9 107/24 146/1
**Petron's [1]** 68/24
**pharmaceutical [1]** 109/4
**pharmacies [2]** 88/18 92/9
**pharmacy [2]** 109/13 111/1
**phone [1]** 117/22
**phrase [1]** 7/5
**physical [1]** 111/19
**physician [1]** 112/18
**pick [3]** 24/17 193/9 193/11
**picking [1]** 40/17
**piece [4]** 179/19 179/20 179/23 179/24
**pieces [3]** 78/3 147/18 149/4
**pin [1]** 118/11
**Pinkerton [5]** 190/16 190/18 192/5 192/10 192/13
**place [2]** 156/14 166/2
**placed [2]** 15/18 115/13
**places [2]** 38/13 43/14
**plain [1]** 180/22
**plainly [1]** 173/20
**Plaintiff [2]** 1/5 1/13
**plan [3]** 108/5 125/14 156/11
**plans [1]** 108/7
**platform [11]** 103/7 103/19 104/20 105/14 105/18 106/4 111/20 112/25 113/1 156/17 163/11
**play [1]** 58/22
**players [2]** 102/18 103/19
**plea [8]** 137/21 138/3 138/12 139/23 140/11 141/1 141/3 141/6
**please [36]** 4/2 5/6 6/11 8/12 8/23 9/6 9/21 10/21 12/8 17/12 46/9 46/21 47/21 51/14 52/17 52/24 53/8 54/25 56/12 61/11 61/13 72/9 78/17 80/24 81/13 82/20 83/4 83/12 84/1 93/22 94/24 95/10 126/2 141/24 161/4 173/11
**pled [1]** 142/2
**plenty [1]** 101/10
**PLLC [1]** 2/7
**plural [1]** 141/1
**plus [3]** 51/19 124/11 125/2
**PME [1]** 165/9
**point [25]** 35/11 68/5 96/15 101/14 102/7 107/23 123/5 137/5 137/6 142/18 142/19 143/21 143/24 157/3 157/4 157/21 165/15 175/1 175/18 177/4 178/24 187/13 188/12 189/9 190/7
**pointed [1]** 187/19

## P


**pointing [1]** 133/19
**points [2]** 110/6 191/10
**policies [4]** 181/7 182/1 182/24 186/10
**policy [5]** 181/10 181/16 182/19 183/12 186/5
**policymake [1]** 180/20
**Ponzi [1]** 161/19
**portal [2]** 105/11 109/24
**portals [1]** 109/21
**portion [6]** 65/1 100/16 126/8 140/16 146/8 162/9
**portions [3]** 170/2 171/14 172/2
**position [21]** 67/14 127/25 130/8 132/25 133/2 133/4 136/11 136/18 139/17 139/18 139/19 141/14 146/3 146/11 158/14 164/25 165/1 169/17 169/18 170/18 185/21
**positive [1]** 91/13
**possession [1]** 148/1
**possibility [3]** 137/16 140/13 141/4
**possible [5]** 16/11 39/11 40/2 50/20 104/11
**possibly [1]** 40/15
**post [1]** 127/1
**posted [6]** 181/7 182/1 182/4 182/7 182/24 186/5
**posts [1]** 181/11
**potential [1]** 26/18
**potentially [1]** 20/17
**power [4]** 85/21 166/24 167/3 168/13
**Power Mobility [1]** 85/21
**powerful [1]** 193/19
**PowerPoint [1]** 112/20
**practice [2]** 130/10 132/1
**pre [2]** 147/6 148/23
**pre-Bonner [2]** 147/6 148/23
**precedes [1]** 177/11
**precise [1]** 67/23
**precluded [3]** 69/3 71/13 179/7
**precluding [1]** 64/12
**prefer [1]** 62/18
**preferred [1]** 163/19
**prefers [1]** 62/15
**prejudicial [1]** 162/20
**premise [1]** 56/18
**preparation [1]** 75/9
**prepare [1]** 75/12
**prepared [5]** 11/13 71/18 75/13 99/7 127/22
**prescription [1]** 109/12
**prescriptions [9]** 106/7 106/8 106/9 106/21 106/23 109/4 109/11 109/18 111/10
**presence [1]** 162/4
**present [6]** 34/15 162/9 162/21 162/21 164/7 166/7
**presented [2]** 56/14 112/14
**preserve [2]** 67/8 164/3
**preserved [11]** 64/21 65/2 142/5 149/11 153/13 154/3 158/3 167/21 168/10 169/13 182/24
**preserving [2]** 65/4 65/7
**presumption [3]** 130/19 134/6 134/14
**pretending [1]** 147/6
**prettied [1]** 134/3
**pretty [2]** 48/12 158/1
**previous [1]** 186/22
**previously [2]** 84/9 92/12
**price [1]** 109/7
**print [1]** 129/12
**prior [16]** 5/2 7/9 7/13 25/15 30/11 34/12 49/17 49/23 68/13 68/15 69/12 94/1 101/5 183/21 190/5 190/6
**private [2]** 187/21 188/5
**pro [3]** 120/5 120/6 179/20
**pro se [2]** 120/5 120/6
**probably [8]** 74/13 123/14 123/16 127/17 143/11 152/24 155/7 194/19
**problem [15]** 35/11 35/14 36/10 37/13 37/15 37/22 40/11 40/14 41/20 132/14 158/12 165/8 169/8 174/19 174/22
**problematic [2]** 106/1 147/24
**problems [3]** 37/8 105/10 112/21
**proceedings [4]** 7/13 115/16 195/1 195/9
**process [5]** 94/13 112/21 147/23 148/19 167/13
**procured [2]** 106/9 169/10
**produced [1]** 65/6
**professional [1]** 39/10
**proffered [1]** 159/22
**program [6]** 101/24 102/2 108/20 111/6 151/13 187/3
**Program Integrity [2]** 151/13 187/3
**programs [1]** 108/10
**prohibit [1]** 183/17
**prohibitive [1]** 41/2
**prohibits [1]** 190/11
**promise [1]** 129/17
**promising [1]** 122/18
**prong [1]** 102/4
**proof [6]** 147/12 154/11 155/13 164/13 164/21 181/19
**proper [2]** 141/6 142/25
**properly [4]** 104/18 105/21 113/24 188/6
**proposal [6]** 127/23 150/11 179/19 185/3 185/5 187/18
**propose [1]** 185/11
**proposed [14]** 127/20 145/13 151/2 158/24 170/23 171/15 172/6 178/21 179/5 179/9 183/22 185/10 192/22 193/2
**proposing [4]** 128/3 181/3 183/6 186/13
**proposition [1]** 120/5
**protected [1]** 118/15
**protective [1]** 70/17
**prove [10]** 101/2 131/1 144/8 144/9 145/6 150/2 156/25 157/1 160/14 184/5
**proved [5]** 114/13 149/10 176/13 178/3 184/22
**proven [2]** 104/5 114/10
**proves [1]** 156/22
**provide [8]** 89/3 107/25 127/24 128/23 137/15 140/12 141/7 157/15
**provided [24]** 9/11 36/6 36/8 36/13 36/18 37/3 58/14 103/14 103/16 104/10 104/16 105/2 105/3 108/5 108/9 108/23 110/10 110/12 111/20 112/20 112/23 127/23 128/1 192/22
**providence [1]** 118/24
**provider [12]** 4/21 5/15 6/24 9/25 10/23 14/3 14/5 14/11 14/17 47/16 48/14 49/11
**providers [5]** 4/19 5/13 5/16 9/3 109/1
**provides [2]** 141/3 142/16
**providing [3]** 5/11 48/15 118/17
**public [2]** 108/5 108/7
**publish [9]** 5/5 6/10 8/11 9/20 10/20 12/7 13/24 88/9 93/21
**published [1]** 62/19
**pull [17]** 17/11 18/5 46/8 46/20 47/18 50/3 50/25 53/17 53/20 55/14 56/11 61/12 76/1 78/24 84/16 85/1 91/25
**pulled [2]** 52/4 72/18
**purchase [1]** 108/17
**purchasing [2]** 108/18 109/21
**purely [1]** 177/11
**purple [2]** 59/15 59/16
**purpose [11]** 48/20 108/16 109/15 109/17 109/24 110/16 117/20 152/13 163/6 166/13 184/2
**purposeful [2]** 154/14 155/13
**purposes [3]** 88/4 114/14 114/17
**pursuant [1]** 195/6
**push [1]** 104/7
**put [48]** 19/7 21/16 27/22 30/7 30/10 34/22 37/7 37/10 37/12 48/8 60/15 61/19 62/10 62/11 62/13 62/14 62/16 64/18 64/18 68/11 73/10 73/16 76/11 76/17 90/20 90/25 92/2 93/17 95/8 99/17 99/18 99/24 101/12 129/4 134/20 137/6 151/21 151/24 152/1 155/15 156/1 156/2 165/25 168/17 174/24 186/12 188/6 193/8
**putting [3]** 76/8 89/18 175/5


## Q


**qualifying [1]** 32/3
**query [3]** 75/4 75/7 75/8
**question [47]** 14/22 22/3 22/10 25/16 31/3 31/18 32/3 35/6 36/23 37/21 42/25 43/3 44/10 57/17 57/18 57/20 57/22 57/24 58/24 61/11 65/16 66/1 67/1 67/17 73/21 74/12 76/8 77/7 77/8 77/9 77/11 77/15 77/20 78/4 86/7 89/21 91/5 95/21 95/23 97/21 116/23 138/25 148/2 153/15 155/22 168/25 189/18
**questioning [1]** 70/2
**questions [22]** 34/23 35/1 35/4 63/22 64/15 64/23 67/22 67/24 68/14 69/19 72/16 73/9 73/16 74/19 78/13 93/4 96/16 116/20 119/4 120/10 120/11 120/18
**quibble [1]** 16/1
**quickly [1]** 119/12
**quite [1]** 184/9
**quote [1]** 66/19


## R


**raise [1]** 191/13
**raised [1]** 114/7
**raising [1]** 161/5
**rea [2]** 153/11 159/5
**read [21]** 34/5 35/3 36/20 37/11 38/12 118/25 119/7 137/14 139/22 148/3 148/14 172/13 175/9 175/9 180/4 180/9 181/17 181/18 185/5 186/3 193/18
**reading [2]** 42/22 193/20
**reads [2]** 138/8 176/21
**ready [2]** 126/14 194/15
**real [1]** 162/13

**R**


**reality [1]** 156/13
**realize [1]** 184/18
**really [8]** 120/21 145/15 164/5 187/1 191/10 192/11 193/21 194/9
**Realtime [1]** 195/4
**reason [1]** 171/8
**reasonable [8]** 113/13 114/10 114/13 123/24 134/24 160/15 184/6 184/23
**reasons [12]** 66/15 114/2 120/7 133/10 149/5 149/8 162/1 162/2 167/4 167/22 168/9 171/18
**rebate [1]** 108/16
**rebuttal [7]** 100/12 124/12 125/2 125/13 193/25 194/2 194/6
**Rebuttals [1]** 194/4
**recall [39]** 13/4 16/11 17/14 18/13 18/21 18/24 29/1 29/20 29/25 30/1 30/8 30/9 33/4 33/20 46/18 46/25 47/1 47/17 48/7 50/7 51/17 52/9 52/15 55/12 55/13 63/6 74/6 86/13 86/25 87/2 91/18 92/5 92/21 93/1 94/7 94/15 94/17 94/17 95/22
**receive [2]** 172/8 172/14
**received [19]** 5/4 6/12 6/13 8/5 8/6 9/18 9/19 10/18 10/19 12/4 12/6 13/21 13/22 33/1 36/2 87/25 88/4 88/7 88/8
**receiving [1]** 65/12
**recent [1]** 15/11
**Recess [4]** 71/1 115/7 118/6 129/25
**recessed [1]** 195/1
**recipient [1]** 108/17
**recognize [2]** 11/8 161/23
**recollection [3]** 35/3 78/21 94/21
**recommend [1]** 108/17
**recommends [1]** 150/3
**record [53]** 20/2 20/4 20/6 20/9 20/15 21/22 22/3 22/16 22/21 22/21 27/15 27/17 38/19 39/12 39/23 43/8 45/4 46/23 47/3 55/7 55/10 65/10 68/2 68/12 68/15 68/21 95/12 95/13 99/25 101/8 101/12 101/17 117/13 128/14 128/14 142/19 142/20 142/25 143/22 148/20 153/3 154/18 154/20 154/22 155/15 157/15 157/17 157/18 158/2 168/15 171/7 188/22 191/13
**records [51]** 19/8 19/9 19/23 20/13 20/14 20/19 21/19 23/12 23/25 27/3 27/5 27/6 27/10 27/11 27/24 28/4 28/13 33/1 33/24 36/2 40/8 42/1 42/11 42/11 43/5 44/1 44/19 44/20 50/19 51/10 52/3 52/14 52/19 52/22 53/3 53/5 53/13 56/2 56/4 56/10 60/6 69/20 69/21 72/18 97/17 97/22 98/7 104/10 113/24 146/23 146/25
**recross [2]** 96/17 96/19
**RECROSS-EXAMINATION [1]** 96/19
**red [12]** 86/22 88/14 88/23 89/1 89/19 90/2 90/3 90/6 90/13 92/10 155/24 165/6
**red flags [1]** 165/6
**redacted [7]** 131/20 131/23 132/3 132/6 132/12 132/14 194/18
**redaction [1]** 11/16
**redirect [3]** 69/4 93/6 93/9
**redundant [1]** 186/15
**refer [2]** 33/15 50/9
**reference [2]** 104/4 149/22
**referenced [2]** 132/19 168/22
**references [4]** 131/2 132/21 133/6 169/22
**referencing [1]** 69/11
**referred [3]** 5/13 48/10 49/11
**referring [15]** 4/19 4/21 5/16 6/23 10/10 10/11 10/23 19/17 21/5 49/11 78/20 151/14 151/19 176/9 176/17
**reflect [3]** 59/5 87/18 171/11
**reflected [1]** 77/15
**reflects [1]** 146/17
**refresh [12]** 15/12 15/21 30/17 31/11 33/8 33/19 34/8 35/3 78/21 87/4 94/20 97/6
**refreshed [1]** 37/14
**refused [1]** 105/25
**reg [2]** 189/3 189/3
**regard [3]** 116/19 117/2 122/12
**regarding [6]** 102/9 109/3 110/12 123/4 165/2 190/19
**regards [1]** 178/4
**REGINALD [1]** 1/18
**reginald.cuyler.jr [1]** 1/20
**regs [1]** 188/24
**regular [1]** 132/1
**regularly [1]** 133/18
**regulate [1]** 156/17
**regulation [13]** 49/2 49/13 103/18 151/11 151/14 152/1 152/8 183/12 186/8 186/20 188/15 188/19 190/11
**regulations [15]** 149/22 151/5 152/2 152/4 178/24 179/25 180/9 180/11 180/19 181/12 182/19 183/16 185/7 188/13 195/11
**regulatory [9]** 151/4 151/7 151/8 151/18 152/6 182/15 186/7 191/11 191/21
**reimbursed [2]** 109/12 109/14
**Reinaldo [1]** 102/25
**Reinaldo Wilson [1]** 102/25
**Reinholdt [2]** 48/2 48/6
**related [5]** 6/17 11/2 91/11 91/13 91/21
**relates [1]** 159/2
**relationship [5]** 49/17 49/23 94/1 110/17 118/23
**relatively [2]** 113/16 114/3
**relevance [1]** 185/21
**relevant [12]** 163/7 164/16 179/1 180/1 180/12 184/7 184/21 184/25 185/2 185/3 185/8 188/17
**relies [1]** 158/10
**relook [1]** 46/6
**relying [1]** 70/3
**remain [1]** 115/15
**remainder [3]** 71/5 72/25 73/14
**remaining [1]** 13/5
**remember [11]** 18/15 18/16 21/14 37/8 37/9 42/4 42/5 53/23 62/2 69/19 154/25
**remind [2]** 16/17 93/19
**remotely [1]** 169/4
**remove [1]** 104/3
**removed [1]** 113/1
**render [1]** 118/18
**rendered [1]** 113/25
**renders [1]** 148/14
**renew [3]** 101/5 125/21 183/21
**repeatedly [1]** 157/22
**report [18]** 29/21 29/23 30/6 30/7 30/8 30/9 30/10 33/6 33/8 36/12 37/7 37/10 37/22 38/10 42/13 42/22 94/22 97/8
**reported [2]** 2/11 195/9
**reportedly [1]** 106/16
**Reporter [3]** 2/12 195/5 195/15
**represent [1]** 190/1
**representation [5]** 116/19 117/1 117/16 117/18 119/5
**represented [1]** 118/16
**reputation [1]** 143/23
**request [3]** 124/20 124/23 133/21
**requested [8]** 98/14 128/10 141/9 162/1 163/17 165/21 166/17 166/17
**requesting [3]** 159/5 180/7 180/14
**requests [1]** 165/20
**require [1]** 152/17
**required [7]** 67/11 102/22 111/18 111/19 113/12 131/24 191/17
**requires [8]** 49/2 49/3 49/14 160/1 160/3 160/5 160/11 174/17
**research [1]** 126/25
**reserve [1]** 57/19
**reserves [1]** 100/11
**reshape [1]** 42/25
**resources [2]** 38/25 39/6
**respect [17]** 19/11 59/25 69/21 72/17 72/18 101/20 104/25 105/8 108/22 113/9 116/1 116/2 116/24 131/19 153/3 172/5 188/11
**respectful [2]** 115/16 122/22
**respectfully [1]** 115/18
**respond [1]** 167/13
**response [3]** 101/12 101/17 112/10
**responses [1]** 64/23
**responsible [1]** 118/17
**responsive [1]** 57/17
**rest [27]** 31/7 43/7 43/9 44/3 57/1 83/24 99/7 99/8 99/14 100/1 123/8 125/16 130/12 137/15 138/16 139/19 141/7 142/5 160/17 174/11 179/9 179/15 182/10 182/10 186/18 192/15 194/12
**restate [1]** 180/6
**rested [4]** 99/15 100/16 126/7 126/7
**resting [1]** 115/11
**rests [2]** 100/11 126/5
**resulted [3]** 54/10 54/18 54/20
**resume [1]** 64/5
**retrieved [1]** 15/19
**return [3]** 13/7 13/17 14/7
**returned [2]** 118/7 118/8
**returns [6]** 11/23 19/21 25/21 37/5 42/17 98/12
**Revenue [1]** 158/7
**reverse [1]** 97/18
**review [17]** 11/2 25/12 30/11 33/16 34/3 34/11 34/13 34/13 34/14 35/6 36/17 57/12 66/9 67/3 94/3 95/3 97/9
**reviewed [12]** 17/17 18/22 18/23 19/3 29/13 32/5 36/25 55/4 55/4 64/24 104/14 110/14
**reviewing [6]** 31/2 31/4 36/23 65/14 67/10 119/8
**revision [1]** 172/10
**rewrite [1]** 133/5
**rid [2]** 133/20 134/15
**rife [1]** 112/2
**right [345]**
**rightfully [1]** 64/16

## R


**ring [1]** 16/12
**rise [7]** 64/1 70/25 72/6 100/20 115/6 125/24 127/13
**risk [1]** 105/14
**Rivera [1]** 14/5
**rob [1]** 194/5
**Robin [14]** 20/25 21/6 32/13 33/23 35/20 42/10 49/20 50/13 50/16 51/5 52/11 52/19 53/3 53/10
**Robin Sheehan [5]** 20/25 21/6 32/13 35/20 53/10
**Robin Sheehan's [9]** 33/23 42/10 49/20 50/13 50/16 51/5 52/11 52/19 53/3
**rodriguez [6]** 2/11 2/13 195/4 195/14 195/14 195/16
**Rogers [3]** 113/7 142/22 143/7
**Rogers' [1]** 142/14
**role [2]** 187/21 188/5
**room [1]** 103/6
**roughly [2]** 24/8 42/4
**routinely [1]** 174/6
**row [2]** 14/4 14/18
**rows [1]** 18/23
**RPR [2]** 2/11 195/14
**Ruiz [1]** 119/11
**rule [20]** 101/1 101/9 101/13 101/18 113/8 113/11 113/16 114/1 114/2 114/4 114/14 114/15 114/16 114/17 143/5 143/23 150/6 155/11 156/22 186/19
**Rule 29 [15]** 101/1 101/9 101/13 101/18 113/8 113/11 113/16 114/1 114/2 114/4 114/14 114/16 114/17 155/11 156/22
**ruled [1]** 169/19
**rules [16]** 141/6 167/6 167/24 168/2 168/7 168/8 179/25 180/9 180/10 180/19 182/4 182/5 182/19 183/12 185/7 191/17
**ruling [7]** 65/21 69/12 71/10 142/24 143/6 168/4 178/1
**rulings [2]** 66/20 66/22
**run [3]** 35/5 75/4 75/7
**running [1]** 90/24


## S


**S1.2 [1]** 137/7
**S17 [8]** 158/18 158/22 159/12 159/17 159/23 160/10 161/24 161/25
**S9 [7]** 158/25 159/4 159/11 159/11 159/16 159/16 161/25
**said [53]** 15/3 20/23 24/10 24/25 28/5 29/13 38/2 60/2 60/5 65/9 65/14 66/4 70/5 70/9 72/17 72/23 87/2 97/1 112/10 117/7 117/12 119/15 119/19 120/14 121/25 122/7 128/5 144/8 145/10 145/10 146/18 151/6 152/1 152/2 155/24 155/24 156/22 170/6 177/14 180/10 181/14 183/4 183/5 184/10 185/13 186/3 187/10 188/22 188/23 189/13 193/21 193/24 194/13
**same [52]** 6/8 6/23 7/21 8/2 8/9 8/13 8/18 9/15 9/16 10/11 10/15 12/2 13/14 13/19 43/12 44/4 45/22 45/25 48/25 49/4 49/9 49/10 49/14 51/3 52/19 53/2 59/23 60/7 80/12 84/21 88/6 89/1 89/12 89/16 90/7 90/13 92/8 109/16 111/23 120/11 126/24 145/23 147/16 154/16 155/3 156/1 157/13 162/8 165/9 177/9 178/24 179/1
**sample [22]** 24/17 29/9 29/18 32/1 32/5 33/24 34/3 34/17 35/15 35/17 40/7 45/13 52/4 60/13 93/14 93/14 96/3 96/5 96/9 97/4 97/12 97/12
**Sample 1 [3]** 93/14 96/3 96/9
**Sample 2 [1]** 93/14
**samples [1]** 36/1
**sampling [5]** 65/5 94/6 95/17 95/18 97/25
**Sampling 2 [1]** 94/6
**samplings [1]** 93/12
**sanction [1]** 167/24
**satisfaction [3]** 119/4 120/18 123/4
**satisfied [6]** 116/18 116/25 117/10 117/15 117/17 121/12
**satisfies [1]** 102/4
**saw [4]** 17/23 26/21 44/5 181/21
**say [70]** 15/23 16/2 16/24 17/6 25/24 25/24 28/6 31/16 35/12 40/11 41/12 43/9 43/20 48/9 51/10 54/5 59/20 59/23 66/3 67/2 68/9 70/6 70/8 70/11 75/1 78/7 79/12 120/20 120/22 123/19 130/11 132/15 132/18 133/1 138/1 140/14 141/24 143/19 148/1 153/22 154/22 160/2 160/11 160/13 161/1 165/6 165/7 172/1 172/21 173/20 174/11 174/15 174/23 176/1 176/4 176/7 178/17 178/21 182/4 182/6 184/21 189/17 191/16 192/20 193/13 194/3 194/6 194/9 194/9 194/13
**saying [24]** 31/22 59/15 60/1 66/11 94/17 120/20 121/25 127/19 144/16 146/21 148/4 163/8 164/18 170/15 170/21 170/22 173/10 174/22 175/12 176/10 183/2 184/10 185/3 191/2
**says [25]** 13/1 42/15 48/3 54/8 131/22 132/19 141/17 144/9 144/22 144/25 150/1 155/1 156/7 165/5 169/21 171/22 175/14 175/19 176/6 176/12 178/1 188/15 190/23 190/24 191/17
**schedule [1]** 125/15
**scheme [11]** 103/11 105/2 150/20 151/4 151/7 151/9 151/16 151/17 151/22 152/6 161/19
**Schreck [4]** 102/15 103/22 109/2 137/2
**Schreck's [1]** 112/24
**screen [5]** 76/5 76/11 93/18 95/12 193/9
**scripts [2]** 4/19 5/18
**scroll [3]** 46/23 47/21 55/16
**se [2]** 120/5 120/6
**search [19]** 37/17 38/3 38/6 38/8 38/15 41/3 41/6 43/14 43/15 43/18 43/22 44/13 44/14 44/18 44/23 44/25 45/4 45/6 45/10
**searchable [7]** 36/6 36/8 36/9 36/13 37/4 37/6 77/22
**searched [2]** 41/7 41/24
**searching [9]** 37/9 37/13 37/16 37/22 38/5 40/8 41/18 41/21 74/15
**seated [11]** 4/3 64/7 71/2 72/10 100/7 100/23 115/15 126/3 127/16 135/4 135/6
**second [62]** 7/21 8/14 20/22 32/9 34/5 41/21 63/16 73/2 92/3 95/2 95/18 97/3 97/19 97/20 116/2 120/23 124/16 135/14 136/9 136/17 137/17 137/19 139/8 139/9 140/9 140/21 142/24 144/19 145/2 145/4 146/20 153/8 158/5 158/20 158/24 159/10 159/21 160/22 162/11 162/12 162/14 163/15 165/3 168/17 168/18 171/2 171/4 173/17 174/21 175/7 175/11 175/16 176/2 176/11 177/2 177/10 177/24 178/8 178/11 180/4 180/5 193/15
**secondly [2]** 65/22 133/11
**Section [1]** 195/7
**see [64]** 14/10 14/17 17/19 17/20 18/9 23/13 23/15 25/10 29/14 30/24 31/7 44/18 47/24 48/1 50/11 51/9 54/1 55/22 62/24 63/24 64/5 69/25 70/17 70/23 76/9 79/2 79/11 79/21 80/4 89/13 89/13 89/15 89/21 98/6 99/1 99/2 100/18 114/8 115/3 118/5 124/8 127/4 127/11 129/22 139/25 144/1 144/4 144/25 149/4 150/21 150/24 154/2 162/13 162/16 164/5 171/20 175/12 176/22 177/13 178/7 180/24 187/24 193/15 194/24
**seeing [6]** 11/14 47/1 95/7 127/7 172/25 177/13
**seen [6]** 6/16 71/17 71/19 71/22 148/25 168/2
**sees [3]** 35/7 71/25 178/25
**sell [5]** 109/7 109/9 109/22 110/1 110/7
**send [2]** 110/4 128/8
**sending [2]** 128/13 129/13
**sense [4]** 124/1 125/5 129/15 158/9
**sent [3]** 109/18 128/12 130/3
**sentence [55]** 66/4 136/7 136/19 136/23 136/24 137/10 137/15 137/16 139/10 139/12 139/14 139/15 140/1 140/2 140/13 141/4 145/4 146/22 147/10 160/5 160/11 160/13 160/18 160/20 161/15 161/16 161/18 161/22 163/4 163/17 163/18 164/9 165/3 165/11 165/21 165/25 166/2 174/8 174/11 178/5 179/5 179/8 179/13 180/8 182/1 182/13 182/17 182/18 182/23 183/10 183/15 183/19 184/9 185/10 193/20
**sentenced [1]** 145/2
**sentences [13]** 147/9 160/12 164/4 165/16 165/20 166/4 166/15 166/19 182/14 183/8 186/22 193/10 193/16
**separate [6]** 14/6 19/5 19/12 151/17 170/11 194/21
**separately [1]** 170/12
**September [1]** 16/16
**sequence [2]** 41/9 41/10
**series [1]** 181/15
**seriously [1]** 189/6
**server [1]** 102/10
**serves [1]** 22/13
**service [7]** 4/17 5/10 5/12 6/22 8/17 12/23 108/18
**services [2]** 111/9 111/10
**session [5]** 1/7 47/20 48/9 72/10 107/13
**set [12]** 12/24 20/22 23/11 26/22 32/21 56/6 56/7 97/23 99/6 105/14 114/18 156/10
**sets [2]** 19/19 175/24
**setting [1]** 116/21
**setup [1]** 7/21

**S**

**seven [2]** 15/6 15/24
**seven years [2]** 15/6 15/24
**several [5]** 111/24 128/24 168/21 180/21 180/23
**sham [4]** 102/23 103/3 105/17 110/14
**shams [1]** 110/16
**Sharp [1]** 119/12
**she [33]** 14/15 21/9 35/6 35/7 36/23 64/13 64/18 65/4 65/7 65/10 68/21 68/24 69/7 71/15 71/24 71/25 72/4 103/16 103/16 105/10 105/11 121/25 129/13 143/16 152/9 152/9 154/2 154/3 157/23 170/15 170/17 189/15 189/17
**she'll [2]** 35/4 35/6
**she's [6]** 69/3 69/6 72/3 72/4 121/6 121/6
**Sheehan [20]** 20/25 21/6 32/13 35/20 53/10 66/12 69/8 69/9 69/13 69/21 70/5 70/10 70/12 70/20 93/20 94/1 97/19 102/8 108/6 111/7
**Sheehan's [21]** 33/23 42/10 49/20 50/13 50/16 51/5 52/11 52/19 53/3 68/25 69/1 69/17 69/20 70/3 70/7 70/13 97/2 97/5 97/13 97/23 97/25
**short [4]** 99/20 115/13 142/21 194/2
**Shotwell [1]** 129/13
**should [31]** 59/15 64/15 110/4 115/18 123/13 123/13 123/13 123/14 127/25 131/20 131/21 131/23 132/3 132/6 132/7 139/22 140/14 157/19 157/20 158/4 162/8 170/4 170/8 172/1 173/8 178/23 190/20 190/23 193/17 194/4 194/16
**shouldn't [1]** 143/11
**show [23]** 4/12 5/21 7/2 9/5 10/5 11/5 13/10 14/2 18/3 62/22 71/16 71/18 73/22 75/1 75/16 84/12 88/20 91/17 104/11 104/14 111/5 132/5 157/6
**showed [7]** 29/6 57/25 67/21 104/17 111/18 132/7 187/2
**showing [7]** 7/18 14/3 87/3 88/11 90/6 102/17 106/7
**shown [5]** 56/17 92/14 149/23 151/16 187/6
**shows [18]** 4/18 85/6 85/20 87/15 88/14 90/3 91/20 92/7 104/19 104/22 106/2 106/22 109/16 112/1 112/12 129/15 157/10 181/22
**side [2]** 121/13 124/25
**sidebar [3]** 99/1 99/4 100/6
**sides [1]** 128/19
**signatures [1]** 132/2
**signed [6]** 6/18 102/24 106/14 109/24 129/8 142/1
**significant [1]** 161/7
**signing [2]** 105/21 111/15
**similar [14]** 10/9 45/14 88/14 88/23 89/6 89/10 146/21 152/23 160/7 161/5 161/6 162/15 164/3 168/13
**Similarly [1]** 166/8
**simple [6]** 19/18 26/12 116/23 120/10 142/24 158/1
**simply [4]** 103/6 104/11 130/7 161/13
**since [2]** 65/22 89/21
**single [5]** 24/10 25/9 41/24 67/15 114/15
**sir [14]** 31/5 35/2 36/20 64/5 95/3 98/24 115/15 116/8 116/15 117/14 117/18 121/2 122/10 122/13
**sit [1]** 153/18
**sitting [2]** 86/6 120/1
**situation [2]** 39/17 149/24
**situations [2]** 161/19 168/6
**six [3]** 15/6 15/23 114/3
**sixth [1]** 31/13
**size [10]** 24/17 29/10 32/5 33/24 34/3 34/17 35/15 35/17 45/13 97/4
**sleep [2]** 123/14 126/13
**sleeping [1]** 134/2
**slide [4]** 13/13 48/14 49/7 49/9
**slides [2]** 60/12 65/6
**slightly [2]** 11/13 77/22
**slip [1]** 178/6
**slowly [1]** 55/16
**small [6]** 16/1 31/16 51/21 54/5 97/23 137/8
**small-quibble [1]** 16/1
**smaller [1]** 95/19
**so [353]**
**software [1]** 163/3
**sold [1]** 109/10
**solution [1]** 68/9
**some [31]** 7/7 17/9 19/14 23/4 23/6 33/3 46/6 56/20 72/2 73/9 77/3 84/3 103/15 105/25 113/21 114/8 126/11 127/6 139/15 144/4 148/8 148/9 148/10 148/23 157/9 163/5 166/13 178/16 179/12 179/21 181/2
**somehow [1]** 68/16
**someone [9]** 39/11 108/14 120/20 133/7 133/14 169/2 182/3 189/25 191/17
**something [22]** 33/20 39/18 39/20 40/17 40/18 44/15 71/18 94/20 96/21 143/11 150/3 152/12 154/7 166/3 181/19 185/13 187/6 189/7 191/2 191/7 191/7 192/1
**sometimes [2]** 148/15 148/16
**somewhere [2]** 92/17 126/16
**sorry [32]** 6/12 7/4 8/10 11/19 13/3 13/23 18/13 24/20 28/6 29/3 34/13 36/21 42/13 52/25 53/19 53/21 54/3 55/1 60/1 79/16 85/15 101/6 101/23 106/19 109/8 128/6 131/13 135/23 150/17 166/1 180/10 183/6
**sort [7]** 29/10 76/23 78/21 94/2 94/3 95/25 133/5
**sounded [1]** 24/25
**source [15]** 4/22 9/12 10/12 13/1 13/5 13/16 21/16 22/15 48/11 48/14 48/15 48/16 50/10 51/3 169/11
**sourced [2]** 48/4 48/7
**sources [2]** 46/14 48/5
**SOUTHERN [4]** 1/1 107/25 133/17 195/6
**sparring [6]** 64/22 65/5 66/6 67/20 67/22 68/1
**speak [3]** 68/8 99/24 135/6
**speaking [2]** 11/11 104/9
**special [2]** 162/16 192/11
**specific [22]** 26/19 28/15 28/17 31/24 34/8 34/14 34/15 41/16 41/19 44/9 63/22 69/11 101/14 108/1 136/10 142/5 146/23 150/2 152/11 152/20 164/23 175/23
**specifically [18]** 16/11 30/2 30/8 56/22 67/11 74/6 74/20 103/24 109/6 159/3 159/6 163/1 170/10 171/14 181/17 183/25 184/1 186/7
**specifics [3]** 73/16 75/14 84/7
**spend [1]** 74/18
**spinal [1]** 18/15
**spoke [1]** 66/4
**spoken [1]** 151/14
**spread [1]** 187/14
**spreadsheet [12]** 20/13 42/10 53/3 53/10 71/17 74/23 75/5 97/2 97/5 97/13 97/23 98/1
**spreadsheets [19]** 18/22 20/14 21/5 21/8 21/9 21/12 32/12 32/15 33/23 35/20 47/10 49/21 50/1 50/13 50/16 50/22 51/6 52/11 70/3
**squarely [1]** 152/6
**stacks [1]** 112/16
**staff [2]** 73/7 74/14
**stand [8]** 63/15 64/14 67/16 69/12 75/25 119/7 120/4 145/24
**standalone [1]** 194/21
**standard [9]** 68/1 114/5 136/19 153/11 175/8 176/17 183/13 186/4 186/20
**standards [11]** 180/1 180/1 180/10 180/11 180/11 182/12 182/20 182/20 183/13 185/7 185/8
**standing [1]** 121/24
**stands [1]** 119/7
**start [15]** 56/17 93/8 99/20 123/20 124/3 125/5 125/10 126/15 126/16 148/15 173/7 181/5 191/5 192/18 194/13
**started [4]** 66/3 114/19 127/5 190/4
**starters [1]** 151/11
**starting [2]** 64/16 130/8
**starts [5]** 66/24 139/13 140/2 159/25 190/20
**state [15]** 7/10 9/10 9/11 10/1 10/3 10/4 10/11 48/25 49/4 49/10 49/14 69/19 143/6 179/1 188/2
**stated [9]** 36/12 84/9 141/21 141/21 142/4 157/22 162/1 162/3 172/11
**statement [19]** 61/2 111/11 111/25 112/10 147/15 161/13 163/13 164/23 167/15 179/8 182/6 182/9 183/1 188/14 188/18 188/25 190/5 190/6 190/12
**statements [8]** 77/12 111/4 112/2 112/15 112/19 153/1 168/1 188/7
**states [17]** 1/1 1/4 1/11 10/23 16/12 16/19 16/23 17/3 118/11 119/1 149/25 152/25 159/7 172/7 195/5 195/7 195/11
**stating [2]** 66/8 66/9
**statistical [8]** 23/20 60/14 60/16 60/18 60/21 61/1 61/5 93/12
**statistics [2]** 61/8 61/10
**statute [11]** 101/24 103/18 105/15 108/12 108/13 108/14 110/11 150/19 150/19 186/20 191/3
**statutes [7]** 150/7 152/21 152/22 152/23 153/5 182/20 183/12
**stay [3]** 123/23 135/4 135/6
**stenographically [1]** 195/8
**step [1]** 98/24
**stickers [1]** 89/22
**still [4]** 129/11 129/18 129/18 190/10
**stipulate [1]** 149/7

## S


**stipulated [1]** 149/3
**stood [4]** 70/4 155/10 156/22 189/1
**stop [4]** 67/18 67/19 161/4 161/5
**stopped [1]** 67/18
**stops [1]** 146/7
**strange [1]** 167/23
**strategically [1]** 114/7
**stratum [5]** 29/17 31/13 31/16 31/22 31/23
**Stratum 6 [1]** 29/17
**Street [2]** 2/3 2/7
**stretch [2]** 99/2 100/8
**stretched [1]** 167/19
**stretching [1]** 167/11
**stricken [1]** 186/8
**strike [13]** 131/1 131/17 135/19 136/24 137/1 137/4 139/11 139/14 163/16 169/19 172/3 182/17 183/15
**striking [20]** 134/11 134/12 135/19 135/22 135/24 136/1 136/5 136/22 137/7 140/12 140/13 142/10 144/20 145/21 170/16 172/3 182/12 183/17 186/5 186/17
**striving [3]** 60/7 60/22 60/24
**strong [3]** 122/14 166/22 192/4
**strongly [4]** 181/13 192/2 192/3 193/16
**strove [3]** 59/24 60/21 61/3
**struck [10]** 135/18 142/11 165/22 165/24 165/25 166/17 167/4 182/23 186/10 186/12
**structuring [4]** 149/15 150/12 150/22 152/22
**struggling [1]** 142/22
**studied [1]** 65/5
**stuff [4]** 70/13 70/13 139/7 159/13
**submitted [4]** 21/23 102/3 102/11 108/8
**subpoena [13]** 13/2 13/7 19/20 28/13 33/2 36/2 37/4 42/11 42/17 98/12 166/24 167/3 168/13
**subpoenaed [1]** 24/4
**substance [3]** 115/22 120/24 166/16
**substantially [1]** 147/3
**substantive [23]** 101/16 104/24 150/14 153/17 153/19 153/23 170/7 170/9 171/24 172/20 173/19 174/2 174/20 174/23 175/4 175/6 175/21 176/3 176/25 177/9 177/17 178/3 178/9
**substantively [4]** 147/8 147/16 164/3 166/18
**substantives [5]** 107/1 107/1 107/22 175/25 177/5
**substitute [2]** 157/1 166/2
**such [11]** 66/15 108/15 108/20 118/21 141/3 149/9 151/19 168/19 181/8 182/2 186/16
**sufficient [2]** 142/16 163/9
**sufficiently [1]** 31/5
**suggest [6]** 118/23 154/19 154/23 169/20 176/6 189/7
**suggested [2]** 165/16 171/16
**suggesting [1]** 190/8
**suggestion [2]** 162/10 183/24
**suggests [1]** 175/5
**Sullivan [5]** 101/25 108/6 111/6 189/13 189/24
**sum [1]** 107/20
**summaries [6]** 145/21 146/2 146/14 146/19 147/1 147/3
**summarize [2]** 12/10 113/24
**summarized [1]** 113/18
**summarizes [2]** 4/17 5/24
**summarizing [5]** 4/16 9/8 9/23 10/8 13/13
**summary [6]** 5/8 5/25 88/5 113/4 113/23 145/20
**summation [3]** 157/8 194/1 194/3
**Sunrise [2]** 6/20 8/15
**Sunrise Medical [2]** 6/20 8/15
**superceding [21]** 130/21 130/22 131/8 131/11 131/12 131/18 131/21 132/10 132/13 132/19 132/22 133/1 133/22 134/4 134/18 134/22 144/20 145/15 151/12 169/19 172/3
**superseding [2]** 131/3 170/17
**supplier [7]** 6/23 49/4 54/11 55/10 55/11 55/19 110/7
**suppliers [6]** 88/17 92/9 109/19 109/22 110/1 110/8
**supply [1]** 48/25
**supported [1]** 128/25
**supporting [2]** 140/18 148/21
**supports [1]** 149/25
**supposed [1]** 67/9
**sure [47]** 5/9 6/16 8/9 15/13 19/16 20/21 26/9 29/24 30/6 30/19 31/7 33/10 36/16 59/15 61/18 63/19 69/10 71/6 73/7 74/14 74/18 75/7 76/12 77/6 106/25 107/21 116/13 117/25 126/14 127/8 129/11 134/2 134/20 142/11 147/4 151/13 153/21 174/8 176/20 178/4 178/5 185/6 192/17 193/8 193/14 194/3 194/6
**surmise [1]** 171/8
**surprised [1]** 190/17
**suspenders [1]** 166/23
**sustain [4]** 42/24 65/24 73/15 189/1
**sustained [12]** 37/25 63/14 63/23 64/10 64/25 67/5 71/6 71/11 78/11 84/10 86/10 86/10
**switch [1]** 53/21
**swore [1]** 104/15
**system [1]** 115/25


## T


**table [1]** 98/25
**tacked [2]** 25/22 25/24
**tailored [1]** 165/13
**tails [1]** 139/1
**take [50]** 5/20 8/23 18/1 19/1 25/8 28/15 31/2 31/6 34/20 37/12 42/6 48/22 52/2 52/13 53/16 53/18 55/15 55/24 57/6 58/7 61/14 61/21 63/24 70/22 73/5 73/13 74/17 78/2 78/15 83/18 83/23 85/13 99/20 100/2 100/15 100/24 117/21 118/1 120/4 121/1 125/12 126/11 141/8 154/4 173/15 181/14 183/7 184/15 189/6 192/25
**taken [6]** 33/22 50/15 50/18 113/14 155/23 160/19
**takes [11]** 123/23 159/16 162/3 162/24 171/25 172/19 175/14 177/1 177/19 177/23 178/12
**taking [12]** 6/1 28/3 28/19 35/17 84/3 85/6 97/15 132/25 141/22 141/22 143/2 156/14
**talk [16]** 19/3 23/20 23/21 34/16 38/2 65/16 67/10 74/14 124/6 126/24 126/25 176/2 181/4 183/18 193/13 193/16
**talked [5]** 28/25 40/5 49/17 183/19 191/23
**talking [17]** 5/16 19/8 19/8 20/12 21/19 23/23 27/2 27/4 34/14 39/15 40/7 60/9 60/10 60/10 61/6 96/23 156/9
**Tamisha [1]** 128/13
**Tanos [1]** 107/17
**task [6]** 40/3 44/18 44/20 44/21 44/22 98/14
**tasked [3]** 39/22 40/1 98/9
**tax [4]** 149/15 150/12 150/22 152/23
**team [4]** 24/13 24/14 24/15 25/9
**teed [1]** 125/10
**telemarketers [1]** 108/25
**telemarketing [1]** 103/11
**telemed [1]** 92/9
**telemedicine [16]** 6/19 8/15 11/2 55/21 104/4 105/24 105/25 106/17 108/25 109/18 109/25 111/13 112/3 112/11 165/7 165/10
**telephone [2]** 111/23 112/3
**telephones [1]** 104/4
**telephonic [1]** 106/15
**tell [19]** 22/4 22/16 35/5 54/17 65/24 107/3 107/6 123/4 125/9 125/9 125/15 131/8 133/23 135/14 139/4 139/5 144/1 177/18 184/3
**telling [5]** 67/5 70/18 105/20 111/14 183/25
**tells [1]** 122/13
**template [1]** 104/7
**ten [7]** 4/17 5/11 13/15 14/4 17/17 18/14 18/15
**tend [2]** 144/10 157/6
**term [6]** 37/18 38/3 38/6 38/8 38/15 141/14
**terms [9]** 43/22 44/23 45/10 65/2 66/8 69/17 102/6 103/17 186/25
**terribly [1]** 147/24
**territory [1]** 152/7
**testified [44]** 9/2 16/7 16/10 16/14 16/16 16/22 17/2 21/4 68/8 78/9 93/11 93/17 94/9 102/1 102/3 102/9 102/15 103/16 103/20 103/22 103/24 105/7 105/10 106/10 106/18 106/20 107/24 108/7 108/24 109/2 109/10 109/20 109/23 110/5 110/10 110/15 110/25 111/7 111/9 111/12 111/17 111/21 143/7 189/15
**testifies [1]** 182/3
**testify [20]** 16/17 17/6 118/14 119/9 119/17 119/18 119/24 121/23 121/25 122/3 122/4 122/10 122/10 122/13 122/18 122/21 122/23 122/24 134/14 142/9
**testifying [5]** 30/13 63/10 63/12 68/5 119/20
**testimony [58]** 7/7 15/11 30/11 34/12 57/12 63/18 64/6 64/24 65/12 65/14 65/14 66/10 67/3 67/10 68/10 68/13 68/15 69/4 69/7 69/20 71/6 73/1 73/14 75/9 78/12 88/5 104/9 105/2 105/3 105/4 108/5 110/10 110/12 112/1 112/23 112/24 112/24 113/6 136/25 137/20 137/24 138/2 138/11 139/15

**T**

**testimony... [14]** 140/19 141/3 142/14 145/20 151/5 151/25 155/7 157/9 181/10 182/11 188/12 188/23 190/19 191/5
**testing [1]** 112/4
**tests [1]** 111/21
**than [26]** 10/1 11/14 25/4 25/6 39/17 51/24 62/9 75/14 96/15 114/8 114/16 119/20 128/4 139/16 141/4 145/22 147/2 151/12 151/18 152/22 166/3 170/4 175/2 185/12 190/3 193/25
**thank [45]** 4/6 5/19 7/1 8/22 17/25 19/1 46/22 47/6 48/22 53/16 54/25 55/24 57/6 61/20 69/23 70/24 72/13 78/25 83/23 85/13 89/9 89/23 89/25 93/4 93/5 96/16 96/18 98/22 100/3 100/4 100/5 107/19 113/3 113/4 115/1 115/4 115/5 117/24 127/6 129/22 129/24 136/4 172/17 173/4 194/23
**Thanks [3]** 72/5 83/14 95/2
**that [1087]**
**that's [187]** 5/14 7/10 8/16 17/18 17/22 20/8 20/15 20/22 21/7 22/10 23/19 23/22 24/6 25/4 26/12 27/16 32/23 34/1 35/11 35/19 35/20 35/21 36/3 36/16 37/9 39/21 40/9 40/11 40/16 42/4 42/13 42/13 42/14 43/6 44/10 45/2 45/16 45/21 46/16 47/9 47/11 48/3 48/17 49/20 49/22 50/2 50/5 50/14 50/17 51/7 52/12 53/4 54/6 54/22 57/21 61/5 63/23 64/16 64/19 65/4 65/6 66/20 67/15 68/1 68/20 69/21 69/24 71/17 72/21 75/3 75/24 75/24 76/10 77/21 78/11 78/12 81/7 88/1 90/23 91/2 93/8 93/24 94/2 94/11 94/23 95/10 96/5 98/13 98/16 101/7 103/1 107/4 107/5 108/13 111/16 114/5 114/12 120/6 120/16 120/19 121/14 121/16 122/14 123/24 124/22 125/14 126/22 127/9 128/4 128/7 129/5 129/7 129/14 130/3 131/15 132/18 133/2 133/4 133/13 133/21 134/1 134/10 134/19 135/7 136/11 136/22 136/22 137/5 137/6 137/11 138/5 139/11 140/13 140/16 140/19 142/21 143/3 143/4 143/10 143/17 143/19 144/12 145/6 146/2 146/16 146/23 147/12 149/17 150/18 151/9 152/14 152/16 153/11 156/13 159/18 160/24 162/20 166/19 170/18 171/9 171/19 171/25 172/9 173/9 174/16 175/5 177/18 179/3 180/14 182/7 182/7 182/25 183/2 183/18 183/23 185/10 186/21 189/1 189/4 189/17 190/12 190/12 190/18 190/24 191/4 192/1 193/1
**their [36]** 23/2 64/9 68/13 84/18 102/6 102/9 106/17 111/15 112/11 116/19 125/1 127/23 128/14 128/23 128/23 133/2 139/18 140/19 141/2 143/18 151/8 153/7 153/10 155/18 156/15 156/16 157/4 157/8 163/2 164/25 169/12 181/19 184/5 191/7 194/2 194/3
**them [70]** 18/24 19/12 21/10 21/16 21/16 24/7 24/14 28/11 28/25 32/5 32/16 32/17 32/18 32/19 32/20 32/25 36/1 45/9 45/10 50/19 52/2 59/16 65/24 70/9 80/11 89/6 89/6 89/7 89/18 93/14 98/1 100/1 104/15 106/4 107/9 110/1 113/21 116/10 118/4 121/11 121/19 123/8 123/8 123/13 123/13 123/14 123/18 123/19 123/19 123/25 125/9 125/9 125/14 125/15 128/12 129/9 133/23 151/21 151/24 152/1 156/13 179/21 183/25 184/3 185/14 191/18 191/20 193/6 194/5 194/19
**themselves [4]** 29/14 106/22 146/7 147/11
**then [113]** 6/21 8/16 8/18 15/19 20/22 21/10 25/22 25/25 28/11 29/9 31/2 31/6 34/22 35/4 35/5 35/5 36/6 38/14 39/7 39/16 39/18 41/16 43/16 48/13 58/19 59/20 61/11 65/12 66/5 67/25 69/8 69/9 69/20 70/6 74/21 75/16 76/13 80/17 89/24 94/2 98/6 98/14 98/17 99/14 100/2 101/15 110/6 110/7 111/15 112/6 113/23 114/23 123/8 123/9 124/2 125/12 125/13 126/17 126/22 130/8 130/25 132/3 136/5 137/15 139/16 139/22 140/14 142/25 143/1 144/9 153/5 154/5 155/4 157/20 160/12 160/13 160/16 164/8 165/7 165/9 169/11 170/11 170/23 170/24 172/22 175/9 175/25 176/1 176/5 177/1 177/11 178/25 180/20 181/4 181/22 182/4 182/12 182/13 182/17 183/7 183/10 183/15 183/18 186/6 186/12 189/17 189/24 192/18 192/20 193/9 193/13 194/9 194/20
**theories [1]** 159/4
**theory [5]** 101/2 151/8 153/10 155/18 155/19
**there [116]** 5/12 5/17 7/8 11/15 11/16 13/4 14/5 14/11 14/17 15/8 17/19 17/21 22/6 22/17 22/18 22/23 23/1 23/13 23/15 23/25 25/10 25/16 25/18 27/23 28/4 28/20 35/22 35/24 37/8 37/13 37/15 37/15 37/17 37/19 37/22 38/19 39/4 39/22 42/10 44/3 47/24 48/6 50/11 51/9 55/7 55/19 56/2 57/8 57/8 57/24 57/25 59/6 61/23 65/1 65/13 66/8 69/2 70/18 71/23 79/2 92/21 93/25 94/20 95/17 98/1 101/10 105/17 112/4 112/21 113/6 113/18 113/19 113/22 113/23 114/6 119/15 120/1 120/13 123/3 126/8 127/19 129/18 130/23 141/8 150/12 151/4 151/7 155/12 155/25 156/6 156/14 156/16 157/8 158/2 160/16 161/11 162/15 163/19 164/17 165/11 165/12 168/6 168/21 168/24 169/2 169/2 169/4 169/11 171/4 174/3 180/7 188/14 188/19 188/20 190/14 192/22
**there's [62]** 7/13 27/1 49/2 49/3 49/13 49/17 55/19 57/5 58/5 58/10 60/13 66/12 66/13 66/18 68/6 71/22 76/4 90/23 101/22 107/3 114/14 115/23 127/6 129/17 131/7 132/21 133/6 133/18 140/17 141/8 142/24 143/1 143/2 143/22 145/15 147/2 150/5 150/24 151/11 151/12 152/5 154/13 155/3 155/7 155/14 155/22 156/5 156/9 156/11 156/12 157/8 167/2 167/4 169/3 169/9 171/8 173/6 174/1 177/5 188/3 189/11 191/2
**thereafter [2]** 54/11 54/12
**thereby [2]** 163/6 166/14
**Therefore [1]** 59/10
**these [70]** 6/16 21/5 21/9 22/3 23/12 24/2 24/4 25/12 27/1 27/10 27/24 28/4 32/12 32/24 32/25 35/22 36/4 40/6 41/23 42/9 44/23 46/14 50/24 51/5 52/1 54/10 54/14 54/16 54/17 55/21 56/18 56/20 57/9 59/23 60/2 61/17 63/22 73/10 73/10 74/18 80/9 86/15 89/3 89/16 89/17 93/20 102/18 112/1 112/15 112/18 114/10 115/16 119/10 120/2 120/10 127/3 127/7 127/9 134/3 142/1 146/4 151/5 155/4 156/9 159/8 164/19 178/18 178/23 179/16 188/6
**they [115]** 9/10 17/8 21/15 29/6 36/6 36/8 45/7 45/8 60/8 68/13 71/11 71/12 71/17 71/19 72/10 89/10 96/15 99/6 99/18 102/15 103/4 103/5 103/13 103/25 104/15 105/4 105/9 105/11 108/7 109/12 109/14 114/7 114/8 114/16 116/8 116/14 119/10 119/11 124/4 128/10 128/11 128/16 128/23 128/24 133/1 136/15 143/12 143/13 143/18 148/3 148/4 149/6 149/7 150/11 150/11 151/25 155/2 155/10 155/24 155/24 156/2 156/12 156/16 156/18 156/19 156/21 156/22 156/24 156/25 156/25 163/2 163/3 163/9 163/10 164/11 165/23 166/21 167/15 167/17 167/18 170/5 171/16 171/17 171/18 174/15 177/6 179/9 179/21 180/8 180/24 181/10 181/10 181/14 181/16 181/17 181/19 182/4 184/3 184/8 184/8 186/19 188/22 188/23 188/24 188/25 189/7 189/8 189/16 191/6 191/17 191/18 193/5 193/15 194/1 194/2
**they're [31]** 8/4 10/17 13/21 70/10 89/4 98/5 121/12 126/21 128/3 132/25 146/20 147/8 152/23 156/8 156/9 156/10 156/15 159/7 182/6 188/7 189/9 189/10 190/1 190/5 190/17 192/10 194/4 194/17 194/18 194/20 194/20
**they've [1]** 117/1
**thing [21]** 28/24 32/16 45/22 45/25 52/19 59/21 66/21 67/20 95/8 113/5 126/19 127/17 140/3 148/7 154/6 157/13 157/17 174/18 183/18 190/14 194/13
**things [34]** 19/12 20/18 39/20 40/18 43/16 57/3 59/15 68/10 69/13 70/10 70/16 71/24 115/23 119/15 126/24 127/9 128/15 128/16 130/11 133/20 144/7 149/2 152/2 154/2 156/10 163/23 169/5 170/3 170/22 171/18 186/2 189/11 191/20 192/20
**think [143]** 15/5 18/6 28/5 31/24 38/14 41/13 41/20 45/8 45/14 49/11 55/20 58/22 59/1 59/5 64/21 67/2 68/14 69/3 69/6 70/2 70/22 72/17 84/16 89/4 89/5 93/14 109/15 110/18 111/9 113/2 113/5 119/5 120/12 120/21 123/12 123/20 123/22 123/24 124/17 125/4 125/6 127/24 128/1 128/3 129/12 131/24 132/23 133/19 134/7 134/8 134/10 135/15 136/21 140/14 140/18 142/10 142/13 142/21 142/22 142/22 143/7 143/17 143/22 146/2 146/17 146/24 148/18 149/16 149/25 150/11 151/15 152/5 152/6 153/14 153/15 154/6 154/7

## T


**think... [66]** 154/24 155/6 155/8 156/4 157/13 157/17 158/22 159/7 159/24 160/6 160/19 161/1 161/9 161/10 161/10 161/20 162/17 162/20 162/22 163/12 163/21 163/25 164/18 165/2 165/11 166/18 166/19 166/20 166/21 167/13 167/16 167/18 167/23 168/4 168/21 169/4 169/7 170/14 170/22 173/15 174/4 175/13 176/19 178/22 179/4 179/10 180/18 180/25 181/4 183/2 183/25 185/1 185/21 186/2 186/15 186/16 186/18 186/19 186/23 188/17 188/21 189/7 190/14 191/17 192/11 194/12
**think is [1]** 185/1
**thinking [2]** 124/5 155/1
**third [7]** 2/3 2/7 146/13 146/22 147/10 160/13 165/25
**Third Circuit [3]** 146/13 146/22 147/10
**this [398]**
**this Court [1]** 141/7
**those [96]** 4/18 4/20 5/13 5/16 12/13 17/16 19/11 20/13 20/14 20/18 21/8 21/12 22/1 22/19 24/11 25/8 25/9 27/14 29/10 29/13 29/14 29/17 30/2 30/3 31/14 31/17 31/18 32/4 32/6 32/21 32/25 35/25 36/4 36/10 41/24 42/3 42/15 43/3 43/16 43/18 43/22 43/25 44/1 44/10 44/11 44/13 45/6 49/20 50/13 50/18 52/2 54/20 56/4 56/5 56/23 57/13 57/25 58/6 58/16 66/15 70/16 84/4 102/3 102/24 104/12 104/13 104/14 104/24 105/8 108/1 108/10 109/16 110/7 110/14 110/15 110/15 111/21 114/2 117/9 118/19 120/17 120/22 129/6 149/8 150/13 152/2 153/4 154/2 155/17 164/5 164/20 164/22 166/15 169/22 170/22 172/18
**though [3]** 100/15 121/7 158/1
**thought [6]** 38/18 38/21 140/7 151/25 157/24 187/17
**thousands [2]** 18/23 56/2
**thread [1]** 165/9
**threatening [1]** 122/17
**three [16]** 6/22 8/18 28/5 43/18 101/10 108/1 115/18 124/20 124/23 126/24 147/9 160/7 166/15 166/19 177/5 179/16
**three days [1]** 6/22
**through [49]** 5/8 6/15 8/8 12/14 13/8 17/10 21/12 24/10 24/14 25/9 36/2 42/22 50/10 55/16 60/16 69/14 70/20 71/19 77/19 78/2 80/11 83/18 83/24 101/17 102/3 102/8 102/11 103/3 104/1 104/7 104/7 104/24 106/9 107/9 108/2 108/8 109/16 109/21 111/20 148/15 153/3 163/10 170/6 173/6 174/22 177/19 178/6 184/19 192/18
**throughout [8]** 115/16 115/19 133/1 133/2 150/7 151/19 187/10 191/16
**throw [1]** 148/13
**throws [1]** 156/6
**thrust [5]** 165/19 180/24 181/25 182/21 187/8
**tie [4]** 14/12 107/22 107/24 146/23
**tighten [1]** 149/5
**time [36]** 10/2 10/22 14/19 18/19 20/18 30/6 31/2 34/20 37/12 41/1 41/4 57/19 63/19 71/12 71/24 72/2 73/4 73/13 74/17 74/18 76/25 85/9 87/21 100/10 117/5 119/10 119/25 123/21 124/14 125/20 126/5 126/11 155/3 191/12 193/13 194/9
**time-consuming [1]** 41/1
**time-intensive [1]** 41/4
**timeline [2]** 12/11 133/8
**times [3]** 28/5 99/16 101/10
**timing [2]** 124/5 124/7
**title [5]** 137/20 138/20 138/23 153/17 195/7
**today [8]** 18/17 30/11 63/7 71/6 73/1 75/10 75/13 155/24
**together [7]** 73/10 89/18 103/24 107/24 127/20 164/12 165/18
**told [10]** 64/25 66/5 67/19 105/16 106/16 115/24 120/24 121/6 138/22 191/18
**Toman [1]** 142/22
**Toman's [1]** 112/23
**tomorrow [12]** 123/19 126/12 126/13 126/15 126/18 127/3 127/4 127/11 134/2 184/15 192/21 192/25
**Toni [7]** 102/14 103/20 105/3 105/7 105/9 157/22 181/17
**Toni De Lanoy [5]** 102/14 103/20 105/3 157/22 181/17
**tonight [7]** 123/16 123/21 123/24 124/2 125/11 184/14 184/19
**tons [1]** 148/8
**too [12]** 7/14 24/25 41/4 69/10 73/8 85/18 134/22 135/23 160/16 178/10 181/1 192/17
**took [21]** 5/9 11/19 25/24 25/25 26/4 26/6 26/10 26/13 26/21 28/7 29/9 29/10 32/24 34/17 35/15 35/25 43/4 45/12 94/14 97/1 97/12
**top [17]** 4/17 5/11 6/16 17/16 17/16 18/14 18/15 48/11 89/22 89/24 90/12 147/3 147/7 147/14 147/16 158/18 162/9
**total [12]** 6/24 6/25 8/19 8/19 10/25 17/21 96/8 98/10 124/13 124/14 124/15 124/25
**totaling [4]** 79/24 80/5 80/13 80/22
**totally [8]** 19/4 61/5 69/22 129/10 171/16 171/19 172/9 174/7
**totals [2]** 79/14 79/15
**towards [5]** 133/20 153/20 160/6 187/20 192/1
**track [4]** 107/1 147/17 171/24 172/10
**tracked [4]** 106/25 107/4 107/7 107/21
**tracking [1]** 174/23
**transactions [2]** 72/19 72/20
**transcript [2]** 195/8 195/10
**transcripts [1]** 157/24
**transfer [12]** 80/22 81/2 81/15 81/19 82/2 82/6 82/10 82/14 82/18 83/2 83/6 83/16
**transfers [11]** 79/11 79/21 80/4 80/12 80/17 81/6 81/10 81/23 82/22 83/10 83/20
**treat [1]** 142/15
**trial [19]** 1/10 30/13 39/3 63/10 67/15 69/13 115/19 116/21 122/8 128/1 132/8 136/16 147/19 150/7 151/19 167/14 182/15 186/6 192/5
**trials [4]** 68/7 114/4 132/8 153/22
**tried [9]** 32/25 33/23 36/1 40/9 51/9 68/24 155/21 156/16 161/5
**troubling [1]** 148/7
**true [15]** 67/13 67/13 74/4 102/23 110/17 131/22 132/1 150/4 156/11 167/15 187/11 187/11 188/1 188/2 195/8
**truly [1]** 118/14
**trust [3]** 15/9 21/14 24/22
**trustworthiness [1]** 143/24
**truthfully [1]** 67/2
**try [12]** 37/18 38/18 39/10 39/13 52/2 52/13 52/21 53/12 61/8 68/7 77/4 176/4
**trying [15]** 39/19 39/22 40/8 40/25 50/18 60/15 60/18 60/20 77/21 131/14 131/15 143/8 143/13 162/13 191/25
**turn [2]** 69/12 158/11
**turning [1]** 185/25
**tweak [1]** 159/24
**tweaks [1]** 161/24
**two [47]** 19/5 19/12 19/16 40/24 43/15 43/16 43/20 60/8 80/12 93/25 94/2 95/19 99/3 110/7 119/15 119/17 120/2 120/7 120/17 120/20 120/22 123/1 124/25 125/1 125/3 128/19 133/10 144/7 152/2 152/14 160/12 161/24 163/23 164/4 165/16 165/20 170/22 174/25 176/2 178/18 182/13 183/7 183/7 186/2 186/22 193/9 193/20
**two hours [3]** 124/25 125/1 125/3
**two minutes [1]** 99/3
**type [5]** 33/3 40/24 40/24 94/2 153/18
**types [1]** 93/25


## U


**U.S [1]** 1/13
**Uh [1]** 75/6
**Uh-huh [1]** 75/6
**ultimately [3]** 71/23 116/9 122/9
**unable [1]** 78/10
**unclear [1]** 176/8
**uncorroborated [1]** 114/15
**under [24]** 14/10 66/25 66/25 68/15 68/17 88/1 96/9 101/1 106/6 113/8 113/11 113/24 114/16 143/5 147/13 151/20 155/18 156/24 158/7 159/3 168/2 168/7 168/8 186/10
**undercover [4]** 5/25 7/5 7/21 8/14
**undergirds [1]** 105/15
**underlined [13]** 128/11 128/16 137/10 139/7 139/10 139/12 140/2 140/3 140/5 140/6 146/6 147/16 170/2
**underlines [1]** 139/9
**underlying [29]** 4/22 6/5 7/11 7/24 9/13 10/12 10/13 11/21 11/22 13/16 46/18 56/20 63/7 66/14 71/5 73/11 74/7 74/9 108/2 130/13 146/18 146/19 147/1 147/2 148/21 171/14 172/2 174/16 176/3
**understand [35]** 12/21 71/15 77/6 115/25 116/8 116/10 116/13 116/15 117/13 119/14 119/21 120/9 121/2 121/4 121/8 122/1 122/5 122/9 122/10 122/12 122/14 122/15 131/14 132/16 141/16 147/23 147/25 157/3 163/16 167/17 184/18 186/19 191/25 193/5

## U

**understand... [1]** 193/18
**understanding [3]** 24/6 70/15 71/23
**understands [5]** 117/9 119/15 119/22 120/14 122/23
**understood [2]** 93/25 112/9
**undertake [1]** 21/25
**unique [1]** 12/23
**UNITED [20]** 1/1 1/4 1/11 16/12 16/19 16/23 17/3 89/2 89/12 89/13 89/14 118/11 119/1 149/25 152/25 159/7 172/7 195/5 195/7 195/11
**United States [9]** 16/12 16/19 16/23 17/3 119/1 149/25 152/25 159/7 172/7
**units [6]** 26/11 26/23 26/23 27/14 28/8 32/1
**Universal [1]** 89/15
**unlawful [3]** 103/14 103/15 103/23
**unless [2]** 61/14 192/10
**unorthodox [1]** 78/7
**unpack [2]** 61/8 61/10
**unplanned [1]** 100/15
**unsatisfactory [1]** 120/21
**unsatisfied [1]** 120/1
**until [5]** 71/1 115/7 118/6 129/25 182/11
**up [65]** 17/11 18/5 19/18 29/1 32/25 33/24 36/1 37/17 38/15 40/17 43/3 46/8 46/20 47/18 50/3 50/19 50/25 52/2 52/13 52/21 53/5 53/12 53/17 53/20 55/14 56/11 60/6 61/12 62/13 63/8 67/21 71/4 72/10 72/16 75/25 76/1 78/24 80/13 85/1 89/18 91/25 95/8 100/24 102/18 105/14 107/20 109/21 114/18 121/24 125/11 130/5 133/7 134/3 134/22 136/10 137/17 149/3 149/5 150/9 155/10 156/22 174/5 178/4 180/18 189/1
**upon [4]** 7/24 12/23 66/10 117/16
**us [16]** 62/13 93/19 123/21 128/23 132/2 142/16 148/6 165/6 165/8 172/19 173/11 177/2 177/19 177/23 178/12 189/16
**US Attorney [1]** 132/2
**US-based [1]** 189/16
**usdoj.gov [2]** 1/16 1/20
**use [33]** 27/16 38/24 43/25 65/22 68/24 76/10 77/21 94/20 104/19 104/20 104/21 104/23 105/24 105/25 106/3 106/3 106/4 127/25 130/3 163/11 174/22 183/2 183/25 184/3 184/10 188/3 188/5 188/8 188/12 188/23 189/15 189/21 193/11
**used [18]** 7/5 21/10 23/25 24/3 26/6 26/22 27/18 43/9 44/10 44/13 44/14 94/15 97/4 127/25 133/25 181/8 182/2 187/12
**uses [3]** 191/12 191/12 193/25
**using [18]** 26/18 26/24 26/25 27/4 27/10 27/25 28/21 43/22 44/9 44/23 45/6 45/10 45/18 50/1 96/4 130/2 135/15 135/15
**usual [1]** 155/5

## V

**Valle [2]** 16/23 16/25
**variety [1]** 91/10
**various [1]** 105/10
**vast [1]** 89/16
**veers [2]** 119/5 128/2
**venue [1]** 107/25
**veracity [1]** 131/25
**verdict [2]** 192/22 194/21
**verify [1]** 54/13
**Vernon [1]** 6/1
**Vernon Wheeler [1]** 6/1
**version [13]** 11/14 62/9 128/14 128/19 146/12 146/13 146/22 159/1 159/17 159/23 162/2 166/4 179/21
**versions [3]** 36/14 37/4 160/7
**versus [13]** 6/5 16/12 16/19 16/23 17/3 95/22 119/1 119/12 149/18 149/25 152/12 159/7 185/15
**very [41]** 58/22 60/8 60/8 64/10 65/13 66/21 67/21 89/10 116/23 119/12 126/21 127/8 139/18 141/8 141/14 142/21 142/24 146/20 147/8 147/8 152/23 154/12 157/13 158/1 161/5 161/6 164/3 166/20 167/16 167/16 167/23 173/18 176/17 176/23 177/8 178/18 190/3 191/16 191/20 192/2 194/13
**video [2]** 142/13 143/2
**videos [1]** 181/11
**view [14]** 122/8 132/11 137/7 138/6 151/1 151/3 153/7 155/23 160/8 166/16 178/14 178/15 184/16 191/15
**viewpoint [1]** 31/16
**views [1]** 157/16
**vigorously [1]** 115/18
**violate [5]** 108/11 108/13 108/14 152/11 152/20
**violated [5]** 150/6 186/19 188/13 188/24 191/3
**violating [1]** 105/15
**violation [5]** 112/13 149/13 150/12 150/23 151/8
**violations [2]** 182/15 186/7
**violative [1]** 148/18
**voice [1]** 119/14
**voiced [1]** 149/1
**volume [2]** 12/13 109/21
**voluminous [7]** 14/7 64/14 88/5 104/10 113/19 113/24 149/23

## W

**wait [3]** 85/1 124/8 150/8
**waiting [3]** 75/25 103/6 144/3
**waivers [1]** 122/21
**walk [3]** 5/8 6/15 8/8
**walked [1]** 17/10
**want [100]** 17/9 18/3 19/15 19/15 28/24 31/7 32/7 34/22 46/13 59/20 61/15 61/17 65/23 71/4 71/8 71/13 72/15 74/13 75/7 75/7 77/19 78/2 90/20 90/25 91/1 96/21 99/5 99/9 100/24 106/25 115/17 116/12 117/5 117/25 118/3 119/14 122/4 123/3 123/7 124/7 124/10 127/6 128/10 128/11 128/11 128/16 129/11 130/10 131/11 133/1 136/10 136/19 137/4 137/22 137/24 138/2 138/5 138/6 138/8 138/17 139/5 139/6 139/6 139/9 140/1 140/1 140/3 140/6 140/8 144/15 146/21 146/22 150/11 153/21 160/4 161/4 168/14 173/24 178/5 179/12 180/8 180/24 181/19 182/9 184/3 184/6 184/16 184/23 185/22 187/1 187/5 187/13 187/20 187/22 188/8 192/17 193/7 193/15 193/19 194/13
**wanted [9]** 4/11 11/18 74/19 91/7 107/21 140/7 142/11 194/3 194/6
**wanting [1]** 73/8
**wants [21]** 64/13 64/18 71/15 138/13 139/12 139/17 142/11 144/3 144/18 145/7 146/4 146/6 154/3 158/9 160/1 170/15 170/17 171/12 179/10 179/22 180/21
**warned [2]** 105/10 105/13
**warning [1]** 112/20
**warnings [2]** 194/8 194/9
**warranted [2]** 161/20 167/19
**warranting [1]** 65/2
**warrants [1]** 155/8
**was [222]**
**Washington [2]** 1/15 1/19
**wasn't [8]** 18/14 19/3 23/2 48/18 60/20 61/3 144/13 178/20
**Watts [5]** 118/11 119/1 119/6 119/7 120/4
**way [66]** 5/11 14/4 37/18 37/20 38/18 38/21 38/22 38/23 38/24 39/5 39/6 39/8 39/11 39/13 40/9 51/10 58/7 60/7 65/23 66/2 67/4 67/4 68/16 70/2 71/11 71/16 74/15 74/15 76/4 78/1 79/12 80/9 93/8 105/9 105/13 109/8 114/16 125/10 127/2 131/22 132/2 141/20 141/21 147/18 150/4 155/13 155/20 155/20 156/1 159/3 160/6 163/5 166/12 166/16 171/9 171/16 177/19 181/6 181/12 182/11 185/4 188/2 188/25 191/14 191/18 192/12
**ways [4]** 69/5 155/2 156/21 156/25
**we [253]**
**We'd [1]** 114/20
**we'll [10]** 55/15 64/19 76/16 123/8 124/1 125/11 125/12 125/13 125/13 129/21
**we're [50]** 4/3 8/9 8/13 19/8 19/8 20/12 21/16 21/19 22/2 25/19 25/21 27/2 31/24 34/14 39/15 40/7 61/6 68/20 70/20 77/8 80/11 99/8 99/20 100/2 100/14 114/6 115/8 116/21 119/19 120/13 126/14 133/20 134/1 134/2 134/11 135/15 135/15 136/21 137/9 142/10 144/20 151/15 159/4 163/24 170/2 174/19 177/21 180/18 188/17 192/17
**we've [8]** 6/16 19/13 60/15 104/10 110/10 144/7 151/2 151/16
**website [1]** 181/11
**websites [4]** 180/20 181/7 182/1 182/24
**week [1]** 67/14
**weeks [1]** 16/7
**weigh [2]** 58/2 58/3
**Welcome [3]** 4/2 72/9 126/2
**well [64]** 13/1 13/5 19/19 26/4 27/4 29/21 36/12 42/24 43/18 46/3 56/5 61/7 61/11 66/7 66/12 69/15 72/17 73/9 74/23 77/23 87/1 87/1 92/2 94/17 107/16 108/12 113/11 120/19 123/22 124/6 128/4 128/22 132/6 132/25 137/2 139/10 141/8 144/12 144/13 149/2 149/25 151/2 151/10 154/17 155/14

## W


**well... [19]** 156/7 157/12 157/24 158/10 163/24 164/24 168/13 170/21 173/23 174/1 174/14 176/5 178/15 179/14 180/24 182/21 185/14 190/16 194/10
**went [11]** 63/4 77/16 84/5 86/5 86/24 91/10 91/12 92/21 92/23 110/24 135/23
**were [85]** 5/12 5/13 14/5 17/21 20/14 22/18 22/18 23/1 23/23 24/4 26/23 27/23 27/23 28/12 29/14 30/3 36/4 36/6 36/8 36/12 37/3 39/22 41/18 41/18 42/10 43/18 51/9 55/7 57/24 59/19 60/22 63/10 63/12 69/2 69/13 71/10 71/11 71/12 74/7 75/11 93/25 94/12 95/17 98/9 102/11 102/15 103/6 103/25 104/6 104/9 104/17 105/9 105/11 105/12 105/17 105/21 105/22 106/9 106/12 106/23 108/7 109/12 109/14 110/12 110/16 111/11 111/20 112/18 112/21 112/21 116/3 136/15 143/13 153/24 155/3 156/18 161/8 163/10 166/11 167/23 169/4 178/22 184/19 185/25 191/4
**weren't [1]** 60/7
**what [264]**
**what's [27]** 7/20 7/23 9/5 9/12 10/12 11/5 12/15 13/4 13/5 13/5 48/1 75/23 128/10 132/11 136/18 137/7 138/6 139/17 139/18 141/19 146/11 151/1 154/18 160/8 165/12 165/12 178/14
**whatever [10]** 15/9 26/23 36/17 62/15 62/18 64/13 64/18 71/7 71/13 178/24
**Wheeler [1]** 6/1
**when [45]** 11/13 19/16 20/12 21/4 21/16 21/19 24/25 27/8 28/2 28/19 31/4 34/4 43/17 43/25 44/25 48/4 59/23 66/3 66/23 67/22 70/11 77/9 95/4 95/21 97/10 116/3 118/15 118/16 133/7 133/14 134/14 142/14 143/13 154/13 162/21 162/22 166/7 168/18 172/10 174/20 174/22 177/6 178/22 191/17 193/5
**where [45]** 9/10 9/11 21/25 23/22 27/9 27/21 37/12 40/8 46/13 54/6 64/19 64/22 65/24 69/13 69/19 71/19 96/23 129/16 129/16 133/24 140/16 140/18 143/17 147/15 147/25 148/2 148/6 149/1 150/1 152/5 153/23 155/1 156/6 156/9 156/12 157/17 159/23 168/6 169/11 176/6 176/11 178/1 183/16 183/25 186/8
**whereas [1]** 168/5
**whether [39]** 21/23 22/4 22/16 23/9 23/13 23/15 23/18 27/23 28/4 28/12 28/20 33/9 38/19 39/11 39/22 54/10 54/20 60/5 60/21 71/4 71/4 73/18 76/5 108/22 109/14 111/7 114/12 118/14 120/13 122/9 153/18 154/6 179/2 180/2 180/12 184/4 184/22 185/8 187/12
**which [90]** 25/25 26/15 32/3 36/13 60/9 64/24 67/3 67/6 69/1 77/11 93/17 95/19 101/20 102/4 102/8 102/24 103/3 103/6 103/17 104/14 104/15 104/16 105/1 105/15 106/1 106/14 106/22 106/22 107/12 107/14 107/17 107/24 108/6 108/11 108/19 110/3 110/3 111/3 112/17 112/18 128/3 128/10 130/2 135/14 136/20 138/8 139/14 141/14 147/18 148/8 148/9 149/22 150/18 150/20 151/13 151/17 154/16 156/2 157/1 159/3 159/6 162/8 163/5 163/13 163/25 165/2 166/13 166/22 173/18 173/21 174/5 176/3 177/2 179/6 179/20 180/7 180/9 181/11 182/9 182/10 183/19 187/8 187/10 187/19 188/22 190/8 190/20 191/18 193/20 194/5
**while [6]** 11/19 34/25 64/21 68/6 122/7 178/22
**white [2]** 13/4 92/8
**Whiteside [1]** 149/25
**who [27]** 5/16 14/10 14/17 64/14 102/25 102/25 106/20 108/24 110/10 110/14 113/7 115/19 158/9 163/4 163/5 164/8 166/1 166/11 166/11 166/12 167/1 169/5 181/20 181/20 181/20 181/20 191/6
**who's [1]** 181/20
**whole [5]** 108/19 109/17 140/3 193/8 193/13
**why [23]** 27/16 38/24 63/21 65/6 68/18 76/10 77/21 78/12 114/5 120/7 133/21 134/1 143/14 149/20 151/9 155/16 158/25 165/3 166/22 171/8 190/10 191/18 194/5
**wide [3]** 69/3 69/6 69/8
**will [127]** 16/17 20/19 21/14 28/6 30/20 31/2 33/11 33/15 35/6 36/15 36/16 36/23 57/16 61/8 63/24 63/24 64/5 65/9 66/2 69/25 70/22 70/23 71/17 72/2 83/18 91/4 99/1 99/12 99/14 100/18 102/7 113/17 114/3 114/17 114/23 115/3 115/11 116/1 116/12 117/5 118/5 120/12 120/12 122/13 123/19 123/20 124/24 124/25 125/10 125/11 125/12 126/12 126/12 126/14 126/16 126/17 126/17 127/4 127/11 128/8 128/13 129/1 129/20 129/20 130/3 132/4 133/21 133/23 134/15 134/23 135/18 136/23 136/24 137/6 139/10 139/13 140/10 143/19 143/21 143/25 144/25 145/22 145/24 146/1 148/10 148/24 153/22 155/14 159/24 160/2 161/1 162/11 165/25 166/2 167/4 169/1 169/19 170/15 171/5 171/21 171/22 172/9 172/10 172/17 172/21 172/23 174/24 175/22 176/1 176/19 176/21 178/7 178/17 180/7 181/4 183/5 183/9 183/10 183/14 185/24 185/24 187/17 191/19 192/21 193/3 194/19 194/24
**willfully [12]** 108/21 110/9 112/7 112/12 149/12 150/22 169/21 179/3 180/3 180/13 184/11 185/9
**willfulness [8]** 158/7 159/2 159/20 160/3 160/5 160/11 160/14 161/14
**Willie [1]** 102/14
**Willie McNeal [1]** 102/14
**WILSON [42]** 2/2 2/2 14/12 14/19 99/23 100/4 100/24 102/25 114/18 115/4 115/9 117/5 117/23 120/14 121/3 121/24 124/1 125/16 126/4 132/10 133/3 133/21 135/23 136/4 136/21 143/5 149/1 149/11 149/20 151/10 153/16 154/21 155/25 157/18 158/25 162/12 162/16 168/14 177/18 181/3 187/25 193/7
**wind [1]** 169/12
**wire [16]** 101/21 102/4 150/14 150/15 150/19 150/21 172/23 173/19 174/10 175/3 175/4 175/6 176/8 176/14 176/18 177/22
**wire fraud [14]** 101/21 102/4 150/15 150/19 150/21 172/23 173/19 174/10 175/3 175/6 176/8 176/14 176/18 177/22
**wires [3]** 78/3 102/4 102/11
**wish [2]** 99/18 115/25
**within [20]** 22/20 38/13 41/12 41/25 42/16 43/13 43/21 64/22 65/20 66/1 67/17 69/10 69/18 69/24 70/19 72/1 98/11 123/2 169/9 182/21
**without [14]** 67/24 68/10 78/7 84/8 86/8 140/5 147/19 148/6 162/19 163/3 165/23 171/7 177/13 192/8
**witness [62]** 4/12 5/21 7/18 9/5 10/5 11/5 13/10 15/18 30/21 61/15 62/12 62/19 64/8 64/13 64/18 64/19 64/22 64/23 66/1 66/6 66/11 66/14 66/19 66/24 66/25 67/24 68/14 70/6 70/21 71/18 71/25 73/17 76/4 76/9 76/17 78/5 78/14 87/9 90/20 90/25 94/24 95/1 95/5 95/11 95/14 113/7 113/7 136/25 137/23 138/1 138/2 138/7 141/5 142/15 143/18 145/20 151/25 168/11 168/19 169/9 190/19 190/23
**witness's [2]** 64/11 190/21
**witnesses [43]** 65/20 66/19 66/21 66/24 102/13 110/15 111/9 111/12 111/21 113/19 114/19 116/1 116/3 116/4 116/5 116/11 116/14 116/25 117/7 117/9 119/17 119/19 119/23 121/3 121/7 121/20 121/23 135/10 136/6 136/11 137/14 139/22 140/12 140/24 141/2 141/10 141/16 141/23 142/9 163/2 163/9 191/2 191/6
**witnesses' [1]** 139/15
**won't [2]** 83/23 120/24
**word [13]** 16/2 26/9 67/15 132/1 132/10 132/13 133/24 140/23 142/5 145/15 181/5 191/12 191/12
**wording [3]** 67/23 68/1 147/19
**words [5]** 60/15 146/5 154/24 193/10 193/17
**work [6]** 40/12 70/7 148/12 185/24 187/14 187/17
**worked [2]** 103/24 127/8
**working [4]** 127/20 127/21 192/23 194/24
**world [1]** 132/23
**would [147]** 15/11 15/23 22/13 22/23 23/11 23/15 24/17 25/24 28/22 30/7 30/17 31/16 33/8 40/25 41/3 41/12 43/9 43/20 43/20 44/6 50/20 57/9 57/19 58/1 58/6 58/20 59/17 59/20 62/13 65/14 65/18 65/19 67/18 67/19 68/9 68/16 69/7 69/15 70/1 70/8 73/4 73/5 73/6 73/11 73/12 73/13 73/18 74/7 74/11 74/13 74/13 74/17 74/20 74/21 75/3 75/3 75/7 75/7 77/3 77/4 87/2 87/21 89/3 89/5 89/6 89/7 91/15 92/16 96/1 99/24 101/1 101/13 102/21 103/5 103/5 103/25 105/14 106/7 106/8 107/23 109/5 111/12 116/20 118/22 118/23 118/24 119/3 120/5 124/20 124/23 128/2 131/2 132/12 138/19 141/5

## W


**would... [52]** 141/15 146/16 148/19 149/5 151/22 153/1 153/2 153/9 153/15 153/18 157/21 158/25 159/8 160/6 160/9 160/18 163/19 163/20 163/22 164/4 164/5 164/9 167/23 168/3 169/20 169/23 173/9 175/18 176/5 176/13 176/16 179/25 180/9 181/9 181/12 183/21 185/6 185/11 185/12 185/18 185/20 185/23 188/25 189/1 189/7 189/8 189/25 190/22 191/1 192/9 192/9 192/11
**wouldn't [6]** 25/24 38/24 39/10 40/11 55/12 105/24
**writing [2]** 5/18 80/9
**written [5]** 25/25 26/15 105/9 161/19 181/20
**wrong [9]** 40/16 66/8 66/12 66/12 66/12 172/12 177/18 177/19 180/10
**wrongdoing [2]** 114/11 166/11
**wrongfully [1]** 105/11
**wrote [4]** 4/19 29/21 30/6 33/6


## Y


**yeah [65]** 11/19 14/19 22/13 23/4 30/1 31/20 33/20 34/5 50/20 60/8 61/19 66/23 74/21 75/3 87/5 93/23 95/13 107/8 107/19 118/5 123/24 124/4 125/6 125/9 125/22 128/8 131/5 134/19 135/6 135/17 136/3 136/15 137/5 138/10 138/10 138/19 139/10 140/21 140/22 141/20 142/3 145/4 146/15 146/20 149/18 150/10 153/12 153/25 155/22 159/22 162/11 163/15 164/2 164/15 165/14 167/10 167/21 171/6 174/7 175/16 175/17 177/4 186/14 191/9 193/12
**year [10]** 25/25 26/2 26/10 26/15 26/16 26/22 28/10 84/4 84/22 92/17
**yearly [2]** 26/6 26/6
**years [4]** 15/6 15/24 26/3 66/20
**yeoman's [1]** 190/15
**Yep [5]** 5/3 6/9 57/15 107/10 132/17
**yes [104]** 4/25 8/3 10/16 11/17 12/3 12/3 13/3 13/20 15/13 15/15 16/5 16/20 17/1 17/20 18/10 18/19 19/24 25/21 26/17 28/2 30/7 30/23 33/3 33/13 33/21 34/24 39/14 41/9 42/7 44/12 45/24 46/12 47/1 47/11 48/1 49/8 49/12 49/19 53/24 56/21 58/14 58/19 60/8 62/5 62/14 62/24 63/19 74/24 75/19 77/4 77/21 79/6 79/13 79/22 84/20 85/5 87/7 88/3 89/6 89/10 91/19 93/3 94/25 96/4 96/18 97/8 98/21 99/8 100/25 115/10 116/6 116/7 117/2 117/12 117/13 121/15 121/17 121/21 122/2 122/6 122/11 122/16 123/5 123/10 128/20 128/22 130/24 131/10 131/16 133/4 135/16 138/15 144/17 147/22 158/15 159/18 160/21 165/7 172/16 173/23 174/1 174/13 175/7 175/11
**yet [5]** 72/3 77/8 126/20 127/22 183/19
**York [2]** 1/15 1/19
**you [816]**
**You'd [1]** 78/21
**you'll [3]** 124/2 125/10 171/20
**you're [64]** 11/14 26/18 26/20 26/24 27/8 28/3 28/3 28/21 28/21 30/13 31/4 34/4 35/17 36/22 38/5 38/5 41/20 43/17 43/22 44/8 58/2 58/10 59/15 60/15 66/2 66/12 70/19 71/7 71/12 73/8 76/8 78/20 84/8 86/7 95/4 97/15 97/22 98/25 117/8 118/3 127/5 127/7 127/20 131/9 134/20 144/16 151/14 165/3 170/22 175/12 176/10 178/1 179/5 180/25 181/4 181/25 182/21 183/6 184/14 185/15 189/4 190/8 190/9 191/25
**you've [15]** 29/13 56/18 56/25 73/10 86/16 90/16 96/12 118/25 148/20 151/18 153/13 154/7 154/22 183/23 186/6
**your [258]**
**Your Honor [93]** 4/6 7/8 14/22 57/14 63/13 65/11 67/9 68/4 69/15 69/23 76/3 77/6 77/24 78/9 87/21 87/24 90/22 93/7 100/10 100/25 101/19 107/5 107/9 113/3 115/5 116/20 117/22 118/10 121/5 121/9 122/2 122/6 122/16 123/22 124/21 127/21 127/24 128/1 128/9 128/22 129/24 131/2 132/16 132/23 134/7 135/5 137/2 140/15 141/25 144/11 144/13 145/3 145/8 149/21 150/5 150/16 151/2 152/16 153/9 153/22 155/10 157/4 157/21 158/19 160/9 160/23 161/1 161/18 162/6 163/1 163/20 164/24 167/10 169/19 171/3 171/8 173/2 173/7 174/14 175/1 176/5 176/16 177/24 178/21 179/15 180/21 184/12 186/2 186/25 187/6 189/13 191/1 191/25
**yours [3]** 39/7 162/16 164/10
**yourself [4]** 31/4 95/3 97/9 121/24


## Z


**Zaglin [1]** 16/19